IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-301-KAJ |
| | ) | |
| vs. | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION | ) | |
| | ) | |
| Counterdefendant. | ) | |
| | ) | |

**AMBERWAVE SYSTEM CORPORATION'S ANSWERING BRIEF
IN OPPOSITION TO INTEL CORPORATION'S MOTION
FOR LEAVE TO SUPPLEMENT COMPLAINT**

> Jack B. Blumenfeld (#1014)
> Leslie A. Polizoti (#4299)
> MORRIS, NICHOLS, ARSHT & TUNNELL
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> Attorneys for Defendant and Counterclaimant
> AmberWave Systems Corporation

OF COUNSEL:

Morgan Chu
David I. Gindler
Christopher A. Vanderlaan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

October 11, 2005

# **TABLE OF CONTENTS**

**Page**

TABLE OF CITATIONS ......................................................................................................... ii

I.     NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

II.    SUMMARY OF ARGUMENT ..................................................................................3

III.   FACTUAL BACKGROUND ....................................................................................4

IV.    ARGUMENT ..........................................................................................................6

       A.    The Court Should Defer Ruling on the Motion to Supplement Until the
             Texas Court Has First Decided Whether the '371 Patent Litigation
             Should Proceed in Texas or Delaware ..................................................................6

       B.    Intel Has No Basis to Request That Its Supplemental Claim Relates
             Back to the Filing of the Delaware '292 Action ...................................................11

V.     CONCLUSION ....................................................................................................14

## TABLE OF CITATIONS

### Cases

*Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*,
    20 F. Supp. 2d 948 (E.D. Va. 1998) ....................................................................... 7

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................................................... 6

*Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.*,
    432 F. Supp. 956 (D. Del. 1977) .......................................................................... 13

*Daimler-Chrysler Corp. v. Gen. Motors Corp.*,
    133 F. Supp. 2d 1041 (N.D. Ohio 2001) ................................................................ 6

*Enzo Biochem, Inc. v. Calgene, Inc.*,
    188 F.3d 1362 (Fed. Cir. 1999) ............................................................................. 8

*GAF Building Materials Corp. v. Elk Corp. of Dallas*,
    90 F.3d 479 (Fed. Cir. 1996) ......................................................................... *passim*

*Genentech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ............................................................................. 10

*Hospah Coal Co. v. Chaco Energy Co.*,
    673 F.2d 1161 (10th Cir. 1982) ............................................................................ 6

*Laboratory Corp. of America Holdings, v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004) ........................................................................... 10

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ................................................................................. 9

*MSK Ins., Ltd. v. Employers Reins. Corp.*,
    212 F. Supp. 2d 266 (S.D.N.Y. 2002) .................................................................... 6

*Ontel Prods., Inc. v. Project Strategies Corp.*,
    899 F. Supp. 1144 (S.D.N.Y. 1995) ...................................................................... 7

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ................................................................................... 6

*Pem Am. v. Lambert*,
    No. 03-CV-3706-JFK, 2003 WL 22383369 (S.D.N.Y. Oct. 17, 2003) .................. 6

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................. 8

*Ramsey Group, Inc. v. EGS Int'l, Inc.*,
   208 F.R.D. 559 (W.D.N.C. 2002) ...................................................................................... 13

*Riles v. Shell Exploration and Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002) ........................................................................................ 9

*SmithKline Beecham Corp. v. Apotex Corp.*,
   No. 99-CV-4304, 2000 WL 15074 (E.D. Pa. Jan. 4, 2000) .......................................... 8

*Sofamor Danek Holdings, Inc. v. U.S. Surgical Corp.*,
   No. 98-2369 GA, 1998 U.S. Dist. LEXIS 21746 (W.D. Tenn. Nov. 16, 1998) ......... 8

*Spectronics Corp. v. H.B. Fuller Co., Inc.*,
   940 F.2d 631 (Fed. Cir. 1991) .......................................................................................... 13

*Telephonics Corp. v. Lindly & Co., Inc.*,
   192 F. Supp 407 (E.D.N.Y. 1961) .................................................................................... 13

*Union Oil Co. of Cal. v. Atlantic Richfield Co.*,
   208 F.3d 989 (Fed. Cir. 2000) .......................................................................................... 8

*Universal Premium Acceptance Corp. v. Oxford Bank & Trust*,
   No. 02-2448-KHV, 2002 U.S. Dist. LEXIS 24915 (D. Kan. Dec. 10, 2002) ............ 6

## Statutes And Other Authorities

35 U.S.C. § 102 ...................................................................................................................... 8

35 U.S.C. § 103 ...................................................................................................................... 8

E.D. Tex. LR CV-5(b)(1) ..................................................................................................... 2

Fed. R. Civ. P. 15 ............................................................................................................. 4, 11

Fed. R. Civ. P. 42(a) .......................................................................................................... 11

I.       **NATURE AND STAGE OF THE PROCEEDINGS**

AmberWave is a twenty-person engineering company, founded in the late 1990s by an MIT professor and his students, which focuses on advanced semiconductor materials and device design. After Intel announced the design of its newest-generation of computer microprocessors—the 90nm microprocessors—AmberWave discovered that Intel was using some of its patented technology for reducing impurities in what is known as "strained silicon."[1] Accordingly, AmberWave approached Intel about licensing this technology.

The parties held two in-person meetings at Intel's offices, on January 27, 2005, and on May 3, 2005. (Ex. A.) One day after the May meeting, Intel sent an email to AmberWave reiterating its desire to negotiate. (Ex. B.) On May 9, AmberWave sent a letter to Intel formally confirming the position expressed at both meetings—that Intel's 90nm microprocessors infringe U.S. Patent No. 6,831,292 ("'292 patent"), AmberWave's patent covering this technology. (Ex. A.) AmberWave did not threaten to sue Intel for infringement in that letter. It simply asked Intel either to license the '292 patent or stop using the technology.

Eight days later, Intel filed a declaratory judgment suit in this Court ("Delaware '292 Action") alleging that it does not infringe the '292 patent. (D.I. 1.) In a cover letter that accompanied the complaint, Intel stated that the Delaware suit was meant to "protect its rights" during negotiations, and asked AmberWave to confirm plans for a follow-up meeting to discuss licensing. (Ex. D.) The parties' negotiations had not "collapsed," as Intel suggests in its moving papers. (D.I. 31 at 4.)

AmberWave subsequently discovered that Intel was also using a different AmberWave patented technology, covered by U.S. Patent No. 6,881,632 ("'632 patent"),

---

[1] 90nm technology refers to the suite of techniques Intel uses to manufacture its microprocessors. Intel produces a number of different brands of microprocessors using its 90nm technology. For example, there are 90nm Pentium microprocessors, 90nm Celeron microprocessors, and 90nm Xeon microprocessors. (Ex. C.)

relating to the construction of inverters and other circuits using certain types of specially manufactured transistors. (Ex. E.) To avoid yet another anticipatory declaratory judgment action by Intel, AmberWave promptly filed an action against Intel in the Eastern District of Texas ("Texas '632 Action"), where Intel has been a frequent litigant, alleging infringement of the '632 patent. (Ex. F.) The '632 patent and '292 patents are from different patent families and cover distinct technologies and inventions. (Exs. E, G.) Intel has moved to transfer the Texas '632 Action to Delaware. The parties have completed briefing of the motion and are awaiting a decision from the court.

The motion before this Court relates to litigation over U.S. Patent No. 6,946,371 ("'371 patent"), which was just recently issued to AmberWave on September 20, 2005. (Ex. H.) The application that matured into the '371 patent had been one of the subjects of the parties' previous licensing discussions. Expecting that Intel might try to file a preemptive declaratory judgment as soon as the patent issued, AmberWave moved quickly on the morning of September 20 to protect its traditional right as the patentee to choose the forum for litigation. At 5:50 a.m., AmberWave filed an action in the Eastern District of Texas ("Texas '371 Action") alleging infringement of the '371 patent.[2] (Ex. I.) Approximately one hour and forty minutes later, just as AmberWave expected, Intel filed a mirror-image action in Delaware ("Delaware '371 Action") seeking a declaratory judgment of non-infringement with respect to the '371 patent. (Ex. J.)

Intel has now moved for leave to supplement its complaint in the Delaware '292 Action with a claim for a declaratory judgment of non-infringement with respect to the '371 patent—even though Intel has already asserted exactly the same claim in its recently filed Delaware '371 Action. In addition, Intel has requested that the Court make a

---

[2] AmberWave filed the complaint in the Texas court's depository, as permitted by the court's local rules: "Where filing by paper is permitted, any pleadings or other documents that are marked received using the electronic time stamp contained in the depository and then placed in the box will be filed as of the time and date marked as received to the depository." E.D. Tex. LR CV-5(b)(1).

determination that the proposed supplemental claim on the '371 patent relates back to the original filing date of the Delaware '292 Action—even though the '371 patent did not exist at the time that action was commenced.

## II.    SUMMARY OF ARGUMENT

1.      This motion is premature—at best.  It should not be decided until the Texas court first determines whether the litigation over the '371 patent should proceed in Texas or Delaware.  It clearly cannot proceed in both districts at the same time.  It is the responsibility of the Texas court—which first acquired jurisdiction over the dispute concerning the '371 patent—to make this determination.  Under a long-standing line of authority, the court that first acquires jurisdiction over a claim is charged with deciding whether to proceed with the case before it or to defer to a court that subsequently acquires jurisdiction over that claim.  If Intel desires to have the '371 patent litigation proceed in Delaware instead of Texas, then it should file a transfer motion in Texas.  Intel is well aware that it should follow this procedure, instead of seeking to pursue duplicative litigation in Delaware:  When AmberWave filed the Texas '632 Action, Intel did not file a mirror-image declaratory relief suit in Delaware, or move to supplement the Delaware '292 Action with a declaratory relief claim over the '632 patent.  Rather, Intel filed a motion to transfer the Texas '632 Action to Delaware.  That is the procedure Intel should follow here, as well.

2.      Intel's real reason for filing this motion has nothing to do with efficiency. Intel tried—and failed—to file a declaratory relief action on the '371 patent in Delaware before AmberWave filed its own infringement action in Texas.  Anticipating that Intel would seek to preempt AmberWave's right as the patentee to select the forum for litigation, AmberWave filed its complaint in Texas early in the morning on the day that the '371 patent issued, before Intel filed its mirror-image declaratory relief action in Delaware.  Intel is well aware that priority between competing suits on the same patent ordinarily goes to the first-filed case.  It is for this reason—and this reason alone—that

Intel has asked this Court to permit supplementation of the Delaware '292 Action with a declaratory relief claim over the '371 patent—and to make a determination that the supplemental claim relates back to the initial filing date of that action. The transparent purpose of this procedural maneuver is to allow Intel to argue that the Delaware '292 Action should be treated as the case that first acquired jurisdiction over the dispute concerning the '371 patent.

　　　　3.　　　　Intel's stratagem has a major problem: It is directly contrary to controlling Federal Circuit authority mentioned nowhere in Intel's moving papers. In *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482 (Fed. Cir. 1996), the Federal held that a declaratory relief action can be filed only "*with respect to a patent that has issued before a complaint is filed*." (emphasis added). No subject-matter jurisdiction—in the constitutional sense—can exist over a dispute concerning a pending patent application, even if the claims have been allowed. Accordingly, Intel cannot rely upon Rule 15 to argue that a declaratory relief claim over the '371 patent relates back to a point in time when the '371 patent did not exist. As the Delaware '292 Action was filed four months before the issuance of the '371 patent, Intel's requested relief is barred by *GAF Building*.

## III.　FACTUAL BACKGROUND

　　　　Both the '292 and '371 patents generally relate to semiconductor design and manufacturing. They involve separate and distinct technologies, however, from different patent families. They have different specifications, different sets of inventors, distinct prosecution histories, and very different claims.

　　　　The '292 patent is entitled "Semiconductor Structures Employing Strained Material Layers With Defined Impurity Gradients and Methods for Fabricating Same." (Ex. G.) As the title suggests, the patent relates to ways of controlling the presence of impurities in strained semiconductor material, such as silicon. "Straining" involves altering the spacing of atoms in a semiconductor material. When a semiconductor

material such as silicon is "strained," the speed at which electrical current moves through the silicon can increase.

When working with strained semiconductor material, it is important to control the presence of certain impurities in the strained materials, because these impurities can "degrade overall device performance." (*Id*. at 2:56-3:10.) Among other things, the '292 patent teaches an "effective way to minimize or eliminate the impurities in certain parts of strained material layers" by, among other things, manipulating the particular processing steps to be performed after the semiconductor material is strained. (*Id*. at 9:52-54; 7:28-45.) It also shows how the techniques it proposes are applicable to different types of strained materials. (*Id*. at 3:46-58; 4:59-63; 8:14-24.)

The '371 patent, entitled "Methods of Fabricating Semiconductor Structures Having Epitaxially Grown Source and Drain Elements," does not focus on controlling performance-sapping impurities, nor does it relate only to strained silicon. (Ex. H.) Instead, it involves the design of "source" and "drain" regions in transistors that are built out of semiconductor material. (*Id*. at 4:55-65.) The "source" and "drain" regions are the locations where current flows into and out of a transistor. Because of the critical role source and drain regions play in transistor performance, it is important to avoid a serious type of defect—faceting—that can occur during their construction. (*Id*. at 3:13-32.) In lay terms, "facets" are slanted crystalline planes in a semiconductor material formed at an interface, conceptually similar to facets of a diamond or gemstone. (*Id.* at 5:19-22.) The '371 patent teaches engineers a series of techniques for controlling faceting. (*Id.* at 4:66-5:18.) These techniques can be applied irrespective of whether the transistor being constructed includes strained material.

Thus, while the '292 teaches a process for controlling the presence of impurities in strained semiconductor materials, the '371 patent teaches the design of particular features on transistor devices. These distinct technologies relate to different parts of Intel's microprocessors as well as different aspects of Intel's fabrication process.

## IV.    ARGUMENT

### A.    The Court Should Defer Ruling on the Motion to Supplement Until the Texas Court Has First Decided Whether the '371 Patent Litigation Should Proceed in Texas or Delaware

This Court should defer consideration of Intel's motion until after the Texas court has resolved a threshold issue:  whether litigation over the '371 patent should proceed in Texas or Delaware.  It is the duty of the Texas court to decide where the '371 patent litigation should proceed.  This is because the Texas '371 Action was filed before the Delaware '371 Action.  It is well established that the court first acquiring jurisdiction over a claim should decide whether to proceed with the case before it or to defer, via transfer or otherwise, to a court that subsequently acquired jurisdiction over that claim.[3]

---

[3] *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) ("[F]orum non conveniens argument [addressed to court in second-filed action] should be addressed to the court in the first-filed action."); *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982) ("[T]he court which first obtains jurisdiction should be allowed to first decide issues of venue."); *Pem Am. v. Lambert*, No. 03-CV-3706-JFK, 2003 WL 22383369, at *2 (S.D.N.Y. Oct. 17, 2003) ("In order to avoid conflict and confusion, the courts of this district, guided by Second Circuit case law, have adopted the bright-line rule that the court in which the first action was filed has the right and responsibility to decide whether the first filed rule or an exception thereto applies. Although this bright-line rule is largely identical to and rooted in the first filed rule, it does not provide for any special exceptions. It is a straight-forward rule to be applied in a rote manner."); *MSK Ins., Ltd. v. Employers Reins. Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002) ("This District has laid down a bright-line rule for situations such as this:  The court before which the first-filed action was brought determines which forum will hear the case."); *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, No. 02-2448-KHV, 2002 U.S. Dist. LEXIS 24915, at *4 (D. Kan. Dec. 10, 2002) ("The first-to-file rule provides that the court where jurisdiction first attaches determines the appropriate venue to decide the case, and the second court will decline to act until proceedings in the first court terminate."); *Daimler-Chrysler Corp. v. Gen. Motors Corp.*, 133 F. Supp. 2d 1041, 1042 (N.D. Ohio 2001) ("[T]he court where a complaint is first filed … determine[s] which case should go forward."); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 556 n.4 (S.D.N.Y. 2000) ("[I]t is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies."); *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998) ("Because the Virginia action was filed first, this is the appropriate forum to decide the venue and transfer issues.  More precisely, this is the forum to decide whether to give effect to the first-filed rule."); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("Case law indicates that the court

Accordingly, if Intel desires to litigate over the '371 patent in Delaware, Intel's proper course of action is to file a motion to transfer in the Eastern District of Texas, the court that first obtained jurisdiction over the dispute concerning the '371 patent.

Intel may argue that it is appropriate for this Court to resolve the forum dispute because the issues in the Delaware '292 Action (which was filed before all of the other actions) substantially overlap the issues in the Texas '371 action. Intel, however, can make no such showing. The Delaware '292 Action and the Texas '371 Action involve different patents, claiming different inventions, from different patent families. They have different specifications, different filing dates, different sets of inventors, and different prosecution histories. Most importantly, they have entirely different claims. Accordingly, Intel cannot come close to demonstrating a substantial overlap in the analysis of infringement, validity, or claim construction issues in the '292 and '371 patents.

For example, because the '292 patent and the '371 patent solve different problems and have different claim elements, AmberWave must establish different facts to prove infringement of each patent. The '292 patent requires analysis of the presence of impurities in the semiconductor material used in transistors, and the processing temperatures used on the material. (Ex. G at 11:18-22; 11:49-52.) In contrast, the '371 patent calls for analysis of whether Intel uses a process that avoids undesirable "facets" in certain regions of its semiconductor devices, and the pressure in the chamber used in fabricating those devices. (Ex. H at 11:50-57.) Intel does not and cannot contend that a showing of infringement of any claim of the '292 patent will determine infringement of any claim of the '371 patent.[4]

---

in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies.").

[4] *See SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2000 WL 15074, at *3 (E.D. Pa. Jan. 4, 2000) ("Most significantly, although both this action and the Illinois action involve [the same accused products], the two actions involve separate

The same analysis holds true for any challenge to the validity of the '292 patent and the '371 patent. Written description and enablement questions require comparison of a patent's specification to its claims in light of the state of the art at the time of filing. *See, e.g., Union Oil Co. of Cal. v. Atlantic Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999). Novelty and obviousness likewise implicate the scope of a patent's claims and the state of the art at the time of the invention. 35 U.S.C. §§ 102, 103. Because the '292 and '371 patents have different specifications and different claims, an independent analysis must be performed on each patent.

Nor is there any meaningful overlap in the prior art cited during prosecution of the two patents. The '292 patent cites 53 prior art references. The '371 patent cites 196 prior art references. From among these 249 prior art references, there are only 2 references common to both patents. Intel makes no effort to argue that either of these 2 references creates any common issues of validity with respect to the two patents.

Nor will claim construction in the Delaware '292 Action overlap in any meaningful way with claim construction in the Texas '371 Action. When construing claim terms, a court looks primarily to the intrinsic evidence: the claims, specification, and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005). All three of these differ for the '292 and '371 patents. Thus, the intrinsic evidence that each court must consult to interpret the claim terms will be entirely different.

---

and distinct patents. Consequently, the maintenance of this action in this forum would not present the risk of inconsistent judgments."); *Sofamor Danek Holdings, Inc. v. U.S. Surgical Corp.*, No. 98-2369 GA, 1998 U.S. Dist. LEXIS 21746, at *9 (W.D. Tenn. Nov. 16, 1998) (denying transfer where two cases involved the same accused products and parties, but different patents, because the patents cover "two separate and distinct inventions," for which validity and infringement must be independently assessed).

Finally, the damages analysis for the '292 and '371 patents will not overlap because they cover different technologies and implicate different features in Intel's microprocessors. A standard measure of damages in a patent infringement case is a reasonable royalty. To establish a reasonable royalty, the trier of fact assesses the value a licensee would place on the patented technology in a hypothetical negotiation. *Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Thus, the trier of fact must independently assess the value that the patented technology adds to the final product and whether there are non-infringing alternative technologies. *Id.* at 1312. Because the '292 and '371 patents cover different technologies and implicate different aspects of Intel's fabrications process, the trier of fact will need to consider the separate and distinct contributions of the infringing features to the overall product when determining the reasonable royalty that a licensee would pay for each patent.[5]

Intel makes only a superficial comparison of the '292 and '371 patents, arguing that both patents relate to "methods for fabricating semiconductor structures." (D.I. 31 at 7.) Instead of looking at the substance of the patents, Intel relies on the irrelevant fact

---

[5] In light of these substantial differences, Intel cannot rely upon cases such as *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971), to argue that there is a substantial overlap in the issues to be decided in the Delaware '292 Action and the Texas '371 Action. In *Mann*, Goodrich filed a suit in New York seeking a declaration that its Fabrilock product did not infringe the Mann '405 patent. *Id.* at 405. Mann later sued Goodrich on the '821 patent in Texas, accusing the Fabrilock product. *Id.* at 406. Unlike the patents at issue in the AmberWave cases, the '405 and '821 patents "derived from the same application." *Id.* The court acknowledged that "the usual issues of validity and infringement involving a matching of prior art disclosures and accused practices with the elements of the differing claims of each patent," would be distinct for the patents. *Id.* at 407. The court concluded, however, that the two suits were substantially overlapping because the shared specification in the patents led to common questions "such as the insufficiency of the identical disclosures to meet statutory requirements, the alleged lack of inventorship of Conklin, the alleged deception of the Patent Office by Mann, and the alleged wrongful appropriation of the process" claimed in both patents. *Id.* In contrast, the '292 and '371 patents have different claims, and thus the validity and infringement analyses will be separate and distinct. In addition, because the two patents lack a common specification and prosecution history, the suits lack the overlapping issues of written description, enablement, inventorship, and ownership present in *Mann*.

that they were both mentioned in AmberWave's letter requesting that Intel either take a license or stop using AmberWave's technology. As discussed above, however, the questions of infringement, validity, and construction of the '292 and '371 patents have nothing to do with AmberWave's letter. They are based on each patent's unique specification, claims, and prosecution history.

Although Intel argues at length that its motion to supplement should be granted because AmberWave's claims relating to the '292 and '371 patents involve "the same parties, the same accused products, and the same underlying technology" (D.I. 31 at 3), these arguments should be directed to the Texas court in support of a transfer motion. Indeed, that is exactly what Intel did when AmberWave filed its action in Texas accusing Intel of infringing the '632 patent. Instead of engaging in the procedural gamesmanship of filing a mirror-image declaratory relief action in this Court, or moving to supplement the Delaware '292 Action with a declaratory relief claim over the '632 patent, Intel filed a motion to transfer the Texas '632 Action to Delaware. The parties have completed briefing on that motion and are awaiting a decision. If Intel desires to change the venue of the Texas '371 Action, it should follow this same procedure.

It makes no difference that the Texas '371 Action was filed only one hour and forty minutes before the Delaware '371 Action. The Federal Circuit has relied on time periods as short as four hours, *Laboratory Corp. of America Holdings, v. Chiron Corp.*, 384 F.3d 1326, 1332 (Fed. Cir. 2004), or a single day, *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), in determining that one action was filed before another. The simple truth is that AmberWave, anticipating that Intel would try to file a preemptive declaratory relief action, acted diligently and filed first. It is thus the responsibility of the Texas court to decide which forum should handle the '371 patent litigation. Any ruling on the pending motion should be deferred until after the Texas court has made this determination.

**B.**     **Intel Has No Basis to Request That Its Supplemental Claim Relates Back to the Filing of the Delaware '292 Action**

One might wonder why Intel has brought a motion to supplement the Delaware '292 Action with a declaratory relief claim over the '371 patent, given that Intel has already filed a separate action in this district asserting that very claim. Instead of moving to the supplement the Delaware '292 Action with a claim it has already asserted, Intel could have moved to consolidate that action with its Delaware '371 Action under Federal Rule of Civil Procedure 42(a), the procedure that litigants ordinarily follow when seeking to coordinate proceedings in two or more cases.

So why has Intel requested supplementation under Rule 15 instead of consolidation under Rule 42(a)? There is only one reason: Intel desires a ruling under Rule 15(c) that the proposed supplemental declaratory relief claim over the '371 patent "relates back" to the initial filing date of the Delaware '292 Action. Intel desires this ruling so that it can argue that the Delaware '292 Action first acquired jurisdiction over the dispute concerning the '371 patent—even though Intel filed its declaratory relief action on the '371 patent *after* AmberWave filed its infringement action.

Intel's requested ruling directly conflicts with controlling Federal Circuit precedent that Intel entirely ignores in its moving papers. In *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479 (Fed. Cir. 1996), the Federal Circuit squarely held that no case or controversy sufficient to support a declaratory relief claim can exist with respect to a pending patent application, even if the Patent and Trademark Office has decided to allow the claims in that pending application. A case or controversy can only exist "*with respect to a patent that has issued before a complaint is filed.*" *Id.* at 482 (emphasis added). Accordingly, because the '371 patent had not issued before the Delaware '292 Action was filed, Intel cannot rely upon Rule 15 to argue that its declaratory relief claim over the '371 patent relates back to the filing date of that action.

No justiciable case or controversy could have existed in relation to the '371 patent until it issued on September 20, 2005.

In *GAF Building*, GAF received a cease-and-desist letter from Elk based upon a patent application which had been allowed, but which had not yet issued as a patent.  *Id.* at 480.  GAF filed an action in New Jersey seeking a declaration of non-infringement and invalidity of the patent that was "about to issue."  *Id.*  Less than one month later, on the day that the patent issued, Elk filed suit against GAF in the Northern District of Texas for infringement of the patent.  *Id.*  Later that same day, GAF amended its complaint in New Jersey to allege that the patent had issued.  *Id.*  The New Jersey court transferred the declaratory judgment action to the Northern District of Texas, which dismissed that action after finding that no case or controversy existed at the time it was filed.  *Id.* at 481.

On appeal, the Federal Circuit affirmed the dismissal, observing that the existence of an actual controversy is "an absolute predicate for declaratory judgment jurisdiction." *Id.*  Emphasizing that a case or controversy must exist "in the **constitutional** sense," the Federal Circuit found it "clear" that the complaint failed to present "a justiciable case or controversy under Article III and Section 2201 [of the Declaratory Judgment Act] when it was filed."  *Id.* at 481-82 (emphasis in original).  The Federal Circuit further explained that because patent rights "are created only upon the formal issuance of the patent," the dispute raised in the declaratory relief action was "purely hypothetical" and called for "an impermissible advisory opinion."  *Id.* at 482-83.  Even though the claims had been allowed, "[t]he district court did not know with certainty whether a patent would issue or, if so, what legal rights it would confer upon Elk."  *Id.* at 482.  For example, "[e]ven after paying the issue fee … Elk might have attempted to amend its patent application by submitting an amendment together with 'a petition including the fee set forth in § 1.17(i)(1) and a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented.'"  *Id.* at 482 n.4.  Thus, it was of "no moment" that the patent was allowed and "about to issue" because "justiciability must be judged as

of the time of filing." *Id*. at 482.  The court concluded with a bright line rule:  "We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed." *Id*.

Under *GAF Building*, Intel has no basis to request that its declaratory relief claim regarding the '371 patent relates back to May 17, 2005, the filing date of the Delaware '292 Action.  The filing date of the Delaware '292 Action is four months before the issuance of the '371 patent on September 20, 2005.  There can be no justiciable controversy over a patent four months before it issued.  It makes no difference that the complaint in the Delaware '292 Action references the application that later matured into the '371 patent and purports to reserve Intel's right to supplement the complaint to add claims regarding the '371 patent.  Those allegations are a legal nullity—just as were the declaratory relief allegations regarding the patent application in *GAF Building*.  They do not entitle Intel to claim that its declaratory relief action on the '371 patent should be treated as if it were filed before the issuance of that patent.  *See also Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 635 (Fed. Cir. 1991) ("We agree wholeheartedly that in personam and subject matter jurisdictional facts must be pleaded, and proved when challenged, and that later events may not create jurisdiction where none existed at the time of filing.")

Intel's motion is entirely silent as to these controlling principles.  Indeed, with one exception, all of the cases on which Intel relies to support its relation-back argument were decided before *GAF Building*.  *See Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.*, 432 F. Supp. 956 (D. Del. 1977); *Telephonics Corp. v. Lindly & Co., Inc.*, 192 F. Supp 407 (E.D.N.Y. 1961).  The one exception makes no reference to *GAF Building* or the jurisdictional principles discussed in that case.  *See Ramsey Group, Inc. v. EGS Int'l, Inc.*, 208 F.R.D. 559 (W.D.N.C. 2002).  It therefore has no persuasive effect.

## V.    CONCLUSION

Intel's motion is both premature and meritless.  It is premature because it should not be considered before the Texas court determines whether the '371 patent litigation should proceed in Texas or Delaware.  It is meritless because its sole purpose is to obtain a determination that the proposed supplemental declaratory relief claim on the '371 patent relates back to a point in time when the '371 patent did not exist—a jurisdictional impossibility.  The motion should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Jack B. Blumenfeld (#1014)
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
Attorneys for Defendant and Counterclaimant
AmberWave Systems Corporation

OF COUNSEL:

Morgan Chu
David I. Gindler
Christopher A. Vanderlaan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

October 11, 2005

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld (#1014), hereby certify that on October 11, 2005 I electronically filed AmberWave's Answering Brief in Opposition to Intel Corporation's Motion for Leave to Supplement Complaint with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll (#1088)
> Young, Conaway, Stargatt & Taylor, LLP

I also certify that copies were caused to be served on October 11, 2005 upon the following manner indicated:

### BY HAND

> Josy W. Ingersoll
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE  19899

### BY FEDERAL EXPRESS

> George M. Newcombe
> Simpson Thacher & Bartlett LLP
> 300 Hillview Avenue
> Palo Alto, CA  94304

> /s/  Jack B. Blumenfeld (#1014)
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jblumenfeld@mnat.com

487267