# EXHIBIT I

RECEIVED-CLERK
U.S. DISTRICT COURT

2005 SEP 20  AM 5: 50

TX EASTERN-MARSHALL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP 20 2005

DAVID J. MALAND, CLERK
BY
DEPUTY_____

| | |
|---|---|
| AMBERWAVE SYSTEMS CORPORATION, | § § § § |
| Plaintiff, | § § Civil Action No. **2-05CV-449** |
| vs. | § § JURY |
| INTEL CORPORATION | § § § |
| Defendant. | § § |

## AMBERWAVE'S COMPLAINT FOR PATENT INFRINGEMENT

## AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff AmberWave Systems Corporation ("AmberWave"), for its complaint against Defendant Intel Corporation ("Intel"), alleges as follows:

### INTRODUCTION

1.     AmberWave is a small technology and engineering firm founded by a university professor and his former students.    AmberWave develops innovative technology for the production of microprocessors and other semiconductor devices.    For years, Intel has been improving the performance of its microprocessors by shrinking the size of their fundamental components.    Intel now finds itself unable to continue its historical pace of performance enhancement using its own technological developments.    In order to defend its market position against inroads by competitors, Intel is using AmberWave's patented inventions to enable the production of faster and more efficient microprocessors—without obtaining a license from AmberWave.    This action seeks redress for Intel's infringing activities.

1355864.

## THE PATENT IN SUIT

2.    United States Patent No. 6,946,371 (the "'371 patent"), entitled "Method of fabricating semiconductor structures having epitaxially grown source and drain elements," was duly and legally issued on September 20, 2005.  AmberWave is the owner by assignment of all right, title and interest in and to the '371 patent.

## PARTIES AND JURISDICTION

3.    This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. § 101 *et seq.*  This is also an action for declaratory judgment of patent infringement under the United States Patent Act, 35 U.S.C. § 101 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.    AmberWave is a Delaware corporation with its principal place of business in Salem, New Hampshire.

5.    AmberWave is informed and believes, and thereon alleges, that Intel is a Delaware corporation with business locations throughout the United States.

6.    AmberWave is informed and believes, and thereon alleges, that Intel has done and continues to do business in this District.  AmberWave is informed and believes, and thereon alleges, that Intel has harmed and continues to harm AmberWave in this District.  AmberWave is informed and believes, and thereon alleges, that Intel products have been sold in this District. AmberWave is informed and believes, and thereon alleges, that these products include 90nm Pentium processors.  AmberWave is informed and believes, and thereon alleges, that Intel maintains a website accessible to the residents of this District.  AmberWave is informed and believes, and thereon alleges, that Intel's website allows users in this District to submit information to Intel, and to download information from the website.  AmberWave is informed and believes, and thereon alleges, that Intel's website allows users in this District to locate companies who will sell Intel products to users in this District, including 90 nm Pentium processors.  AmberWave is informed and believes, and thereon alleges, that Intel has at least two authorized distributors with facilities located in the Eastern District of Texas.  AmberWave is

1355864.

- 2 -

informed and believes, and thereon alleges, that these distributors sell Intel products, including 90 nm microprocessors.

7.    AmberWave is informed and believes, and thereon alleges, that Intel has voluntarily availed itself of the courts in this District. AmberWave is informed and believes, and thereon alleges, that Intel has filed complaints in this District as both a plaintiff and as an intervenor. AmberWave is informed and believes, and thereon alleges, that Intel has appeared as a defendant and a counterclaim plaintiff in this District, without contesting that venue is proper in the District.

8.    AmberWave is informed and believes, and thereon alleges, that Intel has sought and received authorization to do business in the State of Texas. AmberWave is informed and believes, and thereon alleges, that Intel has a registered agent in the State of Texas. AmberWave is informed and believes, and thereon alleges, that Intel maintains multiple business offices in State of Texas. AmberWave is informed and believes, and thereon alleges, that Intel has at least approximately 600 employees in the State of Texas.

9.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b).

## CLAIMS FOR RELIEF

### COUNT I

### (Patent Infringement by Intel)

10.    AmberWave incorporates by reference paragraphs 1 through 9 as if set forth here in full.

11.    AmberWave is informed and believes, and thereon alleges, that in violation of 35 U.S.C. § 271, Intel has and is currently directly infringing, contributorily infringing, and/or inducing infringement of the '371 patent by, among other things, making, using, offering to sell, selling and/or importing, without authority or license from AmberWave, certain computer processor products, including 90 nm Pentium processors.

1355864.

- 3 -

12.     AmberWave is informed and believes, and thereon alleges, that Intel's infringement of the '371 patent has been and continues to be willful.

13.     Unless enjoined, Intel will continue to infringe the '371 patent, and AmberWave will suffer irreparable injury as a direct and proximate result of Intel's conduct.

14.     AmberWave has been damaged by Intel's conduct, and until an injunction issues will continue to be damaged in an amount yet to be determined.

**COUNT II**

**(Declaratory Judgment of Patent Infringement by Intel)**

15.     AmberWave incorporates by reference paragraphs 1 through 14 as if set forth here in full.

16.     AmberWave is informed and believes, and thereon alleges, that to the extent Intel has not already infringed the '371 patent, it is engaged in activity directed toward the imminent infringement of the '371 patent by, among other things, preparing to make, use, offer to sell, sell and/or import certain computer processor products, including 90 nm Pentium processors.

17.     The '371 patent issued from United States Application No. 10/458,544 (the "'544 application"). Prior to the issuance of the '371 patent, AmberWave gave written notice to Intel of the '544 application and informed Intel that it would be infringing allowed claims in the '544 application once they issued. Those allowed claims have now issued in the '371 patent.

18.     AmberWave is informed and believes, and thereon alleges that, to the extent actual infringement of the '371 patent has not already occurred, Intel has refused to take any steps to avoid infringement of claims in the '371 patent.

19.     In light of the foregoing, Intel has a reasonable apprehension of suit for infringement by AmberWave on the '371 patent.

20.     An actual and justiciable controversy exists between AmberWave and Intel regarding whether Intel's imminent conduct will directly infringe, contributorily infringe, and/or induce infringement of, the '371 patent by, among other things, making, using, offering to sell,

**B  074**

selling and/or importing, without authority or license from AmberWave, certain computer processor products, including 90 nm Pentium processors.

21.    AmberWave is informed and believes, and thereon alleges, that Intel's infringement will be willful.

22.    Unless enjoined, Intel will infringe the '371 patent, and AmberWave will suffer irreparable injury as a direct and proximate result of Intel's conduct.

23.    AmberWave will be damaged by Intel's conduct and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

### PRAYER FOR RELIEF

WHEREFORE, AmberWave prays for relief as follows:

A.    For a determination that the '371 patent is valid and enforceable;

B.    For a determination that Intel infringes the '371 patent, and that Intel's infringement is willful;

C.    For a declaratory judgment that the '371 patent is valid and enforceable;

D.    For a declaratory judgment that Intel will infringe the '371 patent, and that Intel's infringement of the '371 patent will be willful;

E.    For an order preliminarily and permanently enjoining Intel, and its directors, officers, employees, attorneys, agents and all persons in active concert or participation with any of the foregoing from acts of infringement of the '371 patent;

F.    For damages resulting from infringement of the '371 patent in an amount to be determined at trial, and the trebling of such damages due to the willful nature of their infringement;

G.    For an award of interest on damages;

H.    For a declaration that this case is exceptional pursuant to 35 U.S.C. § 285 and an award of attorneys' fees and costs; and

I.      For an award of such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

AmberWave hereby demands a trial by jury on any issue triable of right by a jury.

Respectfully submitted,


Morgan Chu (CA #70446)
David I. Gindler (CA #117824)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Phone: (310) 277-1010
Facsimile: (310) 203-7199
E-mail: dgindler@irell.com


By:  _S. Calvin Capshaw (by permission EJ)_
S. Calvin Capshaw III (TX #03783900)
Attorney-in-Charge
BROWN MCCARROLL LLP
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, Texas  75601-5157
Phone: (903) 236-9800
Facsimile: (903) 236-8787
E-mail: CCapshaw@mailbmc.com


Otis W. Carroll (TX #03895700)
IRELAND, CARROLL & KELLY, PC
6101 South Broadway Avenue
Suite 500
P.O. Box 7879
Tyler, Texas  75711
Phone: (903) 561-1600
Facsimile: (903) 581-1070


Franklin Jones, Jr. (TX #00000055)
JONES & JONES, INC., PC
201 W. Houston Street
P.O. Drawer 1249
Marshall, Texas  75671-1249
Phone: (903) 938-4395
Facsimile: (903) 938-3360

Samuel F. Baxter (TX #01938000)
MCKOOL SMITH, PC
300 Crescent Court
Suite 1500
Dallas, TX 75201
Phone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF**
AmberWave Systems Corporation

1355864.

- 7 -

# EXHIBIT J

JS 44 (Rev. 3/99)

**CIVIL COVER SHEET**

`05 - 682`

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| INTEL CORPORATION | AMBERWAVE SYSTEMS CORPORATION |

| (b) County Of Residence Of First Listed Plaintiff<br>(Except in U.S. Plaintiff Cases) | County Of Residence Of First Listed Defendant<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>TRACT OF LAND INVOLVED |
|---|---|

| (c) Attorneys (Firm Name, Address, And Telephone Number)<br>Josy W. Ingersoll (#1088)<br>John W. Shaw (#3362)<br>Karen E. Keller (#4489)<br>Young Conaway Stargatt & Taylor, LLP<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>(302) 571-6672 | Attorneys (If Known) |
|---|---|

2005 SEP [illegible]

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place An X In One Box For Plaintiff And One Box For Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**V. NATURE OF SUIT** (Place An X In One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury—Med Malpractice<br>☐ 365 Personal Injury—Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates, etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Conditions | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
35 U.S.C. § 101 et seq.
Brief description of action:
Cause of action for declaratory judgment of no patent infringement.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions)   JUDGE KAJ   DOCKET NUMBER: 05-301

| DATE<br>9/20/05 | SIGNATURE OF ATTORNEY OF RECORD<br>John Shaw |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

DB01:1821400.1                           062992.1002

*ORIGINAL*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. ___05 - 6 8 2___ |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Intel Corporation ("Intel") by and through its undersigned attorneys, hereby demands a trial by jury on all issues so triable and, for its Complaint in this declaratory judgment action, alleges as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction of this action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a).

2.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), because AmberWave Systems Corporation ("Defendant") is incorporated in Delaware.

### THE PARTIES

3.      Intel is a Delaware corporation with its principal place of business in Santa Clara, California.  Intel is engaged in the business of manufacturing high performance computer microprocessors.

DB01:1822056.1

062992.1002

4.     Defendant is a Delaware corporation with its principal place of business in Salem, New Hampshire. Defendant is engaged in the business of developing strained silicon technology.

## BACKGROUND

5.     On December 14, 2004, United States Patent No. 6,831,292 entitled "Semiconductor structures employing strained material layers with defined impurity gradients and methods for fabricating same" ("the '292 Patent") was issued, naming Matthew Currie, Anthony Lochtefeld, Richard Hammond and Eugene Fitzgerald as inventors and Defendant as assignee.

6.     On September 20, 2005, United States Patent No. 6,946,371 entitled "Methods of fabricating semiconductor structures having epitaxially grown source and drain elements" ("the '371 Patent") was issued, naming Thomas A. Langdo and Anthony J. Lochtefeld as inventors and Defendant as assignee. A copy of the '371 Patent is attached as Exhibit A.

7.     On or about May 9, 2005, Steven Frank, counsel for Defendant, sent to Paul Otellini, President of Intel a letter formally notifying Intel "that its current commercial products, including, without limitation, its Prescott and Dothan processors, infringes claims" of the '292 Patent and allowed application publication nos. 2004/0161947 ("the '947 Application"), and 2004/0045499, which was thereafter issued as the '371 patent. Defendant "request[ed] that Intel take immediate steps to conclude license negotiations with AmberWave or to cease infringement of AmberWave's intellectual property." A true and correct copy of Mr. Frank's letter is attached as Exhibit B.

8.     Prior to the notice letter, the parties had been engaged in communications with respect to, among other things, the '292 Patent and the applications.

9.     On May 17, 2005, Intel filed a declaratory judgment action in the United States District Court for the District of Delaware seeking a declaration that Intel has not infringed the '292 Patent directly, by inducement, or by contribution; and for such other and further relief that may be just and appropriate.  A true and correct copy of Intel's complaint is attached as Exhibit C.

10.     By reason of Mr. Frank's allegations of infringement in his correspondence of May 10, 2005, Intel reasonably apprehends that a suit will imminently be filed against Intel under 35 U.S.C. § 271 alleging infringement of the '371 Patent by Intel's continuing to make, offer to sell, and selling its current commercial products, including, without limitation, its Prescott and Dothan processors.

11.     There is a substantial and continuing justiciable controversy between Intel and Defendant pending in the United States District Court for the District of Delaware as to Defendant's rights to threaten or maintain suit for infringement of the '371 Patent and as to whether any of Intel's current commercial products infringes any of the claims of the '371 Patent.

12.     By reason of Mr. Frank's allegations of infringement in his correspondence of May 9, 2005, Intel reasonably apprehends that a suit will imminently be filed against Intel under 35 U.S.C. § 271 if and when the '947 Application issues as a patent alleging infringement of the '947 Application by Intel's continuing to make, offer to sell, and selling its current commercial products, including, without limitation, its Prescott and Dothan processors.  If and when the '947 Application issues as a patent, Intel reserves all rights to amend this Complaint to seek a declaratory judgment of non-infringement of the patent that issues from the '947 Application.

## CLAIM FOR RELIEF

### (Declaratory Judgment of Non-infringement)

13.     Intel re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 12, inclusive, as set forth above.

14.    Intel has not manufactured, assembled, sold, offered for sale or distributed within the Unites States any devices or systems that directly infringe any of the claims of the '371 Patent.

15.    Intel has not manufactured, assembled, sold, offered for sale or distributed within the United States any devices or systems that fall within the range of equivalents of any of the claims of the '371 Patent.

16.    Intel has not induced, and is not now inducing, infringement of the '371 Patent in any manner whatsoever.

17.    Intel has not, and is not now, contributing to the infringement of the '371 Patent in any manner whatsoever.

## PRAYER FOR RELIEF

WHEREFORE, Intel respectfully prays for relief and judgment against Defendant as follows:

(a) a declaration that Intel has not infringed the '371 Patent directly, by inducement, or by contribution; and

(b) for such other and further relief that may be just and appropriate.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No 3362)
Karen E. Keller (No. 4489)
YOUNG CONWAY STARGATT &
TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

Attorneys for Plaintiff
Intel Corporation

OF COUNSEL:

George M. Newcombe (CA Bar No. 202898)
SIMPSON THACHER & BARTLETT
3330 Hillview Avenue
Palo Alto, California 94303
(650) 251-5000

Dated: September 20, 2005

# EXHIBIT K



Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 22383369 (S.D.N.Y.), 2003 Copr.L.Dec. P 28,702
**(Cite as: 2003 WL 22383369 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
PEM AMERICA, INC., Plaintiff,
v.
Nancy LAMBERT, Defendant.
**No. 03 Civ. 3706(JFK).**

Oct. 17, 2003.

Kaplan & Levenson LLP, New York, New York,
<u>Paul R. Levenson</u>, <u>Wendy M. Cortes</u>, <u>Ashima
Aggarwal</u>, for Plaintiff, of counsel.

Sexter & Warmflash, P.C., New York, New York,
<u>Edward R. Finkelstein</u>, for Defendant, of counsel.

*Opinion & Order*

<u>KEENAN</u>, J.

**\*1** Presently before the Court are a motion by
Defendant Nancy Lambert ("Lambert") to stay or
dismiss this action and a cross-motion by Plaintiff
Pem America, Inc. ("Pem America") to enjoin
Lambert from prosecuting a parallel action filed by
her in the United States District Court for the
Northern District of Illinois. For the reasons set forth
herein, defendant's motion for a stay is granted and
plaintiff's motion to enjoin is denied.

*Background*

Pem America is a New York corporation in the
business of designing and importing home textiles,
including quilts and related products, for distribution
and sale in the United States. From October 1999
until February 15, 2003, Lambert designed
merchandise sold by Pem America. The exact nature
of Lambert and Pem America's business relationship
is a critical issue in dispute in the underlying action.
Pem America claims that Lambert was an employee
and Vice President of the company, whereas Lambert
contends she was an independent contractor. The
exact nature of Lambert's relationship with Pem
America is important because both she and Pem
America seek a declaratory judgment awarding her or
it, respectively, copyright ownership of the
merchandise designs.

On May 19, 2003, Lambert filed an action in the
United States District Court for the Northern District
of Illinois entitled *Lambert v. PEM-America, Inc.,* 03
C. 3330(DHC) (the "Illinois Action"). In that action,
Lambert seeks a declaratory judgment that she owns
the copyrights to each of the designs she created
while engaged by Pem America. Lambert also asks
the court to issue an injunction preventing Pem
America from infringing on her copyrights by
continuing to sell merchandise bearing her designs. A
copy of the complaint in the Illinois Action was sent
by facsimile to Pem America's lawyers on May 21,
2003.

On May 22, 2003, one day after receiving notice that
the Illinois Action had been filed, Pem America
instituted its own action here in the United States
District Court for the Southern District of New York.
Pem America's complaint, entitled *Pem America, Inc.
v. Nancy Lambert,* 03 Civ. 3706(JFK) (the "New
York Action"), seeks a declaratory judgment that
Pem America, not Lambert, is the owner of the
copyrights to the designs created by Lambert during
the course of their business relationship. In addition,
Pem America requests compensatory and punitive
damages for what it alleges is the conversion of
computers, furniture and property the company
purchased for Lambert's use during her relationship
with the company.

Having filed similar and competing actions in two
separate venues, each party has since moved to stay
or dismiss the action in which it is a defendant and
enjoin its opponent from prosecuting its own action.
In essence, each court has been asked to dismiss the
case pending before it and transfer the action to the
other court. Logically, one of the actions should be
dismissed so as to avoid conflicting decisions and
conserve judicial resources, not to mention the
parties' resources. The immediate question facing
each court, is which court should decide which action
should proceed.

*Discussion*

**\*2** It is well-settled law in this Circuit that when two
lawsuits involving the same parties and issues are
filed in separate federal districts, the first suit filed
has priority absent a showing that special
circumstances exist or that a balance of conveniences
favors the second suit. See <u>*First City Nat'l Bank &*</u>

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 2
Not Reported in F.Supp.2d, 2003 WL 22383369 (S.D.N.Y.), 2003 Copr.L.Dec. P 28,702
**(Cite as: 2003 WL 22383369 (S.D.N.Y.))**

*Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989); *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir.1986); *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir.1986); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 (2d Cir.1970). The "first filed" rule is considered wise judicial administration because it conserves judicial resources, avoids duplicative or conflicting results and fosters a comprehensive disposition. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952); *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978).

Pem America concedes that its New York Action was filed after Lambert's action was filed in Illinois. Pem America insists, however, that a special circumstance sufficient to create an exception to the first filed rule exists. The special circumstance, according to Pem America, is that the Illinois Action represents an "anticipatory filing" made under the direct threat of imminent litigation and motivated solely by an interest in forum shopping. Courts in this Circuit have deemed anticipatory filings of the nature suggested by Pem America to be special circumstances warranting an exception to the rule. *See City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.1991); *Toy Biz, Inc. v.. Centuri Corp.*, 990 F.Supp. 328, 332 (S.D.N.Y.1998); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1150 (S.D.N.Y.1995). Pem America also contends that a balance of the conveniences dictates dismissing the Illinois Action in favor of the New York Action.

The first filed rule and Pem America's argument that an exception to the rule exists relate to the question of which action, the Illinois Action or the New York Action, should proceed. Although that question must ultimately be resolved, it is not the question before this Court at this time. Rather a much more fundamental and procedural question must first be addressed: which court, the Southern District of New York or the Northern District of Illinois, should consider the applicability of the first filed rule and whether an exception to the rule exists.

Considering that motions to stay the other action have been filed in both the Illinois and New York Actions, it is not beyond the realm of possibility that each court could issue simultaneous rulings that would conflict with one another. For example, the Northern District of Illinois might rule that no exception exists and stay the New York Action. Simultaneously, this Court might be persuaded that

an exception does exist and stay the Illinois Action. Such a scenario would result in tremendous confusion. In order to avoid conflict and confusion, the courts of this district, guided by Second Circuit case law, have adopted the bright-line rule that the court in which the first action was filed has the right and responsibility to decide whether the first filed rule or an exception thereto applies. *See MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F.Supp.2d 266, 267 (S.D.N.Y.2002); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 n. 2 (S.D.N.Y.2001); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d 433, 440 (S.D.N.Y.2000); *Citigroup Inc. v. City Holdings Co.*, 97 F.Supp.2d 549, 557 n. 4 (S.D.N.Y.2000); *Ontel Prods.*, 899 F.Supp.2d at 1150 n. 9. Although this bright-line rule is largely identical to and rooted in the first filed rule, it does not provide for any special exceptions. It is a straight-forward rule to be applied in a rote manner.

**\*3** In light of this bright-line rule, this Court must defer to the Northern District of Illinois to make the determination as to whether the Illinois Action or the New York Action should proceed. As such, Lambert's motion for a stay of this action is granted and Pem America's cross-motion requesting the Court enjoin Lambert from prosecuting the Illinois Action is denied. The clerk of the court is hereby ordered to transfer this action to the suspense docket pending a determination by the Northern District of Illinois as to whether the case should proceed. Accordingly, the November 3, 2003 status conference is hereby adjourned.

SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 22383369 (S.D.N.Y.), 2003 Copr.L.Dec. P 28,702

**Motions, Pleadings and Filings (Back to top)**

• 2:03cv03706_____(Docket) (May. 22, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT L

LEXSEE 2002 U.S. DIST. LEXIS 24915

**UNIVERSAL PREMIUM ACCEPTANCE CORPORATION, Plaintiff, v. OXFORD BANK & TRUST, An Illinois Banking Corporation, Defendant.**

**CIVIL ACTION No. 02-2448-KHV**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*2002 U.S. Dist. LEXIS 24915*

**December 10, 2002, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Claim dismissed by *Universal Premium Acceptance Corp. v. Oxford Bank & Trust, 2003 U.S. Dist. LEXIS 14332* (D. Kan., Aug. 18, 2003)

**DISPOSITION:** [*1] Defendant's motion to stay proceedings overruled without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation filed an action against defendant bank and alleged misrepresentation and breach of warranty. The bank filed a motion to stay the proceedings pending the outcome of a similar action between the parties in another district court.

**OVERVIEW:** The dispute involved a stock purchase agreement in which the bank agreed to indemnify claims in writing within one year of the closing of the transaction. The company later notified the bank of an indemnity claim and the parties attempted to negotiate the claim for several years, but failed to reach a settlement. The bank filed suit in state court, and the company filed suit the next day in another state in the United States District Court for the District of Kansas. The company later removed the state court action to the United States District Court for the Northern District of Illinois. The company claimed that the bank's first-filed suit in Illinois was an anticipatory filing that justified a departure from the first-filed rule. The bank responded that it threatened the company with legal action for several years. The court found that the bank's declaratory judgment action indicated a preemptive strike rather than a suit for damages or equitable relief. The court framed the issue as to what court should decide whether the first-filed rule should apply, which the court believed was the United States District Court for the Northern District of Illinois.

**OUTCOME:** The court overruled without prejudice the bank's motion.

**LexisNexis(R) Headnotes**

*Governments > Courts > Authority to Adjudicate*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN1] As part of the inherent power to control its docket, a district court has discretion to stay proceedings pending before it. It may exercise the power to stay to provide economy of time and effort for itself and for counsel and litigants appearing before the court.

*Civil Procedure > Venue > General Venue*
*Civil Procedure > Pleading & Practice > Filing of Complaint*
*Civil Procedure > Jurisdiction > Jurisdictional Sources*
[HN2] In the context of litigation, the "first-to-file" rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same party has previously been filed in another federal district court. The first-to-file rule provides that the court where jurisdiction first attaches determines the appropriate venue to decide the case, and the second court will decline to act until proceedings in the first court terminate. The first-to-file rule is based on the principle that federal district courts should not interfere with each other's affairs. The policy avoids the waste of duplication, rulings which may intrude on the authority of sister courts and piecemeal resolution of issues that call for a uniform result. The rule, however, yields to the interests of justice if "compelling circumstances" support its abrogation. Courts have carved out an exception where the first-filed suit constitutes an improper anticipatory filing, or one made under threat of a presumed adversary filing the mirror image of that suit in a different district.

*Civil Procedure > Venue > General Venue*

*Civil Procedure > Pleading & Practice > Filing of Complaint*
*Civil Procedure > Jurisdiction > Jurisdictional Sources*
[HN3] In the context of litigation, when competing actions are filed within a short time of each other, district courts may disregard the first-filed rule.

*Governments > Courts > Authority to Adjudicate*
*Governments > Courts > Judicial Precedents*
*Civil Procedure > Venue > General Venue*
[HN4] Case law indicates that a district court in which a first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies.

**COUNSEL:** For Universal Premium Acceptance Corporation, PLAINTIFF: Dennis M Clyde, Clyde & Wood, LLC, Overland Park, KS USA.

For Oxford Bank & Trust, DEFENDANT: John W Cowden, Baker, Sterchi, Cowden & Rice, LLC, Kansas City, MO USA.

**JUDGES:** Kathryn H. Vratil, United States District Judge.

**OPINIONBY:** Kathryn H. Vratil

**OPINION:**

### MEMORANDUM AND ORDER

Universal Premium Acceptance Corporation filed suit against Oxford Bank & Trust, alleging misrepresentation and breach of warranty. This matter comes before the Court on Defendant's Motion To Stay Proceedings (Doc. # 3) filed October 9, 2002. For reasons set forth below, defendant's motion is overruled without prejudice.

#### Procedural History

Universal Premium Acceptance Corporation ("Universal") is a Missouri corporation with its principal place of business in Lenexa, Kansas. In May of 1998, it entered a stock purchase agreement with Oxford Bank ("Oxford"), an Illinois banking corporation. In that agreement, Oxford agreed to indemnify Universal from losses due to any inaccurate representations of loan losses. The agreement [*2] required that Universal notify Oxford of indemnity claims in writing within one year of the closing. On May 27, 1999, Universal notified Oxford of an indemnity claim. n1 For more than two years, Oxford and Universal discussed that claim, and even exchanged offers but never settled the matter.

n1 The parties dispute whether the notice was proper under the agreement.

On August 20, 2002, Universal sent Oxford an indemnity demand letter for loan losses of $ 485,394.77 plus interest and attorneys fees. The letter threatened immediate suit if Oxford did not meet Universal's demand within 10 business days, by September 4, 2002. Universal asserts that it later agreed to additional time, so that new counsel for Oxford could review documents and call back to discuss a possible resolution. Counsel for each side apparently traded phone messages for more than two weeks. On September 18, 2002, Universal sent Oxford a message that it would file suit unless Oxford responded that day. Later that day Oxford responded that [*3] it had already sued Universal in the state court in DuPage County, Illinois. Oxford had indeed filed a declaratory judgment action in Illinois state court on September 17, 2002. The following day, September 18, 2002, Universal filed this lawsuit for misrepresentation and breach of warranty. Each suit involves the same issues and the same parties.

On October 8, 2002, Universal removed the Illinois action to the United States District Court for the Northern District of Illinois. The next day, October 9, 2002, Oxford filed a motion to stay this lawsuit pending the outcome of the Illinois lawsuit. Oxford's proposed order, however, would set the matter for a status conference in 120 days.

#### Analysis

[HN1] As part of the inherent power to control its docket, a district court has discretion to stay proceedings pending before it. *Pet Milk Co. v. Ritter, 323 F.2d 586, 588 (10th Cir. 1963).* It may exercise the power to stay to provide economy of time and effort for itself and for counsel and litigants appearing before the court. *Landis v. N. Am. Co., 299 U.S. 248, 255, 81 L. Ed. 153, 57 S. Ct. 163 (1936).*

[HN2] The "first-to-file" rule permits a [*4] district court to decline jurisdiction where a complaint raising the same issues against the same party has previously been filed in another federal district court. *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. Sys. of Ga., 189 F.3d 477, 1999 WL 682883, at *2 (10th Cir. 1999).* The first-to-file rule provides that the court where jurisdiction first attaches determines the appropriate venue to decide the case, and the second court will decline to act until proceedings in the first court terminate. *Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965); see*

*Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164 (10th Cir. 1982); Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc., 83 F. Supp.2d 1197, 1198 (D. Kan. 1999).* The first-to-file rule is based on the principle that federal district courts should not interfere with each other's affairs. The policy avoids the waste of duplication, rulings which may intrude on the authority of sister courts and piecemeal resolution of issues that call for a uniform result. *Sutter Corp. v. P & P Indus., 125 F.3d 914, 917 (5th Cir. 1997).* The [*5] rule, however, yields to the interests of justice if "compelling circumstances" support its abrogation. *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488-89 (8th Cir. 1990).*

Courts have carved out an exception where the first-filed suit constitutes an improper anticipatory filing, or one made under threat of a presumed adversary filing the mirror image of that suit in a different district. See *Boatmen's First Nat'l Bank of Kansas City v. KPERS, 57 F.3d 638, 641 (8th Cir. 1995)* ("red flags" that suggest compelling circumstances to disregard first-filed rule include notice that other side was considering filing lawsuit, and fact that first-filed suit was declaratory judgment action).

Universal argues that Oxford's first-filed suit in Illinois is an anticipatory filing that justifies departure from the first-filed rule. Universal points out that Oxford filed the Illinois suit within a few weeks of receiving its demand letter threatening a suit. Oxford counters that Universal had threatened legal action for years, and that it filed the Illinois lawsuit only to stop Universal's harassment. The arguments of both parties [*6] suggest that until August of 2002, Universal had not sent a formal demand letter. Indeed, until that month, the parties had been discussing a settlement. Further, Oxford's declaratory judgment action is more indicative of a preemptive strike than a suit for damages or equitable relief. See *Goodyear, 920 F.2d at 489* (noting that where second-filed action sought damages, defendant in first-filed declaratory judgment action could be considered "true" plaintiff). Finally, [HN3] when competing actions are filed within a short time of each other, courts may disregard the first-filed rule. See, e.g., *Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp 1144, 1153 (S.D.N.Y. 1995)* (declining to apply first-filed rule where competing suits filed on same day); *Affinity Memory & Micro v. K & Q Enter., 20 F. Supp. 2d 948, 954-955 (E.D. Va. 1998)* (transfer to

second court when second action filed only two weeks after first action).

Universal's argument - that the first-filed rule should not apply - has some appeal. Before reaching that argument, however, the Court addresses the more fundamental question: who should decide whether to apply the [*7] first-filed rule. [HN4] "Case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies." *Ontel, 899 F. Supp. at 1150 n.9; see Hospah Coal Co., 673 F.2d at 1163* (first court in which jurisdiction attaches should decide venue and jurisdiction); *Cessna, 348 F.2d at 692* (first federal district court which obtains jurisdiction of parties and issues should have priority and second court should decline consideration of action until proceedings before first court are terminated); *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County, 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982)* (to avoid inconsistent rulings on discretionary matters as well as duplication of judicial effort, court in which first-filed case was brought should decide whether first-filed rule applies).

The United States District Court for the Northern District of Illinois should decide in the first instance whether to apply the first-filed rule. From this vantage, it is not clear whether that issue has been raised through a motion [*8] to transfer the Illinois case to this Court, a motion to stay the Illinois case pending the outcome of this case, or otherwise. n2

> n2 If the issue has not yet been presented, counsel should consider further proceedings which are non inconsistent with this order.

**IT IS THEREFORE ORDERED** that defendant's Motion To Stay Proceedings (Doc. # 3) filed October 9, 2002 be and hereby is **OVERRULED** without prejudice.

Dated this 10th day of December, 2002 at Kansas City, Kansas.

Kathryn H. Vratil

United States District Judge

# EXHIBIT M

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2000 WL 15074 (E.D.Pa.)
**(Cite as: 2000 WL 15074 (E.D.Pa.))**

**C**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
SMITHKLINE BEECHAM CORPORATION,
Plaintiff,
v.
APOTEX CORPORATION, APOTEX INC., and
TORPHARM INC., Defendants.
**No. CIV A 99-CV-4304.**

Jan. 4, 2000.

Arthur Makadon, Jamie B. Bischoff, Ballard, Spahr,
Andrews and Ingersoll, Phila, Robert D. Bajefsky,
Richard B. Racine, Finnegan, Henderson, Farabow,
Garrett & Dunner, Washington, DC, Walter Y. Boyd,
Jr., Ford F. Farabow, Jr., Finnegan, Henderson,
Farabow, Garrett & Dunner, Atlanta, GA, Kenneth
M. Frankel, Finnegan, Henderson, Farabow, Garrett
& Dunner, Washington, DC, for SmithKline
Beecham Corporation, Plaintiffs.

Francis P. Devine, III, White and Williams, Phila,
Hugh L. Moore, Lord, Bissell, Brook, William A.
Rakoczy, Keith D. Parr, Paul J. Molino, Lord, Bissell
& Brook, Chicago, IL, for Apotex Corporation,
Apotex, Inc., Torpharm, Inc., Defendants.

MEMORANDUM & ORDER

KAUFFMAN, J.

**\*1** SmithKline Beecham Corporation ("SmithKline")
commenced this action on August 9, 1999, pursuant
to 35 U.S.C. § § 271, 281, and 283, charging Apotex
Corporation, Apotex, Inc., and Torpharm, Inc.
(collectively, "Apotex") with patent infringement.
The lawsuit arises from Apotex's filing of an
abbreviated new drug application for FDA approval
of "Paroxetine HCl Tablets." [FN1] SmithKline
alleges that Paroxetine HCl Tablets, if manufactured,
would infringe its patent entitled "Form of Paroxetine
Hydrochloride Anhydrate," which the United States
Patent and Trademark Office granted on May 4, 1999
(the "1999 Patent"). Now before the Court is
Apotex's "Motion to Transfer Pursuant to 28 U.S.C. §
1404(a)." For the reasons set forth below, the Motion
will be denied.

FN1. Under the so-called Hatch-Waxman

amendments to the Federal Food, Drug, and
Cosmetic Act, codified as amended at 21
U.S.C. § § 301 et seq., a pharmaceutical
manufacturer seeking expedited FDA
approval to market a generic version of a
patented drug may submit an abbreviated
new drug application ("ANDA"). 21 U.S.C.
§ 355(j). To avoid patent infringement
problems, the applicant must provide the
Food and Drug Administration with a
certificate establishing that the marketing of
the generic drug will not infringe the patent
for the listed drug. To this end, the applicant
must certify that: (I) the patent information
has not been filed, (II) the patent has
expired, (III) the patent will expire on a
specified date, or (IV) the "patent is invalid
or will not be infringed by the manufacture,
use, or sale of the new drug for which the
application is submitted." 21 U.S.C. §
355(j)(2)(A)(vii). As part of a certification
under Paragraph IV, the ANDA applicant
must notify the patent holder and approved
applicants of its application and include a
statement of the factual and legal basis for
the applicant's opinion that the patent is not
valid or will not be infringed. See 21 U.S.C.
§ 355(j)(2)(B).

SmithKline "is a corporation organized and existing
under the laws of the Commonwealth of
Pennsylvania with its principle place of business in
Philadelphia, Pennsylvania." (Compl.¶ 3.) The
Eastern District of Pennsylvania therefore is
SmithKline's "home forum," and "the lawyers who
wrote and prosecuted the application that resulted in
the [1999 Patent] are all located here, along with
relevant research and regulatory personnel." (Pl.'s Br.
at 5.)

Apotex moves the Court to transfer this Action to the
Northern District of Illinois, where SmithKline has
commenced an action charging Apotex with
infringement of a separate and distinct patent,
*SmithKline Beecham Corp. v. Apotex Corp*, No. 98 C
3952 (N.D. Ill. filed June 26, 1998) (the "Illinois
Action"). In the Illinois Action, SmithKline alleges
that Apotex's application for the approval of
"Paroxetine HCl Tablets" infringes on SmithKline's
patent entitled "Anti-Depressant Crystalline
Paroxetine Hydrochloride Hemihydrate," which the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 15074 (E.D.Pa.)
(Cite as: 2000 WL 15074 (E.D.Pa.))

United States Patent and Trademark Office granted on or about January 26, 1988 (the "1988 Patent"). The 1988 Patent claims, among other things, crystalline paroxetine hydrochloride hemihydrate and its use in treating depression. *SmithKline Beecham Corp. v. Apotex Corp.,* NO. 98 C 3952 1999 WL 311697, at *1 (N.D.Ill. May 13, 1999).

Example 8 in the 1988 Patent "describes the preparation of paroxetine hydrochloride anhydrate as platelets, by crystallization from a water-containing solvent ... referred to as Form Z." (Defs.' Mot. Exhibit 6.) The 1999 Patent provides, among other things,

> paroxetine hydrochloride anhydrate substantially free of propan-2-ol *with the proviso that it is other than Form Z* .... The forms of paroxetine hydrochloride anhydrate may be distinguished from ... the material formed as a result of carrying out the procedures mentioned in [the 1988 Patent] by crystalline shape, by solvent analysis or by techniques such as IR, melting point, X-ray diffraction, NMR, DSC, microscopy and any other analytical techniques which differentiate one form from another.

(Defs.' Mot. Exhibit 6 (emphasis added).) The 1988 Patent thus related to, but distinct from, the 1999 Patent.

*2 Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action "might have been brought" in the Northern District of Illinois. 28 U.S.C. § 1404(a). The question before the Court, therefore, is whether Apotex has shown that "on balance the litigation would more conveniently proceed and the interests of justice would be better served by transfer to [that] forum." 15 Charles Alan Wright *et al., Federal Practice and Procedure,* § 3847 (2d ed.1987) *quoted in Jumara v. State Farm Ins. Co.,* 55 F .3d 873, 879 (1995).

Although § 1404(a) refers only to "the convenience of parties and witnesses" and "the interests of justice," the court must consider all relevant factors to determine whether a transfer is warranted. *Jumara,* 55 F.3d at 879; 15 Charles Alan Wright *et al., Federal Practice and Procedure,* § 3847 (2d ed.1987). In this regard, the court examines both the private interests of the litigants and factors of public interest. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). Relevant private interests include the relative

ease of access to sources of proof, the cost of obtaining attendance of witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive ." *Gulf Oil,* 330 U.S. at 508. Relevant factors of public interest include the avoidance of the potential for inconsistent judgments and the promotion of judicial economy. *See Gulf Oil,* 330 U.S. at 508. Section 1404(a) thus vests the district court with broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." ' *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)).

Though the decision whether to transfer is left to the sound discretion of the court, the burden of demonstrating the desirability of transfer lies with the moving party. *Jumara,* 55 F.3d at 879. In addition, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," and " 'should not be lightly disturbed." ' *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970) (quoting *Ungrund v. Cunningham Bros., Inc.,* 300 F.Supp. 270, 272 (S.D.Ill.1969)). Accordingly, unless the " 'balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." ' *Shutte,* 431 F.2d at 25 (quoting *Owatonna Mfg. Co. v. Melroe Co.,* 301 F.Supp. 1296, 1307 (D.Minn.1969)).

Apotex argues that this action is duplicative of the Illinois Action and that a transfer would be more convenient for its witnesses, would promote judicial economy, and would avoid the potential for inconsistent judgments. SmithKline responds by asserting that the factual differences between the two lawsuits and the approaching discovery deadline in the Illinois Action (currently, January 31, 2000), "make[ ] the prospects for achieving significant economies in pretrial discovery via transfer ... doubtful." (Pl.'s Br. at 10.) In addition, SmithKline represents that it "has no more interest than Apotex in duplicating discovery," and "to the extent that a deponent has already testified fully on a particular topic" in the Illinois Action, it "will make every effort to avoid unnecessary duplication." (Pl.'s Br. at 10.) [FN2] SmithKline concedes that the Illinois Action, like this action, involves Apotex's abbreviated new drug application for the approval of Paroxetine HCl Tablets, a proposed generic substitute for SmithKline's paroxetine hydrochloride, but stresses that "the cases are based on two separate and distinct patents, covering inventions created by different inventors working at different times, and that differ in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 15074 (E.D.Pa.)
**(Cite as: 2000 WL 15074 (E.D.Pa.))**

scope." (Pl.'s Br. at 6.) [FN3]

> FN2. The parties are, of course, free to
> stipulate that the discovery may be used in
> both cases.

> FN3. The inventors of the 1988 Patent are
> Roger D. Barnes, Marian W. Wood-
> Kaczmar, Alan D. Curzons, Ian R. Lynch,
> John E. Richardson, and Philip C. Buxton.
> The inventors of the 1999 Patent are Neal
> Ward and Victor Witold Jacewicz.

**\*3** Upon consideration of the parties' arguments, the
Court is not persuaded that a transfer to the Northern
District of Illinois is appropriate. Discovery in the
Illinois Action is near completion, thus diminishing
the possibility of consolidation or coordination to
promote judicial economy. Moreover, Apotex does
not suggest that any of its witnesses might be
unavailable for trial in this district. *See Jumara, 55
F.3d at 879* (stating that relevant private interests
include "the convenience of the witnesses--but only
to the extent that the witnesses may actually be
unavailable for trial in one of the fora."). Most
significantly, although both this action and the
Illinois action involve Apotex's abbreviated new drug
application for the approval of Paroxetine HCl
Tablets, the two actions involve separate and distinct
patents. Consequently, the maintenance of this action
in this forum would not present the risk of
inconsistent judgments. [FN4] Because the relevant
factors do not strongly favor a transfer, SmithKline's
choice of forum must prevail. Accordingly, Apotex's
Motion to Transfer is denied. An Order follows.

> FN4. "The pendency of related litigation in
> another forum is a proper factor to consider
> in choice of venue questions," *AT & T Corp.
> v. PAB, Inc.,* 935 F.Supp. 584 (E.D.Pa.1996)
> (citing *Codex v. Milgo Elec. Corp.,* 553 F.2d
> 735, 739 (1st Cir.1977)), but this factor does
> not "carr[y] the day against factors pointing
> in the other direction," *Codex,* 553 F.2d at
> 739.

### ORDER

AND NOW, this 4th day of January, 2000, upon
consideration of Defendants' Motion to Transfer
(docket # 6), the Affidavit of Dr. David Coffin-Beach
(docket # 7), Plaintiff's Memorandum in Opposition
to Defendants' Motion to Transfer (docket # 10), and
Defendants' Reply (docket # 11), it is ORDERED
that the Motion to Transfer (docket # 6) is DENIED.

Not Reported in F.Supp.2d, 2000 WL 15074
(E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT N

LEXSEE 1998 U.S. DIST. LEXIS 21746

**SOFAMOR DANEK HOLDINGS, INC., Plaintiffs, vs. UNITED STATES
SURGICAL CORP., and SURGICAL DYNAMICS, INC., Defendants.**

No. 98-2369 GA

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
TENNESSEE, WESTERN DIVISION**

*1998 U.S. Dist. LEXIS 21746; 49 U.S.P.Q.2D (BNA) 2016*

**November 16, 1998, Decided
November 16, 1998, Filed; November 17, 1998, Entered**

**DISPOSITION:** [*1] Defendants' motion to transfer
pursuant to *28 U.S.C. § 1404*(a) DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders
and defendant surgical corporations were involved in a
patent infringement suit regarding plaintiffs' patent for a
method of inserting spinal implants. Before the court was
defendants' motion to transfer venue, pursuant to *28
U.S.C.S. § 1404*(a), from the court to a California district
court.

**OVERVIEW:** Defendants primarily argued that transfer
of the action would serve the interests of justice because
of the California court's familiarity with the litigation
subject matter due to its involvement with a related pend-
ing case. However, the court disagreed and pointed out
that the related California case was regarding the patent
for the actual spinal implant, and not the process by
which it was implanted. While the California court may
have been presented with evidence of methods of im-
plantation, the court found nothing before it to suggest
that the California court considered implantation meth-
ods when deciding the infringement of the implant de-
vice patent. The court also noted that the California case
had been tried and was already in the process of being
appealed, which meant that the cases would not likely be
consolidated. Finally, the court found no convenience for
the parties' and witnesses' convenience, because none of
the parties had significant contacts with the state of Cali-
fornia. Given that plaintiffs' choice of forum as its home
residence was to be given considerable weight, the court
held that the interests of justice dictated that it was the
more appropriate forum.

**OUTCOME:** The court denied defendants' motion to
transfer venue of plaintiffs' patent infringement case.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Fed-
eral Courts*
[HN1] The federal venue statute provides that for the
convenience of the parties and witnesses, in the interest
of justice, a district court may transfer any civil action to
any other district or division where it might have been
brought. *28 U.S.C.S. § 1404*(a). A district court has
broad discretion to transfer a case. In ruling on a motion
to transfer under § 1404, a court should consider the
private interests of the parties as well as other public-
interest concerns, such as systemic integrity and fairness,
which come under the rubric of interests of justice. Spe-
cifically, a court should balance 1) the convenience of
the parties; 2) the convenience of the potential witnesses;
3) the relative ease of access to sources of proof; 4) the
availability of process to compel attendance of unwilling
witnesses; 5) the practical problems associated with try-
ing the case most expeditiously and inexpensively; and
6) the interests of justice. In short, the court may con-
sider any factor that may make any eventual trial easy,
expeditious, and inexpensive. In balancing these factors,
a plaintiff's choice of forum should be given considerable
weight, and the movant must prove that the balance of
convenience weighs strongly in favor of transfer before a
§ 1404 motion will be granted.

*Civil Procedure > Venue > Change of Venue Generally*
[HN2] The fact that a related case is pending in a pro-
posed transferee district is a powerful reason to grant a
motion for a change of venue. It is preferable to litigate
related claims in the same forum so that 1) pretrial dis-
covery can be conducted more efficiently; 2) the wit-

Case 1:05-cv-00301-JJF-MPT    Document 39-6    Filed 10/11/2005    Page 29 of 31

Page 2
1998 U.S. Dist. LEXIS 21746, *; 49 U.S.P.Q.2D (BNA) 2016

nesses can be saved time and money, both with respect to pretrial and trial proceedings; 3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; and 4) inconsistent results can be avoided.

COUNSEL: For SOFAMOR DANEK HOLDINGS, INC., SOFAMOR DANEK, L.P., plaintiffs: Leo Maurice Bearman, Jr., Esq., Bradley E. Trammell, Esq., BAKER DONELSON BEARMAN & CALDWELL, Memphis, TN.

For SOFAMOR DANEK HOLDINGS, INC., plaintiff: Jeff E. Schwartz, Esq., Dirk D. Thomas, Esq., Donald R. Dunner, Esq., Anthony M. Gutowski, Esq., FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP, Washington, DC.

For SOFAMOR DANEK, L.P., plaintiff: Dirk D. Thomas, Esq., Donald R. Dunner, Esq., FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP, Washington, DC.

For SOFAMOR DANEK, L.P., plaintiff: Jeff E. Schwartz, Esq., Washington, DC.

For U.S. SURGICAL CORP., SURGICAL DYNAMICS, INC., defendants: Glen G. Reid, Jr., Esq., WYATT, TARRANT & COMBS, Memphis, TN.

For U.S. SURGICAL CORP., SURGICAL DYNAMICS, INC., defendants: Constance S. Huttner, Esq., Paolo A. Ramundo, Esq., Madeline F. Baer, Esq., Andrew F. Strobert, Esq., Bruce C. Anderson, Esq., SKADDEN ARPS SLATE MEAGHER & FLOM, New York, NY.

For U.S. SURGICAL CORP., SURGICAL DYNAMICS, INC., counter-claimants: Glen G. Reid, Jr., Esq., WYATT, TARRANT & COMBS, Memphis, TN.

For [*2] U.S. SURGICAL CORP., SURGICAL DYNAMICS, INC., counter-claimants: Constance S. Huttner, Esq., Paolo A. Ramundo, Esq., Madeline F. Baer, Esq., Andrew F. Strobert, Esq., Bruce C. Anderson, Esq., SKADDEN ARPS SLATE MEAGHER & FLOM, New York, NY.

For SOFAMOR DANEK HOLDINGS, INC., counter-defendant: Leo Maurice Bearman, Jr., Esq., Bradley E. Trammell, Esq., BAKER DONELSON BEARMAN & CALDWELL, Memphis, TN.

For SOFAMOR DANEK HOLDINGS, INC., counter-defendant: Jeff E. Schwartz, Esq., Dirk D. Thomas, Esq.,

Donald R. Dunner, Esq., Anthony M. Gutowski, Esq., FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP, Washington, DC.

JUDGES: JULIA SMITH GIBBONS, UNITED STATES DISTRICT JUDGE.

OPINIONBY: JULIA SMITH GIBBONS

OPINION:

ORDER DENYING DEFENDANTS' MOTION TO TRANSFER

Before the court is defendants United States Surgical Corp. ("U.S. Surgical") and Surgical Dynamics Inc.'s ("SDI") motion to transfer venue from this court to the Central District of California. Defendants' motion arises out of the instant action for patent infringement filed by plaintiff Sofamor Danek Holdings Inc. ("Sofamor Danek"). The patent at issue in this case is U.S. Patent No. *5,741,253* ("the '253 patent"), entitled "Method of Inserting [*3] Spinal Implants," which issued on April 21, 1998, and was assigned to Sofamor Danek approximately four days prior to issue. Plaintiff alleges that defendants directly infringed one or more claims of the '253 patent, contributed to the infringement of the '253 patent by "manufacturing, selling, and/or otherwise distributing instruments, instrument sets, and spinal fusion cage products that constitute a material part of the invention covered by" the '253 patent, and actively induced others to infringe the '253 patent by conducting classes and distributing instruction manuals that teach surgeons to implant the previously mentioned products using a method covered by the '253 patent. (Pl. Compl. at PP 8-12). Defendants deny infringement and challenge the validity of the '253 patent.

[HN1] The federal venue statute provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404*(a). n1 A district court has broad discretion to transfer a case. *Phelps v. McClellan, 30 F.3d 658, 663 (6th Cir. 1994)*, citing *Cote v. Wadel, 796 F.2d [*4] 981, 985 (7th Cir. 1986)*; see also *Van Dusen v. Barrack, 376 U.S. 612, 636-37, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)* ("Both the history and the purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, . . . and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms."). In ruling on a motion to transfer under § 1404, a court should consider the private interests of the parties as well as "other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Exp., Inc., 929*

1998 U.S. Dist. LEXIS 21746, *; 49 U.S.P.Q.2D (BNA) 2016

F.2d 1131, 1137 (6th Cir.), cert. denied, 502 U.S. 821, 116 L. Ed. 2d 54, 112 S. Ct. 81 (1991) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988).

n1 As an initial matter, none of the parties contend that venue is improper in the Western District of Tennessee or that this court lacks personal or subject matter jurisdiction, nor do any of the parties contend that venue would be improper in the Central District of California. Further, the Central District of California qualifies as a court "where the action may been brought," as required for transfer under 28 U.S.C. § 1404(a).

[*5]

Specifically, a court should balance (1) the convenience of the parties; (2) the convenience of the potential witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interests of justice. See Helder v. Hitachi Power Tools, USA Ltd., 764 F. Supp. 93, 96 (E.D. Mich. 1991) (citation omitted). Accord Priess v. Fisherfolk, 535 F. Supp. 1271, 1279 (S.D. Ohio 1992); Campbell v. Hilton Hotels Corp., 611 F. Supp. 155, 157 (E.D. Mich. 1985) (citing Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)); Artisan Development v. Mountain States Development Corp., 402 F. Supp. 1312, 1317 (S.D. Ohio 1975). In short, the court may consider any factor that may make any eventual trial "easy, expeditious, and inexpensive." Helder, 764 F. Supp. at 96, citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947). In balancing these factors, a plaintiff's choice of forum should be given considerable weight, and the movant must prove that the balance of convenience weighs strongly in favor [*6] of transfer before a § 1404 motion will be granted. See West American Ins. Co. v. Potts, 908 F.2d 974, 1990 WL 104034, *2 (6th Cir. 1990), citing Nicol v. Koscinski, 188 F.2d 537 (6th Cir. 1951); accord Preiss, 535 F. Supp. at 1279.

Defendants primarily argue that transfer of this action to the Central District of California will serve the interests of justice "because of the California court's familiarity with the subject matter of this litigation by virtue of its involvement with a related pending case." (Def. Mot. at 1). Plaintiff contends, however, that the patent at issue in this case "is dissimilar and involves different issues" than the patent in the California case, and that because of these differences, transfer would not serve the interests of justice. (Pl. Resp. at 3).

The prosecution history of the '253 patent is quite complex. The original application filed with the U.S. Patent and Trademark Office ("USPTO") included claims covering both an apparatus (a spinal implant) and a method (procedure used for implantation). During prosecution of the original application, the USPTO determined that the application covered two distinct inventions and required the application [*7] to be divided into separate patent applications, one directed to the apparatus and one directed to the method. The claims directed to the method were carved out of the original application into a divisional application, and a continuation of this divisional application eventually issued as the present '253 patent. The claims which remained in the original application were directed only to the apparatus, and this application issued in May 1991, as U.S. Patent No. 5,015,247 ("the '247 patent").

In January 1995, SDI filed suit in the Central District of California against Sofamor Danek and Karlin Technologies (a California corporation owned by the inventor, Dr. Michelson) seeking a declaratory judgment that its Ray TFC spinal implant did not infringe the '247 patent. In June 1997, the California court granted summary judgment in favor of SDI, holding that SDI's Ray TFC implant did not infringe the claims of the '247 patent. (Def. Mot., Ex. 7). Sofamor Danek appealed the California court's decision and that appeal is currently pending in the Court of Appeals for the Federal Circuit. (Def. Mot. at 2; Ex. 6).

Defendants argue that because the California court considered the extensive summary [*8] judgment submissions for the '247 patent litigation, "the [California] court's familiarity with the subject matter will reduce the expenditure of judicial resources in the handling of this matter." (Def. Mot. at 15). Defendants contend that both patents relate to the same basic technology - the insertion of an implant across disc space. Defendants note that the specifications of the '247 patent disclose methods and instrumentation for inserting an implant, which are the same as that described in the '253 patent. Further, defendants point out that the allegations in the present complaint relate to the manufacture, sale, and distribution of the Ray TFC implant, the same device that was alleged to have infringed the '247 patent.

[HN2] The fact that a related case is pending in a proposed transferee district is a "powerful reason to grant a motion for a change of venue." Supco Auto Parts, Inc., 538 F. Supp. 1187, 1191 (E.D. Pa. 1982) (citing Prudential Ins. Co. v. Rodano, 493 F. Supp. 954, 955 (E.D. Pa. 1980). It is preferable to litigate related claims in the same forum so that:

(1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time [*9] and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; (4) inconsistent results can be avoided.

*Blanning v. Tisch, 378 F. Supp. 1058, 1061 (E.D. Pa. 1974)* (quoting *Schneider v. Sears, 265 F. Supp. 257, 266-67 (S.D.N.Y. 1967)).*

The court finds, however, that the policies that typically justify a case's transfer to a district where a related action is pending are not served in this case. Although defendants point out that "the '253 patent is the grandchild of the '247 patent and derives from the same application that was filed for the '247 patent" and that "the '253 patent has essentially the same specification as the '247 patent," the patents are now two separate and distinct inventions. The USPTO recognized this distinction, when it required the original application be split with a divisional. It is a fundamental principle of patent law that two applications cannot claim the same invention, so it is not possible that the '247 patent discloses any of the methods covered by the claims of the '253 patent. While the [*10] '247 and '253 patents may be within the same field of technology, the claims which must be examined to determine their validity do not cover the same invention.

Defendants also assert that the interests of justice and judicial economy would be best served by transfer because the California court expended considerable time and energy becoming familiar with the technology of the patents. The summary judgment decision issued by the California court, however, did not rely on, or even mention, the methods of surgically positioning an implant. While the California court may have been presented with evidence of methods of implantation, there is nothing before the court to suggest that the California court considered these methods when deciding the infringement of the '247 patent. It is also clear that the California court's decision will not determine the outcome of the present action. Therefore, there is no concern for duplicative litigation. In addition, the California court's decision is already on appeal in the Federal Circuit. Even if the Federal Circuit remanded the case to the district court for trial, discovery in that case has been closed, and the cases would not likely be consolidated. [*11]

Finally, defendants have not demonstrated that transferring this action to the Central District of California is in the convenience of the parties and witnesses. Plaintiff's principal place of business is Memphis. Defendants U.S. Surgical and its wholly owned subsidiary, SDI, are incorporated in Delaware, with a principal place of business in Norwalk, Connecticut. Besides the inventor of the Ray TFC apparatus, n2 none of the parties have significant contacts with the state of California.

> n2 The original inventor of both the '253 patent and the '247 patent, Dr. Michelson, is a resident of California. Although this court lacks personal jurisdiction over Dr. Michelson, he has submitted an affidavit stating that he will appear at trial in this jurisdiction if the case remains in this court. (Pl. Resp., Ex. F).

After careful consideration of these factors, the court concludes that the balance does not weigh in favor of transfer. The two actions are at very different stages in the litigation process, and the decision [*12] of the California court in the previous action is readily available to this court for consultation. The plaintiff's choice of forum as its home residence is given considerable weight, and other interests of justice dictate that Tennessee is the more appropriate forum. Accordingly, defendants' motion to transfer pursuant to *28 U.S.C. § 1404*(a) is DENIED.

IT IS SO ORDERED.

JULIA SMITH GIBBONS

UNITED STATES DISTRICT JUDGE

November 16, 1998

DATE