# UNREPORTED CASES

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.                                                           Page 1

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**(Cite as: 1997 WL 601425 (N.D.Cal.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. California.
APPLIED VISION INC., Applied Vision Ltd.,
Plaintiff,
v.
OPTICAL COATING LABORATORY, INC.
Defendant.
**No. C97-1233 MHP**

Sept. 23, 1997.

**MEMORANDUM AND ORDER**

PATEL, J.

*1 Plaintiffs Applied Vision Ltd. and Applied
Vision Inc. ("AVL" and "AVI" respectively)
brought a declaratory judgment action ("OCLI III")
against defendant Optical Coating Laboratory, Inc.,
("OCLI") for the alleged invalidity of two optical
coating patents. Now before the court is defendant's
motion to dismiss or transfer this case to Minnesota,
where defendant OCLI has filed a similar patent
infringement complaint ("OCLI II").

Having considered the parties' arguments and
submissions, and for the reasons set forth below, the
court enters the following memorandum and order.

**BACKGROUND** [FN1]

> FN1. Unless otherwise indicated, the
> following facts are taken from the
> complaint.

Defendant OCLI is a Delaware corporation, with
its principal place of business in Santa Rosa,

California. Plaintiff AVL is a British corporation,
with its principal place of business in Great Britain,
and plaintiff AVI, which distributes AVL's products
in the United States, is a Minnesota corporation
wholly owned by AVL. Both OCLI and AVL
manufacture products for coating ophthalmic lenses.
Each of the pending cases is described below.

A. OCLI I

On December 2, 1992, OCLI filed a patent
infringement suit against Applied Vision Ltd. in this
District alleging several patent infringement claims.
The only action to survive summary judgment was
the infringement of claim 35 of U.S.Patent No.
4,851,095 (" '095") by AVL's ARx10 coating
machine.

In December 1996 OCLI moved to amend its
complaint to include additional claims of
infringement to the '095 claims, partially based on
the soon to be issued Geometries patent and several
state law tort claims. The proposed amendment
also sought to name two new individual defendants,
J. Michael Walls and Mark H Imus. Given the stage
of the proceeding, the court denied OCLI's motion,
but indicated that the proposed claims could be
brought in a separate action and the two cases
consolidated for purposes that would not delay the
trial of OCLI I, which is set for November 1997.

B. OCLI II

Instead of filing its separate action in this court,
OCLI filed a new complaint in the District Court for
Minnesota. The new action, filed in February of
1997, was brought against AVL, AVI, and
individual defendants Walls and Imus. It included
all of the claims alleged in OCLI's proposed
amended complaint before this court except for the
claims based on the soon to be issued Geometries
Patent (U.S.Patent No. 5,618,088). OCLI advises
that after filing the complaint it notified

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**(Cite as: 1997 WL 601425 (N.D.Cal.))**

representatives of AVL and AVI of their intent to add the Geometries patent to OCLI II upon its issue, which was expected for April 8, 1997. The patent was issued on that date. On April 11, 1997 OCLI filed a motion for leave to amend the complaint in order to include infringement claims of the Geometries patent by AVL's ARx10 and Plasma Coat Express devices ("Express"). The motion was granted on May 8, 1997.

On April 10, 1997 AVL filed a motion to transfer OCLI II from Minnesota to California. The motion was heard by the Minnesota District Court on July 28, 1997, no order has been issued.

C. OCLI III

*2 On April 8, 1997, AVL filed a declaratory judgment action against OCLI in this District, seeking a judicial declaration that the Geometries patent is invalid, unenforceable and not infringed by either AVL's ARx10 or Express devise, and that the .095 patent is invalid, unenforceable and not infringed upon by the Express device. OCLI III, of course, does not include the state law tort claims nor are Walls and Imus named as parties to this action.

On May 8, 1997, OCLI filed this motion to transfer OCLI III from this District to the District for Minnesota or to dismiss under 28 U .S.C. § 1404(a).

**LEGAL STANDARD FOR SECTION 1404(A) TRANSFER**

Pursuant to 28 U.S.C. section 1404(a) for the convenience of parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district where it might have been brought. There is, however, a strong presumption in favor of plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 236, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

Generally, claims should be adjudicated in the forum of the first-filed action, absent countervailing interests in justice and convenience. *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 938

(Fed.Cir.1993), cert. denied sub nom *Regents of U. of California v. Genentech, Inc.,* 510 U.S. 1140 (1994). Such considerations may include the convenience and availability of witnesses, whether the court has jurisdiction over the necessary and desirable parties and the extent to which the litigation may be comprehensively resolved. Id. If more than one suit is filed regarding the validity or infringement of a patent, the general rule is that the first suit has priority absent special circumstances. *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989); *see also Pacesetter Sys. Inc. v. Medtronic Inc.,* 678 F.2d 93 (9th Cir.1982). ("... [w]hen two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the law suit.").

DISCUSSION

**A. Who's on First? Or, The First-Filed Doctrine**

Both OCLI and AVL vehemently agree that the first-filed action should take precedence over the later one, and the first filer should be granted its choice of venue. However, they both hotly dispute which action, OCLI II or OCLI III, was filed first, particularly with regard to the Geometries patent.

OCLI filed OCLI II in Minnesota on February 25, 1997. However, it did not amend the complaint to include the Geometries patent until May 8, 1997. AVL professes that it filed first, with regard to the Geometries patent, since it filed the declaratory judgment action on April 8, 1997, the day the patent was issued.

1. Relation Back or a Pick-off Play?

OCLI makes much of the relation back doctrine in order to show that its amended filing was the first-filed of the two actions involving the Geometries patent. Although it is questionable whether this is the proper inquiry, the court discusses it here in view of the attention given to it by the parties.

*3 OCLI bases its assertion of 'first to file' on Rule

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 3

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**(Cite as: 1997 WL 601425 (N.D.Cal.))**

15(c)(2) of the Federal Rules Of Civil Procedure, arguing that its amended complaint relates back to the initial filing in February 1997. Rule 15(c)(2) provides that any amended pleading "relates back to the date of the original pleading when ... the claim asserted in the amended pleading arose out of conduct, transaction or occurrence ... set forth in the original pleading."

In interpreting Rule 15(c)(2), the Ninth Circuit has held that in order for an amended complaint to relate back to the original complaint, the original and amended pleadings must share a common core of operative facts, so that the adverse party has fair notice of the transaction, occurrence or conduct called into question. *Martell v. Tilogy, Ltd.,* 872 F.2d 322, 325 (9th Cir.1989); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1314 (9th Cir.1982). *Moore's Federal Practice and Procedure* describes three criteria to aid in determining whether a claim arises out of the same conduct, transaction or occurrence: 1) whether the defendant had notice of the claim the plaintiff is asserting; 2) whether the plaintiff will rely on the same kind of evidence offered in support of the original claim to prove the new claim; 3) whether unfair surprise to the defendant would result if the court allowed the amendment to relate back. *Moore's Federal Practice and Procedure, see* also In re Dominguez, 51 F.3d 502 (9th Cir.1995) (holding that a declaratory judgment complaint in a bankruptcy proceeding related back to a debtor's discharge memorandum). In Dominguez the court found that the complaint related back because, "the claim to be added would most likely be proven by the same kind of evidence offered in support of the original pleading." Id. at 510.

OCLI asserts that AVL's and AVI's manufacture and sale of the ARx10 and the Plasma Coat Express coating machine is one critical transaction or occurrence. Ironically, it also asserts that the '095 and the Geometries patent are distinct and separate issues of claim infringement and invalidity, which require separate investigation as to facts, causation and damages. [FN2] Likewise, AVL asserts both sides of the argument--that the '095 and the Geometries patent are so related that they warrant

the same forum; and that the two are so distinct that OCLI's amended complaint to OCLI II should not relate back. AVL further argues that the Geometries patent is merely a continuation in part of the .095 patent and based on the same technology, and that the Express device is based on similar reactive D.C. sputtering technology.

> FN2. OCLI argued that OCLI I and OCLI II are so dissimilar that judicial economy would not require that the two actions be held in the same forum.

It appears that the court will rely upon much of the same evidence with regard to the two patents claims: they involve similar technology, the parties are the same, many of the witnesses are the same, and the issues relating to state tort law and trade secrets would also overlap.

The Federal Circuit has yet to discuss the applicability of the relation back doctrine to patent infringement claims. District courts which have entertained the issue tend to find that infringement of one patent is not the same conduct or occurrence as infringement of another patent for the purposes of relation back, unless the claims with respect to the second patent are an integral part of the claims in the first action. *See, e.g., Taho Sierra Preservation Council v. Tahoe Regional Planning Agency,* 808 F.Supp. 1474, 1482 (D. Nevada 1992), aff'd. in part, rev'd in part on other grounds, 34 F.3d 753 (9th Cir.), amended by, 42 F.3d 1306 (1994), cert. denied sub nom, *California v. Tahoe Sierra Preservation Council,* 514 U.S. 1036, 115 S.Ct. 1401, 131 L.Ed.2d 288 (1995); *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.,* 395 F.Supp. 234, 250-251 (N.D.Ill.1974), aff'd, 547 F.2d 1300 (7th Cir.1976), *cert. denied,* 431 U.S. 929, 97 S.Ct. 2631, 53 L.Ed.2d 243 (1977); *Telephonics Corp. v. Lindly & Co., Inc.,* 192 F.Supp. 407, 411 (E.D.N.Y.1960), aff'd, 291 F.2d 445 (2d Cir.1961).

*4 Many of the cases dealing with relation back focus on whether fair notice was given to the opposing party. This interpretation agrees with the meaning underlying the intent of Rule 15. This Circuit in SEC v. Seaboard Corp., upheld the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 4

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**(Cite as: 1997 WL 601425 (N.D.Cal.))**

district court's grant of summary judgment in part, holding that the cross-defendant did not have sufficient notice of the new causes of action amended to the cross-complaint. The court reasoned, "[t]he basic inquiry is whether the opposing party has been put on notice about the claim or defense raised by the amended pleading." *Id.* at 1314. More recently, the Circuit in *Union Pacific R.R. Co. v. Nevada Power Co. .,* 950 F.2d 1429 (9th Cir.1991), upheld the district court's ruling that plaintiff's amended complaint related back to its original complaint, and thus was not time-barred. In *Union Pacific,* the plaintiff's original complaint sought the return of its reparation payments made for overcharges under Tariff 6034. Four years later the plaintiff moved to amend its complaint in order to recover for overpayment made for Tariff 6020. The court found that claims made under Tariff 6020 arose as a direct result of the facts surrounding its claim under Tariff 6034. In allowing the amendment to relate back, the court reasoned, "[w]hen a suit is filed in federal court ... the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to the first statement. Thus we determine whether [the defendant] had fair notice of the transaction, occurrence or conduct called into question." *Id.* The court also added, "[a]mendments seeking to add claims are to be granted more freely than amendments adding parties." *Id.*

When OCLI moved to amend its first complaint, OCLI I, to provisionally add the Geometries patent, along with adding the state tort claims and the two individual defendants, it gave AVL express notice of its intentions. Furthermore, AVL had the opportunity to examine in detail the nature of OCLI's intended claims in the proposed amendment. It was further put on notice when the court denied OCLI's motion, but indicated that OCLI could bring these new claims in a separate action. Two months later OCLI filed OCLI II in Minnesota, which included all of the claims in the proposed OCLI I amendment, except for the Geometries patent, which had not yet been issued. OCLI also stated that it had informed

representatives of both AVI and AVL that it intended to assert claims based upon the Geometries patent upon its issuance. It also informed them as to the expected date of the issuance. It is uncontested that AVL had knowledge of OCLI's intent to file as well as knowledge of the details and nature of that filing.

This court finds that OCLI's amended complaint filed on May 8, 1997, relates back to its initial filing of OCLI II on February 24, 1997.

2. Left on Second at the End of the First Inning

*5 This does not end the inquiry on the first-filed case doctrine, however. The first case filed between OCLI and AVL was OCLI I, filed in this court on December 2, 1992. Although that case does not operate to permit the later filed cases to relate back to the 1992 date, it has significance for this motion because of the very arguments made by the parties here. Based on a review of the papers filed on the motion to amend OCLI I and the parties' motions in this court and the court in Minnesota, it appears that the technology, parties and circumstances surrounding the patents in question are similar enough to be considered to share a common core of operative facts. Indeed, several claims of infringement go to the '095 patent. Thus, looking at all three of the cases for the purposes of Rule 1404(a) the court deems the 1992 action to be the first filed.

**B. The Remaining Innings Earn No Grand Slam**

There are other considerations in a section 1404(a) inquiry such as judicial economy, comprehensive disposition of the actions, convenience of the parties and witnesses, forum shopping and the role of a preemptive declaratory judgment action in the face of an infringement claim. On these factors AVL has the better of the game, but it is no grand slam.

While there is a strong presumption in favor of the plaintiff's choice of forum, a court is not bound by this presumption. *Piper Aircraft Co. v. Reyno,* 454 U.S. at 236. Section 1404(a) prescribes that a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                   Page 5

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**(Cite as: 1997 WL 601425 (N.D.Cal.))**

district court may transfer a civil action for the convenience of parties and witnesses, and in the interests of justice.

OCLI argues that even if the court does not view OCLI II as the first filed action, its motion should be granted on the basis of judicial economy. It contends that OCLI III should be transferred to Minnesota where a previously filed action with related issues is pending. In support of this notion, it asserts that OCLI II is the only case in which full and complete relief can be achieved, since neither OCLI I nor OCLI III include defendants Imus and Walls, nor the alleged state law tort claims. Thus, if OCLI III were allowed to remain in California, two different federal courts would be adjudicating related and overlapping issues. This would waste the court's time and resources, and be contrary to the interests of judicial economy. Moreover, OCLI asserts that OCLI II is distinct from OCLI I, and the infringement of the two patents in question should be addressed separately. Thus, the work already completed by this court would be of no avail in OCLI II.

AVL makes an argument in support of judicial economy as well. It asserts that patent cases generally favor trying related cases before the same judge, so that only one judge need be educated regarding the complex technology. *Smithkline Corp. v. Sterling Drug Inc.,* 486 F.Supp. 52, 55 (D.Del.1975). Thus, argues AVL it would be inexpedient and wasteful for the Minnesota court to start from scratch on issues that the California court has scrutinized over the past four years.

**\*6** In the interest of preserving judicial economy and achieving a comprehensive disposition, the court agrees with AVL that OCLI III should remain in California. California is the venue of the first action, OCLI I, which is set for trial in November. Over the past four years this court has vested substantial time and effort educating itself about the issues and technology before it. The trial in OCLI I is imminent. Furthermore, the Minnesota court has already heard and is currently deliberating AVL's motion to transfer OCLI II to California. This court will not risk transferring this action to

Minnesota, only to have OCLI II transferred to California. Valuable judicial energy and resources have already been expended in sorting out these various actions, and this court refuses to condone, let alone promote, the type of wasteful maneuvering that both parties have engaged in.

Plaintiff was advised when it attempted to amend the complaint in OCLI I that a new complaint could be filed and the cases consolidated in an appropriate manner, but that the court did not intend to delay the trial in OCLI I by allowing a late amendment. Instead, plaintiff went to another forum, ostensibly for the purpose of obtaining jurisdiction over parties otherwise not subject to jurisdiction in this District. [FN3] Defendant has averred, however, that those parties will not contest jurisdiction. Indeed, one new party, AVI, could not do so since it has already submitted itself to the jurisdiction of this court. The remaining two parties were named in the proposed amended complaint in OCLI I. Therefore, counterclaims in this action readily could be asserted.

> FN3. OCLI offers this as another of its arguments in favor of transfer to Minnesota, mentioning rather casually that the transferor court may not be able to assert jurisdiction over international plaintiff AVI. However, it has provided no evidence in support of this contention.

This court concludes that in the interest of a comprehensive disposition OCLI III should not be transferred to the District of Minnesota. Based on the facts propounded and the parties involved, the court finds OCLI II and OCLI III to be similar enough to OCLI I, that with the respective counterclaims and amendments, complete adjudication can be achieved in these two, or three, actions. Because it is in the interest of justice to adjudicate this action where all claims against all parties can be resolved and avoid unnecessary duplication, OCLI III will remain in California.

OCLI's next argument concerns the congestion of the respective courts' dockets. OCLI is reminded that OCLI I is set for trial in November. The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**(Cite as: 1997 WL 601425 (N.D.Cal.))**

remaining case(s) can be set as soon thereafter as the parties' have completed their discovery. The court, therefore, finds this issue inconsequential, and does not address it.

OCLI also asserts that convenience factors should be considered by this court in determining whether or not to grant its motion to transfer. In this respect, OCLI asserts that Minnesota is not at all inconvenient for AVL, since it chose Minnesota as its principal place of business and headquarters for its United States distribution operation. Also, many of AVL's relevant ties and material witnesses are located in Minnesota.

*7 AVL argues that neither the convenience of the parties nor witnesses favor transferring this action. The California court is already familiar with the technology and patents at issue, as well as the parties and the facts surrounding their claims. Furthermore, many of the key witnesses are in California, including persons who are or were employees of OCLI, and all the attorneys involved in this case reside in California. This latter point is not a proper consideration, however. *See Chicago, Rock Island and Pacific R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir.), *cert denied,* 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955). More important to this inquiry is the fact that the fruits of four years of discovery for OCLI I and AVL are in California, and many of the same documents may also be relevant to OCLI III.

Certainly, convenience and availability of witnesses may be a "sound reason that would make it unjust or inefficient to continue the first filed action." Genentech Inc. v. Eli Lilly and Co., 998 F.2d at 938. Based on the parties assertions, however, it does not appear as though either party will be more inconvenienced than the other whether the venue is changed or remains the same. California is the principal place of business for OCLI and its products are developed and manufactured here. Likewise, AVI is based in Minnesota, and headquarters AVL's United States distribution efforts. Thus, both California and Minnesota are the home to important witnesses and documents. Ironically, both parties are asserting

preference for the home venue of the other. Neither hits a home run on this score.

On balance, it appears as if the weight of inconvenience does not burden one party more than the other. Were this court looking only at OCLI II and OCLI III it would appear that the convenience issue is evenly balanced. However, OCLI I is part of the equation and that causes the balance to tip heavily in favor of this District. Retaining jurisdiction here also serves the purpose of discouraging forum shopping in which both parties appear to have engaged. Once patent litigation is ongoing between two parties there is no reason to invoke another venue, particularly where, as here, all parties can be made subject to the jurisdiction of the very first-filed action.

This leads to OCLI's next argument that this court should exercise its discretion and grant this motion in order to discourage misuse of the declaratory judgment action in patent cases. Wilton v. Seven Falls Co., 515 U.S. 277, 281, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Tempco Elec. Heater Corp. v. Omega Eng'g Inc.,* 819 F.2d 746 747 (7th Cir.1987) . OCLI maintains that the legitimate exercise of the Declaratory Judgment Act, 28 U.S.C. § 2201, is to alleviate the necessity of waiting indefinitely for a pertinent owner to file an infringement order, not precipitate a race to the court house in order to displace the natural plaintiff. *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996), cert. denied, 519 U.S. 1101, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997). A first-filed suit may be dismissed when the sole motive for filing is forum shopping. *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d at 938 . OCLI argues that OCLI III was filed specifically as a tactical measure, in anticipation of the filing of an imminent law suit, and should therefore be dismissed.

*8 AVL asserts that it did not file OCLI III in an effort to beat OCLI to the court house, but rather in an effort to protect its already injured reputation, and clear its name. AVL argues that the threat of further litigation over the Geometries patent added an additional cloud on the company's already clouded reputation, and filing this action was based

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                         Page 7

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**(Cite as: 1997 WL 601425 (N.D.Cal.))**

on its reasonable apprehension of being sued. Furthermore, its choice of forum is based on the need to efficiently and fairly resolve all of the claims before a single court, and OCLI I is already pending before this court.

OCLI is correct in that first-filed suits may be dismissed when the sole motive for filing is to forum shop. Id. However, AVL has asserted numerous reasons outside of forum shopping to support its choice of California as a forum, the most persuasive being that OCLI I chose it first and its first action is already pending in this court. Consequently, this court will not dismiss or transfer this action on forum selection grounds alone.

Likewise, the suspicion that OCLI also engaged in forum shopping when filing OCLI II in Minnesota will not be determinative, since OCLI has proffered some legitimate reasons, albeit strained for bringing its action in Minnesota. Its most cogent one, however, is defeated by the consent to jurisdiction.

It does appear to this court that AVL 'raced to the court house'. AVL clearly had knowledge of OCLI II and OCLI's intent to amend OCLI II as soon the Geometries patent was issued. Nonetheless, it wins; it was already playing on OCLI's home turf. The court does not intend to call the play on whether either of the parties was forum shopping. It is sufficient to rule that all of the parties' litigation should move forward in this venue, the one first chosen by OCLI in 1992.

**CONCLUSION**

For the forgoing reasons, the court hereby DENIES defendant OCLI's motion to transfer venue.

IT IS SO ORDERED.

Not Reported in F.Supp., 1997 WL 601425 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

- 3:97cv01233 (Docket)

(Apr. 08, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

**(Cite as: 2000 WL 652943 (D.Del.))**

c

United States District Court, D. Delaware.
CENTERFORCE TECHNOLOGIES, INC.,
Plaintiff,
v.
AUSTIN LOGISTICS INC., Defendant.
**No. CIV. A. 99-243 MMS.**

March 10, 2000.
Patricia Smink Rogowski, Esquire, and Francis DiGiovanni, Esquire, Connolly, Bove, Lodge & Hutz LLP, Wilmington, Delaware; Of Counsel: William E. Wallace III, Esquire, Gregory S. Lewis, Esquire, Tyler R. Goodwyn, IV, Esquire, Margaret S. Izzo, Esquire, and Melvin L. Barnes, Jr., Esquire, of Morgan, Lewis & Bockius LLP, Washington, D.C.; Attorneys for Plaintiff.

Richard D. Kirk, Esquire, and Gretchen A. Bender, Esquire, of Morris, James, Hitchens & Williams LLP, Wilmington, Delaware; Of Counsel: Robert Neuner, Esquire, of Baker & Botts, L.L.P., New York, New York, Patrick O. Keel, Esquire, and Robert W. Holland, Esquire, Baker & Botts, L.L.P., Austin, Texas; Attorneys for Defendant.

MEMORANDUM OPINION

SCHWARTZ, Senior District J.

### I. Introduction

*1 CenterForce Technologies, Inc. ("CenterForce") is the owner by assignment of three patents relating to methods for optimizing telephone campaigns. Its U.S. Patent No. 5,436,965 (the '965 patent), filed on November 16, 1993 and entitled "Method and System for Optimization of Telephone Contact Campaigns," issued on July 25, 1995. CenterForce filed a continuation-in-part application of the '965 patent application on June 7, 1995, which resulted in the second patent, U.S. Patent No. 5,621,790 (the '790 patent), issued on April 15, 1997. On April 14, 1997, CenterForce filed a continuation of the '790

patent application, which resulted in the issuance of the third patent, U.S. Patent No. 5,889,799 (the '799 patent), on March 30, 1999.

CenterForce filed a complaint against Austin Logistics Inc. ("ALI") on April 13, 1999, alleging that ALI had infringed the '799 patent, that ALI engaged in false patent marking, and that ALI made false and misleading representations in violation of the Lanham Act, 15 U.S.C. § 1051, et seq. Docket Item ("D.I.") 1. ALI filed an answer and counterclaim on May 24, denying CenterForce's allegations and seeking a declaratory judgment that the '799 patent is invalid, unenforceable, and not infringed. D.I. 14. ALI subsequently amended its counterclaim to assert a Lanham Act claim against CenterForce. D.I. 46.

On October 26, 1999, CenterForce moved for leave to file an amended complaint. D.I. 80. In the amended complaint, CenterForce seeks to allege infringement of the '965 patent, and to add a claim for willful infringement of both the ' 799 and '965 patents. CenterForce also seeks recovery of treble damages. ALI opposes CenterForce's motion to amend. For the reasons set forth below, the Court will grant CenterForce's motion to amend the complaint.

### II. Factual Background

The three CenterForce patents describe methods and systems for enhancing telephone contact campaigns by scheduling calls based on probabilities of right party contact with the targeted individual in order to enhance the rate of correct party contact and operator productivity. CenterForce markets and sells its telephone scheduling systems under the name "Optimizer," to, for example, debt collection and telemarketing firms.

ALI is also in the business of selling call optimization systems. ALI markets its "CallTech"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

**(Cite as: 2000 WL 652943 (D.Del.))**

system, previously known as "Stalker," in competition with CenterForce's Optimizer system.

CenterForce's president and chief operating officer, Robert F. Kelly, learned of the Stalker system as early as November 1994 when he was employed by EIS International. Kelly had received two documents, a facsimile of a brochure cover or data sheet describing Stalker and a two-page general product overview. D.I. 91, at B-9-11. Early in 1995, Kelly met with representatives of ALI to discuss ALI's product development generally, but "no technical specifics" were discussed. *Id.* at B-15.

In July 1995, representatives of CenterForce, then known as Automated Systems and Programming, Inc. ("ASPI"), obtained a copy of a Stalker brochure at a trade show. *Id.* at B-23. By a letter dated July 28, 1995, CenterForce's attorney wrote to ALI stating that the Stalker system as described in the brochure was "very similar to ASPI's [CenterForce's] Campaign Optimizer product." *Id* . at B-25. The letter went on to assert that "important aspects of the Campaign Optimizer are protected by the ['965 patent]" and that CenterForce had another patent application pending. *Id.* The letter closed with a warning that "ASPI [CenterForce] intends to enforce its patent rights vigorously and will not license potential competitors such as ALI. ALI should ensure that its products do not incorporate ASPI's [CenterForce's] patented technology." *Id.*

*2 ALI's attorney responded in a letter dated October 12, 1995 asserting that "the ALI system cannot be considered as conflicting with [the] 965 Patent." *Id.* at B-34. The letter stated in pertinent part:

Although ALI's scheduling system is proprietary and I can, therefore, not disclose to you specifically what ALI's system does, I can set forth for you generally what the ALI system does not do relative to your client's 965 Patent. First, the ALI process does not prioritize accounts into relative priorities according to contact priority. The ALI system also does not allocate accounts in descending order of contact probability. Also, the ALI system does not create demographic profiles representative of contact probability.

*Id.* Enclosed with the letter were several pages of additional descriptive information including flow charts. *Id.* at B-36-43.

On January 30, 1996, CenterForce's attorney responded to the October 12, 1995 letter, acknowledging receipt of the materials describing Stalker and stating:

These materials, like the publicly-available information about the Stalker product that we reviewed earlier, suggest that the Stalker infringes claims of ASPI's [CenterForce's] U.S. Patent No. 5,436,965. However, you decline to provide further detail on the operation of the product on the grounds that the information is proprietary, and we lack sufficient independent information about the product to form a definitive infringement conclusion. We must therefore rely on the representations in your October 12 letter that the product does not meet the claim limitations that you identified.

*Id.* at B-44. The letter concluded by stating that CenterForce would "let this matter rest" until its next patent issued or "until [CenterForce] receive [d] additional information indicating that the '965 patent is infringed." *Id.*

On June 4, 1996, ALI's attorney wrote to CenterForce's attorney, expressing concern that certain CenterForce representatives had been representing in the marketplace that ALI's CallTech product infringed a CenterForce patent and demanding that such representations cease. CenterForce responded by letter dated June 25, 1996, stating that "in light of ALI's published material and your May 10 letter, and since ALI has refused to provide sufficient information to permit us to perform a definitive infringement analysis, [CenterForce] remains concerned that ALI is infringing one or more claims of [the '965] patent. Accordingly, [CenterForce] has expressed its concerns to others." *Id.* at B-45.

By letter dated July 7, 1997, CenterForce's attorney informed ALI that the '790 patent recently had issued. *Id.* at B-59. The letter asserted, "[m]any of the claims of the '790 patent are directed to features of CenterForce's software that were not specifically

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

**(Cite as: 2000 WL 652943 (D.Del.))**

claimed in the '965 patent and which may be used in ALI's product. Other claims are directed to the same features as were claimed in the '965 patent and which CenterForce remains unsatisfied are not infringed by ALI's product." *Id.* In conclusion, CenterForce renewed its "demand that ALI explain why its CallTech product does not infringe CenterForce's patent rights." *Id.*

*3 At least one of CenterForce's salesmen continued during 1998 to make representations to customers that CenterForce had "three broad based patents" covering the Optimizer and, therefore, it was "virtually impossible for ALI to be selling the same type of product." *Id.* at B-47, 50, 57.

On September 1, 1998, ALI received a patent for its CallTech system, U.S. Patent No. 5,802,161 (the '161 patent). The patent specification references the use of "scorecards" and "characteristics" in the specification and description of the preferred embodiment. *Id.* at B-68.

On April 15, 1999, CenterForce's president wrote ALI's president, announcing the issuance of the '799 patent on March 30, 1999, and advising ALI that CenterForce had filed this suit for alleged infringement of the '799 patent. *Id.* at B-82. In August 1999 the parties exchanged responses to document requests and interrogatories, and in September and October 1999 the parties engaged in depositions.

On December 14-15, 1999, the court held a *Markman* [FN1] hearing regarding construction of disputed claim terms of the '799 patent.

> FN1. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996).

### III. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleadings by "leave of court" and that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997) (citing

*Glassman v. Computervision Corp.,* 90 F.3d 617, 622 (1st Cir.1996)). This Rule "embodies a liberal pleading policy of the federal rules." *Barkauskie v. Indian River School Dist.,* 951 F.Supp. 519, 527 (D.Del.1996). A policy of favoring decisions on the merits, rather than on the technicalities, underlies this Rule. *Foman,* 371 U.S. at 181-82. While a trial court has the discretion to grant or deny leave to amend, leave to amend should be freely granted, as the Rule requires, unless there is sufficient reason to deny leave. *See id.* at 182; *Burlington Coat Factory,* 114 F.3d at 1434. Sufficient reasons include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, failure to cure deficiencies in former amendments, and futility of amendment. *See Foman,* 371 U.S. at 182; *Burlington Coat Factory,* 114 F.3d at 1434. The Third Circuit Court of Appeals has further elaborated on the exceptions to the policy of liberally granting leave to amend, stating that "[t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d Cir.1984), *cert. denied,* 469 U.S. 1122 (1985); *see also Proctor & Gamble Co. v. Nabisco Brands, Inc.,* 125 F.R.D. 405, 409 (D.Del.1987) ("a showing of undue prejudice or unfair disadvantage to the nonmovant is required before delay provides an adequate basis for denial" (citations omitted)). Thus, " 'prejudice to the non-moving party is the touchstone for the denial of an amendment." ' *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir.1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir.1978)).

### IV. Discussion

*4 The Court now turns to consideration of the factors relevant [FN2] to determining whether to grant the motion to amend. [FN3]

> FN2. There is no indication, and ALI has made no argument, that CenterForce's proposed amendments would be futile or that, by this amendment, CenterForce

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

**(Cite as: 2000 WL 652943 (D.Del.))**

seeks to cure deficiencies it failed to make in former amendments. Therefore, the Court will not further consider these factors.

FN3. As an initial matter, ALI urges that CenterForce's motion should be denied because it is not supported by any evidence, particularly affidavits of a CenterForce witness to support the assertions in the motion to amend about what CenterForce knew and when it knew it. In *Barkauskie,* 951 F.Supp. at 527-28, this Court found a letter from the plaintiff's treating psychiatrist supported her motion to amend her complaint. However, the Court knows of no authority that would require the filing of an affidavit to support a motion to amend. Moreover, as CenterForce points out, because the depositions which gave CenterForce comfort in filing the motion to amend were designated by ALI as "Attorneys Eyes Only," CenterForce's counsel could not show or discuss the contents of these depositions with CenterForce executives.

A. Undue Delay

Delay in of itself will not serve as a basis for denying a motion to amend unless the defendant is prejudiced. *See Proctor & Gamble Co.,* 125 F.R.D. at 409; *Jenn-Air Products Co., Inc. v. Penn Ventilator, Inc.,* 283 F.Supp. 591, 594 (E.D.Pa.1968). However, "[b]ecause ... a showing of long delay may ameliorate the degree of prejudice which a nonmovant must establish in order to defeat the proposed amendment," the Court will address the parties contentions regarding when CenterForce was in possession of sufficient information upon which to base a claim of infringement of the '965 patent. *Proctor & Gamble Co.,* 125 F.R.D. at 410.

CenterForce asserts that it did not unduly delay amending the complaint to include infringement of the '965 patent, but rather quickly sought to amend when it received sufficient evidence of infringement

through discovery in this case. CenterForce contends that it had concerns as early as 1995 that ALI's Stalker system, the predecessor to CallTech, infringed CenterForce's '965 patent and conveyed those concerns to ALI. D.I. 91, at B-44 & -45. However, CenterForce asserts it did not file and could not have filed a claim against ALI for infringement of the '965 patent earlier because, based on publicly available information about the Stalker product, ALI's refusal to provide additional product information on the ground such information was proprietary, and ALI's representations regarding the differences between the two products, *id.* at B-34, CenterForce could not form a definitive conclusion as to whether the product infringed the '965 patent. *Id.* at B-44 & 45. CenterForce maintains that it obtained sufficient information to form a good faith belief that ALI's products infringed the '965 patent through discovery in this case relating to the '799 infringement claim. In particular, CenterForce contends that, among the 30,000 pages of documents produced by ALI in August 1999, four technical documents relating to CallTech evidenced a possibility that ALI's CallTech infringed the '965 patent. CenterForce asserts it was not until October 4-8, 1999, however, during the depositions of ALI's President, Alexander N. Svoronos, and Vice-President, Daniel N. Duncan, that it received sufficient information regarding the functionality of the CallTech product, which furthered its understanding of the documents produced in August, to enable it to determine that CallTech infringed the '965 patent. In particular, CenterForce contends that CallTech infringes independent claim 4 and dependent claims 5 and 7 of the '965 patent, which involve the creation and use of a "demographic profile" representative of right party contact. Also after these depositions, CenterForce updated its claim chart regarding the '799 patent to assert that claim 9, which also references "demographic profile," is also infringed.

**\*5** ALI counters that CenterForce unduly delayed in bringing its claim for infringement of the '965 patent because it had the necessary information to make the infringement determination prior to filing the original complaint. In particular, ALI contends that the information CenterForce claims to have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

**(Cite as: 2000 WL 652943 (D.Del.))**

learned in discovery was already known to CenterForce through the following materials: (1) brochures on the Stalker system given to Robert Kelly in 1994; (2) a brochure on CallTech obtained by CenterForce at a trade show in 1995; (3) the October 12, 1995 letter from ALI's counsel accompanied by a product description and flow charts; and (4) ALI's '161 patent. ALI maintains these materials indicated that its system used "scorecards" and "characteristics" to determine right party contact probabilities and that CenterForce should have been well aware that the scorecards could be determined based on characteristics that included demographic data representative of right party contact.

"The issue of undue delay is inherently ambiguous. Any consideration of it frequently necessitates an inquiry into the applicability of Rule 11 [of the Federal Rules of Civil Procedure] and the incidental issues of dilatory motive, unfair surprise or bad faith. It is difficult, even through the gift of hindsight, for the Court to determine precisely when counsel possessed sufficient information upon which to base an amendment." *Proctor & Gamble Co* ., 125 F.R.D. at 411. Rule 11 mandates that upon signing a pleading, an attorney is "certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances," the claims and allegations therein are well grounded in fact and warranted by law. Fed.R.Civ.P. 11(b). CenterForce contends that it was following the requirements of Rule 11 on advice of counsel by waiting for the discovery process to reveal whether or not there was sufficient basis to assert a claim that CallTech infringed the '965 patent.

In light of Rule 11's mandate, the Court cannot conclude that CenterForce unduly delayed asserting a claim for infringement of the '965 patent. Here, correspondence between attorneys for ALI and CenterForce, beginning as early as 1995, indicates a consistent position by CenterForce that it was concerned that ALI's product infringed the '965 patent, but that it did not have sufficient information to make a definitive infringement interpretation. ALI refused CenterForce's requests for additional

information on its product, citing its proprietary nature. ALI also asserted that its product did not infringe the '965 patent, citing differences, including a representation in the October 12, 1995 letter that "the ALI system does not create demographic profiles representative of contact probability." B-34. Moreover, as far as the Court can determine, the brochures and other information available to CenterForce, including ALI's '161 patent, while indicating that the Stalker and CallTech systems used "scorecards" and "characteristics," do not explicitly reference use of demographic information in calculating contact probabilities. ALI argues that anyone with any sort of expertise in the credit collection business would understand that a credit scoring system, like ALI's product, necessary used demographic data. D.I. 134, Transcript 2/2/00, at 27-29. However, in light of the fact that ALI was clearly on notice of CenterForce's position that it did not have sufficient information to make a definitive infringement analysis, ALI's refusal to provide additional information, and ALI's explicit representation that its product did not create demographic profiles, the Court concludes CenterForce did not unduly delay in asserting the claim for infringement of the '965 patent. [FN4]

> FN4. ALI cites *DRR, L.L.C. v. Sears, Roebuck & Co.,* 171 F.R.D. 162 (D.Del.1997) to support its argument that CenterForce unduly delayed in asserting a claim for infringement of the '965 patent. The Court finds *DRR* to be distinguishable from the present case. In *DRR,* of primary importance to the court's finding of undue delay and undue prejudice was the fact that the plaintiff sought leave to amend the complaint to add a new legal theory after summary judgment had been granted, more than two and one-half years after the original complaint was filed. *Id.* at 167-68. In the present case, by contrast, fact discovery has yet to close and there have been no determinations on the merits. Moreover, in *DRR,* unlike the present case, the plaintiff offered no explanation for its failure to assert the new legal theory before summary judgment was entered against it.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 6

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

**(Cite as: 2000 WL 652943 (D.Del.))**

*Id.* at 167.

B. Undue Prejudice

*6 CenterForce contends the proposed amendment would not be prejudicial to ALI because the '965 patent is the grandparent of the '799 patent and the claims of the two patents are substantially similar. CenterForce asserts the addition of the '965 patent would not introduce any new claim terms, that extensive discovery has been taken already on the '965 patent, and, therefore, that little additional discovery will be required. Finally, CenterForce maintains it would be preferable for all concerned to dispose of the '965 patent infringement claims in one proceeding, rather than forcing CenterForce to file a separate lawsuit, given the substantial similarity between the patents, the claims involve the same infringing product, and the substantial overlap in discovery.

ALI maintains that permitting amendment of the complaint would unduly prejudice ALI because the additional claims and the additional defenses to such claims would necessitate additional discovery regarding the '965 patent and claim terms. ALI further asserts that it would have excellent grounds for defending the new claim on the basis of laches and equitable estoppel. Although ALI may have affirmative defenses to the '965 infringement claim based upon the doctrine of estoppel and laches, this can only be determined after adjudication on the merits including the required factual findings regarding the elements of these defenses. *See Jenn-Air Products Co., Inc.,* 283 F.Supp. at 594. In addition, ALI may need to conduct additional discovery related to these defenses, as well as the defense of advice of counsel to the willful infringement claim that CenterForce seeks to add.

" 'Prejudice' for the purpose of Rule 15(a) does not concern potential prejudice resulting from the nature of the claims sought to be added; it concerns only the prejudice resulting from the fact of adding new claims at a late date." *Barkauskie,* 951 F.Supp. at 528. While the Court agrees with ALI that some additional discovery will be needed, the Court does not believe this need for additional discovery

creates "undue prejudice" within the meaning of *Foman,* 371 U.S. at 182. *See id.* As was the case in *Barkauskie,* a trial date has not been set in this case, and defendants will be able to conduct discovery with respect to the additional claims and defenses. *See id.* Moreover, prejudice to ALI is diminished because the claims relate to the same product, the patents are substantially similar, and significant discovery regarding the '965 patent has been conducted already in this litigation.

ALI also maintains that any delay of the case by extending scheduling order deadlines would unduly prejudice ALI because it would extend CenterForce's ability to use this litigation "as a club against ALI in the marketplace." D.I. 90, at 14. This argument is not persuasive. Were this Court to deny CenterForce's motion to amend the complaint, CenterForce would be entitled to file a separate suit for infringement of the '965 patent (and would then, presumably, have a very good argument for consolidation of that action with this one). It would seem that, were the Court to deny the motion to amend and CenterForce were to file a separate suit, as it asserts it would, it would extend even longer CenterForce's ability to use infringement litigation "as a club in the marketplace against ALI." ALI counters that resolution of the '799 claim will essentially end the litigation for all practical purposes . [FN5] At this point, however, the Court has no way of knowing whether this is correct. Therefore, because discovery has not yet closed, the '965 patent is closely related to the '799 patent, both claims involve the same product, the trial of this case has not been set, and, if CenterForce's instant motion is denied, CenterForce could, and represents it would, institute a separate action against ALI, the Court concludes ALI will not be unduly prejudiced by allowing the motion to amend.

> FN5. At the hearing on the motion to amend, ALI also put forth the following argument: ALI asserts that the claims of the '799 patent are drawn more broadly than those of the '965 patent and, therefore, if CenterForce were to prevail on its claim for infringement of the '799 patent, it would get the same relief as it would under

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 7

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

**(Cite as: 2000 WL 652943 (D.Del.))**

the '965 patent because CenterForce is claiming the benefit of the earlier filing date. D.I. 134, at 41. However, if CenterForce were to prevail on a claim for infringement of the '965 patent, which issued in 1995, it would appear to be eligible for four additional years of damages than it would be were it to prevail only on the '799 patent, which issued in 1999. *See generally* 5 DONALD S. CHISUM, CHISUM ON PATENTS § 16.04[2]-[3] (1999) (liability and remedy for infringing acts only during term of patent, which begins when patent issues) and cases cited therein.

C. Bad Faith or Dilatory Motive

*7 Finally, ALI makes two arguments that CenterForce has brought this motion in bad faith. First, ALI contends that CenterForce's conduct in the marketplace, in particular assertions by sales representatives that ALI's CallTech system infringes the '965 and '799 patents, demonstrates CenterForce's bad faith. Second, ALI asserts CenterForce is adding the claim for infringement of the '965 patent because it has come to realize that its case regarding the '799 patent is weak.

Regarding the representations of the CenterForce sales representative that ALI's system may infringe CenterForce's patents, the Court finds it hard to relate this action to any bad faith in bringing the motion to amend. ALI is essentially arguing their Lanham Act claim against CenterForce as their argument for bad faith, and the ultimate success of the parties' claims on the merits is not properly before the Court at this procedural juncture. *See Proctor & Gamble Co.,* 125 F.R.D. at 412. Moreover, in most instances, infringement litigation is a stronger "club" in the marketplace than a salesman's assertions that a competitor's products "may" violate CenterForce's patent rights. It follows it would make sense for CenterForce to assert its patent infringement claims as soon as possible, rather than delay.

Second, ALI argues that CenterForce is now

seeking to assert a claim for infringement of the grandparent '965 patent because it made some bad decisions during the course of the current lawsuit and that during the course of discovery, CenterForce has been educated as to the weakness of its case regarding the '799 patent. D.I. 90, at 15; D.I. 134, at 39, 43-44. The success or failure of CenterForce's original claims is an issue for trial and cannot be decided on a motion to amend. *See Proctor & Gamble Co.,* 125 F.R.D. at 412. Other than ALI's bald assertions, the Court has no indication at this stage of the proceedings that the original claims are unsupported. *See id.*

Finally, there is no evidence to indicate that motion to amend is simply a delaying tactic by CenterForce. CenterForce has argued that there is no need to change the current schedule, that very little, if any additional discovery would be necessitated by the additional claims. In sum, the Court cannot conclude there was bad faith or dilatory motive on the part of CenterForce.

V. Conclusion

The Court concludes that CenterForce did not unduly delay in asserting a claim for infringement of the '965 patent, nor was the motion to amend brought in bad faith. In view of the fact that discovery has not yet closed, the '965 patent is closely related to the '799 patent, both claims involve the same product, and the trial of this case has not been set and ALI will have time to prepare its defenses to these new claims before the case is scheduled for trial, ALI will not be unduly prejudiced by granting the motion to amend. "Moreover, if plaintiff's motion were denied[,] ... a separate action against the defendant could be instituted[,] and, in the absence of creating undue complications at trial, it is clearly preferable to dispose of all the contentions between these parties in one proceeding." *Jenn-Air Products Co.,* 283 F.Supp. at 594. Therefore, an order will be issued granting CenterForce's motion to amend and addressing case management concerns.

Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2000 WL 652943 (D.Del.), 55 U.S.P.Q.2d 1124
**(Cite as: 2000 WL 652943 (D.Del.))**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

Slip Copy                                                                                                      Page 1

Slip Copy, 2005 WL 1745680 (D.Del.)

**(Cite as: 2005 WL 1745680 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
MARTEK BIOSCIENCES CORPORATION
Plaintiff,
v.
NUTRINOVA INC. and Nutrinova Nutrition
Specialities & Food Ingredients GmbH
Defendants.
**No. Civ.A.03-896 GMS.**

July 19, 2005.
Steven J. Balick, Ashby & Geddes, Wilmington,
DE, for Plaintiff.

George Pazuniak, Oleh V. Bilynsky, Connolly,
Bove, Lodge & Hutz, Wilmington, DE, for
Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 The plaintiff, Martek Biosciences Corporation
("Martek"), filed the above-captioned patent
infringement action against Nutrinova Inc. and
Nutrinova Nutrition Specialties & Food Ingredients
GMBH (collectively, "Nutrinova") on September
23, 2003.

Presently before the court is Martek's motion to
amend its complaint to allege infringement of U.S.
Patent Nos. 5,340,594 (the " '594 patent") and
5,698,244 (the " '244 patent") by an additional
defendant, TL Administration Corporation ("TL").
For the following reasons, the court will grant the
motion.

II. BACKGROUND

Martek is a Delaware Corporation that develops
and sells products from microalgae, including
nutritional fatty acids such as the omega-3 fatty
acid, docosahexaenoic acid ("DHA"). This case
involves Martek's patents relating to DHA. DHA is
a major and essential structural fatty acid, necessary
for the development of organs including the eye
retina, the brain, and the heart. The human body
produces DHA in only limited quantities, creating a
need in the medical science community to find
alternate sources of DHA, or develop processes to
produce it. Martek recognized this need and
developed microalgae processes to make DHA, and
products relating to its processes. According to
Martek, its patent portfolio consists of nearly fifty
United States patents, including many directed to its
DHA products.

Nutrinova is a Delaware Corporation that
developed a microalgae process to make DHA, and
currently markets its product under the brand name
Nutrinova® DHA. [FN1] After Nurtinova began
marketing Nutrinova® DHA, Martek initiated
discussions with Nutrinova regarding its potentially
infringing activities. On May 27, 2003, Martek sent
an email to Nutrinova, citing its patent portfolio and
requesting to discuss the situation. (D.I.13, Ex. 2.)
Nutrinova replied, requesting information regarding
the patents and claims that Martek believed
Nutrinova was potentially infringing. On June 18,
2003, Martek responded, via email, citing eighteen
specific patents, including the '594 and '244 patents,
that it believed were relevant to the discussions. (*Id.*
Ex. 4.) Nutrinova reviewed the list and concluded
that the patents offered by Martek were either not
infringed or were invalid. Nutrinova then requested
a meeting with Martek to discuss the situation
further. (*Id.* Ex. 5.) According to Martek, the parties
were unable to amicably settle the matter. On
September 23, 2003, Martek filed its complaint.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 1745680 (D.Del.)

**(Cite as: 2005 WL 1745680 (D.Del.))**

FN1. Nutrinova previously had marketed its DHA product under the brand name DHAActive0, which is the name used in its Answer and Counterclaim. The court, however, will refer to Nutrinova's product as Nutrinova® DHA, because it is the brand name under which it currently markets its DHA product.

On October 19, 2004, Nutrinova filed a First Amended Answer and Counterclaims (D.I.23). In Count III of its counterclaims, Nutrinova requests the court to declare that Nutrinova® DHA, and the process for creating it, do not "infringe or fall within the scope of any valid and enforceable claim" of Martek's eighteen allegedly relevant patents, including the '594 and '244 patents. (*Id.* ¶¶ 53-56.)

On November 2, 2004, Martek filed a Reply and Counter-counterclaim (D.I.24). Martek's counter-counterclaim alleges that Nutrinova is infringing, actively inducing infringement of, and/or contributorily infringing the '594 and '244 patents. (*Id.* ¶¶ 63-68.)

*2 On January 12, 2005, Martek filed the motion to amend that is presently before the court. In its motion, Martek alleges that it is proper to add TL as a defendant. Martek filed its motion after Nutrinova issued a press release, on July 12, 2004, stating that it had "teamed up" with TL, in spring 2004, to produce and launch multi-vitamin drops for infants containing Nutrinova® DHA. (D.I. 29, at 3; Ex. A.) According to Martek, TL purchases Nutrinova® DHA from Nutrinova and then uses the DHA to produce its own product, TwinLab Infant Care Multi-Vitamin Drops with DHA ("Infant Care"), which it sells to third parties, thereby infringing Martek's patents. (D.I. 28 Ex. 2 ¶ 19; D.I. 35, at 2.)

III. DISCUSSION

Martek seeks to amend its complaint to add TL as a party to the case. Martek contends that its amendment is proper because it addresses a matter that surfaced after it filed the original complaint. (D.I. 29, at 2.) Martek further asserts that the

motion is brought in good faith, timely, non-futile, and will not prejudice Nutrinova. (*Id.*)

Conversely, Nutrinova contends that there is no viable reason for "dragging" TL into the litigation, as its allegedly infringing activity consists of a single purchase of the allegedly infringing product from Nutrinova. (D.I. 31, at 1.) Nutrinova further contends that Martek can recover all of its alleged damages resulting from the alleged infringement, including the single purchase, from Nutrinova itself. (*Id.* at 2-3.)

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). "This liberal amendment philosophy limits the district court's discretion to deny leave to amend." *Adams v. Gould, Inc.* 739 F.2d 858, 864 (3d Cir.1984). Under the Supreme Court's holding in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), "[i]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and/or] futility of amendment ... the leave sought should, as the rule requires, be 'freely given.' ' 371 U.S. at 182; *see In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997).

In the present case, Nutrinova appears to assert only that Martek's motion to amend has been filed in bad faith, as part of a tactic by Martek to intimidate Nutrinova's customers and potential customers. Nutrinova, however, presents no evidence to substantiate its allegation, and the court is not persuaded that Martek has filed its motion in bad faith. First, the court finds that Martek's choice to pursue litigation against a company that purchases an allegedly infringing product and uses it to produce its own, different, allegedly infringing product, is well within its rights under the patent laws. *See* 35 U.S.C. § 271(a) ("whoever without

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2005 WL 1745680 (D.Del.)

**(Cite as: 2005 WL 1745680 (D.Del.))**

authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.") Therefore, it is not bad faith to sue all alleged infringers. Moreover, Nutrinova assumes that the damages assessed against it and TL, in the event that Martek prevails, will be equivalent. Nutrinova's assumption is incorrect because Martek's claims against TL, as set forth in the amended complaint, are different than its claims against Nutrinova. [FN2] (D.I. 28 Ex. 2.) Thus, an injunction against Nutrinova that prohibits it from selling Nutrinova® DHA to customers such as TL will not prevent TL from selling Infant Care, which contains the Nutrinova® DHA that it already possesses, to its customers.

> FN2. Nutrinova continues to mischaracterize TL's alleged infringement as the purchase of Nutrinova® DHA. It is TL's sale of Infant Care, however, not its purchase of Nutrinova® DHA which Martek alleges infringes its patents.

*3 Further, as previously discussed, the press release announcing that Nutrinova and TL had "teamed up" was not published until July 12, 2004, more than nine months after Martek had filed its initial complaint. (D.I. 29 at 3; Ex. A.) Once the press release was published, Martek filed its motion to amend after a reasonable period, during which it attempted, unsuccessfully, to negotiate with Nutrinova to add TL by mutual consent of the parties. (*Id.* at 1.) Thus, the time lapse between the press release date and Martek's motion to amend also weighs against a finding of bad faith.

Lastly, although the court issued a Scheduling Order (D.I.38) on March 10, 2005, Martek's motion was filed and completely briefed before the Scheduling Order issued. Even under the Scheduling Order, however, the court observes that Martek filed its motion more than six months before the anticipated cutoff date for amended pleadings, July 25, 2005, and more than two months before the cutoff date for joinder, March 25, 2005. [FN3] Under these circumstances, the court cannot agree

with Nutrinova that Martek's counterclaim was filed in bad faith. Accordingly, the court will grant Martek's motion to amend. [FN4]

> FN3. Additionally, the court finds that there would be no prejudice to Nutrinova or TL because fact discovery does not close until January 27, 2006 and the trial is scheduled for October 10, 2006. This timeline should give both TL and Nutrinova ample time to complete discovery and prepare for trial.

> FN4. Nutrinova also contends that even if the court grants Martek's motion to amend and allows it to add TL as a defendant, the case against TL should be severed and/or stayed. The court disagrees and finds that Nutrinova's request is premature at this stage of the proceedings because TL has not yet been served with the amended complaint. The court, therefore, will deny Nutrinova's request at this time.

### ORDER
For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. Martek's Motion For Leave to Amend Its Complaint (D.I.28) is GRANTED.
2. Martek's First Amended Complaint attached to the Motion to Amend (D.I. 28 Ex. 2, 3) is deemed filed.
3. Nutrinova's request to stay and/or sever is DENIED without prejudice.

Slip Copy, 2005 WL 1745680 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.