# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 575 7291
302 425 3012 FAX
jblumenfeld@mnat.com

November 4, 2005

**BY ELECTRONIC FILING**

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE  19801

    Re:   *Intel Corporation v. AmberWave Systems Corporation*
            C.A. No. 05-301-KAJ

Dear Judge Jordan:

    We write on behalf of AmberWave Systems Corporation in connection with the telephone conference scheduled for November 8 at 3:30 p.m. The parties have been unable to agree on two provisions of a proposed protective order (the "Protective Order") and have decided to submit simultaneous letters regarding their positions, without replies.

    The points of disagreement are in paragraph 6 of the negotiated form of the Protective Order, which relates to a prosecution bar.[1] The parties have agreed that individuals with access to information subject to the highest degree of confidentiality—Attorneys' Eyes Only Technical Material—should be subject to a bar that prohibits substantive participation in the prosecution of certain patents and patent applications. They disagree, however, on two elements of the prosecution bar. As the party seeking the prosecution bar, Intel has the burden of proving that good cause exists for the more stringent version of the prosecution bar it is proposing. *GlenMede Trust Co. v. Thompson*, 56 F. 3d 476, 483 (3rd Cir. 1995).

### Independent Advisors

    AmberWave proposes that the prosecution bar should not extend to expert witnesses and consultants (defined in the Protective Order as "Independent Advisors") as long as they work for

---

[1]   A copy of the current draft of the Protective Order is attached to this letter. We have included AmberWave and Intel's alternative language for paragraph 6.

a non-profit educational or research institution (such as a university). Intel maintains that university researchers who serve as Independent Advisors must agree to play no role in prosecution of applications, including the drafting of the patent applications for their own inventions.

The realities of academic research make it impossible for most university professors to agree to Intel's terms. University professors involved in scientific research are normally required to participate in the preparation and prosecution of patent applications based on their research. For example, universities have an obligation to file patents based on inventions derived from federally-funded research, if the university elects to retain title to the invention. 35 U.S.C. § 202(c)(3); 37 C.F.R. § 401.14(c)(3). In addition, regardless of federal funding, there are other circumstances in which universities require their professors to help the institution seek patent protection on research as a condition of employment.[2]

Intel's proposed rule would effectively prevent university professors involved in ongoing research—the very individuals who may be best able to give a reasoned and impartial assessment of issues in the case—from serving as Independent Advisors. The burden of Intel's proposed rule would fall disproportionately on AmberWave. Most of the Attorneys' Eyes Only Technical Material produced in this matter will be Intel documents describing the design and fabrication of its microprocessors. AmberWave requires the assistance of highly qualified Independent Advisors to assist in the analysis of these critical technical materials, which likely will be essential to establishing AmberWave's infringement case. If the Court were to adopt Intel's proposed rule, AmberWave would be relegated to retaining experts who have no pending patent applications in the field of semiconductor fabrication or design—and no ongoing research that could result in patentable inventions in this field. That rule would prevent AmberWave from retaining the most highly qualified experts.

Intel, of course, is in a much different position. Intel does not need expert assistance to help it understand its own technical materials. Moreover, the questions on which Intel has the burden of proof—invalidity and unenforceability—likely will not require the use of highly confidential AmberWave technical materials.

Prosecution bars are normally applied to counsel who prosecute patent applications for competitors. The concerns that arise with respect to the potential misuse of confidential technical information by patent prosecution counsel have no meaningful application to academic researchers. Unlike an attorney who prosecutes patent applications on behalf of a competitor to Intel, a university professor is not in the business of drafting patent applications that are intended to provide an advantage against Intel in the marketplace. University professors are focused on

---

[2] *See, e.g.,* MIT Inventions and Proprietary Information Agreement, http://web.mit.edu/tlo/www/propinfo.html; University of Colorado Intellectual Property Policy, http://www.cusys.edu/regents/Policies/Policy5J.htm.

conducting cutting-edge research—not drafting patent claims that cover existing technologies. In addition, unlike a patent attorney, a university professor does not ordinarily play a lead role in patent prosecution, thus making the inadvertent misuse of Intel information quite unlikely.

It is the actual relationships and activities of a particular individual that should determine that person's access to confidential information. *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1469 (Fed Cir. 1984); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, Case No. 03-484-KAJ, 2004 WL 1196965 *2 (D. Del. 2004). Intel's position, which effectively prevents any university professor involved in ongoing research from serving as an Independent Advisor in this case, is inconsistent with this precedent. The Protective Order requires AmberWave to disclose the identity of its Independent Advisors before disclosing confidential information to them, and allows Intel to challenge the proposed disclosure if there is an unacceptable risk that an Independent Advisor will not comply with the Protective Order. ¶ 7. This procedure allows the Court to make individualized decisions based on the person involved, while at the same time being responsive to Intel's concerns.

### Reexamination Proceedings

Any person, including a patent holder, can request the Patent and Trademark Office to reexamine an issued patent based on certain types of prior art. 37 C.F.R. § 1.510(a). Intel's counsel has, in a previous draft of the Protective Order, acknowledged that it is appropriate to allow counsel of record to have some level of participation in certain reexamination proceedings. Intel's counsel, however, has not articulated exactly what level of participation it is willing to accept.

AmberWave proposes that counsel of record for a party be allowed to participate in the reexamination of that party's patents, as long as three criteria are met: (1) the patent is the subject of a litigation between Intel and AmberWave; (2) counsel does not participate in the drafting of any claims or the specification; (3) the reexamination is not filed by the party the counsel represents, or a third party acting at the request of the party.

Counsel of record for a party will have extensive knowledge of the issues involving the validity of the patents in litigation between Intel and AmberWave. It would be a significant burden on a party if it were not able to rely on this knowledge in the reexamination proceeding. The party would need to hire new lawyers to acquire the knowledge of counsel of record on the question of validity. Indeed, Intel could significantly increase AmberWave's costs by seeking a reexamination of the patents in litigation—thereby requiring AmberWave to have two sets of lawyers handling the two proceedings without being able to communicate with one another.

Respectfully,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

The Honorable Kent A. Jordan
November 4, 2005
Page 4

JBB/bls
Attachment

cc:    Peter T. Dalleo, Clerk (By Hand)
        Josy W. Ingersoll, Esquire (By Hand)
        David I. Gindler, Esquire (By Fax)
        George M. Newcombe, Esquire (By Fax)