# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 575 7291
302 425 3012 Fax
jblumenfeld@mnat.com

December 13, 2005

**BY ELECTRONIC FILING**
The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

      Re:    *Intel Corp. v. AmberWave Systems Corp.*, C.A. No. 05-301 (KAJ)

Dear Judge Jordan:

      We write on behalf of AmberWave in connection with the telephonic hearing scheduled for 3:30 p.m. on December 15, 2005. There are two principal discovery issues that AmberWave would like to address at the hearing.

      **A.**    **Intel's Refusal To Provide Discovery Relating To The Use of Its Strained Silicon Process In All Products**

      Strained silicon enhances the performance of microprocessors. AmberWave's '292 patent teaches a method of avoiding the presence of impurities in strained silicon. Intel uses this technology as part of its method of creating strain in its microprocessors. ("Intel's Strained Silicon Process.")

      Every few years Intel introduces a new group of features in its products—a "technology node." Intel is currently selling products using its 90 nm node. Intel reports that its 65 nm node products will ship by the end of this month, and that its 45 nm products will be available in 2007 (Ex. A).

      AmberWave maintains that Intel's Strained Silicon Process infringes the '292 patent, and therefore seeks discovery on all uses of this process in Intel's 90 nm, 65 nm, and 45 nm nodes. Intel has limited all of its discovery responses to commercially-available 90 nm products, and has refused to produce any documents or provide any interrogatory answers regarding the use of that process in its 65 nm and 45 nm nodes (*See, e.g.*, Ex. B at 47).

      Making, using, offering to sell, and selling are separate acts of infringement. 35 U.S.C. § 271(a). "It is beyond argument that performance of only *one* of the three enumerated acts [making, using, selling] is patent infringement." *Roche Prods., Inc. v. Bolar Pharm. Co., Inc.*, 733 F.2d 858, 861 (Fed. Cir. 1984). Intel's use of its Strained Silicon Process is an act of

The Honorable Kent A. Jordan
December 13, 2005
Page 2

infringement, regardless of whether the devices produced are currently on the market. Indeed, courts consistently recognize that pre-commercial manufacture or use is an act of infringement. *See id.* (allowing infringement claim based on research and noting that "patentee does not need to have *any* evidence of damages or lost sales to bring an infringement action"); *Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000) (precommercial use of patented method is infringement); *Ballard Med. Prods. v. Concord Labs., Inc.*, 700 F. Supp. 796, 799 (D. Del. 1988) ("The manufacture of the prototype…constitutes an alleged 'making' thus arguably infringing plaintiff's patent ….").

Discovery regarding Intel's 65 nm and 45 nm products is directly relevant to claims brought by both AmberWave and Intel. AmberWave's interrogatory responses confirm that Intel's 90, 65, and 45 nm products produced using Intel's Strained Silicon Process are all accused of infringement (Ex. C at 6-7). In addition, Intel's Supplemental Complaint does not make any distinction between commercial and pre-commercial products in the relief requested in its declaratory judgment claim (D.I. 62 at ¶¶ 13-16). Finally, evidence that Intel is using the '292 patent in future products establishes the technology's value, which is relevant to damages.

AmberWave is an engineering firm that generates revenue by providing design and technical consulting services related to the development of strained silicon technology. As a result, Intel's pre-commercial development activities that infringe the '292 patent are just as relevant to AmberWave's business as the commercial use of the invention.

### B. Intel's Failure to Provide Meaningful Responses to Contention Interrogatories

The Court's Scheduling Order encourages the early use of contention interrogatories (D.I. 25 at ¶ 3(d)). AmberWave's contention interrogatories to Intel fall into two categories: (1) facts that support Intel's affirmative defenses of invalidity, unclean hands, and estoppel (Interrogatory Nos. 1-3); and (2) facts that support Intel's claim that it does not infringe the '292 patent (Interrogatory Nos. 4-7). Although Intel filed its complaint against AmberWave almost seven months ago, and the parties are now three and a half months into discovery, Intel has not provided meaningful answers to these interrogatories.[1]

Invalidity Contentions: Interrogatory No. 1 asks Intel to identify the facts that support its affirmative defenses that the '292 patent is invalid (*See* Intel Reply to Counterclaim, D.I. 14 at 3-4, Third-Fifth Defenses). Intel responded by reciting the legal definitions of invalidity based on anticipation, obviousness, non-enablement, and indefiniteness. The only "facts" that Intel provides to support its contentions are a list of 333 prior art references. Intel's response fails to: (1) identify which disclosures in its 333 cited references support Intel's contentions of anticipation and obviousness, and what other facts support these contentions; (2) provide any explanation for its non-enablement and indefiniteness defenses; and (3) provide any information

---

[1] Intel also failed to provide any meaningful identification of the documents that support its contentions, and persons with knowledge of the contentions, as requested.

The Honorable Kent A. Jordan
December 13, 2005
Page 3

to support its affirmative defenses based on double patenting and improper naming of inventors (*See* D.I. 14 at 4, Fourth and Fifth Defenses).

Non-Infringement: Interrogatory No. 6 asks Intel to identify the facts that support its contention that it does not infringe any claim of the '292 patent. Intel's response simply copied sixteen phrases from the four independent claims of the '292 patent, and states that "the accused infringing products do not meet at least one or more" of the sixteen phrases (Ex. B at 50-51). Intel must provide a meaningful explanation of why the products and processes at issue in this case do not infringe these limitations.

Additionally, in Interrogatory No. 4, AmberWave asked Intel to provide its construction of the terms in the '292 patent that Intel cites as a basis for its non-infringement position.[2] Intel has refused to do so, despite the fact that it must have formed a contention on the meaning of these terms in order to maintain that it does not infringe them.

Estoppel: Intel's Seventh Affirmative Defense states that AmberWave's infringement claim "is barred in whole or part under principles of equity, including laches, prosecution laches, waiver and/or estoppel" (D.I. 14 at 4). AmberWave's Interrogatory No. 3 asks Intel to identify the facts that support this defense. Intel responded that it "cannot properly respond to this interrogatory until discovery has proceeded further" (Ex. B at 44). Intel should either disclose facts that support its defense, or withdraw it.

Unclean Hands: Intel's Sixth Affirmative Defense states that AmberWave's infringement claim is barred based on unclean hands (D.I. 14 at 4). Interrogatory No. 2 asked Intel to identify the facts that support this defense. Intel's response states only that unidentified '292 patent inventors failed to disclose unspecified prior art to the Patent Office (Ex. B at 43). If Intel seeks to maintain this defense, it should be required to provide a meaningful explanation of its basis.

We thank Your Honor for hearing the parties on these issues.

Respectfully,

/s/ *Jack B. Blumenfeld*

Jack B. Blumenfeld

Attachments

cc:  Peter T. Dalleo, Clerk (By Hand)
     Josy W. Ingersoll, Esquire (By Hand)
     George M. Newcombe, Esquire (By Fax)

---

[2] Interrogatory No. 4 originally requested that Intel provide a definition of all claim terms in the '292 patent because Intel's complaint sought a declaration of non-infringement on all claims. AmberWave subsequently made a written offer to limit the interrogatory to the terms Intel uses as a basis for its non-infringement position.