# EXHIBIT B
# PART 1 OF 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-301-KAJ |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Counterdefendant. | ) | |

## INTEL'S RESPONSES AND OBJECTIONS TO AMBERWAVE'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterdefendant Intel Corporation ("Intel") through its lead counsel Simpson Thacher & Bartlett LLP, hereby objects and responds to the First Set of Interrogatories ("Interrogatories"), propounded on August 29, 2005 by Defendant and Counterplaintiff AmberWave Systems Corporation ("AmberWave") as follows:

Intel's responses are based solely on the documents, facts and contentions known and available to Intel at this time. Intel has not completed its investigation of the facts and documents relating to this action and is only in the initial phases of discovery in this action.

Because Intel's investigation, research and analysis are ongoing in this case, it is very likely that additional documents, facts or contentions will be disclosed that will add meaning to already known documents, facts or contentions and/or possibly lead to additions, deletions or changes to these responses. Intel reserves its right to amend, modify or supplement the objections and answers stated herein. Intel further reserves its right to rely on any facts, documents or other evidence which may develop or come to Intel's attention at a later date. Intel also reserves the right to rely on expert testimony.

## GENERAL OBJECTIONS

Intel makes the following General Objections to the Interrogatories. Because these General Objections apply to each of the requests, they are for convenience set forth immediately below and may not be repeated in response to each specific interrogatory. The assertion of the same, similar, or additional objections in response to specific interrogatories does not waive any of Intel's General Objections. Intel reserves the right to amend or supplement these objections as may be appropriate.

1.    Intel objects to the Interrogatories to the extent that they are unduly burdensome, oppressive and/or vexatious.

2.    Intel objects to the Interrogatories to the extent that they are vague, ambiguous, or do not specify the information sought with sufficient particularity.

3.    Intel objects to the Interrogatories to the extent that they are overbroad, irrelevant, and/or purport to seek discovery unrelated to the claims or defenses asserted in the above-captioned action.

4.    Intel objects to the Interrogatories to the extent that they seek information that is publicly available, in the possession, custody or control of AmberWave or any person or

entity other than Intel, and is equally accessible to AmberWave.

5.      Intel objects to the Interrogatories to the extent that they seek, implicate or could be construed as seeking or implicating identification or disclosure of information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Any inadvertent disclosure of such information shall not be deemed a waiver of any applicable privilege.

6.      Intel objects to the Interrogatories to the extent that they seek the disclosure of information that reflects or discloses trade secrets, other confidential, financial or proprietary information of Intel or personal information that is protected by constitutional, statutory, common law or privacy rights. To the extent that Intel responds to these interrogatories by referring AmberWave to documents pursuant to Federal Rule of Civil Procedure 33(d), nothing herein shall affect in any way the confidentiality designations, if any, of those documents.

7.      Intel objects to the Interrogatories to the extent they seek a third party's confidential, trade secret or proprietary information. Intel will not provide such information without the third party's consent.

8.      Intel objects to the Interrogatories to the extent they call for a legal conclusion by virtue of their response. Requests of this nature are improper because any response is privileged under the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Such requests are also improper to the extent AmberWave seeks to elicit an admission from Intel, by virtue of Intel's response, as to the meaning of such legal terms.

9.      Intel objects to the Interrogatories to the extent they request

information relating to Intel products that AmberWave has not accused of infringing U.S. Patent No. 6,831,292 ("the '292 Patent") and/or products that Intel does not currently commercially sell. Such information is irrelevant to the present action.

10.     Intel objects to the definition of "AmberWave" because it is vague, ambiguous, overbroad and unduly burdensome and because requests made under said definition seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to this definition because it imposes a burden on Intel beyond the obligations contained in the Federal Rules of Civil Procedure and/or the Local Rules of Civil Practice and Procedure for the District of Delaware. Intel also objects to the definition of "AmberWave" because the terms "parent," "subsidiary," "division," "subdivision," "affiliated company," "licensee," "predecessor," "successor," "officers," "directors," "agents," "advertising agents," "servants," "employees," "attorneys" and "representatives" are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the term "persons or corporations in active concert or participation with, or acting or purporting to act on its (or their) behalf" because it is vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party.

11.     Intel objects to the definition of "Intel" because it is vague, ambiguous, overbroad and unduly burdensome (particularly with respect to the use of the word "former" and other references to any other parties or entities over whom Intel does not exercise control) and because requests made under said definition seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further

objects to this definition because it imposes a burden on Intel beyond the obligations contained in the Federal Rules of Civil Procedure and/or the Local Rules of Civil Practice and Procedure for the District of Delaware. Intel also objects to this definition to the extent it includes attorneys because it calls for information that is privileged, by virtue of the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel also objects to the definition of "Intel" because the terms "parent," "subsidiary," "division," "subdivision," "affiliated company," "licensee," "predecessor," "successor," "officers," "directors," "agents," "advertising agents," "servants," "employees" and "representatives" are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the term "persons or corporations in active concert or participation with, or acting or purporting to act on its (or their) behalf" because it is vague, ambiguous, overbroad, unduly burdensome and seeks information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party.

12.     Intel objects to the instructions regarding responding to interrogatories asking Intel to "identify" as overbroad, unduly burdensome, oppressive and/or vexatious.

13.     Intel objects to the Interrogatories to the extent they seek improperly to aggregate several separate and discrete interrogatories and exceed the limit of fifty interrogatories as agreed to by the parties and allowed by the Court.

## SPECIFIC OBJECTIONS AND ANSWERS

Subject to and without in any way waiving the foregoing objections, each of which is expressly incorporated into each of the individual answers below, Intel further responds to the Interrogatories as follows:

**INTERROGATORY NO 1:**

Identify all facts (including all DOCUMENTS) that support or contradict, and
identify all persons with knowledge of, INTEL's contention that the '292 PATENT is invalid.

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the General Objections, which are incorporated fully by reference
herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome
and compound. Intel also objects to the terms "all," "identify" and "persons with knowledge"
because the terms are vague, ambiguous, overbroad, unduly burdensome and/or seek information
that is not reasonably calculated to lead to the discovery of information relevant to the claims or
defenses of any party. Intel further objects to the term "invalid" because the term is vague,
ambiguous, overbroad, unduly burdensome and calls for a legal conclusion that is privileged
under the attorney-client privilege, the work-product doctrine and/or other judicially recognized
protections or privileges. Intel additionally objects to the term "invalid" to the extent it seeks to
elicit an admission from Intel, by virtue of Intel's response to this request, as to the meaning of
the term. Intel also objects to this interrogatory to the extent that it seeks information already in
AmberWave's possession, custody, or control or that AmberWave could ascertain or derive from
documents and other discovery that will be provided in connection with AmberWave's own
disclosures or in AmberWave's responses to Intel's document requests. Intel also objects to this
interrogatory to the extent it seeks information protected by the attorney-client privilege, the
work-product doctrine and/or other judicially recognized protections or privileges. Intel notes
that 35 U.S.C. § 282 does not require the disclosure of prior art until "at least thirty days before
trial." Through this interrogatory, AmberWave seeks the disclosure of prior art more than a year
before trial and before AmberWave has given any indication in this litigation as to how it intends

to read the claims of the '292 Patent. Accordingly, the interrogatory is premature. Intel further objects to this interrogatory because Intel will provide expert disclosures and depositions responsive to this interrogatory under the schedule established by the Court; AmberWave cannot force Intel to accelerate those disclosures by serving interrogatories. Intel further objects to this interrogatory because it includes no temporal limitation; Intel will respond to the interrogatory as of the date of this response and expressly reserves its right to supplement and/or amend its response as additional facts become known.

Subject to and without waiving the foregoing objections, Intel states that the '292 patent is invalid pursuant to 35 U.S.C. §102 because the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before any device or method purported to be described in the patent was invented by any applicant for the '292 Patent. Furthermore, any invention purported to be described by the '292 Patent was anticipated by one or more of the prior art references cited below. Moreover, the invention is invalid pursuant to 35 U.S.C. §103 because the differences between the subject matter of the '292 Patent and one or more pieces of prior art identified below are such that the subject matter of the '292 Patent would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter of the '292 Patent pertains. In addition, the '292 Patent is invalid because one skilled in the art could not make or use any invention purported to be described by the '292 Patent without undue experimentation. Moreover, the '292 Patent is invalid because one skilled in the art would not understand what is claimed when the patent is read in light of its specification. The documents that support the foregoing include, but are not limited to, the documents cited below. Intel's investigation of materials that support the invalidity arguments described in this response is ongoing and Intel

explicitly reserves the right to supplement and amend its response to this interrogatory at the time of, or prior to, the completion of its investigation. The "persons with knowledge" for the purposes of this response include, but are not limited to, the named inventors in the patents and/or the authors of the publications cited below.

1.    Masaharu Watanabe et al., *Invited: Perfect Crystal Device Technology*, 44 J. of the Japan Society of Applied Physics 269 (Supp. 1975).

2.    S. Thompson et al., *A 90nm Logic Technology Featuring 50nm Strained Silicon Channel Transistors, 7 Layers of Cu Interconnects, Low k ILD, and 1 um$^2$ SRAM Cell*, 2002 Int'l Electron Device Meeting Tech. Dig. 61 (2002).

3.    M. Dellith et al., *A Dislocation Formation Model of Trench-Induced Dislocations in Dynamic Random Access Memories*, 143 J. of the Electrochemical Soc'y 210 (1996).

4.    Christopher Leitz, *A High Throughput, Ultra-low Roughness, SiGe-free Strained Si Regrowth Process*, 8 Materials Sci. in Semiconductor Processing 187 (2004).

5.    M. F. Doerner & W. D. Nix, *A Method for Interpreting the Data from Depth-sensing Indentation Instruments*, 1 J. Material Research 601 (1986).

6.    N. E. B. Cowern & D. J. Godfrey, *A Model for Coupled Dopant Diffusion in Silicon*, 6 Int'l J. Computation and Mathematics in Electrical and Electronic Engineering 59 (1987).

7.    Akemi Hamada et al., *A New Aspect of Mechanical Stress Effects in Scaled MOS Devices*, 38 IEEE Transactions on Electron Devices 895 (1991).

8.    R. Westhoff et al., *A Novel, High Quality SiGe Graded Buffer Growth Process Using GeCl$_4$*, 2004-07 Electrochemical Soc'y Proceedings 589 (2004).

9.    E. Kasper et al., *A One-Dimensional SiGe Superlattice Grown by UHV Epitaxy*, 8
      Applied Physics A: Materials Sci. & Processing 199 (1975).

10.   R. Hull et al., *A Phenomenological Description of Strain Relaxation in
      $Ge_xSi_{1-x}/Si(100)$ Heterostructures*, 66 J. Applied Physics 5837 (1989).

11.   Wen-Hwa Chu & Mehran Mehregany, *A Study of Residual Stress Distribution
      Through the Thickness of $p^+$ Silicon Films*, 40 IEEE Transactions on Electron
      Devices 1245 (1993).

12.   Y. S. Lim et al., *A Study of the Oxidation Behavior and the Postannealing Effect
      in a Graded SiGe/Si Heterostructure*, 31 J. Electronic Materials 529 (2002).

13.   T. A. Langdo et al., *Advanced SiGe-free Strained Si on Insulator Substrates:
      Thermal Stability and Carrier Mobility Enhancement*, Extended Abstracts of the
      2003 Int'l Conf. on Solid State Devices and Materials 814 (2003).

14.   T. Mizuno et al., *Advanced SOI-MOSFETs with Strained-Si Channel for High
      Speed CMOS Electron/Hole Mobility Enhancement*, 2000 Symp. on VLSI Tech.
      Dig. of Tech. Papers 210 (2000).

15.   S. K. Jones et al., *An Advanced Calibration Method for Modelling Oxidation and
      Mechanical Stress in Sub-Micron CMOS Isolation Structures*, 1994 Int'l Electron
      Device Meeting Tech. Dig. 877 (1994).

16.   E. Kasper et al., *An Industrial Single-slice Si-MBE Apparatus*, 136 J.
      Electrochemical Soc'y 1154 (1989).

17.   L. K. Bera et al., *Analysis of Carrier Generation Lifetime in Strained-Si/SiGe
      Heterojunction MOSFETs from Capacitance Transient*, 224 Applied Surface Sci.
      278 (2004).

18.    F. K. LeGoues et al., *Anomalous Strain Relaxation in SiGe Thin Films and Superlattices*, 66 Physical Rev. Letters 2903 (1991).

19.    Mark Albert Armstrong, *Technology for SiGe Heterostructure-Based CMOS Devices* (1999) (unpublished Ph.D. thesis, Massachusetts Institute of Technology).

20.    M. V. Fischetti & S. E. Laux, *Band Structure, Deformation Potentials, and Carrier Mobility in Strained Si, Ge, and SiGe Alloys*, 80 J. Applied Physics 2234 (1996).

21.    P. Kuo et al., *Boron Diffusion in Si and $Si_{1-x}Ge_x$*, 379 Materials Research Symp. Proceedings 373 (1995).

22.    N. Moriya et al., *Boron Diffusion in Strained $Si_{1-x}Ge_x$ Epitaxial Layers*, 71 Physical Rev. Letters 883 (1993).

23.    W. A. Brantley, *Calculated Elastic Constants for Stress Problems Associated with Semiconductor Devices*, 44 J. Applied Physics 534 (1973).

24.    Tilden T. Fang et al., *Calculation of the Fractional Interstitial Component of Boron Diffusion and Segregation Coefficient of Boron in $Si_{0.8}Ge_{0.2}$*, 68 Applied Physics Letters 791 (1996).

25.    M. T. Currie et al., *Carrier Mobilities and Process Stability of Strained Si n- and p-MOSFETs on SiGe Virtual Substrates*, 19 J. Vacuum Sci. & Tech. B 2268 (2001).

26.    K. Rim et al., *Characteristics and Device Design of Sub-100 nm Strained Si N- and PMOSFETs*, 2002 Symp. on VLSI Tech. Dig. of Tech. Papers 98 (2002).

27.    P. Eichinger et al., *Characterization of MBE Grown SiGe Superlattices with SIMS*

*and RBS*, Proceedings of the First Int'l Symp. on Silicon Molecular Beam Epitaxy 367 (1985).

28.    Frank Stern & Steven E. Laux, *Charge Transfer and Low-temperature Electron Mobility in a Strained Si Layer in Relaxed $Si_{1-x}Ge_x$*, 61 Applied Physics Letters 1110 (1992).

29.    T. K. Carns et al., *Chemical Etching of $Si_{1-x}Ge_x$ in $HF:H_2O_2:CH_3COOH$*, 142 J. Electrochemical Soc'y 1260 (1995).

30.    P. Kuo et al., *Comparison of Boron Diffusion in Si and Strained $Si_{1-x}Ge_x$ Epitaxial Layers*, 62 Applied Physics Letters 612 (1993).

31.    Don Monroe et al., *Comparison of Mobility-Limiting Mechanisms in High-mobility $Si_{1-x}Ge_x$ Heterostructures*, 11 J. Vacuum Sci. & Tech. B 1731 (1993).

32.    Richard B. Fair, *Concentration Profiles of Diffused Dopants in Silicon*, in <u>Impurity Doping Processes in Silicon</u> 315 (1981).

33.    Mark E. Law & Stephen M. Cea, *Continuum Based Modeling of Silicon Integrated Circuit Processing: An Object Oriented Approach*, 12 Computational Materials Sci. 289 (1998).

34.    K. Saino et al., *Control of Trench Sidewall Stress in Bias ECR-CVD Oxide-Filled STI for Enhanced DRAM Data Retention Time*, 1998 Int'l Electron Device Meeting Tech. Dig. 149 (1998).

35.    M. T. Currie et al., *Controlling Threading Dislocation Densities in Ge on Si Using Graded SiGe Layers and Chemical-Mechanical Polishing*, 72 Applied Physics Letters 1718 (1998).

36.    Bernard S. Meyerson et al., *Cooperative Growth Phenomena in*

*Silicon/Germanium Low-Temperature Epitaxy*, 53 Applied Physics Letters 2555 (1988).

37.   Matthew Thomas Currie, *SiGe Virtual Substrate Engineering for Integration of III-V Materials, Microelectromechanical Systems, and Strained Silicon MOSFETs with Silicon* (2001) (unpublished Ph.D. thesis, Massachusetts Institute of Technology).

38.   J. C. Hensel & G. Feher, *Cyclotron Resonance Experiments in Uniaxially Stressed Silicon: Valence Band Inverse Mass Parameters and Deformation Potentials*, 129 Physical Rev. 1041 (1963).

39.   S. M. Davidson & G. R. Booker, *Damage Produced by Ion Implantation in Silicon, in* <u>Ion Implantation</u> 51 (Fred H. Eisen & Lewis T. Chadderton eds., 1971).

40.   C. L. Chen et al., *DC and RF Characterization of Fully Depleted Strained SOI MOSFETs*, 2004 IEEE Int'l SOI Conf. Tech. Dig. 88 (2004).

41.   Jack Washburn et al., *Defect Formation in Epitaxial Crystal Growth*, 20 J. Electronic Materials 155 (1991).

42.   J. W. Matthews & A. E. Blakeslee, *Defects in Epitaxial Multilayers*, 27 J. Crystal Growth 118 (1974).

43.   Semiconductor Transistor Having a Stressed Channel, U.S. Patent No. 6,621,131 (filed Nov. 1, 2001) (issued Sep. 16, 2003).

44.   Leonard Kleinman, *Deformation Potentials in Silicon. I. Uniaxial Strain*, 128 Physical Rev. 2614 (1962).

45.   Leonard Kleinman, *Deformation Potentials in Silicon. II. Hydrostatic Strain and*

*the Electron-Phonon Interaction*, 130 Physical Rev. 2283 (1963).

46.   Iza Goroff & Leonard Kleinman, *Deformation Potentials in Silicon. III. Effects of a General Strain on Conduction and Valence Levels*, 132 Physical Rev. 1080 (1963).

47.   F. Hubbard Horn, *Densitometric and Electrical Investigation of Boron in Silicon*, 97 Physical Rev. 1521 (1955).

48.   Akira Fukuhara & Yukio Takano, *Determination of Strain Distributions from X-ray Bragg Reflexion by Silicon Single Crystals*, 33 Acta Crystallographica Section A 137 (1977).

49.   Arne Nylandsted Larsen & Per Kringhøj, *Diffusion in Relaxed and Strained SiGe Layers*, T69 Physica Scripta 92 (1997).

50.   Werner Frank et al., *Diffusion in Silicon and Germanium, in* <u>Diffusion in Crystalline Solids</u> 63 (Graeme E. Murch & Arthur S. Nowick eds., 1984).

51.   B.L. Sharma, *Diffusion in Silicon and Germanium*, 70 & 71 Defect & Diffusion F. 1 (1990).

52.   N. E. B. Cowern et al., *Diffusion in Strained Si(Ge)*, 72 Physical Rev. Letters 2585 (1994).

53.   A. F. W. Willoughby et al., *Diffusion of Boron in Heavily Doped n- and p-Type Silicon*, 59 J. Applied Physics 2392 (1986).

54.   Arne Nylandsted Larsen & Per Kringhøj, *Diffusion of Sb in Relaxed $Si_{1-x}Ge_x$*, 68 Applied Physics Letters 2684 (1996).

55.   Per Kringhøj et al., *Diffusion of Sb in Strained and Relaxed Si and SiGe*, 76 Physical Rev. Letters 3372 (1996).

56.    M. L. Joshi & F. Wilhelm, *Diffusion-Induced Imperfections in Silicon*, 112 J. Elecrochemical Soc'y 185 (1965).

57.    S. S. Todorov et al., *Direct Formation of Dielectric Thin Films on Silicon by Low Energy Ion Beam Bombardment*, 36 Vacuum 929 (1986).

58.    D. J. Eaglesham & M. Cerullo, *Dislocation-Free Stranski-Krastanow Growth of Ge on Si*, 64 Physical Rev. Letters 1943 (1990).

59.    X. J. Ning, *Distribution of Residual Stresses in Boron Doped $p^+$ Silicon Films*, 143 J. Electrochemical Soc'y 3389 (1996).

60.    R. N. Ghoshtagore, *Donor Diffusion Dynamics in Silicon*, 3 Physical Rev. B 397 (1971).

61.    R. Hull et al., *Dynamic Observations of Misfit Dislocations in Strained Layer Heterostructures*, *in* Microscopy of Semiconducting Materials 497 (1991).

62.    J. J. Wortman & J. R. Hauser, *Effect of Mechanical Stress on p-n Junction Device Characteristics. II. Generation-Recombination Current*, 37 J. Applied Physics 3527 (1966).

63.    J. J. Wortman et al., *Effect of Mechanical Stress on p-n Junction Device Characteristics*, 35 J. Applied Physics 2122 (1964).

64.    T. Ghani et al., *Effect of Oxygen on Minority-Carrier Lifetime and Recombination Currents in $Si_{1-x}Ge_x$ Heterostructure Devices*, 58 Applied Physics Letters 1317 (1991).

65.    K. Osada et al., *Effect of Stress in the Deposited Silicon Nitride Films on Boron Diffusion of Silicon*, 142 J. Electrochemical Soc'y 202 (1995).

66.    Jongwan Jung et al., *Effect of Thermal Processing on Mobility in Strained*

*Si/Strained Si$_{1-y}$Ge$_y$ on Relaxed Si$_{1-x}$Ge$_x$ (x<y) Virtual Substrates*, 84 Applied Physics Letters 3319 (2004).

67.   Semiconductor Transistor Having a Stressed Channel, U.S. Patent No. 6,861,318 (filed July 23, 2003) (issued Mar. 1, 2005).

68.   M. C. Duffy et al., *Effects of High Phosphorus Concentration on Diffusion into Silicon*, 115 J. Electrochemical Soc'y 84 (1968).

69.   P. Kuo et al., *Effects of Si Thermal Oxidation on B Diffusion in Si and Strained Si$_{1-x}$Ge$_x$ Layers*, 67 Applied Physics Letters 706 (1995).

70.   P. Kuo, *Effects of Strain on Boron Diffusion in Si and Si$_{1-x}$Ge$_x$*, 66 Applied Physics Letters 580 (1995).

71.   S. P. Nikanorov et al., *Elastic Properties of Silicon*, 13 Soviet Physics – Solid State 2516 (1972).

72.   E. Kasper & H. J. Herzog, *Elastic Strain and Misfit Dislocation Density in Si$_{0.92}$Ge$_{0.08}$ Films on Silicon Substrates*, 44 Thin Solid Films 357 (1977).

73.   F. J. Morin & J. P. Maita, *Electrical Properties of Silicon Containing Arsenic and Boron*, 96 Physical Rev. 28 (1954).

74.   T. Mizuno, *Electron and Hole Mobility Enhancement in Strained-Si MOSFET's on SiGe-on-Insulator Substrates Fabricated by SIMOX Technology*, 21 IEEE Electron Device Letters 230 (2000).

75.   J. Welser et al., *Electron Mobility Enhancement in Strained-Si N-Type Metal-Oxide-Semiconductor Field-Effect-Transistors*, 15 IEEE Electron Device Letters 100 (1994).

76.   Zhi-Yuan Cheng et al., *Electron Mobility Enhancement in Strained-Si n-*

*MOSFETs Fabricated on SiGe-on-Insulator (SGOI) Substrates*, 22 IEEE Electron Device Letters 321 (2001).

77.    K. Rim et al., *Enhanced Hole Mobilities in Surface-channel Strained-Si p-MOSFETs*, 1995 Int'l Electron Device Meeting Tech. Dig. 517 (1995).

78.    U. König et al., *Enhancement Mode n-Channel Si/SiGe MODFET with High Intrinsic Transconductance*, 28 Electronics Letters 160 (1992).

79.    J. H. van der Merwe & C. A. B. Ball, *Energy of Interfaces between Crystals, in* Epitaxial Growth Part B 493 (J. W. Matthews ed., 1975).

80.    S. M. Gates et al., *Epitaxial Si Films on Ge(100) Grown via H/Cl Exchange*, 62 Applied Physics Letters 510 (1993).

81.    Y. Tamaki et al., *Evaluation of Dislocation Generation at $Si_3N_4$ Film Edges on Silicon Substrates by Selective Oxidation*, 128 J. Electrochemical Soc'y 644 (1981).

82.    Y. J. Mii et al., *Extremely High Electron Mobility in $Si/Ge_xSi_{1-x}$ Structures Grown by Molecular Beam Epitaxy*, 59 Applied Physics Letters 1611 (1991).

83.    K. Ismail et al., *Extremely High Electron Mobility in Si/SiGe Modulation-doped Heterostructures*, 66 Applied Physics Letters 1077 (1995).

84.    Kern Rim et al., *Fabrication and Analysis of Deep Submicron Strained-Si N-MOSFET's*, 47 IEEE Transactions on Electron Devices 1406 (2000).

85.    H. Daembkes et al., *Fabrication and Properties of n-Channel SiGe/Si Modulation Doped Field-Effect Transistors Grown by MBE*, 1985 Int'l Electron Device Meeting Tech. Dig. 768 (1985).

86.    S. Prussin, *Generation and Distribution of Dislocations by Solute Diffusion*, 32 J.