# EXHIBIT B
# PART 3 OF 3

*Heterostructures on <001> Ge$_y$Si$_{1-y}$ Substrates*, 48 Applied Physics Letters 538 (1986).

263. H. M. Manasevit et al., *Electron Mobility Enhancement in Epitaxial Multilayer Si-Si$_{1-x}$Ge$_x$ Alloy Films on (100) Si*, 41 Applied Physics Letters 464 (1982)

264. G. Schuberth et al., *High Electron Mobility in Modulation-Doped Si/SiGe Quantum well Structures*, 59 Applied Physics Letters 3318 (1991).

265. K. Ismail et al., *High Electron Mobility in Modulation-doped Si/SiGe*, 58 Applied Physics Letters 2117 (1991).

266. Gary L. Patton, *Silicon-Germanium-Base Heterojunction Bipolar Transistors by Molecular Beam Epitaxy*, 9 IEEE Electron Device Letters 165 (1988).

267. D. K. Nayak et al., *Enhancement-Mode Quantum-Well Ge$_x$Si$_{1-x}$ PMOS*, 12 Electron Device Letters 154 (1991).

268. Sophie Verdonckt-Vandebroek et al., *High-Mobility Modulation-Doped Graded SiGe-Channel p-MOSFET's*, 21 IEEE Electron Device Letters 447 (1991).

269. S. Subbanna et al., *Si/SiGe p-Channel MOSFETs*, 1991 Symp. on VLSI Tech. Dig. of Tech. Papers 103 (1991).

270. E. A. Fitzgerald et al., *Strain-free Ge$_x$Si$_{1-x}$ Layers with Low Threading Dislocation Densities Grown on Si Substrates*, 220 Material Resource Soc'y Symp. Proceedings 211 (1991).

271. C. G. Tuppen et al., *Low Threading Dislocation Densities in Thick, Relaxed Si$_{1-x}$Ge$_x$ Buffer Layers*, 220 Material Resources Soc'y Symp. Proceedings 187 (1991).

272. K. K. Linder et al., *Reduction of Dislocation Density in Mismatched SiGe/Si*

36

*Using a Low-Temperature Si Buffer Layer*, 70 Applied Physics Letters 3224 (1997).

273.   E. A. Fitzgerald, *Dislocations in Strained-layer Epitaxy: Theory, Experiment, and Applications*, 7 Material Sci. Rep. 84 (1991).

274.   E. A. Fitzgerald et al., *Dislocation Dynamics in Relaxed Graded Composition Semiconductors*, B67 Materials Sci. & Engineering 53 (1999).

275.   Robert Hull & John C. Bean, *Misfit Dislocations in Lattice-Mismatched Epitaxial Films*, 17 Critical Rev. in Solid State and Materials Sci. 507 (1992).

276.   K. Ismail et al., *High-Transconductance n-Type Si/SiGe Modulation-Doped Field-Effect Transistors*, 13 IEEE Electron Device Letters 229 (1992).

277.   D. K. Nayak et al., High-mobility p-Channel Metal-oxide-semiconductor Field-effect Transistor on Strained Si, 62 Applied Physics Letters 2853 (1993).

278.   U. König & F. Schäffler, *p-Type Ge-Channel MODFET's with High Transconductance Grown on Si Substrates*, 14 IEEE Electron Device Letters 205 (1993).

279.   K. Ismail et al., *High Hole Mobility in SiGe Alloys for Device Applications*, 64 Applied Physics Letters 3124 (1994).

280.   Deepak K. Nayak, *High-Mobility Strained-Si PMOSFET's*, 43 IEEE Transactions on Electron Devices 1709 (1996).

281.   Kern (Ken) Rim et al., *Transconductance Enhancement in Deep Submicron Strained-Si n-MOSFETs*, 1998 Int'l Electron Device Meetings 707 (1998).

282.   A. G. O'Neill et al., *SiGe Virtual Substrate N-Channel Heterojunction MOSFETs*, 14 Semiconductor Sci. & Tech. 784 (1999).

283.    G. Höck & E. Kohn, *High Hole Mobility in $Si_{0.17}Ge_{0.83}$ Channel Metal-oxide-semiconductor Field-effect Transistors Grown by Plasma-Enhanced Chemical Vapor Deposition*, 76 Applied Physics Letters 3920 (2000).

284.    M. Arafa et al., *High-transconductance p-Type SiGe Modulation-doped Field-effect Transistor*, 31 Electronics Letters 680 (1995).

285.    M. Arafa et al., *High Speed P-Type SiGe Modulation-Doped Field-Effect Transistors*, 17 IEEE Electron Device Letters 124 (1996).

286.    James J. Rosenberg & Suzanne C. Martin, *Self-Aligned Germanium MOSFET's Using a Nitrided Native Oxide Gate Insulator*, 9 IEEE Electron Device Letters 639 (1988).

287.    F. F. Fang & A. B. Fowler, *Transport Properties of Electrons in Inverted Silicon Surfaces*, 169 Physical Rev. 169 (1968).

288.    Anant G. Sabnis & James T. Clemens, *Characterization of the Electron Mobility in the Inverted <100> Si Surface*, 1979 Int'l Electron Device Meeting 18 (1979).

289.    J. T. Watt & J. D. Plummer, *Universal Mobility-Field Curves for Electrons and Holes in MOS Inversion Layers*, 1987 Symp. on VLSI Tech. Dig. of Tech. Papers 81 (1987).

290.    S. C. Sun & James D. Plummer, *Electron Mobility in Inversion and Accumulation Layers on Thermally Oxidized Silicon Surfaces*, ED-27 IEEE Transactions on Electron Devices 1497 (1980).

291.    Shin-ichi Takagi et al., *On the Universality of Inversion Layer Mobility in Si MOSFET's: Part II – Effects of Surface Orientation*, 41 IEEE Transactions on Electron Devices 2363 (1994).

292.  Th. Vogelsang & K. R. Hofmann, *Electron Transport in Strained Si Layers on Si$_{1-x}$Ge$_x$ Substrates*, 63 Applied Physics Letters 186 (1993).

293.  Friedrick Schäffler, *High-mobility Si and Ge Structures*, 12 Semiconductor Sci. & Tech. 1515 (1997).

294.  C. W. Leitz et al., *Dislocation Glide and Blocking Kinetics in Compositionally Graded SiGe/Si*, 90 J. Applied Physics 2730 (2001).

295.  D. J. Tweet et al., *Factors Determining the Composition of Strained GeSi Layers Grown with Disilane and Germane*, 65 Applied Physics Letters 2579 (1994).

296.  Ben G. Streetman, *Solid State Electronic Devices* (4th ed., Prentice Hall 1995).

297.  Shin-ichi Takagi et al., *Mobility Enhancement of SOI MOSFETs due to Subband Modulation in Ultrathin SOI Films*, 37 Japan J. Applied Physics 1289 (1998).

298.  Shin-ichi Takagi et al., *Comparative Study of Phonon-limited Mobility of Two-dimensional Electrons in Strained and Unstrained Si Metal-oxide-semiconductor Field-effect Transistors*, 80 J. Applied Physics 1567 (1996).

299.  Deepak K. Nayak & Sang Kook Chun, *Low-field Hole Mobility of Strained Si on (100) Si$_{1-x}$Ge$_x$ Substrate*, 64 Applied Physics Letters 2514 (1994).

300.  Martin M. Rieger & P. Vogl, *Electronic-band Parameters in Strained Si$_{1-x}$Ge$_x$ Alloys on Si$_{1-y}$Ge$_y$ Substrates*, 48 Physical Rev. 276 (1993).

301.  R. Oberhuber et al., *Subband Structure and mobility of Two-dimensional Holes in Strained Si/SiGe MOSFET's*, 58 Physical Rev. B 9941 (1998).

302.  Chinmay K. Maiti et al., *Hole Mobility Enhancement in Strained-Si p-MOSFETs Under High Vertical Field*, 41 Solid State Electronics 1863 (1997).

303.  Shin-ichi Takagi et al., *Characterization of Inversion-Layer Capacitance of Holes*

*in Si MOSFET's*, 46 IEEE Transactions on Electron Devices 1446 (1999).

304.   B. I. Boyanov et al., *Growth of Epitaxial CoSi$_2$ on SiGe(001)*, 86 J. Applied

Physics 1355 (1999).

305.   Sang Kook Chun & Kang L. Wang, *Effective Mass and Mobility of Holes in*

*Strained Si$_{1-x}$Ge$_x$ Layers on (001) Si$_{1-y}$Ge$_y$ Substrate*, 39 IEEE Transactions on

Electron Devices 2153 (1992).

306.   F. M. Bufler & B. Meinerzhagen, *Hole Transport in Strained Si$_{1-x}$Ge$_x$ Alloys on*

*Si$_{1-y}$Ge$_y$ Substrates*, 84 J. Applied Physics 5597 (1998).

307.   M. Arafa et al., *DC and RF Performance of 0.25 µm p-Type SiGe MODFET*, 17

IEEE Electron Device Letters 449 (1996).

308.   T. Hackbarth et al., *Strain Relieved SiGe Buffers for Si-based Heterostructure*

*Field-effect Transistors*, 201/202 J. Crystal Growth 734 (1999).

309.   Michael J. Hargrove et al., *Quantum Mechanical Modeling of the Charge*

*Distribution in a Si/ Si$_{1-x}$Ge$_x$/Si P-Channel MOSFET*, 1994 Int'l Electron Device

Meeting Tech. Dig. 735 (1994).

310.   B. Laikhtman & R. A. Kiehl, *Theoretical Hole Mobility in a Narrow Si/SiGe*

*Quantum Well*, 47 Physical Rev. B 515 (1993).

311.   R. J. P. Lander et al., *On the Low-temperature Mobility of Holes in Gated Oxide*

*Si/SiGe Heterostructures*, 12 Semiconductor Sci. & Tech. 1064 (1997).

312.   M. A. Sadeghzadeh et al., *Wave Function-dependent Mobility and Suppression of*

*Interface Roughness Scattering in a Strained SiGe p-Channel Field-effect*

*Structure*, 76 Applied Physics Letters 2568 (200).

313.   D. J. Paul et al., *Electrical Properties and Uniformity of Two Dimensional*

40

*Electron Gases Grown on Cleaned SiGe Virtual Substrates*, 16 J. Vacuum Sci. & Tech. 1644 (1998).

314.  K. Ismail, *Effect of Dislocations in Strained Si/SiGe on Electron Mobility*, 14 J. Vacuum Sci. & Tech. 2776 (1996).

315.  D. A. Grützmacher et al., *Ge Segregation in SiGe/Si Heterostructures and its Dependence on Deposition Technique and Growth Atmosphere*, 63 Applied Physics Letters 2531 (1993).

316.  M. J. Kearney & A. I. Horrell, *The Effect of Alloy Scattering on the Mobility of Holes in a $Si_{1-x}Ge_x$ Quantum Well*, 13 Semiconductor Sci. & Tech. 174 (1998).

317.  R. M. Feenstra & M. A. Lutz, *Scattering from Strain Variations in High-Mobility Si/SiGe Heterostructures*, 78 J. Applied Physics 6091 (1995).

318.  K. Ismail et al., *Electron Transport Properties of Si/SiGe Heterostructures: Measurements and Device Implications*, 63 Applied Physics Letters 660 (1993).

319.  N. Sugii et al., *High Electron Mobility in Strained Si Channel of $Si_{1-x}Ge_x/Si/Si_{1-x}Ge_x$ Heterostructure with Abrupt Interface*, 13 Semiconductor Sci. & Tech. A140 (1998).

320.  G. Höck et al., *High Performance 0.25μm p-Type Ge/SiGe MODFETs*, 34 Electronics Letters 1888 (1998).

321.  S. A. Ringel et al., *III-V Space Solar Cells on Si Substrates Using Graded GeSi Buffers*, 16th European Photovoltaic Solar Energy Conf. Tech. Dig. 939 (2000).

322.  U. Königh & F. Schäffler, *p-Type SiGe Channel Modulation Doped Field-effect Transistors with Post-evaporation Patterned Submicrometre Schottky Gates*, 29 Electronic Letters 486 (1993).

323.  M. Glück et al., *High f_max n-Type Si/SiGe MODFETs*, 33 Electronic Letters 335 (1997).

324.  Kern (Ken) Rim, *Fabrication and Analysis of Deep Submicron Strained-Si N-MOSFET's*, 47 IEEE Transactions on Electron Devices 1406 (200).

325.  T.N. Jackson et al., *Undoped SiGe Heterostructure Field Effect Transistors*, 40 IEEE Transactions on Electron Devices 2104 (Nov. 1993).

326.  Nobuyuki Sugii et al., *Role of $Si_{1-x}Ge_x$ Buffer Layer on Mobility Enhancement in a Strained-Si n-Channel Metal-Oxide-Semiconductor Field-Effect Transistor*, 75 Applied Physics Letters 2948 (Nov. 8 1999).

327.  Nobuyuki Sugii, *Thermal Stability of the Strained-Si/$Si_{0.7}Ge_{0.3}$ Heterostructure*, 89 J. Applied Physics 6459 (June 1, 2001).

328.  Anodizable Strain Layer for SOI Semiconductor Structures, U.S. Patent No. 4,849,370 (filed Dec. 21, 1987) (issued July 18, 1989).

329.  Isolation Structure Configurations for Modifying Stresses in Semiconductor Devices, U.S. Patent No. 6,876,053 (filed Aug. 13 1999) (issued Apr. 5, 2005).

330.  P. M. Garone et al., *Mobility Enhancement and Quantum Mechanical Modeling in $Ge_xSi_{1-x}$ Channel MOSFETs from 90 to 300 K*, 1991 Int'l Electron Device Meeting 29 (1991).

331.  T. N. Jackson et al., *Undoped SiGe Heterostructure Field Effect Transistors*, 40 IEEE Transactions on Electron Devices 2104 (1993).

332.  C. M. Ransom et al., *Gate-Self-Aligned n-Channel and p-Channel Germanium MOSFET's*, 38 IEEE Transactions on Electron Devices 2695 (1991).

333.  C. G. Tuppen et al., *Relaxation Processes in Si/ $Si_{1-x}Ge_x$ Strained Layer*

*Superlattices – A Study by Raman Spectroscopy and X-ray Diffractometry,*

Proceedings of the Second Int'l Symp. on Silicon Molecular Beam Epitaxy 36

(1988).

**INTERROGATORY NO 2:**

Identify all facts (including all DOCUMENTS) that support or contradict, and

identify all persons with knowledge of, INTEL's contention that AMBERWAVE has unclean

hands and therefore should be barred from recovering any relief sought in its COUNTERCLAIM

or any relief whatsoever against INTEL.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the General Objections, which are incorporated fully by reference

herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome

and compound. Intel also objects to the terms "all," "identify," "persons with knowledge" and

"relief" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek

information that is not reasonably calculated to lead to the discovery of information relevant to

the claims or defenses of any party. Intel further objects to the terms "unclean hands" and

"barred" because the terms are vague, ambiguous, overbroad, unduly burdensome and call for a

legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine

and/or other judicially recognized protections or privileges. Intel additionally objects to the

terms "unclean hands" and "barred" to the extent they seek to elicit an admission from Intel, by

virtue of Intel's response to this request, as to the meanings of the terms. Intel further objects

that information to support a defense based on the legal and/or equitable principle of "unclean

hands" is in the possession of AmberWave. Intel also objects to this interrogatory to the extent it

seeks information protected by the attorney-client privilege, the work-product doctrine and/or

other judicially recognized protections or privileges. Intel further objects to this interrogatory as premature and improper because Intel cannot properly respond to this interrogatory until discovery has proceeded further. Intel will respond to the interrogatory as of the date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to and without waiving the foregoing objections, Intel states on information and belief that one or more of the named inventors in the '292 Patent were aware at the time they prosecuted the application that issued as the '292 Patent of prior art that anticipates or renders obvious the '292 Patent and failed to disclose this prior art to the Patent and Trademark Office during the pendency of the application process.

**INTERROGATORY NO. 3:**

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, INTEL's contention that AMBERWAVE's COUNTERCLAIM is barred in whole or in part under principles of equity, including laches, prosecution laches, waiver, and/or estoppel.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel also objects to the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the terms "laches," "prosecution laches," "waiver" and "estoppel" because the terms are vague, ambiguous, overbroad, unduly burdensome and call

for a legal conclusion that is privileged under the attorney-client privilege, the work-product

doctrine and/or other judicially recognized protections or privileges. Intel additionally objects to

the terms "laches," "prosecution laches," "waiver" and "estoppel" to the extent they seek to elicit

an admission from Intel, by virtue of Intel's response to this request, as to the meanings of the

terms. Intel further objects that information to support defenses based on the legal and/or

equitable principles of "laches," "prosecution laches," "waiver" and "estoppel" is in the

possession of AmberWave. Intel also objects to this interrogatory to the extent it seeks

information protected by the attorney-client privilege, the work-product doctrine and/or other

judicially recognized protections or privileges. Intel further objects to this interrogatory as

premature and improper because Intel cannot properly respond to this interrogatory until

discovery has proceeded further. Intel expressly preserves its right to respond as additional facts

become known.

**INTERROGATORY NO. 4:**

Provide INTEL's construction of each term in each claim in the '292 PATENT,

and identify any intrinsic or extrinsic evidence INTEL may rely on for the construction.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the General Objections, which are incorporated fully by reference

herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome

and compound. Intel further objects to the terms "construction," "term," "intrinsic . . . evidence"

and "extrinsic evidence" because the terms are vague, ambiguous, overbroad, unduly

burdensome and call for a legal conclusion that is privileged under the attorney-client privilege,

the work-product doctrine and/or other judicially recognized protections or privileges. Intel

additionally objects to the terms "construction," "term," "intrinsic . . . evidence" and "extrinsic

evidence" to the extent they seek to elicit an admission from Intel, by virtue of Intel's response to this request, as to the meanings of the terms. Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel cannot properly respond to this interrogatory before AmberWave discloses which claims it intends to assert against Intel. Moreover, until AmberWave discloses how it reads the claims against the accused infringing products, it is impossible to determine which, if any, claim terms or phrases will need to be construed. Therefore, before such disclosures by AmberWave, this interrogatory is vague, ambiguous, overbroad, unduly burdensome, oppressive and vexatious. According to the Scheduling Order entered by this Court on September 15, 2005, the parties are to exchange a list of terms and/or phrases that the parties believe require construction by July 26, 2006 and the parties are to brief the proposed constructions of such terms and/or phrases beginning August 14, 2006 and ending October 6, 2006. The Scheduling Order also provides the date on which the parties are obligated to make disclosure of expert testimony under Federal Rule of Civil Procedure 26(a)(2). Such disclosures are not due at this time. Accordingly, this interrogatory is premature and improper. Intel further objects to the interrogatory because Intel does not know which of the sixty-two (62) claims AmberWave contends are infringed by Intel's products. AmberWave interrogatory seeks a construction by Intel of innumerable potential claims terms in sixty-two separate (62) claims and is thus unduly burdensome, oppressive, vexatious and can only be intended to harass. Intel further objects because the interrogatory improperly seeks to aggregate numerous separate and distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a). The '292 Patent is comprised of sixty-two (62) separate claims and innumerable words or phrases that may be subject to claims construction in this proceeding.

Each term for which AmberWave seeks a construction by the interrogatory comprises a

"subpart" under Federal Rule of Civil Procedure 33(a). Intel states that each of these discrete

subparts counts as a separate interrogatory toward AmberWave's total limit of interrogatories.

Therefore, this interrogatory, by itself, exceeds the limit of interrogatories set by the Court in

paragraph 3(c) of the Scheduling Order dated September 15, 2005 and is improper. Intel

reserves its right to seek a protective order if and when AmberWave propounds interrogatories in

excess of the amount allowed by this Court.

## INTERROGATORY NO. 5:

Identify each semiconductor device made, used, sold, offered for sale, or imported

by or for INTEL since December 14, 2004, that has a transistor with a strained or stressed region,

and describe the design and method of fabrication of the transistors in the device, including how

the strain or stress is created. As used in this interrogatory, a "semiconductor device" includes a

device that is not commercially available.

## RESPONSE TO INTERROGATORY NO. 5:

In addition to the General Objections, which are incorporated fully by reference

herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome

and compound. Intel further objects to the terms "strain," "stress," "describe," "design,"

"method of fabrication," "semiconductor device" and "describe the design and method of

fabrication of the transistors in the device" in that each such term or phrase is ambiguous, vague,

overbroad, unduly burdensome and seeks information that is not reasonably calculated to lead to

the discovery of information relevant to any claim or defense of any party. Intel further objects

to this interrogatory because the term "strained or stressed regions" appears nowhere in any

claim of the '292 Patent so that the interrogatory is irrelevant and not reasonably calculated to

lead to the discovery of information relevant to the claim or defense of any party. Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel further objects to this interrogatory to the extent it seeks documents and/or information that are publicly available, in the possession, custody or control of AmberWave or any person or entity other than Intel, and are equally accessible to AmberWave. Intel additionally objects to this interrogatory to the extent it seeks documents relating to Intel products that AmberWave has not accused of infringing the '292 Patent and/or products that Intel does not currently commercially sell. Intel further objects to this interrogatory to the extent that it seeks the disclosure of information that reflects or discloses trade secrets, other confidential, financial or proprietary information of Intel, or personal information that is protected by constitutional, statutory, common law or privacy rights. Intel additionally objects because the interrogatory improperly seeks to aggregate separate and distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a). Each part of the compound interrogatory is a "subpart" under Federal Rule of Civil Procedure 33(a). Intel states that each of these discrete subparts counts as a separate interrogatory toward AmberWave's total limit of interrogatories, and Intel reserves its right to seek a protective order if and when AmberWave propounds interrogatories in excess of the amount allowed by this Court. Intel will respond to the interrogatory as of the date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to and without waiving the foregoing objections, Intel responds that the accused infringing products (a portion of the products sold since December 14, 2004 as Pentium 4, Pentium M, Pentium D, Celeron, and Xeon devices) have numerous regions that

include some deformation of the silicon substrate that might be characterized as "strained or stressed region[s]." These deformities are caused by a variety of different processes, including the implantation of dopants, the etching of the silicon to create structures in the silicon wafer, the application of various materials with different properties in conjunction with subjecting such materials to changes in pressure and temperature during the manufacturing process, the use of various materials in the source and drain, and by other factors that in some way may be characterized as stressing or straining the materials in the transistor. Many of these processes and mechanisms are explained in greater detail in Intel patents, including without limitation U.S. Patent Nos. 5,633,202; 6,281,532; 6,621,131; 6,861,318; and 6,876,053. In addition, various mechanisms and processes that can be characterized as inducing "stress" or "strain" in semiconductor materials and/or transistors have been known for decades. Until AmberWave explains what it means by the objectionably vague words, terms and expressions, cited in the preceding paragraph, Intel cannot fully respond to the interrogatory.

**INTERROGATORY NO. 6:**

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, INTEL's contention that it has not infringed and is not infringing the '292 PATENT, directly, by the doctrine of equivalents, by inducement, or by contribution.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel additionally objects to the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek

information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the terms "infringed," "infringing," "doctrine of equivalents," "inducement" and "contribution" because the terms are vague, ambiguous, overbroad, unduly burdensome and call for a legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel additionally objects to the terms "infringed," "infringing," "doctrine of equivalents," "inducement" and "contribution" to the extent they seek to elicit an admission from Intel, by virtue of Intel's response to this request as to the meanings of the terms. Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel further objects to the interrogatory because it requires Intel to speculate as to what the '292 Patent purports to have invented. Intel additionally objects to this interrogatory to the extent it seeks documents relating to Intel products that AmberWave has not accused of infringing the '292 Patent and/or products that Intel does not currently commercially sell. Intel further objects to this interrogatory to the extent that it seeks the disclosure of information that reflects or discloses trade secrets, other confidential, financial or proprietary information of Intel or personal information that is protected by constitutional, statutory, common law or privacy rights. Intel additionally objects to this interrogatory to the extent it seeks a third party's confidential, trade secret or proprietary information. Intel will not provide such information without the third party's consent. Intel further objects because the interrogatory improperly seeks to aggregate numerous separate and distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a). The '292 Patent is comprised of sixty-two (62) separate claims. Each claim for which AmberWave seeks a determination of no direct infringement, no infringement

under the doctrine of equivalents, no inducement and no contribution each comprises a "subpart" under Federal Rule of Civil Procedure 33(a). Intel states that each of these discrete subparts counts as a separate interrogatory toward AmberWave's total limit of interrogatories. Therefore, this interrogatory, by itself, exceeds the limit of fifty (50) interrogatories set by the Court in paragraph 3(c) of the Scheduling Order dated September 15, 2005, and is improper. Intel reserves its right to seek a protective order if and when AmberWave propounds interrogatories in excess of the amount allowed by this Court. Intel further objects to the interrogatory because Intel does not know which of the sixty-two (62) claims AmberWave contends are infringed by Intel's products. Intel further objects to the interrogatory because it calls for Intel to establish that its products do not infringe the '292 Patent and therefore improperly seeks to shift from AmberWave the burden of proving its affirmative claim of patent infringement.

Intel will limit its response to this interrogatory to the four independent claims in the '292 Patent—claims 1, 16, 31 and 47—because failure to satisfy the independent claims of the '292 Patent is a full defense to infringement of all sixty-two (62) claims of the patent. To the extent AmberWave argues that any Intel product infringes any of the dependent claims of the '292 Patent, Intel will amend its response to this interrogatory. Intel will respond to the interrogatory as of the date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to the above objections, Intel states that the accused infringing products do not meet at least one or more of the following limitations, which are found in one or more of the independent claims of the '292 Patent: (1) "strained layer"; (2) "strained channel layer"; (3) "strained channel layer disposed on the substrate"; (4) "disposing at least one strained layer on the substrate"; (5) "disposing at least one strained channel layer on the substrate"; (6) "an

interface therebetween"; (7) "distal zone away from the interface"; (8) "strained layer having a distal zone away from the interface"; (9) "distal zone away from the substrate"; (10) "strained layer having a distal zone away from the substrate"; (11) "strained channel layer having a distal zone away from the substrate"; (12) "the substrate, the interface, and the at least one strained layer"; (13) "the substrate and the channel region"; (14) "impurity gradient . . . has a value substantially equal to zero in the distal zone"; (15) "impurity gradient having a value substantially equal to zero in the distal zone"; and/or (16) "subsequent processing step." The relevant documents to the above determination include the '292 Patent and other intrinsic and extrinsic evidence relating to the above terms. Other relevant documents also include various technical documents and testimony relating to the design and fabrication of the accused infringing products. Intel believes anyone of ordinary skill in the art with access to the above information would have knowledge that Intel does not infringe the claims of the '292 Patent.

**INTERROGATORY NO. 7:**

Identify all facts (including all DOCUMENTS and opinions of counsel), that Intel will rely on to establish that it has not and is not willfully infringing the '292 PATENT, directly, by the doctrine of equivalents, by inducement, or by contribution.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel further objects to the use of the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the use of the terms "infringed,"

"infringing," "doctrine of equivalents," "inducement" and "contribution" because the terms are vague, ambiguous, overbroad, unduly burdensome and call for a legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel additionally objects to the terms "infringed," "infringing," "doctrine of equivalents," "inducement" and "contribution" to the extent they seek to elicit an admission from Intel, by virtue of Intel's response to this request, as to the meanings of the terms. Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel additionally objects to this interrogatory to the extent it seeks documents relating to Intel products that AmberWave has not accused of infringing the '292 Patent and/or products that Intel does not currently commercially sell. Intel further objects to this interrogatory to the extent that it seeks the disclosure of information that reflects or discloses trade secrets, other confidential, financial or proprietary information of Intel or personal information that is protected by constitutional, statutory, common law or privacy rights. Intel additionally objects to this interrogatory to the extent it seeks a third party's confidential, trade secret or proprietary information. Intel will not provide such information without the third party's consent. Intel further objects to the interrogatory because it deliberately seeks materials that are subject to the attorney-client privilege and work product privilege. Intel further objects because it deliberately seeks "opinions of counsel" in violation of Federal Rule of Civil Procedure 26(b)(3). Intel further objects to the interrogatory because it calls for Intel to establish that its products do not infringe the '292 Patent and therefore improperly seeks to shift from AmberWave the burden of proving its affirmative claim of patent infringement. Accordingly, this interrogatory is improper and premature. Intel will respond to the interrogatory as of the

53

date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to the above objections, because Intel does not infringe any of the claims of the '292 Patent (see answer to Interrogatory No. 6 above), Intel does not willfully infringe any of the claims of the '292 Patent.

As to the Objections:

Dated:  October 28, 2005              SIMPSON THACHER & BARTLETT LLP

                                      By: _____
                                            GEORGE M. NEWCOMBE

                                      YOUNG CONWAY STARGATT &
                                      TAYLOR LLP

                                          JOSY W. INGERSOLL (No. 1088)
                                          JOHN W. SHAW (No. 3362)
                                          KAREN E. KELLER (No. 4489)

                                      Attorneys for Plaintiff/Counterdefendants
                                      INTEL CORPORATION

## CERTIFICATE OF SERVICE

I, Patrick E. King, hereby certify that on October 28, 2005, I caused to be served copies of the foregoing document on the following counsel of record in the manner indicated:

### BY FEDERAL EXPRESS AND ELECTRONIC MAIL

Jack B. Blumenfeld, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com

David I. Gindler, Esq.
Christopher A. Vanderlaan, Esq.
Jason G. Sheasby, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
dgindler@irell.com
cvanderlaan@irell.com
jsheasby@irell.com

SIMPSON THACHER & BARTLETT LLP

George M. Newcombe (admitted *pro hac vice*)
Patrick E. King (admitted *pro hac vice*)
3330 Hillview Avenue
Palo Alto, California 94304
(650) 251-5000
pking@stblaw.com

*Attorneys for Plaintiff Intel Corporation*