# YOUNG CONAWAY STARGATT & TAYLOR, LLP

MONTÉ T. SQUIRE
DIRECT DIAL: 302-571-6713
DIRECT FAX: 302-576-3515
msquire@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

March 21, 2006

**By E-Filing**

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

      Re:    *Intel Corporation v. AmberWave Systems Corporation*
               Civil Action No. 05-301-KAJ Consol.

Dear Judge Jordan:

        Intel Corporation ("Intel") respectfully seeks the Court's assistance in resolving an impasse concerning the form of the proposed protective order in the above-captioned dispute between Intel and AmberWave Systems Inc. ("AmberWave"). The parties have been unable to reach agreement on two issues, each of which involves Intel's concern that Amberwave should not be allowed to use confidential Intel information learned in the litigation against Intel in proceedings before the Patent and Trademark Office (PTO).

**Issue 1:**     **AmberWave's Counsel of Record should not be permitted to prosecute patents in the field of semiconductor device fabrication and/or design.**

        AmberWave proposes that its Counsel of Record[1] enjoy the unfettered right to prosecute patents in the field of semiconductor device fabrication and design so long as such individuals do not personally review Intel's confidential materials. *See* "Confidentiality Stipulation and [Proposed] Order" at Exhibit B, showing AmberWave's proposed language limiting the prosecution bar in subparagraph 6(a) to Counsel of Record who have "reviewed" confidential information.

        This prospect deeply concerns Intel – for good reason. AmberWave is actively and aggressively filing patents and amending pending patent claims that AmberWave intends to read on Intel's products. One does not need to look far for proof of this. AmberWave has accused Intel of infringing U.S. Patent Application No. 10/774,890 (the "'890 Application"). *See* AmberWave's letter dated May 10, 2005 to Intel's Chief Executive Officer, attached as Exhibit C. Indeed, on February 10, 2006, AmberWave served Intel with discovery requests which sought, *inter alia*, "all documents [] that support or contradict . . . any Intel contention that

---

[1]     "Counsel of Record" is defined in subparagraph 4(a) of Intel's "Confidentiality Stipulation and [Proposed] Order," attached as Exhibit A.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
March 21, 2006
Page 2

it . . . is not practicing the allowed claims of the '890 application. . . ." *See* Interrogatory No. 17 in AmberWave's Fourth Set of Interrogatories, attached as Exhibit D. One week later, AmberWave filed with the PTO an amendment to the '890 Application which sought to add both new claims and additional references. At the same time AmberWave sought discovery of Intel's most confidential and valuable trade secreted information based on an alleged infringement of the '890 Application, AmberWave was planning to amend the application to add additional claims.

Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented. . . ." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984). "Even if a competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create 'an unacceptable opportunity for inadvertent disclosure.'" *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 1998 U.S. Dist. LEXIS 22251, at 6-7 (D. Nev. Apr. 15, 1998) (quoting *U.S. Steel*, 730 F.2d at 1468) (denying entire law firm's access to confidential information). Courts question whether a recipient of a competitor's confidential information can "lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he has read the documents." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992). Under the facts of this case, Counsel of Record should be foreclosed from prosecuting patents in the field of semiconductor device manufacture and design, regardless of whether such counsel personally reviewed confidential materials.

Under AmberWave's proposal, a litigation attorney may work for months beside colleagues who have dissected Intel's confidential technical materials and help these colleagues formulate infringement analyses of accused products. But, if this attorney does not personally review Intel's confidential information, she is free at anytime to take off her "litigation counsel" hat, don a "prosecution counsel" hat, and help AmberWave craft patent claims and specifications covering the same technology. Intel respectfully submits that these circumstances present an appalling risk that Intel's trade secrets will be disclosed, inadvertently or otherwise, and will find their way into competitor's patents – with severe and irreparable consequences to Intel.

AmberWave, by contrast, will suffer no harm in prosecuting this litigation if its Counsel of Record is barred from prosecuting patents in the field of semiconductor device manufacture or design. *Cf. Cummins-Allison Corp. v. Glory Shoji Co.*, 2003 U.S. Dist. LEXIS 23653, at 15, 31 (N.D. Ill. Dec. 31, 2004) (holding that the risk of inadvertent disclosure of confidential information must be balanced against the risk of impairing the process of litigation by denying access and barring attorneys exposed to confidential information from prosecuting patents relating to the subject matter of the patents in suit).

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
March 21, 2006
Page 3

**Issue 2:** **AmberWave's Counsel of Record should only be permitted to offer analysis of prior art once at the commencement of the reexamination proceeding, with one subsequent written communication to answer questions concerning such analysis.**

The precedent cited above supports an order precluding all communications between litigation counsel and prosecution counsel. However, in an attempt to reach a compromise and accommodate AmberWave's concern that it would be a burden on it to have to replicate fully the prior art knowledge of its trial counsel with its PTO counsel, Intel offered to permit two written communications from trial counsel to PTO counsel at the outset of any reexamine of the patents in suit initiated by Intel or another third party in this litigation for the sole purpose of transferring trial counsel's knowledge of the prior art to PTO counsel. Specifically, Intel proposed one written communication within 45 days of the commencement of a reexamination limited to the identification and analysis of prior art, followed by one written communication from PTO counsel to pose any questions they might have on the analysis, and one final written response to those questions by trial counsel within 30 days of trial counsel's first communication. *See* Exhibit A, at subparagraph 6(a)(i)(E). AmberWave rejected that offer.

Instead, AmberWave wants no restriction on the number of communications between its Counsel of Record and its prosecution counsel. *See* Exhibit B, at subparagraph 6(a)(i). AmberWave's proposal poses too great a risk for Intel. It permits an unlimited number of communications throughout the reexamination proceeding as the PTO makes determinations that require responses from AmberWave. Trial counsel should not be involved in this process in any way. Permitting communication to occur during this process poses too great a risk of even inadvertent disclosure of Intel confidential information as prosecution counsel solicits litigation counsel's analysis of prior art in fashioning responses to PTO office actions, seeking to preserve validity while promoting litigation counsel's infringement case. Courts recognize that "[a]dvice regarding the scope of the claims in a patent is sufficiently related to patent prosecution to be defined as competitive decision-making." *Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal. 2003). Attorneys who review a competitor's confidential materials in litigation are routinely precluded from engaging in such "competitive decision making." *See, e.g., Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC*, 1999 WL 618969, at 3-4 (N.D. Ill. Aug. 9, 1999) (holding that patent prosecution constituted competitive decision-making and precluding attorneys with access to confidential information from engaging in patent prosecution).

Intel respectfully requests that the Court adopt the [Proposed] Protective Order submitted by Intel as Exhibit A.

Respectfully submitted,

Monté T. Squire (#4764)

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
March 21, 2006
Page 4

MTS:cg

cc:    Clerk of the Court - by e-filing and hand delivery
        Jack B. Blumenfeld, Esquire (by e-filing and hand delivery)
        David I. Gindler, Esquire (by e-mail)
        Jeffrey E. Ostrow, Esquire (by e-mail)