# EXHIBIT C

GOODWIN | PROCTER

Steven J. Frank
617.570.1241
sfrank@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

May 9, 2005

**By Federal Express**

Mr. Paul S. Otellini
President and Chief Operating Officer
Intel Corporation
2200 Mission College Blvd.
Santa Clara, CA 95052

Dear Mr. Otellini:

    We represent AmberWave Systems Corporation in connection with business and intellectual-property matters. On Tuesday, May 3, 2005, I accompanied a high-level team from AmberWave to Intel's Hillsboro campus, where we met with Brad Greenwald, Reza Afghan, Farshid Adibi-Rizi, and Reed Stahlie. Our presentation covered Intel's technology and its infringement of U.S. Patent No. 6,831,292 and allowed application serial nos. 2004/0161947 and 2004/0045499, all owned by AmberWave. I note that AmberWave had raised the '292 patent and the '947 application with Intel in a meeting with members Intel's Intellectual Property Licensing Group at Intel on January 27, 2005 in Santa Clara, California.

    This will serve as formal notice to Intel that its current commercial products, including, without limitation, its Prescott and Dothan processors, infringes claims of the patent and allowed applications set forth above. Accordingly, we respectfully request that Intel take immediate steps to conclude license negotiations with AmberWave or to cease infringement of AmberWave's intellectual property.

    Neither this letter nor any past or future correspondence will be deemed to constitute a release or waiver of any of Intel's obligations, liabilities, failures or defaults, or of any of AmberWave's rights and remedies, all of which are expressly reserved and not waived.

Very truly yours,

Steven J. Frank

SJF:mmg
cc:   Mr. Thomas R. Franz (by Federal Express)
       Mr. Richard J. Faubert
       Bryan P. Lord, Esq.

LIBC/2467501.1

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMBERWAVE SYSTEMS CORPORATION, ) | Civil Action No. 05-301-KAJ |
| ) | (consolidated) |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| INTEL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## AMBERWAVE'S FOURTH SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff AmberWave Systems Corporation requests that Defendant Intel Corporation respond under oath to the following Fourth Set of Interrogatories within thirty (30) days after the date of service hereof.

## DEFINITIONS

1.    "AMBERWAVE" shall mean AmberWave Systems Corporation.

2.    "INTEL" shall mean Intel Corporation.

3.    The "'890 APPLICATION" shall mean United States Patent Application No. 10/774,890, entitled "Relaxed SiGe Platform for High Speed CMOS Electronics and High-Speed Analog Circuits."

4.    The "ALLOWED CLAIMS OF THE '890 APPLICATION" shall mean the claims which have been allowed by the United States Patent and Trademark Office in the '890 APPLICATION, attached hereto as Attachment A.

5.    "DOCUMENT" as used herein shall mean every kind of recording of any form of communication or representation upon any tangible thing, including letters, words, pictures, sounds or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic or photographic means, magnetic impulse, tape, computer disk or any other form of data storage, data compilation or mechanical or electronic recording, and all other tangible things

which come within the meaning of "writing" or "recording" as used in Rule 1001 of the Federal Rules of Evidence or "document" as used in Rule 34 of the Federal Rules of Civil Procedure. Every draft or non-identical copy of a DOCUMENT is a separate DOCUMENT as that term is used herein.

## INSTRUCTIONS

1.      Whenever appropriate, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary to bring within the scope of these interrogatories any information that might otherwise be considered outside their purview; and words imparting the masculine include the feminine and vice versa.

2.      In answering these interrogatories, furnish all information, however obtained, including hearsay, which is available to you, and information known by or in the possession of you, your agents, your attorneys, or appearing in your records.

3.      Where knowledge or information in your possession is requested, the request extends to knowledge or information in the possession of your predecessors and/or successor, as well as to information in the possession of your officers, directors, agents, employees, servants, representatives and attorneys.

4.      If you contend that the answer to any interrogatory is privileged or otherwise immune from discovery in whole or in part, state all facts supporting such privilege or immunity, and describe each person having knowledge of the factual basis upon which the privilege or immunity is asserted.

5.      If you seek to invoke the procedures of Rule 33(d) of the Federal Rules of Civil Procedure when responding to any interrogatory, state fully all facts which support your contention that the burden of ascertaining the answer to the interrogatory is substantially the same for AmberWave as it is for Intel, and describe specifically those business records from which you contend AmberWave may ascertain or derive the answer.

6.      These interrogatories shall be considered continuing, and you are to supplement your answers in a timely manner in accordance with the requirements of Rule 26 of the Federal Rules of Civil Procedure.

7.      When an interrogatory asks you to "describe" a DOCUMENT, state: the name of the author; the type of DOCUMENT or writing; the date; the addressee, or recipient, if practicable, and otherwise a general description of the persons to whom the writing was distributed; the subject matter; any title or description; and the present location.

8.      When an interrogatory asks you to "identify" a person, state the name, job title, job description, and affiliation of the person.

## INTERROGATORIES

**INTERROGATORY NO. 17**:

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, any INTEL contention that it has not practiced and is not practicing the ALLOWED CLAIMS OF THE '890 APPLICATION either directly, by the doctrine of equivalents, by inducement, or by contribution.

**INTERROGATORY NO. 18**:

Identify all facts (including all DOCUMENTS and opinions of counsel) that INTEL will rely on to establish that it has not willfully infringed and is not willfully infringing the ALLOWED CLAIMS OF THE '890 APPLICATION, when the '890 APPLICATION issues as a patent, either directly, by the doctrine of equivalents, by inducement, or by contribution.

**INTERROGATORY NO. 19**:

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, any INTEL contention that the ALLOWED CLAIMS OF THE '890 APPLICATION are anticipated or obvious in view of prior art or, when issued as a patent, will otherwise be invalid.

**INTERROGATORY NO. 20**:

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, any INTEL contention that the ALLOWED CLAIMS OF THE '890 APPLICATION, when the '890 APPLICATION issues as a patent, are unenforceable.

Respectfully submitted,

Morgan Chu
David I. Gindler
Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310) 277-1010

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
Tel: (302) 658-9200

Attorneys for Defendant and Counterclaim-plaintiff
AmberWave Systems Corporation

Dated:  February 10, 2006

**Attachment A**

Express Mail Label No.: EL988705761US

PATENT
Attorney Docket No.: ASC-049CI

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| APPLICANT: | Fitzgerald | | |
| SERIAL NO.: | Not yet assigned | GROUP NO.: | Not yet assigned |
| FILING DATE: | Herewith | EXAMINER: | Not yet assigned |
| TITLE: | Relaxed SiGe Platform for High Speed CMOS Electronics and High Speed Analog Circuits | | |

Mail Stop Patent Application
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Particulars of Prior Application:
Serial No.: 09/906,200
Filed: July 16, 2001
Group No.: 2818
Examiner: Tran, Mai Huong C.

## PRELIMINARY AMENDMENT

Sir:

After assigning a filing date and serial number to the above-identified continuation application, please amend this application as indicated below.

Amendment to the Specification begins on page 2 of this paper,

Amendments to the Claims begin on page 3 of this paper, and

Applicant's Remarks begin on page 7 of this paper.

Preliminary Amendment
Atty. Docket No.: ASC-049CI
Page 2 of 8

## Amendment to the Specification

On page 2, please replace the paragraph under the heading "PRIORITY INFORMATION," with the following amended paragraph:

This application is a continuation of U.S.S.N. 09/906,200, filed July 16, 2001, which claims priority ~~from provisional application~~ to and the benefit of U.S.S.N. 60/273,112, filed March 2, 2001, the entire disclosure of each application being incorporated herein by reference.

Preliminary Amendment
Atty. Docket No.: ASC-049C1
Page 3 of 8

## Amendments to the Claims

This listing of claims will replace all prior versions, and listings, of claims in the application.

### Listing of Claims

1-31.  (Cancelled)

32.  (New)  A method comprising:

providing a substrate; and

providing a first strained layer disposed above the substrate, the first strained layer having an average surface roughness of no more than approximately 2 nm.

33.  (New) The method of claim 32, wherein the substrate comprises Si.

34.  (New) The method of claim 32, wherein the first strained layer comprises Si or Ge.

35.  (New)  The method of claim 32, wherein the first strained layer is tensilely strained.

36.  (New) The method of claim 32, wherein the first strained layer is compressively strained.

37.  (New) The method of claim 32, wherein the first strained layer has a surface roughness of less than approximately 0.77 nm.

38.  (New) The method of claim 32, further comprising providing an insulator layer disposed beneath the first strained layer.

39.  (New) The method of claim 38, wherein the insulator layer comprises $SiO_2$.

40.  (New) The method of claim 38, wherein the step of providing an insulator layer comprises wafer bonding.

41.  (New) The method of claim 32, further comprising providing a relaxed layer disposed beneath the strained layer.

Preliminary Amendment
Atty. Docket No.: ASC-049CI
Page 4 of 8

42.   (New) The method of claim 41, wherein the relaxed layer has an average surface roughness of less than approximately 2 nm.

43.   (New) The method of claim 42, further comprising planarizing the relaxed layer to reduce surface roughness.

44.   (New) The method of claim 41, wherein the step of providing a relaxed layer comprises epitaxial growth.

45.   (New) The method of claim 41, wherein the step or providing a relaxed layer comprises wafer bonding.

46.   (New) The method of claim 41, wherein the relaxed layer comprises SiGe.

47.   (New) The method of claim 46, wherein the substrate comprises a graded-composition SiGe layer.

48.   (New) The method of claim 46, wherein the relaxed layer has an average surface roughness of less than approximately 0.77 nm.

49.   (New) The method of claim 46, further comprising providing a regrown SiGe layer on the relaxed layer.

50.   (New) The method of claim 49, wherein the regrown layer has a thickness of less than approximately 2 μm.

51.   (New) The method of claim 49, wherein the regrown layer has a thickness of less than approximately 0.5 μm.

52.   (New) The method of claim 49, wherein the regrown layer is substantially lattice-matched to the relaxed layer.

53.   (New) The method of claim 32, further comprising providing a second strained layer disposed above the first strained layer.

Preliminary Amendment
Atty. Docket No.: ASC-049C1
Page 5 of 8

54.     (New) The method of claim 32, further comprising providing a spacer layer disposed above the first strained layer.

55.     (New) The method of claim 54, wherein the spacer layer has a thickness of less than approximately 5 nm.

56.     (New) The method of claim 54, wherein the first strained layer comprises Ge and the spacer layer consists essentially of Si.

57.     (New) The method of claim 54, further comprising providing a second strained layer disposed above the spacer layer.

58.     (New) The method of claim 57, further comprising providing a gate stack disposed above the second strained layer.

59.     (New) The method of claim 54, wherein the spacer layer comprises Ge.

60.     (New) The method of claim 54, further comprising providing a gate stack disposed above the spacer layer.

61.     (New) The method of claim 60, further comprising providing supply layer dopants located in the spacer layer.

62.     (New) The method of claim 61, wherein the supply layer dopants are provided by implantation.

63.     (New) The method of claim 60, further comprising providing supply layer dopants located below the strained layer.

64.     (New) The method of claim 63, wherein the supply layer dopants are provided by implantation.

65.     (New) The method of claim 32, wherein the first strained layer has an average surface roughness of less than approximately 0.77 nm.

Preliminary Amendment
Atty. Docket No.: ASC-049C1
Page 6 of 8

66.    (New) The method of claim 32, further comprising providing a gate stack disposed above the first strained layer.

67.    (New) The method of claim 66, further comprising providing device isolation regions.

68.    (New)The method of claim 67, wherein the device isolation regions are STI regions.

69.    (New) The method of claim 67, wherein the device isolation regions are LOCOS regions.

70.    (New) The method of claim 66, further comprising providing metal silicide regions.

71.    (New) The method of claim 70, wherein the metal silicide regions comprise alloyed metal-SiGe.

72.    (New) The method of claim 70, wherein the metal is selected from the group consisting of: Ti, Co, and Ni

73.    (New) The method of claim 70, wherein the step of providing metal silicide regions comprises deposition followed by annealing.

74.    (New) The method of claim 70, further comprising providing source and drain contact areas.

75.    (New) The method of claim 74, further comprising providing an additional SiGe or Ge layer in the source and drain contact areas prior to providing metal silicide regions.

76.    (New) The method of claim 75, further comprising providing an additional Si layer above the SiGe or Ge layer prior to providing metal silicide regions.

77.    (New) The method of claim 32, wherein the step of providing a strained layer comprises epitaxial growth.

78.    (New) The method of claim 32, wherein the step of providing a strained layer comprises wafer bonding.

Preliminary Amendment
Atty. Docket No.: ASC-049C1
Page 7 of 8

## REMARKS

Applicant files this continuation application based on co-pending patent application Serial No. 09/906,200, filed July 16, 2001 (the "parent application"), and respectfully requests entry of this Preliminary Amendment before beginning examination of the continuation application, and early favorable action by the Examiner.

Applicant amends the specification to revise the "PRIORITY INFORMATION" section inserting the proper claim for priority and serial number of the parent application. Additionally, Applicant provides a set of formal drawings for the Official Draftperson's review to replace the set of informal drawings. Applicant submits that no new matter is introduced by these amendments.

Further, Applicant hereby cancels claims 1-31, without prejudice and without any intention of abandoning the subject matter thereof, and adds new claims 32-78. Support for new claims 32-78 can be found throughout the specification, at least on page 8, lines 16-19, page 12, line 15 to page 13, line 8, page 15, lines 2-19, and page 17, lines 10-17. Accordingly, no new matter has been added. Applicant submits that claims 32-78 are in condition for allowance and respectfully request entry as such.

A check for $1256.00 in payment for the filing fee and extra claims fee is submitted herewith.. Applicant believes that no additional fee is due for this Preliminary Amendment to be entered and considered. However, please consider this a conditional authorization to charge any related fees necessary for entry of this paper to Deposit Account No. 20-0531.

Applicant respectfully requests that this application proceeds promptly to examination. If it is believed that a telephone conversation with Applicant's attorney would be helpful in expediting prosecution of this application, the Examiner is invited to call the undersigned.

Preliminary Amendment
Atty. Docket No.: ASC-049C1
Page 8 of 8

Respectfully submitted,

Date:  February 9, 2004

Mark L. Beloborodov, Reg. No. 50,773
Attorney for Applicants
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts 02110

Tel. No.: (617) 248-7453
Fax No.: (617) 248-7100

3019645

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276.

On February 10, 2006, I served the foregoing document described as **AMBERWAVE'S FOURTH SET OF INTERROGATORIES** on each interested party, as stated on the attached service list.

[X]     (BY FAX)  I caused the foregoing document to be served by facsimile transmission to each interested party at the facsimile machine telephone number shown above.

[X]     (BY ELECTRONIC MAIL)  I caused the foregoing document to be served electronically by electronically  mailing a true and correct copy through Irell & Manella LLP's electronic mail system to the e-mail address(es), as set forth above, and the transmission was reported as complete and no error was reported.

Executed on February 10, 2006, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.


_____          _____
          Amir Naini                                                    (Signature)
      (Type or print name)

## PROOF OF SERVICE MAILING LIST

Via Facsimile & E-Mail:

George M. Newcombe, Esq.
Patrick E. King, Esq.
**Simpson Thacher and Bartlett LLP**
3330 Hillview Avenue
Palo Alto, California  94304

Facsimile No.: (650) 251-5002
E-mail: gnewcombe@stblaw.com
E-mail: pking@stblaw.com


Josy Ingersoll, Esq.
John W. Shaw, Esq.
**Young Conaway Stargatt & Taylor, LLP**
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware  19899

Facsimile No.: (302) 576-3334
E-mail: jingersoll@ycst.com
E-mail: jshaw@ycst.com

Via E-Mail:

Nancy Anderson
**Simpson Thacher and Bartlett LLP**
3330 Hillview Avenue
Palo Alto, California  94304

E-mail: nanderson@stblaw.com


David LaRocca, Esq,
**Simpson Thacher and Bartlett LLP**
425 Lexington Avenue
New York, NY  10017-39545

E-mail: dlarocca@stblaw.com

1439769

# EXHIBIT E

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 575 7291
302 425 3012 FAX
jblumenfeld@mnat.com

November 4, 2005

**BY ELECTRONIC FILING**

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE  19801

      Re:    *Intel Corporation v. AmberWave Systems Corporation*
              C.A. No. 05-301-KAJ

Dear Judge Jordan:

      We write on behalf of AmberWave Systems Corporation in connection with the telephone conference scheduled for November 8 at 3:30 p.m.  The parties have been unable to agree on two provisions of a proposed protective order (the "Protective Order") and have decided to submit simultaneous letters regarding their positions, without replies.

      The points of disagreement are in paragraph 6 of the negotiated form of the Protective Order, which relates to a prosecution bar.[1]  The parties have agreed that individuals with access to information subject to the highest degree of confidentiality—Attorneys' Eyes Only Technical Material—should be subject to a bar that prohibits substantive participation in the prosecution of certain patents and patent applications.  They disagree, however, on two elements of the prosecution bar.  As the party seeking the prosecution bar, Intel has the burden of proving that good cause exists for the more stringent version of the prosecution bar it is proposing. *GlenMede Trust Co. v. Thompson*, 56 F. 3d 476, 483 (3rd Cir. 1995).

## Independent Advisors

      AmberWave proposes that the prosecution bar should not extend to expert witnesses and consultants (defined in the Protective Order as "Independent Advisors") as long as they work for

---

[1]   A copy of the current draft of the Protective Order is attached to this letter.  We have included AmberWave and Intel's alternative language for paragraph 6.

The Honorable Kent A. Jordan
November 4, 2005
Page 2

a non-profit educational or research institution (such as a university). Intel maintains that university researchers who serve as Independent Advisors must agree to play no role in prosecution of applications, including the drafting of the patent applications for their own inventions.

The realities of academic research make it impossible for most university professors to agree to Intel's terms. University professors involved in scientific research are normally required to participate in the preparation and prosecution of patent applications based on their research. For example, universities have an obligation to file patents based on inventions derived from federally-funded research, if the university elects to retain title to the invention. 35 U.S.C. § 202(c)(3); 37 C.F.R. § 401.14(c)(3). In addition, regardless of federal funding, there are other circumstances in which universities require their professors to help the institution seek patent protection on research as a condition of employment.[2]

Intel's proposed rule would effectively prevent university professors involved in ongoing research—the very individuals who may be best able to give a reasoned and impartial assessment of issues in the case—from serving as Independent Advisors. The burden of Intel's proposed rule would fall disproportionately on AmberWave. Most of the Attorneys' Eyes Only Technical Material produced in this matter will be Intel documents describing the design and fabrication of its microprocessors. AmberWave requires the assistance of highly qualified Independent Advisors to assist in the analysis of these critical technical materials, which likely will be essential to establishing AmberWave's infringement case. If the Court were to adopt Intel's proposed rule, AmberWave would be relegated to retaining experts who have no pending patent applications in the field of semiconductor fabrication or design—and no ongoing research that could result in patentable inventions in this field. That rule would prevent AmberWave from retaining the most highly qualified experts.

Intel, of course, is in a much different position. Intel does not need expert assistance to help it understand its own technical materials. Moreover, the questions on which Intel has the burden of proof—invalidity and unenforceability—likely will not require the use of highly confidential AmberWave technical materials.

Prosecution bars are normally applied to counsel who prosecute patent applications for competitors. The concerns that arise with respect to the potential misuse of confidential technical information by patent prosecution counsel have no meaningful application to academic researchers. Unlike an attorney who prosecutes patent applications on behalf of a competitor to Intel, a university professor is not in the business of drafting patent applications that are intended to provide an advantage against Intel in the marketplace. University professors are focused on

---

[2]  *See, e.g.*, MIT    Inventions    and    Proprietary    Information    Agreement, http://web.mit.edu/tlo/www/propinfo.html; University of Colorado Intellectual Property Policy, http://www.cusys.edu/regents/Policies/Policy5J.htm.

The Honorable Kent A. Jordan
November 4, 2005
Page 3

conducting cutting-edge research—not drafting patent claims that cover existing technologies. In addition, unlike a patent attorney, a university professor does not ordinarily play a lead role in patent prosecution, thus making the inadvertent misuse of Intel information quite unlikely.

It is the actual relationships and activities of a particular individual that should determine that person's access to confidential information. *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1469 (Fed Cir. 1984); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, Case No. 03-484-KAJ, 2004 WL 1196965 *2 (D. Del. 2004). Intel's position, which effectively prevents any university professor involved in ongoing research from serving as an Independent Advisor in this case, is inconsistent with this precedent. The Protective Order requires AmberWave to disclose the identity of its Independent Advisors before disclosing confidential information to them, and allows Intel to challenge the proposed disclosure if there is an unacceptable risk that an Independent Advisor will not comply with the Protective Order. ¶ 7. This procedure allows the Court to make individualized decisions based on the person involved, while at the same time being responsive to Intel's concerns.

## Reexamination Proceedings

Any person, including a patent holder, can request the Patent and Trademark Office to reexamine an issued patent based on certain types of prior art. 37 C.F.R. § 1.510(a). Intel's counsel has, in a previous draft of the Protective Order, acknowledged that it is appropriate to allow counsel of record to have some level of participation in certain reexamination proceedings. Intel's counsel, however, has not articulated exactly what level of participation it is willing to accept.

AmberWave proposes that counsel of record for a party be allowed to participate in the reexamination of that party's patents, as long as three criteria are met: (1) the patent is the subject of a litigation between Intel and AmberWave; (2) counsel does not participate in the drafting of any claims or the specification; (3) the reexamination is not filed by the party the counsel represents, or a third party acting at the request of the party.

Counsel of record for a party will have extensive knowledge of the issues involving the validity of the patents in litigation between Intel and AmberWave. It would be a significant burden on a party if it were not able to rely on this knowledge in the reexamination proceeding. The party would need to hire new lawyers to acquire the knowledge of counsel of record on the question of validity. Indeed, Intel could significantly increase AmberWave's costs by seeking a reexamination of the patents in litigation—thereby requiring AmberWave to have two sets of lawyers handling the two proceedings without being able to communicate with one another.

Respectfully,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

The Honorable Kent A. Jordan
November 4, 2005
Page 4


JBB/bls
Attachment

cc:    Peter T. Dalleo, Clerk (By Hand)
        Josy W. Ingersoll, Esquire (By Hand)
        David I. Gindler, Esquire (By Fax)
        George M. Newcombe, Esquire (By Fax)

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-301-KAJ |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Counterdefendant. | ) | |
| | ) | |

**CONFIDENTIALITY STIPULATION AND [PROPOSED] PROTECTIVE ORDER**

IT IS HEREBY STIPULATED AND AGREED, by and between the parties to the above-identified action, through their respective counsel, that protection of designated information produced during discovery in this action is warranted because Plaintiff Intel Corporation ("Intel") and Defendant AmberWave Systems Corporation ("AmberWave") each possesses, controls, or has in its custody certain non-public information that it considers to be highly confidential, the public disclosure of which would present the prospect of competitive harm, and the volume of this non-public information is such that an advance review and designation by the Court would be impractical, and therefore the terms and conditions of this Stipulation and Protective Order ("Protective Order") shall govern the divulgence of information by the parties in this action.

Pursuant to Federal Rule of Civil Procedure 26(c) and upon stipulation of the parties, IT IS HEREBY ORDERED AS FOLLOWS:

1.      This Order shall apply to all information produced or disclosed by any party or non-party in whatever form, including, but not limited to, documents, things, discovery responses, depositions, testimony or other papers produced, filed, or served by a party in this action ("Information").

2.      Any Information disclosed in the above-captioned matter by a party or non-party (the "Producing Party") that the Producing Party reasonably and in good faith believes to constitute a trade secret or other confidential research, development, or commercial information may be designated as "Confidential Information" or "Confidential Information -- Attorneys' Eyes Only Business Material" or "Confidential Information -- Attorneys' Eyes Only Technical Material" by the Producing

1

Party in the manner set forth herein. "Confidential Information" is defined as information that has not been made public and that the Producing Party reasonably and in good faith believes would cause competitive harm to the Producing Party if publicly known. "Confidential Information -- Attorneys' Eyes Only Business Material" is defined as confidential business and commercial information that has not been made public and the Producing Party reasonably and in good faith believes would cause the Producing Party to suffer substantial competitive harm if publicly known or known by agents or employees of the parties who would have access under this Order to Confidential Information. "Confidential Information -- Attorneys' Eyes Only Technical Material" is defined as confidential technical information that has not been made public and the Producing Party reasonably and in good faith believes would cause the Producing Party to suffer substantial competitive harm if publicly known or known by agents or employees of the parties who would have access under this Order to Confidential Information.

3.      Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material disclosed to a party (the "Receiving Party") in the course of this matter: (a) may be used by the Receiving Party solely in connection with any litigations involving AmberWave and Intel, and for no other purpose; and (b) shall in any event not be disclosed by the Receiving Party to anyone, including officers, employees or agents of the Receiving Party, except in compliance with the terms hereof.

4.      Subject to the other terms of this Protective Order, information designated "Confidential Information -- Attorneys' Eyes Only Business Material" or

2

"Confidential Information -- Attorneys' Eyes Only Technical Material" may be made available by a Receiving Party only to the following persons:

      a. outside attorneys of record herein for the Receiving Party and other legal, clerical and administrative personnel, such as attorneys, paralegals and secretaries employed by and working under the supervision of the outside attorneys of record in connection with this matter or other litigation involving Intel and AmberWave (collectively, the "Counsel of Record");

      b. two Receiving-Party employees who will not, during the litigation and, until one year after the entry of a final non-appealable or non-appealed judgment or the complete settlement of all claims against all parties in this matter, direct, contribute to, or give advice about, research, development, sales or marketing strategies relating to or concerning semiconductor fabrication or design based in whole or in part on information learned from the Disclosing Party's materials;

      c. persons who have been retained by the Receiving Party or its Counsel of Record specifically to provide expert testimony or confidential consulting services in this matter or other litigation involving Intel and AmberWave (collectively referred to as "Independent Advisors"), and persons employed by any Independent Advisor, when working under the supervision of such an Independent Advisor in connection with this matter or other litigation involving Intel and AmberWave;

3

d.  deposition or trial witnesses, who:

(i) have prior knowledge of the designated Information, or who the examining attorney has a good faith basis to believe have prior knowledge of the designated Information; or

(ii) authored or received the document containing the designated Information, or who the examining attorney has a good faith basis to believe authored or received the document containing the designated Information; or

(iii) is a present director, officer, employee, and/or agent of the Producing Party; or

(iv) is an Independent Advisor of the Producing Party;

and the attorneys representing these witnesses to the extent they are not Counsel of Record for Intel or AmberWave;

e.  the Court and its employees, and any other court presiding over a litigation involving Intel and AmberWave, and its employees;

f.  court reporters, stenographers, or videographers, or other persons preparing transcripts of testimony under the supervision of a court reporter, stenographer, or videographer;

g.  persons who have been retained by the Receiving Party or its Counsel of Record specifically to consult with regard to jury- or trial-

4

related matters, including the composition of the jury in this matter or other litigation involving Intel and AmberWave (collectively referred to as "Trial Consultants"), and persons employed by them, when working under the supervision of such a Trial Consultant in connection with this matter or other litigation involving Intel and AmberWave; provided that this provision explicitly excludes any person engaged by a Receiving Party or any Counsel of Record or Trial Consultant for a Receiving Party to participate in any mock-trial exercises who is a current or former employee of, or individual who has provided consulting services to, any company that designs or manufacturers microprocessors or wafers for microprocessors;

      h.  persons who have been retained by the Receiving Party or its Counsel of Record specifically to prepare demonstrative or other exhibits for deposition, trial or other court proceedings in this matter or other litigation involving Intel and AmberWave (collectively referred to as "Graphic Designers"), and persons employed by them, when working under the supervision of such a Graphic Designer in connection with this matter or other litigation involving Intel and AmberWave; and

      i.  persons who have been retained by the Receiving Party or its Counsel of Record to provide litigation support services, such as document imaging, coding, copying, and management, in this matter or other litigation involving Intel and AmberWave (collectively referred to as "Litigation Support Vendors"), and persons employed by them, when

5

working under the supervision of such a Litigation Support Vendor in connection with this matter or other litigation involving Intel and AmberWave; and

      j.   any other person upon such terms and conditions as the parties may agree or as the Court hereafter by order direct;

provided that any Receiving Party employee, Independent Advisor, or person described in category 3(j) above authorized by this paragraph to receive Confidential Information -- Attorneys' Eyes Only Business Material or Confidential Information -- Attorneys' Eyes Only Technical Material and to whom Confidential Information -- Attorneys' Eyes Only Business Material or Confidential Information -- Attorneys' Eyes Only Technical Material is disclosed shall, prior to any such disclosure, execute a Certificate in the form annexed hereto as Exhibit A. Such Certificates shall be retained by Counsel of Record for the Receiving Party, and shall be made available to Counsel of Record for the Producing Party upon a showing that the Producing Party has a good faith and objectively reasonable belief that the terms of this Protective Order have not been observed.

      5.   Subject to the other terms of this Order, information designated "Confidential Information" (as opposed to information designated "Confidential Information -- Attorneys' Eyes Only Business Material" or "Confidential Information -- Attorneys' Eyes Only Technical Material") may be made available by a Receiving Party only to those persons described in Paragraph 4 above and to: (a) Receiving Party officers, directors, and employees whose assistance is needed by Counsel of Record for engaging in this litigation, or any other litigation involving Intel and AmberWave, including but not limited to any mediation or settlement conferences, or settlement discussions; and (b)

6

the Receiving Party's outside counsel other than Counsel of Record whose assistance is needed by the Receiving Party for engaging in this litigation or any other litigation involving Intel and AmberWave, including but not limited to any mediation or settlement conferences, or settlement discussions; <u>provided</u> that any person in subparagraph (a) or (b) of this paragraph to whom Confidential Information is disclosed shall, prior to any such disclosure, execute a Certificate in the form annexed hereto as Exhibit A. Such Certificates shall be retained by Counsel of Record for the Receiving Party, and shall be made available to Counsel of Record for the Producing Party upon a showing that the Producing Party has a good faith and objectively reasonable belief that the terms of the Protective Order have not been observed.

      6.     Prosecution Bar:

### Intel Position

      (a)     Notwithstanding any other provision of this Protective Order, <u>and unless otherwise ordered by the Court</u>, Confidential Information -- Attorneys' Eyes Only Technical Material shall be disclosed to a person designated in paragraph 4(a)-(c) and 4(g)-(j) only if that person agrees not to be substantively involved in the prosecution of patents or patent applications related to semiconductor fabrication or design until one year after the entry of a final non-appealable or non-appealed judgment or the complete settlement of all claims against all parties in this matter. For purposes of this paragraph:

### AmberWave Position

      (a)     Notwithstanding any other provision of this Protective Order, Confidential Information -- Attorneys' Eyes Only Technical Material shall be

7

disclosed to a person designated in paragraph 4(a)-(c) and 4(g)-(j) only if that person agrees not to be substantively involved in the prosecution of patents or patent applications related to semiconductor fabrication or design until one year after the entry of a final non-appealable or non-appealed judgment or the complete settlement of all claims against all parties in this matter, with the following exceptions: (i) Counsel of Record for a party can participate in the prosecution of a reexamination proceeding (or foreign equivalent) if (x) the patent is part of a litigation between Intel and AmberWave; (y) the Counsel of Record does not participate in the drafting of any claims or portions of the specification; (z) the reexamination was not instituted by the party the Counsel of Record represents, or by a third party acting at the request of the party or an agent of the party. (ii) Independent Advisors who work for a not-for-profit educational or research institution can participate in the prosecution of patents and patent applications. (iii) As otherwise approved by this Court or by the Producing Party. For the purposes of this paragraph:

## Agreed-Upon Provisions In Paragraph 6

A.    "Substantively involved in the prosecution of patents or patent applications" means participation in the drafting of any language that appears in any specification or any claim in a patent application, or preparation of replies to Office Actions, submitted to the United States Patent and Trademark Office or any foreign agency responsible for issuing patents.

B.    "Patents or patent applications related to semiconductor fabrication and design" does not include patent applications or patents relating

8

to apparatuses and tools used in the process of semiconductor fabrication or design.

(b)    Within one month of the entry of this Order, any law firm involved in this litigation shall set up a formal ethical wall prohibiting those of their members or employees who review Confidential Information -- Attorneys' Eyes Only Technical Material designated under this Protective Order from discussing such information with any person who is substantively involved in the prosecution of patents or patent applications related to semiconductor fabrication or design until one year after the entry of a final non-appealable or non-appealed judgment or the complete settlement of all claims against all parties in this matter.

7.    Prior to providing access to Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material to Independent Advisors,

a.  the Receiving Party seeking to disclose Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material to an Independent Advisor shall disclose in writing the following information to the Producing Party:

(i)    the name of the Independent Advisor;

(ii)    the present employer and title of the Independent Advisor;

(iii)    a résumé (or similar document) describing prior work/employment and publications of the Independent Advisor; and

9

(iv)   a certificate in the form annexed hereto as Exhibit A,
signed by the Independent Advisor, that he or she has read
this Protective Order and agrees to be bound by its terms.

b.  Within ten business days after transmittal of the information
described in subparagraph (a), the Producing Party may object in writing
to the Independent Advisor if it has a good faith and reasonable basis to
believe that the Independent Advisors would not abide by this Protective
Order, either intentionally or unintentionally.  The Producing Party must
provide an explanation of the good faith and reasonable basis for believing
that the Independent Advisor would not abide by this Protective Order.
Failure to object to an Independent Advisor or failure to provide an
explanation of the good faith and reasonable basis for believing that the
Independent Advisor would not abide by this Protective Order within ten
business days shall be deemed approval of the Independent Advisor.  The
Producing Party shall have no right to object to a disclosure of any
Confidential Information, Confidential Information -- Attorneys' Eyes
Only Business Material, or Confidential Information -- Attorneys' Eyes
Only Technical Material to an Independent Advisor if the objection and
explanation is not made within ten business days of the disclosure in
subparagraph (a).

c.  If the Producing Party objects to the disclosure of Confidential
Information, Confidential Information -- Attorneys' Eyes Only Business
Material, or Confidential Information -- Attorneys' Eyes Only Technical

10

Material to an Independent Advisor, the Producing Party and Receiving Party shall, within five business days from the date of the transmittal of the written notice of objection, confer and attempt to resolve the dispute. If the parties cannot resolve the dispute, then, within five business days following the meet and confer, the Producing Party must file a motion with the Court, requesting that it be heard on an expedited basis, for an order that the Independent Advisor not be allowed access to Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material. No Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material shall be disclosed to the proposed Independent Advisor until the Court resolves such a motion. Failure to make a motion to the Court within five business days following the meet and confer shall be deemed approval of the Independent Advisor. These time periods are not to restrict any party from moving for a court order earlier if the circumstances so require.

8.    Nothing in this Protective Order shall bar or otherwise restrict any attorney herein from rendering legal advice to his or her client with respect to this action or any other litigation involving AmberWave and Intel, and, in the course thereof, referring to or relying upon his examination of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material; provided, however, that in rendering such

11

advice and in otherwise communicating with his or her client, the attorney shall not make any disclosure of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material, except as permitted by this Protective Order.

        9.    Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and Confidential Information -- Attorneys' Eyes Only Technical Material shall be designated as follows:

        a.    In the case of documents, designation shall be made by placing the legend "CONFIDENTIAL INFORMATION" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY BUSINESS MATERIAL" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY TECHNICAL MATERIAL" on each page of any such document containing this Information at the time of production.

        b.    In the case of information produced on electronic media, such as disks, CDs, tapes, etc., designation shall be made by placing the legend "CONFIDENTIAL INFORMATION" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY BUSINESS MATERIAL" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY TECHNICAL MATERIAL" on the exterior of the disk, CD, tape, or other media, and such designation shall apply to all contents of the disk, CD, tape or other media; provided that the Producing Party shall make a good faith and reasonable effort to place on each page of each file

12

included in such electronic media the legend "CONFIDENTIAL
INFORMATION" or "CONFIDENTIAL INFORMATION --
ATTORNEYS' EYES ONLY BUSINESS MATERIAL" or
"CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY
TECHNICAL MATERIAL".

      c.     In the case of interrogatory answers or responses to
requests to admit, designation shall be made in the case of confidential
answers by placing the legend "CONFIDENTIAL INFORMATION" or
"CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY
BUSINESS MATERIAL" or "CONFIDENTIAL INFORMATION --
ATTORNEYS' EYES ONLY TECHNICAL MATERIAL" on each page
of any answer containing this Information. Within five business days of a
request to produce a redacted version of an interrogatory answer or
response to requests to admit, the responding party shall transmit to the
propounding party a redacted version of the entire set of interrogatory
answers or responses to requests to admit that does not contain
Information designated under the Protective Order.

      d.     No document or other material shall be filed under seal
except pursuant to this Order. All applications, motions or other papers
submitted to the Court which contain Confidential Information,
Confidential Information -- Attorneys' Eyes Only Business Material, or
Confidential Information -- Attorneys' Eyes Only Technical Material shall
be filed in hard copy in sealed envelopes or other appropriate sealed

containers on which shall be endorsed the caption of this action, the title of the document contained in the sealed envelope or other container, the signature blocks of the filing party, and the legend "CONFIDENTIAL – FILED UNDER SEAL" or its equivalent. The enclosed material shall be segregated by the Court and not publicly available. Within three business days from the date of a filing made under seal, Counsel of Record for the non-filing party shall deliver to Counsel of Record for the filing party written notice of the specific portions of the filed material that contain the non-filing party's "Confidential Information" or "Confidential Information -- Attorneys' Eyes Only Business Material" or "Confidential Information - - Attorneys' Eyes Only Technical Material" so that Counsel of Record for the filing party may provide appropriately redacted copies of the filed document to the Court in accord with paragraph (G)(1) of the United States District Court for the District of Delaware's Administrative Procedures Governing Filing and Service by Electronic Means dated February 8, 2005. To the extent the parties submit Information designated under this Protective Order in a litigation between them in another court, they shall meet and confer to adopt procedures for filing sealed documents that are consistent with that court's procedures.

      e.      In the case of deposition testimony, Counsel of Record may invoke the provisions of this Protective Order by stating on the record during a deposition that testimony given at a specified portion of the deposition is designated "Confidential Information" or "Confidential

14

Information -- Attorneys' Eyes Only Business Material" or "Confidential

Information -- Attorneys' Eyes Only Technical Material."  Only

individuals authorized under the terms of this Protective Order to receive

"Confidential Information" or "Confidential Information -- Attorneys'

Eyes Only Business Material" or "Confidential Information -- Attorneys'

Eyes Only Technical Material" information shall be present during

portions of the deposition so designated.  Within ten business days of

receipt of the final deposition transcript, any Disclosing Party may modify

the designation on a portion or portions of the deposition by giving written

notice to all persons present at the deposition and Counsel of Record for

all other parties.  At the time of redesignation, those individuals subject to

this Protective Order who are no longer entitled to access the redesignated

portions of the transcript under the terms of the Protective Order shall

destroy any copies of the redesignated portions within their possession,

custody, or control.  Any party may make a written request to produce a

redacted version of a deposition transcript, in which case, within ten

business days of the later of (i) the receipt of such request and (ii) receipt

of a final version of such transcript (excluding the time period for any

corrections by the witness), Counsel of Record for the designating party

shall deliver to Counsel of Record for the other parties (and, where

applicable, the deponent) written notice of the specific page and line

numbers and/or exhibit numbers that contain information designated

"Confidential Information" or "Confidential Information -- Attorneys'

15

Eyes Only Business Material" or "Confidential Information -- Attorneys'
Eyes Only Technical Material" so that the non-designating party may
provide appropriately redacted copies of the transcript and exhibits to
individuals not approved for access to such Information.  If any portion of
a deposition is designated as "Confidential Information" or "Confidential
Information -- Attorneys' Eyes Only Business Material" or "Confidential
Information -- Attorneys' Eyes Only Technical Material," that portion of
the deposition record, including any referenced exhibits if they are also
"Confidential Information" or "Confidential Information -- Attorneys'
Eyes Only Business Material" or "Confidential Information -- Attorneys'
Eyes Only Technical Material," shall be separated from the rest of the
transcript, stamped with the designated degree of confidentiality, and
treated pursuant to the terms of this Protective Order.

10.    All documents and things which are produced for initial inspection
prior to copying and delivery shall be deemed to be designated as Confidential
Information, Confidential Information -- Attorneys' Eyes Only Business Material or
Confidential Information -- Attorneys' Eyes Only Technical Material and shall be
produced for inspection only by persons representing the Receiving Party who are
entitled to review Information so designated.  Within ten business days after the
Receiving Party selects the documents it wishes to receive copies of, the Producing Party
will designate the documents under the Protective Order and produce them.

11.    All documents and pleadings of any nature containing Confidential
Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or

16

Confidential Information -- Attorneys' Eyes Only Technical Material, and all copies thereof, shall be maintained, by any person qualified to receive and to retain them under the terms of this Protective Order, in secure facilities and in a manner intended to minimize any risk of the inadvertent disclosure thereof.

12.    Within sixty days of the earlier of the entry of a final non-appealable or non-appealed judgment in this action, or the complete settlement of all claims against all parties in this action, all written materials, other than attorney work product and attorney-client communications, containing Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material received by the Receiving Party subject to this Protective Order that are in the possession, custody or control of the Receiving Party or its agents shall be destroyed or turned over to Counsel of Record for the Producing Party. In addition to attorney-client communications, and attorney work product, Counsel of Record for the Receiving Party shall be entitled to retain a single archival copy of court papers, responses to interrogatories or requests for admission, correspondence, expert reports, deposition and trial transcripts, and exhibits that contain Information designated as "Confidential Information" or "Confidential Information -- Attorneys' Eyes Only Business Material" or "Confidential Information -- Attorneys' Eyes Only Technical Material," provided that Counsel of Record shall not disclose any such information except pursuant to the terms of this Protective Order, a separate written agreement with the Producing Party, or a court order. The provisions of this Protective Order restricting the communication and use of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information

17

-- Attorneys' Eyes Only Technical Material continue to be binding after the entry of a final non-appealable or non-appealed judgment in this action, or the complete settlement of all claims against all parties in this action.

13.    If Counsel of Record for the Receiving Party at any time objects to the designation or continued treatment of certain Information as Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material by the Producing Party, he or she shall so notify Counsel of Record for the Producing Party in writing, and the parties shall then meet-and-confer within five business days from Counsel of Record for the Producing Party's receipt of the writing, in a good faith attempt to resolve the dispute. If Counsel of Record shall be unable to agree, it shall be the responsibility of the Receiving Party to move for an order requiring redesignation of the information in dispute. The burden of proving whether a redesignation should or should not occur shall be assigned according to applicable law. Until an order on such motion is obtained, the original designation by the Producing Party shall stand.

14.    Nothing herein shall be deemed to restrict in any way a Producing Party's use of its own Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material. The restrictions in this Protective Order shall not apply to any Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material that: (a) is lawfully received free of restriction from a third party who furnished the information other than through a breach of this Protective Order or other confidentiality

18

obligation; or (b) is or becomes publicly available other than through a breach of this Protective Order or other confidentiality obligation. Further, nothing in this Protective Order shall affect the right of the Receiving Party to transmit to anyone information disclosed in this litigation that has not been designated Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material.

15.    Entering into this Protective Order, and agreeing to produce, producing, or receiving Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material or otherwise complying with the terms of this Protective Order shall not:

a.    Operate as or constitute an admission by any party that any particular Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material contains or reflects trade secrets, proprietary or commercially sensitive information or any other type of confidential matter;

b.    Require disclosure of information that is protected by the attorney-client privilege, work product privilege, or any other applicable privilege or immunity;

19

        c.       Prevent the parties to this Protective Order from agreeing to alter or waive the provisions or protections provided for herein with respect to particular discovery material; or

        d.       Oblige any party to produce documents, testimony, or other material it considers privileged or not subject to discovery.

16.      Inadvertent disclosure of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material without appropriate designation shall be without prejudice to any claim that such Information is confidential, if as soon as reasonably possible after the Producing Party becomes aware of any inappropriate designation, the Producing Party properly designates such material pursuant to the terms of this Protective Order.

17.      Inadvertent disclosure of Information shall not constitute a waiver of the attorney-client privilege or work product immunity or any other applicable privilege if, as soon as reasonably possible after the Producing Party becomes aware of any inadvertent or unintentional disclosure, the Producing Party designates any such Information as within the attorney-client privilege or work product immunity or any other applicable privilege and requests return of such Information to the Producing Party. Upon request by the Producing Party, the Receiving Party immediately shall return all copies of such inadvertently produced document(s) and shall make no use whatsoever of the inadvertently disclosed information irrespective of whether the Receiving Party agrees with the assertion of privilege.  Nothing herein shall prevent the Receiving Party

20

from challenging the propriety of the attorney-client privilege or work product immunity or other applicable privilege designation by submitting a written challenge to the Court.

18.    This Protective Order and the procedures set forth herein shall not preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure, Federal Rules of Evidence or any other statute, rule or authority.  Nothing herein shall preclude any party from applying to the Court for any modification of the terms provided herein, as it may deem appropriate under the circumstances; provided, however, that prior to such application, the parties involved shall make a good faith effort to resolve the matter by agreement.

19.    Nothing herein shall be construed to affect in any way the evidentiary admissibility of any document, testimony, or other matter at any court proceeding related to this matter.  The designation of certain information pursuant to this Protective Order shall not, for that reason alone, bar its introduction or use at any court proceeding related to this matter pursuant to such terms and conditions as the Court may deem appropriate, consistent with the need for a complete and accurate record of the proceedings; provided, however, that every effort shall be made, through the use of procedures agreed upon by the parties or otherwise, to preserve the confidentiality of Information designated pursuant to this Protective Order as Confidential Information or Confidential Information -- Attorneys' Eyes Only Business Material or Confidential Information or Confidential Information -- Attorneys' Eyes Only Technical Material.

20.    By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or

21

party subject to this order who becomes subject to a subpoena or motion to disclose another party's Information designated Confidential Information or Confidential Information -- Attorneys' Eyes Only Business Material or Confidential Information or Confidential Information -- Attorneys' Eyes Only Technical Material under this Protective Order shall promptly notify that party of the subpoena or motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

21.     It is expressly contemplated and agreed that the terms of this Protective Order are applicable to Information submitted by a non-party and/or produced by a non-party in connection with this litigation, and that the parties will treat all Information of a non-party in accordance with the terms of this Protective Order. In the case of third-party discovery, the Requesting Party shall inform the third party of and provide the third party with this Protective Order.

22.     Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery or testimony outside of the restrictions and procedures of the Federal Rules of Civil Procedure, District of Delaware Local Rules, and orders of this Court.

23.     This Court shall retain jurisdiction to enforce the terms of this Protective Order after final termination of this action.

24.     The parties agree that the terms of this Protective Order are intended to govern the production of all materials in each legal proceeding involving

22

AmberWave and Intel. To the extent a protective order is submitted in a separate

proceeding involving AmberWave and Intel, the parties agree that the form of such

protective order submitted will be substantially identical to this Protective Order and shall

be modified only to the extent necessary to comply with any local rule, any regulation of

the presiding court in such proceeding, or by the presiding court in such proceeding. The

parties shall meet and confer in good faith in order to resolve any disagreement on the

form of the protective order to be submitted in any such separate proceeding.

IN WITNESS WHEREOF, the parties hereto caused this agreement to be duly executed

as of the day and year written below.

Dated: November __, 2005          YOUNG CONWAY STARGATT &
                                  TAYLOR LLP

                                  By: _____

                                      JOSY W. INGERSOLL (#1088)

                                  SIMPSON THACHER & BARTLETT LLP

                                  By: _____

                                      JEFFREY E. OSTROW

                                      Attorneys for Plaintiff and Counter-
                                      Claim Defendant INTEL
                                      CORPORATION

23

MORRIS, NICHOLS, ARSHT & TUNNELL

By: _____

    JACK B. BLUMENFELD (#1014)

IRELL & MANELLA LLP

By: _____

    DAVID I. GINDLER

Attorneys for Defendant and Counter-Claim Plaintiff AMBERWAVE SYSTEMS CORPORATION

IT IS SO ORDERED.

_____, 2005

_____
HONORABLE KENT A. JORDAN, USDC

24

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-301-KAJ |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Counterdefendant. | ) | |

**CONFIDENTIALITY AGREEMENT**

I, _____, declare and say that:

    1.    I live at _____. I am employed as _____ [position] by _____ [name and address of employer].

    2.    I have been given a copy of the Confidentiality Stipulation and Protective Order ("Protective Order") entered in *Intel Corporation v. AmberWave Systems Corporation* CA No. 05-301-KAJ (D. Del.) and I have read said Protective Order.

25

3.      I hereby promise and agree to be bound by its terms, and promise and agree to maintain, pursuant thereto, the confidentiality of all information furnished to me which has been designated as such under the Protective Order.  I understand that these promises are conditions precedent to my receipt of any such information.

4.      I agree that I will not disclose or discuss such confidential material with anyone other than as consistent with terms of the Protective Order.

5.      I understand that any disclosure or use of confidential material in any manner contrary to the provisions of the Protective Order may subject me to sanctions for contempt.

6.      If I receive Confidential Information -- Attorneys' Eyes Only Technical Material, I agree that I will not become substantively involved in the prosecution of patent applications or patents related to strained silicon technology, until one year after issuance of a final, non-appealable or non-appealed judgment in this case, or a settlement of all claims against all parties in this case,

**Intel Position**

unless otherwise approved by this Court or by the Producing Party.

**AmberWave Position**

unless I am an Independent Advisor who works for a not-for-profit educational or research institution, or as otherwise approved by this Court or by the Producing Party.

7.      I hereby submit to the jurisdiction of the United States District Court for the District of Delaware, for the purpose of enforcing the terms of this Agreement and Protective Order.

26

I declare under penalty of perjury that the foregoing is true and correct.


Dated: _____

_____
Signature

_____
Name Typed or Printed

_____
Street Address

_____
City. State, Zip Code


27