# EXHIBIT F

LEXSEE 2003 US DIST LEXIS 23653

**CUMMINS-ALLISON CORP., an Indiana Corporation, Plaintiff, vs. GLORY LTD., a Japanese Corporation; GLORY SHOJI CO., LTD., a Japanese Corporation; and GLORY (U.S.A.) INC., a California Corporation, Defendants.**

No. 02 C 7008

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2003 U.S. Dist. LEXIS 23653*

**December 31, 2003, Decided**
**January 2, 2004, Docketed**

**SUBSEQUENT HISTORY:** Partial summary judgment granted by, in part, Partial summary judgment denied by, in part *Cummins-Allison Corp. v. Glory, Ltd., 2005 U.S. Dist. LEXIS 6150 (N.D. Ill., Mar. 28, 2005)*

**PRIOR HISTORY:** *Cummins-Allison Corp. v. Glory Ltd., 2003 U.S. Dist. LEXIS 16454 (N.D. Ill., Sept. 17, 2003)*

**DISPOSITION:** [*1] Glory's motion to amend protective order GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant competitors filed a motion to modify a stipulated protective order, seeking to add a proposed new classification of confidential patent prosecution information, to bar plaintiff competitor's counsel from receiving the information. Defendants argued, in the alternative, that plaintiff's counsel be barred from participating in the prosecution of any patent applications relating to the subject matter of the patents-in-suit.

**OVERVIEW:** The parties were competitors with respect to the sale of currency discriminators. Plaintiff alleged that defendants had infringed two of its patents. Plaintiff's counsel of record, who had been extensively involved in prosecuting plaintiff's patent applications in the Patent and Trademark Office, were strictly outside patent attorneys for plaintiff. The magistrate initially rejected plaintiff's argument that defendants waived their right to seek to modify the protective order. The magistrate emphasized that plaintiff had not attempted to argue that counsel had no role in shaping defendants' patent applications and how they were prosecuted. The magistrate

concluded that counsel were involved in "competitive decisionmaking," which included advice by counsel in prosecuting patent applications. A categorical exclusion order was unwarranted, however, because it could limit counsel's ability to fully represent and advise plaintiff. Such a broad order would not be reasonably tailored (much less, absolutely necessary) to the risk of inadvertent disclosure that defendants sought to address. Instead, the magistrate limited the ability of counsel to prosecute certain patent applications.

**OUTCOME:** The magistrate granted defendant's motion to amend the protective order by creating a category of documents entitled confidential patent prosecution information. The court denied defendant's request to bar the attorneys from receiving the information. However, the court modified the protective order to indicate that information could be shown only to persons qualified to receive it.

**CORE TERMS:** patent, protective order, confidential, competitive, prosecuting, modify, confidential information, subject matter, inadvertent, disclosure, prosecutor, shaping, prosecuted, prosecute, pricing, competitor, pendency, barring, lawsuit, hardship, counsel of record, product design, patents-in-suit, declaration, disclose, issuance, confidentiality, inadvertently, modification, designation

**LexisNexis(R) Headnotes**

*Civil Procedure > Disclosure & Discovery > Protective Orders*
*Evidence > Procedural Considerations > Burdens of Proof*

2003 U.S. Dist. LEXIS 23653, *

[HN1] The party seeking to modify a protective order has the burden of showing good cause for its requested modifications.

*Civil Procedure > Disclosure & Discovery > Protective Orders*
[HN2] Courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties.

*Evidence > Privileges > Trade Secrets*
*Trade Secrets Law > Misappropriation Actions > Accidental & Mistaken Disclosure*
[HN3] In deciding whether to bar or condition the access by counsel, the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access. A denial of access cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order. Rather, the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party must govern any concern for inadvertent or accidental disclosure. The inquiry into those factual circumstances often centers on whether counsel is engaged in competitive decisionmaking.

*Evidence > Privileges > Trade Secrets*
[HN4] The phrase "competitive decisionmaking" would appear serviceable as a shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor. This listing of client decisions is not limited to pricing and product design. Those are only examples of the kinds of client decisions that may be made in light of similar or corresponding information about a competitor. A number of courts have held that advice by counsel in prosecuting patent applications falls within the scope of "competitive decisionmaking."

*Civil Procedure > Counsel*
[HN5] Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary.

COUNSEL:  For  Cummins-Allison  Corporation, PLAINTIFF: Bruce L Bower, Winston & Strawn LLP, Chicago, IL USA. Edward L Foote, Winston & Strawn LLP, Chicago, IL USA. John Edmund Mooney, Winston

& Strawn LLP, Chicago, IL USA. Jeffrey G Knoll, Wood, Phillips, Vansanten, Hoffman & Ertel, Chicago, IL USA. Stephen Gary Rudisill, Jenkens & Gilchrist, Chicago, IL USA. Edward Francis McCormack, Jenkens & Gilchrist, Chicago, IL USA. Keith Carter Hannigan, Jenkens & Gilchrist, Chicago, IL USA. Paul Richard Kitch, Jenkens & Gilchrist, Chicago, IL USA. Jeffrey Leonard Hamera, Jenkins & Gilchrist, Chicago, IL USA.

For Glory Ltd., Glory Shoji Co., Ltd., DEFENDANTS: Joseph Kent Mathewson, Donohue, Brown, Mathewson & SMYTH, Chicago, IL USA. Charles E Harper, Jr., Quarles & Brady LLP, Chicago, IL USA. Stuart Lubitz, Hogan & Hartson, LLP, Los Angeles, CA USA. David L Lubitz, Hogan & Hartson, LLP, Shinjuk-Ku Tokyo, Japan.

For Glory (USA) Inc., DEFENDANT: Steven P Hollman, Hogan & Hartson, Washington, DC USA. Joseph Kent Mathewson, Donohue, Brown, Mathewson & SMYTH, Chicago, IL USA. Charles E Harper, Jr., Quarles & Brady LLP, Chicago, IL USA. Stuart Lubitz, [*2] Hogan & Hartson, LLP, Los Angeles, CA USA. David L Lubitz, Hogan & Hartson, LLP, Shinjuk-Ku Tokyo, Japan.

JUDGES: District Judge Ronald A. Guzman. SIDNEY I. SCHENKIER, United States Magistrate Judge.

OPINIONBY: SIDNEY I. SCHENKIER

OPINION:

### MEMORANDUM OPINION AND ORDER

In this opinion, we address an issue that was raised early in the litigation but, until recently, has lain dormant: the right of the plaintiff, Cummins, to show certain documents produced in this litigation by the defendants (collectively referred to as "Glory"), to Stephen G. Rudisill and Paul R. Kitch, attorneys who are both counsel of record for Cummins in this lawsuit and counsel who prosecute patent applications for Cummins.

Glory has filed a motion to modify the stipulated protective order entered October 10, 2002 (doc. # 129). In its motion, Cummins seeks to do the following: (a) add a new provision (paragraph 3(c)) creating a class of documents entitled "Confidential -- Patent Prosecution Information," which would consist of information that is "Highly Confidential" as defined by the protective order, and that additionally relates to "non-public patent applications and related communications or design or to research [*3] and development activities concerning current or future products"; (b) add a new provision (paragraph 9(b)) prohibiting Messrs. Rudisill and Kitch from receiving Glory's "Confidential -- Patent Prosecution

2003 U.S. Dist. LEXIS 23653, *

Information"; (c) in the alternative, provide in proposed paragraph 9(b) that if Messrs. Rudisill or Kitch receive such documents, they would be barred from participating in the prosecution of any patent applications "relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals"; and (d) make other, related changes to paragraphs 11, 12 and 25 of the protective order.

Cummins does not object to the proposed new classification of "Confidential -- Patent Prosecution Information," but objects to barring Messrs. Rudisill and Kitch from receiving them. Cummins further objects to any limitations on the ability of Messrs. Rudisill or Kitch to prosecute patent applications if they receive "Confidential -- Patent Prosecution Information"; in the alternative, Cummins argues that if limitations are imposed, they should differ from those suggested by Glory. Finally, Cummins disagrees [*4] with the changes to paragraphs 11, 12 and 25 of the protective order proposed by Glory.

For the reasons set forth below, the Court rules as follows:

    A. The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential -- Patent Prosecution Information."

    B. The Court DENIES Glory's request to bar Messrs. Rudisill and Kitch from receiving Confidential -- Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.

    C. The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.

    D. The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.

    E. The Court *sua sponte* modifies paragraph 16 of the protective to make clear that it applies to Confidential -- Patent Prosecution Information.

I.

We begin with a brief review of the background facts relevant to this motion. Cummins and Glory are competitors with respect to the [*5] sale of currency discriminators (which are machines that determine the authenticity and denomination of a stack of currency, and tabulate its value). Since early 1990, Cummins has prosecuted numerous patent applications relating to currency discriminators. n1

        n1 In an earlier opinion in this case recommending denial of Cummins's motion for preliminary injunction, the Court examined in detail the various applications: (a) Application No. 07/475,111, dated February 5, 1990; (b) Application No. 07/885,648, dated May 19, 1992, which was a continuation-in-part ("CIP") of Application No. '111, and which led to the issuance of the '196 patent on March 15, 1994; (c) Application No. 08/127,334, dated September 27, 1993, which was a CIP of Application No. '648, and which resulted in the issuance of Patent No. 5,467,405 on November 14, 1995; (d) Application No. 08/339,337, dated November 14, 1994, which was a CIP of Application No. '334, and which resulted in the issuance of Patent No. 5,692,067 on November 25, 1997; (e) Application No. 08/841,203, dated April 29, 1997, which was a CIP of Application No. '337, and which resulted in the issuance of Patent No. 6,028,951 on February 22, 2000; and (f) Application No. 09/453,200, which was a CIP of Application No. '203, and which resulted in the issuance of the '806 patent on October 1, 2002.

[*6]

On October 1, 2002, Cummins brought this suit alleging that Glory had infringed *United States Patent No. 6,459,806* ("the '806 patent"), issued to Cummins on October 1, 2002. Since that time, Cummins has amended the complaint to add claims of infringement of *United States Patent No. 5,291,196* ("the '196 patent"). Messrs. Rudisill and Kitch -- along with several other attorneys of the law firm of Jenkins & Gilchrist -- have been litigation counsel of record for Cummins from the beginning of this lawsuit. On October 11, 2002, Jeffrey Knoll, of the law firm of Wood, Phillips, Van Santen, Hoffman & Ertel (now known as Wood, Phillips, Kutz, Clark & Mortimer), filed an appearance for Cummins (doc. # 11). In April 2003, three attorneys from the law firm of Winston & Strawn filed additional appearances as counsel of record for Cummins (doc. ## 98-99).

In addition to being counsel of record, Messrs. Rudisill and Kitch have been extensively involved in prose-

cuting Cummin's patent applications in the Patent and Trademark Office ("PTO"), including the applications which led to the '806 and '196 patents, which are directly at issue in this litigation (see Cummins Mem. at 3). Messrs. Rudisill [*7] and Kitch also have been involved in prosecuting eight other Cummins patent applications that are related to the '806 and '196, including one patent that was the subject of prior litigation in this district between the parties (the '067 patent) and three patents at issue in a lawsuit currently pending in the Eastern District of Texas (the '067 patent, United States Patent No. 5,815,592, and United States Patent No. 6,381,354 (Glory Mot. at 3 n.5 and Ex. 1).

Messrs. Rudisill and Kitch have submitted unrebutted declarations stating that they are strictly outside patent counsel for Cummins: neither of them is - or ever has been - a shareholder, officer or employee of Cummins (Cummins Mem., Ex. A, P3; Ex. B, P3). It also is undisputed that neither Mr. Rudisill or Mr. Kitch is involved in Cummin's product design, marketing, pricing, or in "planning decisions" (Id., Ex. A, P4; Ex. B, P4), and that neither has ever been cited for any ethical violation, or for violation of a protective order (Id., Ex. A, P5; Ex. B, P5). However, Messrs. Rudisill and Kitch are silent on their roles in advising Cummins on the strategy of what to claim in a patent application, or how to respond when [*8] the PTO (as was often the case with the patents in suit and the applications that led to them) raised questions or rejected claim. Cummins does not assert that Messrs. Rudisill and Kitch are merely conduits through which Cummins transmits applications that have been fully formed by Cummins, without their input.

Messrs. Rudisill and Kitch state that they have been principal patent counsel in this litigation, and in that capacity, have devoted substantial time to familiarizing themselves with the patents at issue (which should not have been a time consuming task, since Messrs. Rudisill and Kitch prosecuted the applications that led to those patents) and with Glory's equipment and related technology (Cummins Mem., Ex. A, P6; Ex. B, P6). They do not claim to be the only attorneys representing Cummins who have done so, or to be the only attorneys of record for Cummins who are experienced patent attorneys. n2 Cummins also states that it has not yet shared with "patent prosecutors. . .selected confidential documents" identified by Glory (Cummins Mem. at 2) - thereby indicating that neither Mr. Rudisill nor Mr. Kitch has yet invested time in reviewing and analyzing materials that Glory seeks [*9] to protect as "Confidential - Patent Prosecution Information." n3

n2 According to its website, the Wood, Phillips firm specializes in intellectual property matters. However, the Wood, Phillips lawyer who appeared for Cummins, Mr. Knoll, no longer is with that firm and no longer appears to be practicing in Chicago; it is unclear whether Wood, Phillips has any continuing role on behalf of Cummins in this case. With respect to the three Winston & Strawn attorneys who are of record, Edward L. Foote is the only one who, judging from the Winston & Strawn website, has experience in litigating intellectual property matters. We do not know whether any other Winston & Strawn intellectual property lawyers are assisting Cummins without having formally appeared in the case.

n3 We note that while this representation is made in Cummins's memorandum, the declarations offered by Messrs. Rudisill and Kitch are silent on this point. Moreover, the representation in Cummins's memorandum differs from what Cummins stated during a December 11, 2003 hearing to set the briefing schedule on this motion. At that time, Cummins stated that it had not shown the materials to both Mr. Rudisill and Mr. Kitch, but that one of them had seen the materials. Given the Court's decision that Messrs. Rudisill and Kitch will be barred from prosecuting certain patent applications if they review Glory's Confidential - Patent Prosecution Information, the Court will require each of them to provide a declaration to Glory within 14 days of this order stating whether they have reviewed such information.

[*10]

## II.

[HN1] As the party seeking to modify the protective order, Glory has the burden of showing good cause for its requested modifications. SmithKline Beecham Corp. v. Synthon Pharmaceuticals Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002); Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 499, 501-502 (S.D. Iowa 1992) (citing cases). As explained above, Cummins does not dispute the existence of good cause to modify the protective order to add paragraph 3(c), which creates a new class of Confidential - Patent Prosecution Information.

However, Cummins raises several challenges to Glory's request to bar Messrs. Rudisill and Kitch from viewing Confidential - Patent Prosecution Information. First, Cummins argues that the Court should not even address the merits of Glory's request because the request is untimely (Cummins Mem. at 2-3). Second, Cummins argues that Glory has failed to establish good cause to place any conditions, other than those already in the pro-

tective order governing Confidential and Highly Confidential Information, on the right of Messrs. Rudisill and Kitch to receive that information (*Id.* at 4-11). *Third,* Cummins argues that if any [*11] conditions are placed on the right of Messrs. Rudisill and Kitch to receive Confidential - Patent Prosecution Information, the conditions that Glory requests are too broad (*Id.* at 12-14). We address each of these arguments below.

### III.

We begin the analysis with consideration of Cummins's argument that the Court need not address Glory's request to modify the protective order. Cummins argues that the protective order in this case was negotiated by the parties and entered by the Court (with modifications irrelevant to the pending motion) on October 11, 2002, without Glory seeking to include the provisions concerning Confidential - Patent Prosecution Information or access to it that Glory now requests. Cummins argues that at the time the protective order was entered more than one year ago, Glory knew that Messrs. Rudisill and Kitch were both counsel of record and patent prosecution counsel, and that it now is too late for Glory to complain (Cummins Mem. at 2-3). We disagree.

The protective order entered on October 11, 2002 was not written in stone. The stipulated protective order here specifically provides that either party "may apply to the Court for additional protection [*12] or disclosure beyond the terms of this Order . . ." (Cummins Mem., Ex. D: 10/11/02 Protective Order, P23). And even without such a provision, [HN2] "courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties." *Smith-Kline Beecham, 210 F.R.D. at 166.* Nor do we agree with Cummins that the issue now before the Court "has been previously decided." The original protective order did not address the question of access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information, and the issue was not raised with the Court prior to the entry of the protective order. Therefore, that issue was not decided by the Court.

We also reject Cummins's related argument that having agreed to the original protective order, Glory has now waived its right to seek to modify the protective order to address the issue of access by Messrs. Rudisill and Kitch to Confidential -- Patent Prosecution Information (Cummins Mem. at 3). We might be more receptive to that argument if, as Cummins suggests, Glory had remained silent for one year after the entry of the protective order before alerting Cummins to Glory's [*13] request for this modification. However, Glory raised this issue within a few weeks after the protective order was entered. The Court invited briefing on the issue in an order dated October 31, 2002 (doc. # 18). The parties'

attempts to resolve the issue took a backseat to the expedited discovery and briefing on Cummins's preliminary injunction motion (*see* Glory Motion, Ex. 5: 11/21/02 Tr. at 20-21). When the matter was not resolved by the time that the parties completed expedited discovery, the Court suggested that the parties defer the issue until after the preliminary injunction hearing, a suggestion that was acceptable to all parties (*Id.,* Ex. 6: 1211/02 Tr. at 16-17). When Cummins itself later moved to modify the protective order for other reasons, Glory made clear that Glory still sought a modification to the protective order to address the issue of access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information (*see* doc. # 106: 05/20/03 Glory Mem. at 4).

Thus, Cummins cannot seriously argue that Glory failed to raise this issue soon *after* the entry of the stipulated protective order. Cummins does raise the question of why Glory [*14] failed to do so *before* the entry of the protective order (Cummins Mem. at 3). Glory does not address this point either in its motion or reply. However, we note that the stipulated protective order was entered only ten days after Cummins filed suit. The parties did not then have the luxury of time to contemplate everything that should be covered by in the protective order. Cummins had sought expedited discovery and an early hearing on its motion for a preliminary injunction; and, at a status hearing on October 9, 2002, the Court indicated its intent to grant that request (if the parties could not agree to a standstill, or a settlement, or an accelerated trial on the merits). Given the hectic pace of the early stages of the case, the Court can understand if, through oversight, Glory failed to address this issue when the stipulated protective order was presented to the Court.

Moreover, Cummins failed to show that it has suffered any prejudice by the delay in this issue finally being presented to the Court for resolution. Cummins cannot claim that it showed the materials at issue to its patent prosecutors in reliance on the absence of any provision in the protective order prohibiting [*15] Cummins from doing so. To the contrary, Glory plainly raised this issue at the time of the initial document production, and Cummins says that pending the resolution of this issue, Cummins has honored Glory's request that Cummins not show Confidential -- Patent Prosecution Information to patent prosecutors (Cummins Mem. at 2). In these circumstances, while we do not condone Glory's failure to address the issue of access by Messrs. Rudisill and Kitch to Confidential -- Patent Prosecution Information at the time the stipulated protective order was first presented to the Court, we will not penalize Glory for that failure by refusing to address the issue now.

### IV.

2003 U.S. Dist. LEXIS 23653, *

[HN3] In deciding whether to bar or condition the access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information, we must "balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access." *Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437, No. 98 C 7408, 1999 WL 618969, at *2 (N.D. Ill. Aug. 9, 1999).* A denial of access "cannot rest on a general assumption that one group of lawyers [*16] are more likely or less likely inadvertently to breach their duty under a protective order." *U.S. Steel v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984).* Rather, the "factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, . . ., must govern any concern for inadvertent or accidental disclosure." *Id.*

The inquiry into those "factual circumstances" often centers on whether counsel is engaged in "competitive decisionmaking." *See U.S. Steel, 730 F.2d at 1468* and n.3; *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *2.* In this case, the dispute between the parties centers on the threshold question of what is included within the phrase "competitive decisionmaking." Glory argues that Messrs. Rudisill and Kitch long have been -- and currently are -- involved in shaping and prosecuting patent applications relating to the subject matter of this lawsuit (Glory Motion at 3), and that this conduct constitutes "competitive decisionmaking" (*Id.* at 6). By contrast, Cummins asserts that this competitive decisionmaking is limited to counsel's involvement in a client's "business decisionmaking, [*17] " and that Messrs. Rudisill and Kitch are not involved in Cummins's business decisions (Cummins Mem. at 9, 10-11).

For the reasons that follow, we believe that Glory has the better of this definitional argument. We first explain how we reach that conclusion, and then apply that conclusion to the dispute now before us.

A.

We start with the definition of "competitive decisionmaking" provided in *U.S. Steel:*

> [HN4] The phrase would appear serviceable as a shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*730 F.2d at 1468 n.3.* Plainly, the *U.S. Steel* court's listing of client decisions was not limited to "pricing and product design." The court's use of "etc." reveals that those are only examples of the kinds of client decisions that may be made "in light of similar or corresponding information about a competitor." A number of courts have held that advice by counsel in prosecuting patent applications falls within [*18] the scope of "competitive decisionmaking."

In *Motorola, Inc. v. Interdigital Technology Corp., No. 03-488-LON, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994),* the plaintiff moved to bar defendant's trial counsel -- who also prosecuted patent applications for the defendant -- from access to the plaintiff's confidential information. The court reasoned that prosecuting patent applications involves competitive decisionmaking activities: "the process of prosecuting patent applications . . . involves decisions of scope and emphasis, . . . '[Patent counsel] can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die.'" *1994 U.S. Dist. LEXIS 20714, at *11.* The court further found that the risk that the plaintiff's patent counsel would inadvertently use the defendant's confidential information was substantial:

> Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean [*19] task, for as soon as one idea would be stamped 'untainted,' another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the [defendant's] attorneys may be.

*Id. at *14-15.* Based on this analysis, the court barred defense counsel who received the plaintiff's confidential information from prosecuting any of the defendant's patent applications "relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion of the present litigation, including appeals." *Id. at *20.* The court held that this limitation properly balanced the risk of inadvertent disclosure with the hardship to the defendant from that limitation. *Id. at *15-16.*

In *Mikohn Gaming Corp. v. Acres Gaming, Inc., 50 U.S.P.Q.2d 1783 (D. Nev. 1998),* the court was presented with a situation in which the defendant's trial counsel also prosecuted patent applications for the defendant. As do Messrs. Rudisill and Kitch here, the patent counsel in *Mikohn* disavowed any relationship with the defendant as an officer, board member or employee, [*20] or any role in advising the defendant on business strategies regarding product design, development, pricing, or marketing. However, finding the reasoning in *Motorola* persuasive, the court held that counsel's admitted role in prosecuting patent applications, and providing legal advice and counseling in the field of intellectual property, constituted involvement in competitive decisionmaking:

> The Marger firm is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. . . . In light of the claims made in this lawsuit, the advice rendered by the Marger firm is intensely competitive.

*50 U.S.P.Q.2d at 1785.* The court in *Mikohn* barred defendant's patent counsel from access to the plaintiff's confidential information, finding that the hardship to defendant was mitigated by the presence of other patent counsel in the case representing the defendant and, in any event, was outweighed by the risk of unauthorized disclosure.

In *Interactive Coupon,* the court was presented with a request to bar certain plaintiff's attorneys, who were also prosecuting patent applications for the plaintiff, [*21] from reviewing the defendant's confidential documents. The court reviewed the analysis in *Motorola* and *Mikohn,* and posed the central question as whether the plaintiff's law firm's "prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process." *1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *3.* The court answered that question in the affirmative, explaining that competitive decisionmaking "is not limited to decisionmaking about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted." *Id.* Although patent counsel stated that they did not participate in the plaintiff's competitive business decisions, product pricing or design, and general business planning or strategizing, the court found that these statements failed to address the role of counsel in prosecuting and shaping patent applications. *Id.* As a result, the court ordered that any patent counsel who "are privy to confidential information obtained from

defendant in discovery shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents [*22] in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals." *1999 U.S. Dist. LEXIS 12437, [WL] at *4.* n4

> n4 In its reply, Glory cites two other decisions that also found patent prosecutions to be included with "competitive decisionmaking," and that barred counsel who received an adversary's confidential information from prosecuting related patent applications for a period of time. *See Chan v. Intuit, Inc., 218 F.R.D. 659 (N.D. Cal. 2003); In re Pabst Licensing, GmbH, 2000 U.S. Dist. LEXIS 6374, No. MDL 1298, 2000 WL 554219, at *4 (E.D. La. May 4, 2000)* ("It is clear that the advice and participation of the Pabst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the non-Pabst parties confidential information").

The Court finds the discussion of "competitive decisionmaking" in these opinions persuasive, as it reflects the reality of the way in [*23] which patent applications are prosecuted. As this case vividly demonstrates, patent applications are not always fully formed and unchanging when they are filed. *See* note 1, *supra.* Patent applications may be revised in order to respond to a number of factors that may arise, such as concerns expressed by a PTO examiner -- or information about other products that have entered or are about to enter the market.

We would expect patent prosecution counsel to be intimately involved in deciding how to shape the original application, or how later to revise it. It is that intimate involvement in the shaping and revision of patent applications that provides for the risk that patent counsel inadvertently will use information obtained from a party in patent litigation in shaping the application. As the *Motorola* court quite properly observed, this is not a criticism of the ethics of any particular attorneys or of the bar in general. Rather, it is a recognition of the limits of human beings to completely compartmentalize the multiple sources from which they obtain information.

The Court has considered Cummins's criticisms of the competitive decisionmaking analysis in *Motorola, Mikohn,* [*24] and *Interactive Coupon,* but finds them unpersuasive. We do not agree that *Motorola* and *Mikohn* give "face time" to *U.S. Steel,* but disregarded the *U.S. Steel* admonition by relying on a general assumption that disclosure of confidential information to

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                           Page 1

Not Reported in F.Supp.2d, 1999 WL 618969 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
INTERACTIVE COUPON MARKETING
GROUP, INC. d/b/a Coolsavings, Plaintiff,
v.
H.O.T! COUPONS, LLC., Defendant.
**No. 98 C 7408.**

Aug. 9, 1999.

*MEMORANDUM OPINION AND ORDER*
GOTTSCHALL, J.
*1 Plaintiff, Interactive Coupon Marketing Group,
Inc. ("Coolsavings") has filed a motion to
reconsider this court's Memorandum Opinion and
Order of June 7, 1999 (the "Opinion"), which
barred plaintiff's attorneys who are engaged in
patent prosecution work from reviewing H.O.T.
Coupons' confidential information produced in the
course of this litigation. For the reasons stated
below, plaintiff's motion to reconsider is denied and
its motion for clarification is granted.

*BACKGROUND*

In the Opinion, the court set forth the factual
scenario which underlies this litigation. Briefly,
Coolsavings sues its competitor H.O.T. Coupons
for patent infringement. H.O.T. Coupons moved to
disqualify plaintiff's counsel because the firm acted
as both trial counsel and patent prosecution counsel
for Coolsavings and might be called as witnesses at
trial. In the Opinion, that motion was denied and it
is not challenged here. However, the court barred
plaintiff's patent prosecution counsel from
reviewing any of H.O.T. Coupons' confidential
information. Coolsavings seeks review of that
portion of the Opinion.

In the Opinion, the court relied on the declaration of
Coolsavings' president, Hillel Levin, in assessing
the extent of plaintiff's counsel's involvement in
Coolsavings' affairs. In his declaration, Levin
emphasized the critical role that the law firm Niro,
Scavone, Haller & Niro ("Niro Scavone") plays as
Coolsavings' counsel. Specifically he made the
following statements:
"Niro, Scavone, Haller & Niro is currently
responsible for maintaining all of Coolsavings'
intellectual property and has done so since almost
the inception of the company...." Decl. Hillel Levin
(April 30, 1999) ("Levin Decl. I"), at ¶ 3.
Niro Scavone "has become intimately familiar with
Coolsavings' technology and business operations.
Also, counsel has become involved with various
licensing and litigation matters." *Id.* at ¶ 4.
Niro Scavone "know[s] our personnel, they
reviewed our documents, and participated in several
high level management meetings regarding
intellectual property. This history uniquely qualifies
Niro, Scavone, Haller & Niro to represent
Coolsavings in litigation matters involving its '648
patent." *Id.* at ¶ 5.

In Coolsavings' motion to reconsider, it submitted a
second declaration by Hillel Levin that presumably
is intended to paint a different picture of Niro
Scavone's role in Coolsavings' affairs. Levin
explained that the firm's representation was limited
to legal advice relating to intellectual property
matters and stated that the firm has no involvement
in business planning. Levin testified:
Niro Scavone "has become intimately familiar with
CoolSavings' technology and business operations,
but only in connection with its representation of
CoolSavings on intellectual property matters, such
as litigation, licensing and patent prosecution."
Decl. Hillel Levin (June 21, 1999) ("Levin Decl. II"
), at ¶ 4.
*2 Niro Scavone "do[es] not act as CoolSavings' '
business advisors' or participate in CoolSavings' '
competitive business decisions.' Moreover, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1999 WL 618969 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Niro Scavone law firm does not participate in decisions about CoolSavings' pricing or design." *Id.* at ¶ 5.

"While CoolSavings' personnel have met with attorneys at the Niro Scavone law firm, such meetings have been limited to discussions about CoolSavings' intellectual property, not general business planning or strategizing meetings." *Id.* at ¶ 6.

"No one at the Niro Scavone law firm is a member of the CoolSavings' Board of Directors. To my knowledge, no one at the Niro firm is related to anyone at CoolSavings." *Id.* at ¶ 8.


### DISCUSSION

The issue to be decided is whether plaintiff's patent prosecution counsel at Niro Scavone should be denied access to H.O.T. Coupons' confidential information. "In evaluating whether ... counsel should have access, a court should balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access." *Thomas & Betts Corp. v. Panduit Corp.,* No. 93 C 4017, 1997 WL 603880,*12 (N.D.Ill. Sep. 23, 1997) (*citing Brown Bag Software v. Symantec,* 960 F.2d 1465, 1470 (9th Cir.1992). A key factor in assessing the risk of inadvertent disclosure of trade secrets is whether counsel is engaged in competitive decisionmaking. *Brown Bag Software,* 960 F.2d at 1470. Involvement in competitive decisionmaking refers to counsel's actual "advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *United States Steel Corp. v. United States,* 730 F.2d 1465, 1468, n. 3 (Fed.Cir.1984)).

H.O.T. Coupons argues that it is not necessary to find that Niro Scavone was involved in Coolsavings' business affairs because the firm's involvement in patent prosecution is enough to find that it was engaged in competitive decisionmaking. For this proposition, H.O .T. Coupons relies on two district court decisions that denied access to outside patent counsel engaged in patent prosecution work because the nature of patent prosecution work constituted involvement in competitive decisionmaking. *See Mikohn Gaming Corp. v. Acres Gaming Inc.,* 50 U.S.P.Q.2d 1783 (D.Nev.1998); *Motorola, Inc. v. Interdigital Tech. Corp.,* 1994 U.S. Dist. LEXIS 20714 (D.Del.1994). In *Mikohn,* the plaintiff sought to deny outside defense counsel access to plaintiff's confidential technical information during the course of the patent infringement action. Defense counsel testified that his only association with the defendant was as its outside patent counsel, providing counseling and legal advice in the field of intellectual property. *Mikohn,* 50 U.S.P.Q.2d at 1784. He denied that he participated in marketing, product development, design, or pricing. *Id.* Although the court credited the attorney's statements, the court still denied access because the law firm was prosecuting patent applications directly related to the patents-in-suit. *Id.* at 1785. The court concluded that the advice rendered by the firm was "intensely competitive." *Id.* The court also noted that the defendant had invested in the attorney's technical training and concluded that it " cannot be doubted that as patent prosecution counsel [the attorney] works very closely with and advises [defendant] on matters relating to product design." *Id.* at 1786. The court found that the risk of inadvertent disclosure outweighed the burden that the defendant would experience if the firm was denied access, particularly since the defendant had already retained additional outside counsel to litigate the action. *Id.*

*3 In *Motorola,* defendant's attorneys were involved in patent prosecution and trial work for the defendant. The court held that involvement in patent prosecution constituted involvement in competitive decisionmaking and/or scientific research and created a high risk of inadvertent disclosure. The court stated that, like activities that define the scope and emphasis of a client's research and development efforts, "[t]he process of prosecuting patent applications also involves decisions of scope and emphasis...." *Motorola, supra,* at *11. Further, the court concluded that the attorneys "who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1999 WL 618969 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped 'untainted', another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be." *Id.* at *14-15. Accordingly, the court denied access to the attorneys because they prosecuted patents.

The court is not persuaded that it is appropriate to disqualify patent prosecution counsel from an active role in its client's litigation as a matter of course. However, in the case at bar, the Niro Scavone firm has represented and is likely to represent Coolsavings in the prosecution of numerous related patents, and it appears that the firm is deeply involved in representing the client in multiple, related infringement cases in the context of a fluid, developing technology. The court needs to ask whether the firm's prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process. The concern is whether the firm's involvement in developing a patent prosecution strategy will be informed by such information to the competitors' detriment.

Coolsavings' submissions have not been helpful to the court. In his first declaration, Mr. Levin, in an obvious attempt to persuade the court that disqualification of the Niro Scavone firm would have a catastrophic impact on Coolsavings, suggested that the Niro Scavone firm was deeply involved in Coolsavings' business decisionmaking in the area of intellectual property; that is how the court interpreted his declaration, although with the wisdom of hindsight the declaration appears rather vague in spots. Then, in his second declaration, Mr. Levin attempts to persuade the court that the Niro Scavone firm is not involved in business decisions. This declaration, however, is even more vague than the first one and really says nothing. This court cannot make much sense of a statement like, "[T]he Niro Scavone law firm has become intimately familiar with CoolSavings' technology and business operations, but only in connection with its representation of CoolSavings on intellectual property matters...." In this court's view,

competitive decisionmaking is not limited to decisionmaking about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted. *See U.S. Steel,* 730 F.2d at 1468, n. 3 (Involvement in competitive decisionmaking refers to counsel's actual "advice and participation in *any or all of the client's decisions* (pricing, product design, etc.) *made in light of similar or corresponding information about a competitor."* ) (emphasis added). Levin's vague declaration does not provide a basis for reconsideration. Courts confronted with such vague statements have no choice but to assume disabling involvement. *See Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24 (E.D.Penn.1990) (denying access to in-house attorney because his vague testimony that he had "no *direct* responsibility or authority over competitive decisions" led the court to assume that he had at least some involvement) (emphasis added).

*4 Coolsavings has attempted to walk a fine line, using careful wording to try to persuade the court first of Niro Scavone's central involvement with Coolsavings' activities and then of its peripheral status. It has been too shrewd for its own good, convincing the court of nothing other than that the concerns raised by H.O.T. Coupons have not been answered. Accordingly, the motion to reconsider is denied. The court's order of June 7, 1999 is, however, clarified as follows: all of plaintiff's attorneys who are privy to confidential information obtained from defendant in discovery shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals.

N.D.Ill.,1999.
Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC.
Not Reported in F.Supp.2d, 1999 WL 618969 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:98CV07408 (Docket) (Nov. 18, 1998)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

LEXSEE

**MIKOHN GAMING CORPORATION, Plaintiff, v. ACRES GAMING, INC., Defendant.**

**CV-S-97-1383-HDM(LRL)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**

**1998 U.S. Dist. LEXIS 22251; 50 U.S.P.Q.2D (BNA) 1783**

**April 15, 1998, Decided**
**April 15, 1998, Received and Filed; April 23, 1998, Entered and Served**

**DISPOSITION:** [*1] Acres' motion to compel (# 36) granted in part and denied in part. Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel; and for Sanctions (# 47) granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant patent prosecutor moved to compel discovery in the United States District Court for the District of Nevada against plaintiff alleged patent infringer (alleged infringer). Alleged infringer sought to deny the law firm for patent prosecutor access to sensitive technical information and to deny it the right to attend any depositions because the firm was patent prosecutor's outside litigation counsel and its patent prosecution counsel.

**OVERVIEW:** The patent prosecutor in a patent infringement action moved to compel discovery and for a protective order. The alleged infringer sought to modify the protective order to deny one of the law firms representing the patent prosecutor access to confidential technical information. The law firm was both the outside litigation counsel and the patent prosecuting counsel to the patent prosecutor. The court found that the law firm engaged in competitive decisionmaking for the patent prosecutor and that the firm was involved in prosecuting the patent applications that were the basis for the action. The court also found that it would be unrealistic to expect that counsel for the law firm would not use information about the alleged infringer's secret technology to advise the patent prosecutor, giving the patent prosecutor an unfair competitive advantage. The potential harm to the alleged infringer would outweigh any inconvenience to the patent prosecutor in having to rely on other litigation counsel.

**OUTCOME:** The court ordered that the motion to compel sought by the patent prosecutor was granted only in specifying the date by which the alleged infringer must respond. In all other respects, the motion was denied. The court ordered that the protective order sought by the alleged infringer would be the order governing discovery in the case.

**CORE TERMS:** patent, confidential information, protective order, discovery, confidential, disclosure, competitive, technical information, inadvertent, prosecuting, advice, patent infringement, technology, competitor, prosecute, gained, legal advice, hardship, misuse, product design, good cause, compartmentalize, disqualification, disqualified, pricing, lawsuit, intellectual property, competitive advantage, potential harm, new product

**LexisNexis(R) Headnotes**

*Trade Secrets Law > Civil Actions > Discovery*
*Civil Procedure > Disclosure & Discovery > Protective Orders*
*Trade Secrets Law > Civil Actions > Protection Orders*
[HN1] Fed. R. Civ. P. 26(c) authorizes the court to protect a party from undue burden or expense in discovery by directing that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way. The party seeking the protective order carries the burden of showing good cause for its issuance.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN2] Discovery orders are reviewed for abuse of discretion.

1998 U.S. Dist. LEXIS 22251, *; 50 U.S.P.Q.2D (BNA) 1783

*Civil Procedure > Disclosure & Discovery > Protective Orders*

[HN3] Where parties to a lawsuit are commercial competitors, and one of them moves for protection against misuse of its confidential technical information, the court must balance the risk to the moving party of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims. Even if the competitor's counsel acts in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create an unacceptable opportunity for inadvertent disclosure. In resolving this question, the key consideration is whether the attorney is involved in competitive decisionmaking.

**COUNSEL:** For MIKOHN GAMING CORPORATION, Plaintiff/Counterdefendant: STEVEN E. SHAPIRO (# 34), Mithcell, Silberberg & Knupp, Los Angeles, CA.

For MIKOHN GAMING CORPORATION, Plaintiff/Counterdefendant: KRISTINA PICKERING, ESQ., JAMES J PISANELLI, ESQ., ADAM P SEGAL, ESQ., Schreck Morris, Las Vegas, NV.

For ACRES GAMING, INCORPORATED, Defendant/Counterclaimant: Keith E. Gregory, John E. Leach, Stewart C. Fitts, Woodburn & Wedge, Las Vegas, NV.

For ACRES GAMING, INCORPORATED, Defendant/Counterclaimant: MARK GERARD JACKSON (VP # 82), JERRY A. RIEDINGER (VP # 17), ALAN T. MCCOLLOM (VP # 19), RICHARD BAUM (VP # 21), MICHAEL BROADDUS (VP # 23), STEPHEN S. FORD (VP # 25), Perkins Coie, Seattle, WA.

For PLAINTIFF: BRENT RABOWSKY, Los Angeles, Ca.

For PLAINTIFF: BERNHARD KRETEN / VICTOR GALLO, Bernard Kreten & Associates, Sacramento, Ca.

For PLAINTIFF: BRUCE W. BENSON, Las vegas, NV.

For Casino Data Systems & Sunset Station Hotel & Casino, DEFENDANTS: LAWRENCE [*2] M. JARVIS (VP # 108), GREGORY C. SCHODDE (VP # 109), McAndrews Held & Malloy, LTD., Chicago, Illinois.

**JUDGES:** LAWRENCE R. LEAVITT, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** LAWRENCE R. LEAVITT

**OPINION:**

**ORDER**

This case comes before the court on defendant Acres' Motion to Compel Discovery and for a Protective Order (# 36, filed December 23, 1997). The court has considered the motion, plaintiff Mikohn's Opposition (# 39, filed January 7, 1998), Acres' Reply (# 46, filed January 20, 1998), Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel; and for Sanctions (# 47, filed January 23, 1998), Acres' Response to Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel and for Sanctions (# 49, filed January 28, 1998), Acres' Submission of New Precedent in Support of Acres' Motion to Compel Discovery and for a Protective Order (# 51, filed February 2, 1998), Mikohn's Response to Submission of "New Precedent" by Acres Gaming Corporation in Support of Its Motion to Compel Discovery (# 55, filed February 4, 1998), Mikohn's Reply in Support of Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel Discovery, and for Sanctions [*3] (# 56, filed February 9, 1998), the arguments presented by counsel during the telephone hearing on February 23, 1998, and Mikohn's Supplement in Support of Mikohn's Request for Entry of its Proposed Protective Order (# 62, filed February 24, 1998).

Also before the court is Mikohn's Ex Parte Discovery Plan and Scheduling Order (received January 12, 1998). The court has considered Mikohn's proposed discovery plan, Acres' Response (# 42, filed January 15, 1998), and the representations of counsel during the hearing on February 23, 1998.

**Motion to Compel Discovery and for a Protective Order (# 36)**

The central issue underlying this dispute is whether one of Acres' law firms, Marger, Johnson, McCollom & Stolwitz ("the Marger firm"), should be denied access to Mikohn's confidential technical information during the course of this patent infringement action. The parties have agreed upon the basic contours of the protective order that will govern discovery in this case, with one major exception: Mikohn would deny the Marger firm access to the sensitive technical information that Mikohn deems highly confidential, such as software codes and hardware electrical designs, and would further [*4] deny the Marger firm the right to attend any depositions. Mikohn's proposal for a significantly more restrictive protective order is based on the Marger firm's dual role as Acres' outside litigation counsel *and* its patent prosecution counsel. Indeed, in its latter capacity the Marger firm is currently prosecuting certain patent applications for Acres that are the very subject matter of this litiga-

tion. Mikohn fears that if access to Mikohn's confidential technical information is given to the Marger firm in its role as litigation counsel, there would be a substantial risk that in its role as patent prosecution counsel the Marger firm would misuse the information to Mikohn's detriment. Whether the misuse were deliberate or inadvertent, the result, according to Mikohn, would be the same: Mikohn would be placed at a distinct and unfair competitive disadvantage.

Acres denies that the Marger firm's possession of Mikohn's confidential technical information would or could harm Mikohn's position in the marketplace. Acres also argues that denial of access to such information would undermine the Marger firm's ability to represent its client effectively, and would essentially "disqualify" [*5] it from the case. Acres' Reply (# 46) at 12. n1 Notwithstanding that it has retained a second firm, Perkins Coie, as additional patent litigation counsel, Acres asserts that to be denied the litigation services of the Marger firm, and particularly of Alan McCollom, whose technical expertise in electrical engineering uniquely qualifies him as litigation counsel in this case, would deprive Acres of the benefit of the trust and confidence it has come to place in the Marger firm over the course of a long standing attorney-client relationship.

> n1 In other papers and at the hearing on this motion Mikohn has suggested that the Marger firm should be disqualified as litigation counsel in this case. No grounds for disqualification have been formally presented to the court, and none will be considered in this decision. The court here addresses only the scope of an appropriate protective order, irrespective of any conceivable grounds for the disqualification of the Marger firm.

[HN1] Fed.R.Civ.P. 26(c) authorizes the court to [*6] protect a party from "undue burden or expense" in discovery by directing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." The party seeking the protective order carries the burden of showing good cause for its issuance. *Jepson, Inc. v. Makita Elec. Works, Ltd*, 30 F.3d 854, 858 (7th Cir. 1994). [HN2] Discovery orders are reviewed for abuse of discretion. *Ah Moo v. A.G. Becker Paribas, Inc.*, 857 F.2d 615, 619 (9th Cir. 1988).

[HN3] Where parties to a lawsuit are commercial competitors, and one of them moves for protection against misuse of its confidential technical information, the court must balance the risk to the moving party of inadvertent disclosure against the risk that the protective

order will impair the prosecution or defense of the other party's claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create [*7] "an unacceptable opportunity for inadvertent disclosure." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). In resolving this question, the key consideration is not whether the attorney is in-house or outside counsel, but whether the attorney is involved in "competitive decisionmaking," *i.e.*, whether "a counsel's activities, association, and relationship with a client [] are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at n. 3.

In support of its position that the Marger firm does not engage in competitive decisionmaking as defined in *U.S. Steel*, Acres offers the affidavit of its longtime patent lawyer, Alan McCollom. McCollom asserts that his only association with Acres is as its outside patent counsel; he is neither a board member, officer nor employee of the company. He denies that he "participate[s] in Acres' marketing meetings or in Acres' product development or engineering meetings," or that he "advise[s] Acres regarding general nonlegal business strategies such [*8] as developing or marketing products." In short, he denies that he's "been involved in decisionmaking activities regarding product pricing, new product design or new product development." He states that his "involvement with Acres is limited solely to providing legal advice and counseling in the field of intellectual property." McCollom's representations are corroborated by the affidavit of Acres' board chairman and chief executive officer, John F. Acres.

At the hearing on this matter Acres argued additionally that Mikohn's unfounded fear of improper disclosure stems from a misapprehension of the type of use which the Marger firm could make of Mikohn's confidential information. Acres contends that Patent Office procedures governing the processing of patent applications make it impossible for the Marger firm to abuse the confidential information it receives from Mikohn. According to Acres, if it were to refine claims in its pending patent applications, or write new claims in re-issue proceedings, it would necessarily be limited to the specifications contained in its original applications. Because it would not be allowed to amend claims or add new claims regarding matters that were not [*9] already disclosed in its original patent application, Acres argues that it would be theoretically impossible for the Marger firm to exploit for its own competitive advantage the confidential in-

Case 1:05-cv-00301-JJF-MPT    Document 94-4    Filed 03/21/2006    Page 17 of 22

1998 U.S. Dist. LEXIS 22251, *; 50 U.S.P.Q.2D (BNA) 1783

formation it would receive from Mikohn, even if it wanted to. In short, Acres argues that any confidential information it might receive from Mikohn would, in effect, be irrelevant to the application process.

Mikohn, however, points to *Motorola, Inc. v. Interdigital Technology Corp.*, 1994 U.S. Dist. LEXIS 20714 (D.Del. 1994), in which the proper scope of a discovery-related protective order was considered in the context of a patent infringement action. n2 There, as here, the law firm representing one of the parties, Interdigital Technology Corp. ("ITC"), functioned as both lead trial counsel and patent prosecution counsel. At the time the case was pending, the firm was prosecuting several patent applications, four of which were related to the patents in suit. The issue presented to the court was whether ITC's counsel should have access to Motorola's confidential information. Motorola argued, as Mikohn does here, that it would be "impossible for [ITC's] attorneys to compartmentalize [*10] the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications." *Id.* at *6. As in *U.S. Steel*, the critical inquiry was "whether the attorney in question is in a position that creates a high risk of inadvertent disclosure." The answer to that question turns on whether the attorney is involved in competitive decisionmaking such that he "would have a difficult time compartmentalizing his knowledge." *Id.* at *10-11. Importantly, the court observed that "there can be no question that attorneys [for ITC] who receive confidential information and then later prosecute patents will have to distil and compartmentalize the confidential information they have gained." Id. at *13.

> n2 Neither *Brown Bag* nor *U.S. Steel* involved a patent infringement claim.

The court concluded that the potential harm to Motorola from inadvertent disclosure of its confidential information outweighed the hardship [*11] that would befall ITC if its counsel were disqualified or restricted in some fashion. To eliminate the risk of inadvertent disclosure and at the same time minimize the hardship to ITC, the court precluded ITC's trial attorneys from prosecuting its patent applications. Because ITC's trial attorneys had only recently begun to prosecute their client's patent applications, the court found that the resultant hardship on ITC would be minimal. *Id.* at *16-18.

As applied to the present case, the court finds *Motorola* persuasive. n3 The Marger firm is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. Indeed, the Marger lawyers allege that these pending patents will be infringed by Mikohn's MoneyTime system as soon as they are issued. Hence, in light of the claims made in this lawsuit, the advice rendered by the Marger firm is intensely competitive. In an effort to distance himself from the type of competitive decisionmaking discussed in *U.S. Steel*, Mr. McCollom characterizes his patent prosecution work for Acres as merely "providing legal advice and counseling in the field of intellectual property." This [*12] description is so general as to be virtually meaningless. By Acres' own admission, it has made a considerable investment in Mr. McCollom's technical training. It therefore cannot be doubted that as patent prosecution counsel Mr. McCollom works very closely with and advises Acres on matters relating to product design. The legal and factual components of Mr. McCollom's advice regarding complex technology are so intertwined as to be inseparable. A bright line cannot be drawn between them. Were he given access to Mikohn's technology, Mr. McCollom would be in the "untenable position" of having to either refuse his client legal advice on competitive design matters or violate the protective order's prohibition against revealing Mikohn's technical information. *Brown Bag Software*, 960 F.2d at 1471. No matter how much good faith Mr. McCollom might exercise, it is unrealistic to expect that his knowledge of Mikohn's secret technology would not or could not influence the nature of his advice to Acres. This is so whether the advice relates to a pending application or a future application. Under such circumstances, he and the Marger firm would be in precisely the same position in [*13] which ITC's patent lawyers found themselves in *Motorola*:

> [ITC's attorneys are] currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted," another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the [] attorneys may be.

*Motorola, Inc. v. Interdigital Technology Corp.*, 1994 U.S. Dist. LEXIS 20714 at *14-15. For these reasons the court concludes that if the Marger firm were given access to Mikohn's confidential information, the risk is great

that Acres would gain an unauthorized and unfair competitive advantage.

n3 Acres urges the court to follow *In Re Sibia Neurosciences, Inc.*, 1997 U.S. App. LEXIS 31828, 1997 WL 688174 (Fed.Cir. 1997), which is also a patent infringement case, but one in which the Federal Circuit let stand a district court order permitting trial/patent prosecution counsel for Cadus Pharmaceutical Corporation to have access to Sibia's confidential information. Mikohn objects to Acres' reliance on *Sibia* on the ground that the Federal Circuit deemed its opinion unsuitable for publication. The court agrees. For this reason alone *Sibia* should not be considered.

Even if the court in *Sibia* had deemed its opinion suitable for publication, there is another reason why this court would be disinclined to follow it. The case was before the circuit court on a petition for a writ of mandamus, in support of which Sibia had the difficult burden of making a "clear and indisputable" showing that the district court had engaged in "a clear abuse of discretion or usurpation of judicial power." Mikohn's burden here is not so onerous; it need only demonstrate "good cause" for its proposed protective order.

[*14]

Acres argues that by denying the Marger firm access to Mikohn's confidential information the court would undermine the firm's ability to provide effective representation. Whether that is so remains to be seen. Even if it were, the court finds that the potential harm to Mikohn from unauthorized disclosure of its confidential information would clearly outweigh the burden Acres will experience without the assistance of the Marger firm as litigation counsel. As previously noted, Acres has also retained the experienced patent law firm of Perkins Coie, which has been involved in this litigation from its inception. The court is satisfied that Perkins Coie is quite capable of effectively representing Acres in this case. Hence, it can scarcely be said that the court's decision deprives Acres of the ability to defend itself or to press

its claims. Equally importantly, Acres will continue to have the valuable services of the Marger firm as patent prosecution counsel.

**ORDER**

IT IS ORDERED that Acres' motion to compel (# 36) is granted to this extent: Mikohn shall respond to Acres' discovery requests not later than May 8, 1998. In all other respects the motion is denied.

IT IS FURTHER [*15] ORDERED that Mikohn's proposed protective order shall be the protective order that governs discovery in this case.

IT IS FURTHER ORDERED that Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel; and for Sanctions (# 47) is granted to the extent that the court has placed no reliance on *In Re Sibia Neurosciences, Inc.*, 1997 WL 688174 (Fed.Cir. 1997). In all other respects the motion is denied.

IT IS FURTHER ORDERED that the following Discovery Plan and Scheduling Order shall govern these proceedings:

1. In addition to the discovery subjects listed in Mikohn's proposed discovery plan, discovery may also be conducted on all patent issues in this case.

2. The last day of discovery shall be February 15, 1999.

3. Experts and their reports shall be disclosed not later than November 13, 1998.

4. Rebuttal experts and their reports shall be disclosed not later than December 31, 1998.

5. Pleadings may be amended and parties added until November 13, 1998.

6. The interim status report shall be filed on December 11, 1998.

7. Dispositive motions shall be filed by April 30, 1999.

DATED this 15th day of April, 1998.

**LAWRENCE R. LEAVITT** [*16]

**UNITED STATES MAGISTRATE JUDGE**

patent prosecution counsel will run the risk of inadvertent disclosure (Cummins Mem. at 7). Rather, those decisions examined the role of patent attorneys in prosecuting patents, and concluded that their roles -- and not the mere label of "patent prosecutor" -- brought them within the scope of what *U.S. Steel* referred to as competitive decisionmaking. Nor, in the Court's view, did the *Mikohn* court "essentially ignore[]" affidavits stating that the patent prosecutors were not engaged in competitive decisionmaking (Cummins Mem. at 8). Rather, the *Mikohn* court found that with respect to what the attorneys did in prosecuting the patent applications, the issue the court considered central, the affidavits were "so general as to be virtually meaningless." *50 U.S.P.Q.2d at 1786*.

Cummins also argues that the definition of competitive decisionmaking employed by these decisions is too broad, and urges [*25] that the Court instead follow the approach in *MedImmune, Inc. v. Centocor, Inc., 271 F. Supp. 2d 762 (D. Md. 2003)*. In that case, the court -- calling the decision a "close call," *id. at 773* -- rejected the defendants' argument that the plaintiff's patent prosecution counsel was a competitive decisionmaker. Glory correctly distinguishes *MedImmune* on the ground that, unlike the case in *Mikohn* and here, there was no indication in *MedImmune* that the plaintiff's counsel "was currently prosecuting patents on the exact same subject matter of the litigation" (Glory Reply at 5, quoting *MedImmune, 271 F. Supp. 2d at 775 n.14*).

However, that distinction is not a complete answer to the *MedImmune* analysis, because the court there directly expressed its disagreement with the *Interactive Coupon* analysis, on the ground that it "amounts to a *per se* prohibition on patent counsel" acting as both trial counsel and patent prosecutor. *Id. at 774 n.13*. In our view, the *MedImmune* court fails to come to grips with the role of a patent prosecutor in shaping the way in which a patent application is written, or how [*26] role of the patent prosecutor, when combined with the knowledge of a competitor's confidential information gained through the litigation process, creates a risk of inadvertent use of that information to advance a client's patent prosecution. We are not persuaded by *MedImmune* that the courts in *Motorola, Mikohn,* and *Interactive Coupon* were incorrect in their analysis of the role performed by patent prosecutors, or in their conclusion that this role brings them within the scope of competitive decisionmaking that creates a risk of inadvertent disclosure of confidential information.

That said, we understand the concern expressed by the *MedImmune* court about creating a *per se* rule that patent prosecutors cannot act as litigation counsel. On that point, we have three observations. *First,* as we will explain below, we believe it would be rare that patent prosecution counsel would be absolutely barred from reviewing confidential information, as was the case in *Mikohn* (the opinion does not disclose whether some other alternative had been proposed). Rather, under the *Interactive Coupon* approach, the party could choose not to disclose confidential information to [*27] patent prosecution counsel, in which case that counsel could continue to prosecute patent applications; or, the party could choose to reveal confidential information to patent prosecution counsel, and accept limitations on that attorney's ability to prosecute certain patent applications for a period of time. *Second,* any limitation would apply as to the prosecution of patent applications relating to the subject matter of the patents in suit; it would not bar counsel from prosecuting unrelated patent applications in the PTO. *Third,* to the extent that the *Interactive Coupon* analysis would make it difficult for patent counsel to act unfettered both as litigation counsel and prosecution counsel, that difficulty is the proper consequence of the need to protect against inadvertent disclosure.

**B.**

The application of this analysis to the present case is straightforward. Cummins does not dispute that Messrs. Rudisill and Kitch have been -- and currently are -- extensively involved in prosecuting patent applications related to the subject matter of this litigation. The declarations submitted by Messrs. Rudisill and Kitch state that they have no role in Cummins's product design, [*28] marketing, pricing or planning decisions, and have no affiliation with Cummins other than as its counsel. But, these declarations suffer from the same shortcoming as the affidavits offered in *Mikohn* and *Interactive Coupon:* the Rudisill and Kitch declarations are silent about their respective roles in shaping the many patent applications, revisions, and responses to PTO examiner questions that they have handled for Cummins, and that are directly related to the subject matter of this litigation.

Cummins has not attempted to argue that Messrs. Rudisill and Kitch have no role in shaping Cummins' patent applications and how they are prosecuted; to the contrary, Cummins concedes that they have been "centrally involved" in those prosecutions (Cummins Mem. at 3). Rather, Cummins argues that competitive decisionmaking should be defined in a way that does not encompass that role. That argument has failed, and thus Cummins is left with no other argument to avoid the conclusion that Messrs. Rudisill and Kitch are involved in competitive decisionmaking as that term was defined in *Motorola, Mikohn* and *Interactive Coupon,* and as the Court has defined it here.

**V.**

In light [*29] of the determination that Messrs. Rudisill and Kitch are involved in competitive decisionmaking, the Court considers what limitations should be

placed on their access to Glory's Confidential -- Patent Prosecution Information. Glory seeks to bar those attorneys from having any access to that information; in the alternative, Glory asks that the Court order that Messrs. Rudisill and Kitch, or any other attorneys, who receive such information "shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals."

We reject Glory's request to bar Messrs. Rudisill and Kitch from having any access to the Confidential -- Patent Prosecution Information. In balancing the risk of inadvertent disclosure against the hardship to Cummins from such a categorical exclusion order, the Court is mindful that [HN5] "disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993)* (quoting *Schiessle v. Stephens, 717 F.2d 417, 419-20 (7th Cir. 1983)* [*30] ). While an order barring Messrs. Rudisill and Kitch from access to Glory's Confidential -- Patent Prosecution Information would not formally bar them from continuing to participate in the litigation, such an order might limit their ability to fully represent and advise Cummins. Whether the hardship resulting from such an order would be of the nature and extent claimed by Cummins is uncertain. But, any hardship to Cummins created by an order barring access altogether would be unwarranted, because such a broad order would not be reasonably tailored (much less, absolutely necessary) to the risk of inadvertent disclosure that Glory seeks to address. The risk created by giving Messrs. Rudisill and Kitch access to that information is not that this will create unfairness to Glory in defending this lawsuit, but that Glory will be injured by the inadvertent use of that information by Messrs. Rudisill and Kitch when prosecuting Cummins's patent applications.

Glory argues that Cummins has other attorneys with patent experience who have appeared of record in the case (Glory Motion at 11), a factor that was of significance to the court in *Mikohn* in deciding to bar the defendant's patent prosecution [*31] counsel from access to the plaintiff's confidential information. *Mikohn, 50 U.S.P.Q.2d at 1786*. However, it is unclear whether the Court in *Mikohn* was presented with an alternative proposal for addressing the risk of inadvertent disclosure. In any event, we do not believe that the presence of other counsel for Cummins warrants the entry of an overly-broad order that categorically bars Cummins's lead litigation patent counsel from any access to Glory's Confidential -- Patent Prosecution Information.

Rather, we adopt the alternative approach suggested by Glory, and utilized by the courts in *Motorola* and *Interactive Coupon:* allowing Messrs. Rudisill and Kitch

(or other patent counsel) to receive Glory's Confidential -- Patent Prosecution Information, but limiting the ability of attorneys who receive that information to prosecute certain patent applications. Anticipating the possibility of this result, Cummins asks that Glory's proposed limitation be revised in two ways.

*First,* Cummins argues that the restriction should not apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit," but instead should be limited [*32] only to the prosecution of any patent application "that specifically disclose[s] or claims the contents or the substance of the information contained in a reviewed document marked 'Confidential -- Patent Prosecution Information'" (Cummins Mem. at 12 and Ex. H). We disagree. The language proposed by Cummins is too narrow: it would allow a Cummins attorney who receives Glory's Confidential -- Patent Prosecution Information to use that information to prosecute a Cummins patent application, so long as the application does not "specifically disclose or claim" Glory's confidential information -- even if the application was generally influenced or shaped by that information. That kind of limitation does not sufficiently address the risk of inadvertent disclosure. Moreover, although Cummins argues that is does not understand what Glory means by suggesting that the limitation apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit" (Cummins Mem. at 12), that is the language routinely employed by other courts when imposing such a restriction. *See Pabst, 2000 U.S. Dist. LEXIS 6374, 2000 WL 554219, at *4* (barring prosecution of patent applications "pertaining to [*33] the subject matter of the patents in suit"); *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *4* (barring prosecution of patent applications "relating to the subject matter of the patent in suit"); *Motorola, 1994 U.S. Dist. LEXIS 20714, at *19* (barring prosecution of patent applications "relating to the broad subject matter of the patents in suit"). That language is appropriate here as well; we therefore adopt Glory's proposal on this point.

*Second,* Cummins argues that the time period of the restriction should be either the pendency of the litigation and a period of one year after the conclusion of the litigation, including appeals (the period proposed by Glory), *or* "the time at which such information contained in the documents marked 'Confidential -- Patent Prosecution' legitimately becomes publicly known . . .," whichever is earlier (Cummins Mem. at 12-13 and Ex. H). We note, again, that the time limitation proposed by Glory is the same limitation adopted by the *Motorola* and *Mikohn* courts. *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *4; Motorola, 1994 U.S. Dist. LEXIS 20714, at *19*. A significant problem [*34] with Cummins's proposal is that if Cummins's patent

counsel receive Glory's Confidential -- Patent Prosecution Information and some but not all of it is determined to be publicly known, and thus not truly confidential, we do not see how the Court could be confident that patent counsel was utilizing only the non-confidential information in prosecuting the patent, and was not (albeit inadvertently) having his or her approach to the patent prosecution influenced by the Confidential -- Patent Prosecution Information. The difficulty of separating out different sources of information, and ensuring that certain sources are not used, is what gives rise to the risk of inadvertent disclosure in the first place. *Motorola, 1994 U.S. Dist. LEXIS 20714, at \*14-15*. Cummins's proposal would lead the parties and the Court down the path that the order is designed to avoid, and we therefore reject it.

Accordingly, we will amend the stipulated protective order to include paragraph 9(b), which will read as follows:

> Confidential -- Patent Prosecution Information may be shown only to persons qualified to receive Highly Confidential Information. Any person who receives Confidential [\*35] -- Patent Prosecution Information shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals.

### VI.

The only remaining changes to the stipulated protective order that remain in dispute are with respect to paragraphs 11, 12(c) and 25. We address in turn the parties' respective proposals for those paragraphs.

#### A.

Paragraph 11 of the protective order states that "either party may disclose Confidential or Highly Confidential Information in a Court proceeding upon consent of the designating party or permission of the Court." Glory proposes to amend that paragraph solely to include a reference to the new category of Confidential -- Patent Prosecution Information. Cummins agrees with that amendment, which will be adopted.

However, Cummins also proposes another change to paragraph 11, which Glory opposes. Cummins seeks to add the proviso that "information disclosed at an open Court proceeding will become public knowledge and persons present at any Court proceeding where [\*36] Confidential -- Patent Prosecution Information is dis-

closed will not be subject to the patent prosecution restrictions of paragraph 9 due to their presence" (Cummins Mem., Ex. H). Once again, this Cummins proposal would create the difficult problem of determining whether Cummins patent counsel was prosecuting a patent application using Confidential -- Patent Prosecution Information that remained private or information that had become public. For the reasons discussed above with respect to Cummins's proposal in paragraph 9 concerning the time limitation of the restriction, the Court rejects Cummins's proposal for amending paragraph 11.

#### B.

The parties largely agree on an amendment to the protective order that would add a new paragraph 12(c); their only disagreement is with respect to the highlighted clause set forth below, which Glory seeks over Cummins's objection:

> The substance or content of any Confidential -- Patent Prosecution Information, as well as notes, abstracts, copies, summaries and memoranda relating thereto shall not be disclosed to *or be accessible to* anyone other than a person qualified to receive Confidential -- Patent Prosecution Information [\*37] pursuant to this Protective Order, and any such notes, abstracts, copies summaries and memoranda shall be treated as Confidential -- Patent Prosecution Information in all respects.

This additional language proposed by Glory tracks the language in paragraphs 12(a) and 12(b) governing Confidential and Highly Confidential Information. Cummins has offered no reason why the same language should not apply to Confidential -- Patent Prosecution Information, which is a subset of Highly Confidential Information. Accordingly, we adopt the version of new paragraph 12(c) proposed by Glory.

#### C.

Paragraph 25 of the protective order provides that restrictions applicable to Confidential and Highly Confidential Information do not apply to information which already is public knowledge, which becomes public knowledge other than as a result of disclosure by the receiving party, or that the receiving party obtains by legitimate means independently of the producing party. Each side agrees that this provision should be revised to include the new category of Confidential -- Patent Prosecution Information. Where they differ is on the following

additional language that Glory proposes to add at [*38] the end of paragraph 25, over Cummins's objection:

> The party seeking to use information designated as Confidential, Highly Confidential, or Confidential -- Patent Prosecution Information, shall have the burden of providing that it is entitled to the use of such information.

The Court sees no need for this additional sentence proposed by Glory. In the event that information designated with one of the levels of confidentiality becomes public by one of the means specified in paragraph 25, then the receiving party would have the right to question the confidentiality designation. Paragraph 16 of the protective order already provides a mechanism for doing so: it states that if a party objects to the designation of information as Confidential or Highly Confidential, then the designating party bears the burden of showing the propriety of the confidentiality designation. That allocation of the burden of proof recognizes that a party asserting confidentiality is asking for the document to be treated in a way that is contrary to the ordinary course of public litigation, *see generally Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943 (7th Cir. 1999)*, and [*39] should be in the best position to show why the document is entitled to special treatment. Glory offers no explanation for its proposal to shift the burden of proof to the challenging party, and the Court declines to do so. n5

> n5 Paragraph 16 of the original protective order does not specifically call out Confidential -- Patent Prosecution Information, which is a subset of Highly Confidential Information. To avoid any future confusion about the scope of paragraph 16, the Court *sua sponte* will modify paragraph 16 of the protective order to include challenges to the designation of information as Confidential -- Patent Prosecution Information.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Glory's motion to amend the protective order as follows:

> A. The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential -- Patent Prosecution Information."

> B. The Court DENIES Glory's request to bar [*40] Messrs. Rudisill and Kitch from receiving Confidential -- Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.

> C. The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.

> D. The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.

> E. The Court *sua sponte* modifies paragraph 16 to make clear that it applies to Confidential -- Patent Prosecution Information.

SIDNEY I. SCHENKIER

United States Magistrate Judge

DATED: December 31, 2003