# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-301-KAJ |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Counterdefendant. | ) | |

## INTEL'S AMENDED RESPONSES AND OBJECTIONS

## TO AMBERWAVE'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff and

Counterdefendant Intel Corporation ("Intel") through its lead counsel Simpson Thacher &

Bartlett LLP, hereby objects and provides amended responses to the First Set of Interrogatories

("Interrogatories"), propounded on August 29, 2005 by Defendant and Counterplaintiff

AmberWave Systems Corporation ("AmberWave") as follows:

Intel's responses are based solely on the documents, facts and contentions known

and available to Intel at this time.  Intel has not completed its investigation of the facts and

documents relating to this action and is only in the initial phases of discovery in this action.

6

**INTERROGATORY NO 1:**

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, INTEL's contention that the '292 PATENT is invalid.

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel also objects to the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and/or seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the term "invalid" because the term is vague, ambiguous, overbroad, unduly burdensome and calls for a legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel additionally objects to the term "invalid" to the extent it seeks to elicit an admission from Intel, by virtue of Intel's response to this request, as to the meaning of the term. Intel also objects to this interrogatory to the extent that it seeks information already in AmberWave's possession, custody, or control or that AmberWave could ascertain or derive from documents and other discovery that will be provided in connection with AmberWave's own disclosures or in AmberWave's responses to Intel's document requests. Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel notes that 35 U.S.C. § 282 does not require the disclosure of prior art until "at least thirty days before trial." Through this interrogatory, AmberWave seeks the disclosure of prior art more than a year before trial. Accordingly, the interrogatory is premature. Intel further objects to this

interrogatory because Intel will provide expert disclosures and depositions responsive to this interrogatory under the schedule established by the Court; AmberWave cannot force Intel to accelerate those disclosures by serving interrogatories. Intel further objects to this interrogatory because it includes no temporal limitation; Intel will respond to the interrogatory as of the date of this response and expressly reserves its right to supplement and/or amend its response as additional facts become known.

Subject to and without waiving the foregoing objections, Intel states that the '292 patent is invalid pursuant to 35 U.S.C. § 102, because any invention purported to be described by the '292 Patent was anticipated by one or more of the prior art references cited below. Moreover, the invention is invalid pursuant to 35 U.S.C. § 103 because the differences between the subject matter of the '292 Patent and one or more pieces of prior art identified below are such that the subject matter of the '292 Patent would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter of the '292 Patent pertains. In addition, the '292 Patent is invalid because one skilled in the art could not make or use any invention purported to be described by the '292 Patent without undue experimentation. Moreover, the '292 Patent is invalid because one skilled in the art would not understand what is claimed when the patent is read in light of its specification. The documents that support the foregoing include, but are not limited to, the documents cited below. Intel's investigation of materials that support the invalidity arguments described in this response is ongoing and Intel explicitly reserves the right to supplement and amend its response to this interrogatory at the time of, or prior to, the completion of its investigation. The "persons with knowledge" for the purposes of this response include, but are not limited to, the named inventors in the patents and/or the authors of the publications cited below.

1.   Masaharu Watanabe et al., *Invited: Perfect Crystal Device Technology*, 44 J. of the Japan Society of Applied Physics 269 (Supp. 1975).

2.   M. Dellith et al., *A Dislocation Formation Model of Trench-Induced Dislocations in Dynamic Random Access Memories*, 143 J. of the Electrochemical Soc'y 210 (1996).

3.   M. F. Doerner & W. D. Nix, *A Method for Interpreting the Data from Depth-sensing Indentation Instruments*, 1 J. Material Research 601 (1986).

4.   N. E. B. Cowern & D. J. Godfrey, *A Model for Coupled Dopant Diffusion in Silicon*, 6 Int'l J. Computation and Mathematics in Electrical and Electronic Engineering 59 (1987).

5.   Akemi Hamada et al., *A New Aspect of Mechanical Stress Effects in Scaled MOS Devices*, 38 IEEE Transactions on Electron Devices 895 (1991).

6.   E. Kasper et al., *A One-Dimensional SiGe Superlattice Grown by UHV Epitaxy*, 8 Applied Physics A: Materials Sci. & Processing 199 (1975).

7.   R. Hull et al., *A Phenomenological Description of Strain Relaxation in $Ge_xSi_{1-x}/Si(100)$ Heterostructures*, 66 J. Applied Physics 5837 (1989).

8.   Wen-Hwa Chu & Mehran Mehregany, *A Study of Residual Stress Distribution Through the Thickness of $p^+$ Silicon Films*, 40 IEEE Transactions on Electron Devices 1245 (1993).

9.   T. Mizuno et al., *Advanced SOI-MOSFETs with Strained-Si Channel for High Speed CMOS Electron/Hole Mobility Enhancement*, 2000 Symp. on VLSI Tech. Dig. of Tech. Papers 210 (2000).

10.  S. K. Jones et al., *An Advanced Calibration Method for Modelling Oxidation and Mechanical Stress in Sub-Micron CMOS Isolation Structures*, 1994 Int'l Electron Device

regions made of SiGe as in the accused infringing devices. Intel does not believe the '450 patent, nor any device manufactured by Intel, has a "strained layer" as the phrase is used in the claims of the '292 patent. However, if AmberWave's interpretation of the '292 patent is accepted by the Court, the '450 patent in combination with any of the myriad of prior art which describes the control by temperature of Ge diffusion from SiGe into adjacent regions of Si would render the asserted claims of the '292 patent obvious.[2]

U.S. Patent No. 6,621,131 is also prior art to the '292 patent under 35 U.S.C. § 102(g). Intel does not believe that the '131 patent, nor any device manufactured by Intel, have a "strained layer" as the phrase is used in the claims of the '292 patent. However, if AmberWave's interpretation of the '292 patent is accepted by the Court, the '131 patent describes the PMOS structure accused of infringement, including use of SiGe source and drains to create strain. Upon information and belief, the inventors of the '131 patent were the first to invent the subject matter and should be awarded priority of invention over the '292 patent, if the PMOS transistor design described therein (the same PMOS transistor design used in the accused infringing Intel products) is deemed to infringe the '292 patent, as use of temperature limits to

---

[2]    *See, e.g.*, Kasper *et. al*, A One-Dimensional SiGe Grow n by UHV Epitaxy, Appl. Physics 8, 199-205 (1975); Hoyt *et. al, Comparison of boron diffusion in Si and strained $Si(1-x)Ge(x)$ epitaxial layers*, Appl. Phys. Lett. 62(6) 612-614 (Feb. 8, 1993); Klauk *et. al, Thermal Stability of Undoped Strained Si Channel SiGe Heterostructures*, Appl. Phys. Lett 68(14) 1975-1977 (April 1, 1996); Daembkes *et. al, Fabrication and Properties of n- ·Channel SiGe/Si Modulation Doped Field Effect Transistors Grown by MBE*, IEDM 768-770 (1985); Cowern, *Diffusion in Strained Si(Ge)*, Physical Review Letters, vol. 72 no. 16, 2585-2588 (April 18, 1994); Rim *et al.*, *Fabrication and Analysis of Deep Submicron Strained-Si N-MOSFET's*, 47 IEEE Transactions on Electron Devices 1406 (2000); N. Sugii *et al.*, *High Electron Mobility in Strained Si Channel of $Si_{1-x}Ge_x/Si/Si_{1-x}Ge_x$ Heterostructure with Abrupt Interface*, 13 Semiconductor Sci. & Tech. A140 (1998); Richard B. Fair, *Concentration Profiles of Diffused Dopants in Silicon, in* Impurity Doping Processes in Silicon 315 (1981).

control diffusion from the source and drain would be obvious in light of the prior art.[3]

Likewise, U.S. Patent Nos. 5,633,202 and 6,876,053 (also assigned to Intel) describe use of nitride layers and isolation trenches to induce channel strain, respectively. Again, while Intel believes that no "strained layer" is present in this prior art or in the accused devices, if AmberWave's construction is adopted by the Court, the '202 and '053 patent in combination with the many references discussing control of diffusion of various impurities by temperature would also render the claims of the '292 invalid.[4]

In addition to the prior art (which clearly invalidates every asserted claim of the '292 patent), the '292 patent does not enable one of ordinary skill in the art to practice any of the asserted claims of the patent. Each and every claim of the patent requires that the impurity gradient be substantially zero in the distal zone of the strained layer. However, straining semiconductor materials changes the diffusion rate. *See, e.g.*, Cowern, *Diffusion in Strained Si(Ge)*, Physical Review Letters, vol. 72 no. 16, 2585-2588 (April 18, 1994). Moreover, the diffusion for various impurities varies depending on the semiconductor material. Rim *et al.*, *Fabrication and Analysis of Deep Submicron Strained-Si N-MOSFET's*, 47 IEEE Transactions on Electron Devices 1406 (2000). The '292 patent does not disclose anything other than Fick's basic equations to determine the maximum temperature processing after the strained layer is disposed on the substrate in order to avoid the interdiffusion of impurities into the strained layer. See '292 Patent at 5:36 to 6:25. Thus, one of skill in the art attempting to practice the claims of the '292 patent would not be able to determine the proper temperature limits for processing subsequent to disposing the strained layer in order to avoid diffusion of impurities into the

---

[3]       *See id.*

[4]       *See id.*

words, terms and expressions, cited in the preceding paragraph, Intel cannot fully respond to the interrogatory.

## INTERROGATORY NO. 6:

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, INTEL's contention that it has not infringed and is not infringing the '292 PATENT, directly, by the doctrine of equivalents, by inducement, or by contribution.

## RESPONSE TO INTERROGATORY NO. 6:

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel additionally objects to the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the terms "infringed," "infringing," "doctrine of equivalents," "inducement" and "contribution" because the terms are vague, ambiguous, overbroad, unduly burdensome and call for a legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel additionally objects to the terms "infringed," "infringing," "doctrine of equivalents," "inducement" and "contribution" to the extent they seek to elicit an admission from Intel, by virtue of Intel's response to this request as to the meanings of the terms. Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges. Intel further objects to the interrogatory because it requires Intel to speculate as to

what the '292 Patent purports to have invented. Intel further objects to this interrogatory to the extent that it seeks the disclosure of information that reflects or discloses personal information that is protected by constitutional, statutory, common law or privacy rights. Intel additionally objects to this interrogatory to the extent it seeks a third party's confidential, trade secret or proprietary information. Intel will not provide such information without the third party's consent. Intel further objects because the interrogatory improperly seeks to aggregate numerous separate and distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a). AmberWave has asserted nearly three dozen separate claims. Each claim for which AmberWave seeks a determination of no direct infringement, no infringement under the doctrine of equivalents, no inducement and no contribution each comprises a "subpart" under Federal Rule of Civil Procedure 33(a). Intel states that each of these discrete subparts counts as a separate interrogatory toward AmberWave's total limit of interrogatories. Therefore, this interrogatory, by itself, exceeds the limit of fifty (50) interrogatories set by the Court in paragraph 3(c) of the Scheduling Order dated September 15, 2005, and is improper. Intel reserves its right to seek a protective order if and when AmberWave propounds interrogatories in excess of the amount allowed by this Court. Intel further objects to the interrogatory because it calls for Intel to establish that its products do not infringe the '292 Patent and therefore improperly seeks to shift from AmberWave the burden of proving its affirmative claim of patent infringement.

Intel will respond to the interrogatory as of the date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to the above objections, Intel states that the accused infringing products do not meet the following limitations found in the independent claims 1, 16, 31, and 47 of the '292 patent: (1) "strained layer"; (2) "strained channel layer"; (3) "strained channel layer

disposed on the substrate"; (4) "disposing at least one strained layer on the substrate"; and (5) "disposing at least one strained channel layer on the substrate." The accused infringing Intel products do not have a strained layer, much less one disposed on the substrate, and AmberWave has not and can not identify these elements in the accused Intel devices. Thus, Intel does not meet limitations (1) – (5), above. Instead, Intel uses SiGe in the source and drain as well as nitride overlayers to create strain in the substrate of its PMOS and NMOS transistors. Likewise, because there is no strained layer disposed on the substrate in the Intel products, there can also be no "interface" between the strained layer and the substrate – thus, the accused Intel products do not have (6) "an interface therebetween"; (7) "distal zone away from the interface"; (8) "strained layer having a distal zone away from the interface."

Indeed, since the substrate itself is strained, there can be no "distal zone" in relation to the substrate itself. Thus, the accused infringing Intel products also have no (9) "distal zone away from the substrate"; (10) "strained layer having a distal zone away from the substrate"; or (11) "strained channel layer having a distal zone away from the substrate." Again, the strain is part of the substrate in the accused infringing products, and there is no part of the strain that is any further from the substrate than any other part – there can be no "distal zone." For all the above reasons, the accused infringing Intel products also do not meet the following limitations: (12) "the substrate, the interface, and the at least one strained layer" or (13) "the substrate and the channel region."

Moreover, there are many impurities in the Intel substrate (including the channel region) from implantation and diffusion. Therefore, the accused infringing Intel products do not meet the following limitations: (14) an "impurity gradient . . . has a value substantially equal to zero in the distal zone" or (15) an "impurity gradient having a value substantially equal to zero in

the distal zone." Finally, because the Intel devices never have a step where a strained layer is disposed on the substrate, there can be no (16) "subsequent processing step" in the accused infringing Intel products. Additionally, Intel can not infringe an invalid or unenforceable claim — please see Intel's detailed responses to Interrogatories Nos. 1 and 2 above.

The relevant documents to the above determinations include the '292 Patent and other intrinsic and extrinsic evidence relating to the above terms. Other relevant documents also include various technical documents such as drawings and manuals relating to Intel transistor design and process as well as testimony relating to the design and fabrication of the accused infringing products from Intel personnel who may include but are not limited to Kaizad Mistry, Tahir Ghani, Chris Auth, Robert Chau and Mark Bohr. Intel believes anyone of ordinary skill in the art with access to the above information would have knowledge that Intel does not infringe the claims of the '292 Patent.

**INTERROGATORY NO. 7:**

Identify all facts (including all DOCUMENTS and opinions of counsel), that Intel will rely on to establish that it has not and is not willfully infringing the '292 PATENT, directly, by the doctrine of equivalents, by inducement, or by contribution.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel further objects to the use of the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the use of the terms "infringed,"

70

respond to the interrogatory as of the date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to the above objections, Intel does not infringe any of the asserted claims of the '292 Patent (see answer to Interrogatory No. 6 above), the asserted claims of the '292 are invalid (see answer to Interrogatory No. 1 above) and/or the '292 patent is unenforceable (see answer to Interrogatory No. 2 above). Thus, Intel does not willfully infringe any of the asserted claims of the '292 Patent.

As to the Objections:

Dated: January 9, 2006          SIMPSON THACHER & BARTLETT LLP

By: _____
          GEORGE M. NEWCOMBE

YOUNG CONWAY STARGATT &
TAYLOR LLP

JOSY W. INGERSOLL (No. 1088)
JOHN W. SHAW (No. 3362)
KAREN E. KELLER (No. 4489)

Attorneys for Plaintiff/Counterdefendant
INTEL CORPORATION

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-301 (KAJ) |
| | ) | |
| v. | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

## AMBERWAVE SYSTEMS CORPORATION'S
## SUPPLEMENTAL RESPONSE TO INTEL'S INTERROGATORY NO. 9

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules for the District of Delaware, Defendant and Counterclaim-Plaintiff AmberWave Systems Corporation ("AmberWave") hereby supplements its response to Plaintiff and Counterclaim-Defendant Intel Corporation's ("Intel") Interrogatory No. 9.

## INTRODUCTION

This response is made solely for the purpose of this action. The response is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such interrogatory were asked of, or statements contained herein were made by, a

## GENERAL OBJECTIONS

AmberWave incorporates by reference fully the General Objections in its Response To Intel's Second Set of Interrogatories.

## SUPPLEMENTAL RESPONSE TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 9:

IDENTIFY where AMBERWAVE contends each ELEMENT of each ASSERTED CLAIM is found within each ACCUSED PRODUCT, including for each ELEMENT that AMBERWAVE contends is governed by 35 U.S.C. §112(6), the identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:

In addition to the General Objections in AmberWave's Response to Intel's Second Set of Interrogatories, which are incorporated fully by reference herein, AmberWave objects to this interrogatory as overbroad and unduly burdensome. AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any other applicable privilege or protection. AmberWave objects that this interrogatory to the extent it calls for a legal conclusion. AmberWave objects to this interrogatory as vague and ambiguous. For example, the request for the "identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention" is vague and ambiguous. AmberWave objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. This interrogatory is also unduly burdensome and oppressive because it is in large part duplicative of Interrogatory No. 4

3

in Intel's First Set of Interrogatories.  Furthermore, AmberWave objects to this interrogatory

insofar as the Court has not yet construed the claims of United States Patent No. 6,831,292 (the

"'292 patent") and discovery is ongoing.  AmberWave reserves the right to modify or

supplement its responses as AmberWave receives additional information from Intel or third

parties, as AmberWave locates additional information, or based on a ruling by the Court.

Subject to the foregoing, and the General Objections, AmberWave supplements its

response as follows:

Intel's 90 nm technology node introduced commercially a method of straining the

channel region of PMOS transistors ("Strained Silicon Process").  See generally:

Mistry et al., "Delaying Forever: Uniaxial Strained Silicon Transistors in a 90nm CMOS Technology," 2004 Symposium on VLSI Technology Digest of Technical Papers.

Thomspon et al., "In Search of 'Forever,' Continued Transistor Scaling One New Material at a Time," IEEE Transactions On Semiconductor Manufacturing, Vol. 18, No. 1 February 2005.

Chau et al., "Advanced CMOS Transistors in the Nanotechnology Era for High-Performance, Low-Power Applications," 2004 IEEE.

Shifren et al., "Drive current enhancement in p-type metal-oxide-semiconductor field-effect transistors under shear uniaxial stress," Applied Physics Letters, Vol. 85, No. 25, 20 December 2004.

Thompson et al., "A Logic Nanotechnology Featuring Strained-Silicon," IEEE Electron Device Letters, Vol. 24, No. 4, April 2004.

Thompson, "A 90-nm Logic Technology Featuring Strained-Silicon," IEEE Transactions of Electron Devices, Vol. 51, No. 11, November 2004.

Ghani et al., "A 90nm High Volume Manufacturing Logic Technology Featuring Novel 45nm Gate Length Strained Silicon CMOS Transistors," 978 IEDM 03, 2003 IEEE.

Thomspon et al., A 90nm Logic Technology Featuring 50nm Strained Silicon Channel Transistors, 7 layers of Cu Interconnects, Low k ILD, and 1 um$^2$ SRAM Cell," IEDM.

Alexandre Dorofeev, Semiconductor Insights, "Detailed Structural Analysis I of the Intel Pentium 3.0E GHz Processor 'Prescott'" (Reverse Engineering Report), www.semiconductorinsights.com.

Chipworks, "Intel BX80546PG2800E Pentium 4 Prescott Microprocessor Structural Analysis" (Reverse Engineering Report), www.chipworks.com.

4

AmberWave contends that Intel's Strained Silicon Process, and/or PMOS transistors produced using the process, infringe the claims of the '292 patent identified in the table below.

AmberWave does not have access to products fabricated on Intel's 65 nm node or its 45 nm node. Intel's published literature indicates that Intel will use a version of the Strained Silicon Process to fabricate products on its 65 nm node. Intel has not yet released all the details of the products fabricated on its 45 nm node. There is, however, substantial and compelling evidence that it will also employ the accused Strained Silicon Process. This evidence includes the following:

- Intel publications announce plans to implement channel strain for products fabricated on these nodes.

- Intel publications provide no indication that Intel will change the Strained Silicon Process for products fabricated on its 65 nm node or its 45 nm node in any way that is relevant to the '292 patent.

- There is no public evidence that Intel has any other method of straining the PMOS channel region available for use other than the Strained Silicon Process. In fact, Intel has represented to AmberWave that it has abandoned its other research program on straining the channel region.

- Intel publications refer to the accused Strained Silicon Process as a generic process, even when discussing its application in different technology nodes, making clear that the accused Strained Silicon Process is a standard process applied across technology nodes.

See generally:

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65nm Press Release, August 2004, www.intel.com.

5

Bai et al., "A 65 nm Logic Technology Featuring 35 nm Gate Length, Enhanced Channel Strain, 8 Cu Interconnect Layers, Low-k ILD and 0.57µm² SRAM Cell," Presentation, IEDM 2004, www.intel.com.

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65 nm Analyst Meeting, December 2004, www.intel.com

Intel Technologies, Presentation, March 22, 2004, www.intel.com

Bohr, 65 nm Technology for High Performance and Low Power, Presentation, Intel Developer Forum, www.intel.com

Intel's High-k/Metal Gate Announcement, Presentation, November 14, 2003, www.intel.com

Bohr, "Intel's 65nm Logic Technology Demonstrated on 0.57 µm² SRAM Cells," Presentation, www.intel.com.

Jin et al., "Mobility Enhancement in Compressively Strained SiGe Surface Channel PMOS Transistors with HfO₂/TiN Gate Stack," Electrochemical Society Proceedings Vol. 2004-07.

Datta, "Advanced Si and SiGe Strained Channel NMOS and PMOS Transistors with High-K/Metal-Gate Stack," IEEE BCTM 10.2, 2004 IEEE.

Datta, "High Mobility Si/SiGe Strained Channel MOS Transistors with HfO2/TiN Gate Stack," IEDM 03-653.

Intel's website indicates that certain versions of products with the following brand names are manufactured using Intel's 90 nm technology node:

Xeon®

Pentium® Extreme Edition

Pentium® D

Pentium® 4

Pentium® M

Mobile Pentium® 4

Celeron® D

Celeron® M

In addition, Intel's Report on Form 10-K for 2004 indicates that Intel's IXP2325 and IXP2350 network processors are fabricated using the 90 nm technology node.   It is

6

AmberWave's current understanding that Intel migrates its technology nodes to different product lines over the course of time, and therefore the commercial products that infringe by virtue of utilizing Intel's 90 nm technology which incorporates the Strained Silicon Process will expand overtime.

Intel's published literature indicates that all microprocessors produced using the 90 nm technology node will use the Intel Strained Silicon Process. Intel's published literature does not suggest that there are any applications of its 90 nm node technology node that do not employ the accused Strained Silicon Process. To the contrary, Intel's published literature suggests the Strained Silicon Process is an essential part of the 90nm node technology.

To our knowledge, Intel has not yet released to consumers its 65 nm and 45 nm products that use the Strained Silicon Process, and therefore AmberWave cannot identify those products by name.

AmberWave accuses all devices fabricated using Intel's Strained Silicon Process, whether commercial or pre-commercial, and not just the devices enumerated above.

Based on the preceding information, the analysis below is applicable to all PMOS transistors that incorporate the Strained Silicon Process (the "Accused Products"), whether produced at the 90 nm node, the 65 nm node, the 45 nm node, or any other technology node. As noted in AmberWave's response to Intel's Interrogatory No. 10, AmberWave contends that the Strained Silicon Process and/or PMOS transistors that incorporate the Strained Silicon Process literally practice each element of the claims specified below. To the extent a court were to conclude that any of the claims specified below are not literally infringed, AmberWave maintains that the claims are infringed under the doctrine of equivalents.

7

| Claim 1 | |
|---|---|
| A semiconductor structure comprising: | According to one way in which Intel infringes, the PMOS transistors in the Accused Products, include: |
| a substrate; and | The PMOS transistors include a silicon (Si) semiconductor material having silicon germanium (SiGe) source and drain regions. |
| at least one strained layer disposed on the substrate, thereby defining an interface therebetween, the at least one strained layer having a distal zone away from the interface; | The channel region of the PMOS transistor is strained and disposed on the substrate. The region where the channel region of the PMOS transistor and the substrate of the PMOS transistor meet defines an interface. According to one way in which Intel infringes, the distal zone of the channel region includes at least about 50 Angstroms at the top surface of the channel region. |
| wherein the substrate, the interface, and the at least one strained layer are characterized at least in part by an impurity gradient having a value substantially equal to zero in the distal zone. | The impurity gradient characterizing the presence of germanium (Ge) in the substrate, the interface between the substrate and the channel region, and the channel region has a value substantially equal to zero in the distal zone of the channel region. |
| Claim 2 | |
| The semiconductor structure of claim 1 wherein the substrate comprises Si. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 1, includes silicon (Si). |
| Claim 3 | |
| The semiconductor structure of claim 1 wherein the substrate comprises SiGe. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 1, includes silicon germanium (SiGe) (the source and drain regions). |
| Claim 4 | |
| The semiconductor structure of claim 1 wherein the substrate comprises a p-type dopant. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 1, includes boron, which acts as a p-type dopant. |
| Claim 5 | |
| The semiconductor structure of claim 1 wherein the substrate comprises an n-type dopant. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 1, |

8

| | includes an n-type dopant (e.g. phosphorous or arsenic). |
|---|---|
| **Claim 6** | |
| The semiconductor structure of claim 1 wherein the substrate comprises a plurality of layers. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 1, contains multiple layers including silicon (Si) and silicon germanium (SiGe) (the source and drain regions). |
| **Claim 10** | |
| The semiconductor structure of claim 1 wherein the at least one strained layer comprises Si. | According to one way in which Intel infringes, the channel region of the PMOS transistors, as described in claim 1, include silicon (Si). |
| **Claim 13** | |
| The semiconductor structure of claim 1 wherein the distal zone comprises at least about fifty Angstroms of the at least one strained layer. | According to one way in which Intel infringes, the distal zone in the strained channel region on Intel's PMOS transistors described in connection with claim 1 includes at least about fifty Angstroms of the strained channel region, wherein the impurity gradient characterizing the presence of germanium (Ge) has a value substantially equal to zero. |
| **Claim 14** | |
| The semiconductor structure of claim 10 wherein the impurity gradient describes at least the concentration of Ge. | According to one way in which Intel infringes, the impurity gradient whose value is substantially equal to zero in the distal zone of the channel region, as set forth in connection with claim 10, describes the concentration of germanium (Ge). |
| **Claim 16** | |
| A FET fabricated in a semiconductor substrate, the FET comprising | According to one way in which Intel infringes, the PMOS transistors in the Accused Products, are field effect transistors (FETs) that include a silicon (Si) semiconductor material having silicon germanium (SiGe) source and drain regions, and include: |
| a channel region including at least one strained channel layer, | The channel region of the PMOS transistor is strained. |
| the at least one strained channel layer having a distal zone away from the substrate, | According to one way in which Intel infringes, the distal zone of the channel region includes at least about 50 Angstroms at the top surface of the channel |

9

| | region. |
|---|---|
| wherein the substrate and the channel region are characterized at least in part by an impurity gradient having a value substantially equal to zero in the distal zone. | The impurity gradient characterizing the presence of germanium (Ge) in the substrate and the channel region has a value substantially equal to zero in the distal zone of the channel region. |
| **Claim 17** | |
| The FET of claim 16 wherein the substrate comprises Si. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 16, includes silicon (Si). |
| **Claim 18** | |
| The FET of claim 16 wherein the substrate comprises SiGe. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 16, includes silicon germanium (SiGe) (the source and drain regions). |
| **Claim 19** | |
| The FET of claim 16 wherein the substrate comprises a p-type dopant. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 16, includes boron, which acts as a p-type dopant. |
| **Claim 20** | |
| The FET of claim 16 wherein the substrate comprises an n-type dopant. | According to one way in which Intel infringes, the substrate of the PMOS transistor, as described in claim 16, includes an n-type dopant (e.g., phosphorous or arsenic). |
| **Claim 21** | |
| The FET of claim 16 wherein the substrate comprises a plurality of layers. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 16, contains multiple layers including silicon (Si) and silicon germanium (SiGe) (the source and drain regions). |
| **Claim 25** | |
| The FET of claim 16 wherein the at least one strained channel layer comprises Si. | According to one way in which Intel infringes, the channel region of the PMOS transistors includes silicon (Si). |
| **Claim 28** | |
| The FET of claim 16 wherein the distal zone comprises at least about fifty Angstroms of the at least one strained channel layer. | According to one way in which Intel infringes, the distal zone in the strained channel region on Intel's PMOS devices described in connection with claim 16 includes at least about fifty Angstroms of |

|  | the strained channel region, wherein the impurity gradient characterizing the presence of germanium (Ge) has a value substantially equal to zero. |
|---|---|
| **Claim 29** |  |
| The FET of claim 25 wherein the impurity gradient describes at least the concentration of Ge. | According to one way in which Intel infringes, the impurity gradient whose value is substantially equal to zero in the distal zone of the channel region, as set forth in connection with claim 25, describes the concentration of germanium (Ge). |
| **Claim 31** |  |
| A method for fabricating a semiconductor structure in a substrate, the method comprising the steps of: | According to one way in which Intel infringes, the method of fabricating the PMOS transistors in the Accused Products, that include a silicon (Si) semiconductor material having silicon germanium (SiGe) source and drain regions, includes the steps of: |
| disposing at least one strained layer on the substrate thereby defining an interface therebetween, the at least one strained layer having a distal zone away from the interface; and | The channel region of the PMOS transistor is strained. It is disposed on substrate. The region where the channel region of the PMOS transistor and the substrate of the PMOS transistor meet defines an interface. The distal zone of the channel region includes at least about 50 Angstroms at the top surface of the channel region. |
| performing at least one subsequent processing step on the substrate after which an impurity gradient characterizing, at least in part, the substrate, the interface, and the at least one strained layer has a value substantially equal to zero in the distal zone. | The salicidation of the source and drain regions is performed. After this processing step, an impurity gradient characterizing the presence of germanium (Ge) in the substrate, the interface between the substrate and the channel region, and the channel region has a value substantially equal to zero in the distal zone of the channel region. |
| **Claim 32** |  |
| The method of claim 31 wherein the substrate comprises Si. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 31, includes silicon (Si). |
| **Claim 33** |  |
| The method of claim 31 wherein the substrate comprises SiGe. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 31, |

11

| | includes silicon germanium (SiGe) (the source and drain regions). |
|---|---|
| **Claim 34** | |
| The method of claim 31 wherein the substrate comprises a p-type dopant. | According to one way in which Intel infringes, the substrate of the PMOS transistors', as described in claim 31, includes boron, which acts as a p-type dopant. |
| **Claim 35** | |
| The method of claim 31 wherein the substrate comprises an n-type dopant. | According to one way in which Intel infringes, the PMOS transistors' substrate, as described in claim 31, includes an n-type dopant (e.g., phosphorous or arsenic). |
| **Claim 36** | |
| The method of claim 31 wherein the substrate comprises a plurality of layers. | According to one way in which Intel infringes, the PMOS transistors' substrate, as described in claim 31, includes silicon (Si) and silicon germanium (SiGe) (the source and drain regions). |
| **Claim 40** | |
| The method of claim 31 wherein the at least one strained layer comprises Si. | According to one way in which Intel infringes, the channel region of the PMOS transistors, as described in claim 31, includes silicon (Si). |
| **Claim 43** | |
| The method of claim 31 wherein the distal zone comprises at least about fifty Angstroms of the at least one strained layer. | According to one way in which Intel infringes, the distal zone in the strained channel region on Intel's PMOS devices described in connection with claim 31 includes at least about fifty Angstroms of the strained channel region, wherein the impurity gradient characterizing the presence of germanium (Ge) has a value substantially equal to zero. |
| **Claim 44** | |
| The method of claim 31 wherein the at least one subsequent processing step is performed within a predetermined temperature range. | According to one way in which Intel infringes, the processing step of salicidation, as described in claim 31, is performed within a predetermined temperature range that does not cause the impurity gradient characterizing the presence of germanium (Ge) to have a value in the channel region other than a value substantially equal to zero. |
| **Claim 45** | |
| The method of claim 40 wherein the | According to one way in which Intel |

| | |
|---|---|
| impurity gradient describes at least the concentration of Ge. | infringes, the impurity gradient whose value is substantially equal to zero in the distal zone of the channel region, as set forth in connection with claim 40, describes the concentration of germanium (Ge). |
| **Claim 47** | |
| A method for fabricating a FET in a semiconductor substrate, the FET comprising a channel region, the method comprising the steps of: | According to one way in which Intel infringes, the method of fabricating the PMOS transistors in the Accused Products, which are field effect transistors (FETs) and include a silicon (Si) semiconductor material having silicon germanium (SiGe) source and drain regions, includes the steps of: |
| disposing at least one strained channel layer in at least the channel region, the at least one strained channel layer having a distal zone away from the substrate; and | The channel region of the PMOS transistor is strained. It is disposed on the substrate. The distal zone of the channel region is at least about 50 Angstroms at the top surface of the channel region. |
| performing at least one subsequent processing step on the substrate after which an impurity gradient characterizing, at least in part, the substrate and the at least one strained layer has a value substantially equal to zero in the distal zone. | The salicidation of the source and drain regions is performed. After this processing step, an impurity gradient characterizing the presence of germanium (Ge) in the substrate and the strained channel region has a value substantially equal to zero in the distal zone of the channel region. |
| **Claim 48** | |
| The method of claim 47 wherein the substrate comprises Si. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 47, includes silicon (Si). |
| **Claim 49** | |
| The method of claim 47 wherein the substrate comprises SiGe. | According to one way in which Intel infringes, the substrate of the PMOS transistors, as described in claim 47, includes silicon germanium (SiGe) (the source and drain regions). |
| **Claim 50** | |
| The method of claim 47 wherein the substrate comprises a p-type dopant. | According to one way in which Intel infringes, the PMOS transistors' substrate, as described in claim 47, includes boron, which acts as a p-type dopant. |
| **Claim 51** | |
| 51. The method of claim 47 wherein the substrate comprises an n-type dopant. | According to one way in which Intel infringes, the PMOS transistors' substrate, |

13

| | as described in claim 47, includes an n-type dopant (e.g., phosphorous or arsenic). |
|---|---|
| Claim 52 | |
| The method of claim 47 wherein the substrate comprises a plurality of layers. | According to one way in which Intel infringes, the PMOS transistors' substrate, as described in claim 47, includes silicon (Si) and silicon germanium (SiGe) (the source and drain regions). |
| Claim 56 | |
| The method of claim 47 wherein the at least one strained layer comprises Si. | According to one way in which Intel infringes, the channel region of the PMOS transistors, as described in claim 47, includes silicon (Si). |
| Claim 59 | |
| The method of claim 47 wherein the distal zone comprises at least about fifty Angstroms of the at least one strained layer. | According to one way in which Intel infringes, the distal zone in the strained channel region on Intel's PMOS devices described in connection with claim 47 includes at least about fifty Angstroms of the strained channel region, wherein the impurity gradient characterizing the presence of germanium (Ge) has a value substantially equal to zero. |
| Claim 60 | |
| The method of claim 47 wherein the at least one subsequent processing step is performed within a predetermined temperature range. | According to one way in which Intel infringes, the processing step of salicidation, as described in claim 47, is performed within a predetermined temperature range that does not cause the impurity gradient characterizing the presence of germanium (Ge) to have a value in the channel region other than a value substantially equal to zero. |
| Claim 61 | |
| The method of claim 56 wherein the impurity gradient describes at least the concentration of Ge. | According to one way in which Intel infringes, the impurity gradient whose value is substantially equal to zero in the distal zone of the channel region, as set forth in connection with claim 56, describes the concentration of germanium (Ge). |

14

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
lpolizoti@mnat.com
   Attorneys for Defendant and Counterclaim-Plaintiff
   AmberWave Systems Corporation

OF COUNSEL:

Morgan Chu
David I. Gindler
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

December 19, 2005
498424

15

EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-301-KAJ |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Counterdefendant. | ) | |

## INTEL'S RESPONSES AND OBJECTIONS TO AMBERWAVE'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterdefendant Intel Corporation ("Intel") through its lead counsel Simpson Thacher & Bartlett LLP, hereby objects and responds to the First Set of Interrogatories ("Interrogatories"), propounded on August 29, 2005 by Defendant and Counterplaintiff AmberWave Systems Corporation ("AmberWave") as follows:

Intel's responses are based solely on the documents, facts and contentions known and available to Intel at this time. Intel has not completed its investigation of the facts and documents relating to this action and is only in the initial phases of discovery in this action.

6

### INTERROGATORY NO 1:

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, INTEL's contention that the '292 PATENT is invalid.

### RESPONSE TO INTERROGATORY NO. 1:

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound.  Intel also objects to the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and/or seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party.  Intel further objects to the term "invalid" because the term is vague, ambiguous, overbroad, unduly burdensome and calls for a legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges.  Intel additionally objects to the term "invalid" to the extent it seeks to elicit an admission from Intel, by virtue of Intel's response to this request, as to the meaning of the term.  Intel also objects to this interrogatory to the extent that it seeks information already in AmberWave's possession, custody, or control or that AmberWave could ascertain or derive from documents and other discovery that will be provided in connection with AmberWave's own disclosures or in AmberWave's responses to Intel's document requests.  Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges.  Intel notes that 35 U.S.C. § 282 does not require the disclosure of prior art until "at least thirty days before trial."  Through this interrogatory, AmberWave seeks the disclosure of prior art more than a year before trial and before AmberWave has given any indication in this litigation as to how it intends

to read the claims of the '292 Patent. Accordingly, the interrogatory is premature. Intel further objects to this interrogatory because Intel will provide expert disclosures and depositions responsive to this interrogatory under the schedule established by the Court; AmberWave cannot force Intel to accelerate those disclosures by serving interrogatories. Intel further objects to this interrogatory because it includes no temporal limitation; Intel will respond to the interrogatory as of the date of this response and expressly reserves its right to supplement and/or amend its response as additional facts become known.

Subject to and without waiving the foregoing objections, Intel states that the '292 patent is invalid pursuant to 35 U.S.C. §102 because the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before any device or method purported to be described in the patent was invented by any applicant for the '292 Patent. Furthermore, any invention purported to be described by the '292 Patent was anticipated by one or more of the prior art references cited below. Moreover, the invention is invalid pursuant to 35 U.S.C. §103 because the differences between the subject matter of the '292 Patent and one or more pieces of prior art identified below are such that the subject matter of the '292 Patent would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter of the '292 Patent pertains. In addition, the '292 Patent is invalid because one skilled in the art could not make or use any invention purported to be described by the '292 Patent without undue experimentation. Moreover, the '292 Patent is invalid because one skilled in the art would not understand what is claimed when the patent is read in light of its specification. The documents that support the foregoing include, but are not limited to, the documents cited below. Intel's investigation of materials that support the invalidity arguments described in this response is ongoing and Intel

8

explicitly reserves the right to supplement and amend its response to this interrogatory at the time of, or prior to, the completion of its investigation. The "persons with knowledge" for the purposes of this response include, but are not limited to, the named inventors in the patents and/or the authors of the publications cited below.

1.    Masaharu Watanabe et al., *Invited: Perfect Crystal Device Technology*, 44 J. of the Japan Society of Applied Physics 269 (Supp. 1975).

2.    S. Thompson et al., *A 90nm Logic Technology Featuring 50nm Strained Silicon Channel Transistors, 7 Layers of Cu Interconnects, Low k ILD, and 1 $um^2$ SRAM Cell*, 2002 Int'l Electron Device Meeting Tech. Dig. 61 (2002).

3.    M. Dellith et al., *A Dislocation Formation Model of Trench-Induced Dislocations in Dynamic Random Access Memories*, 143 J. of the Electrochemical Soc'y 210 (1996).

4.    Christopher Leitz, *A High Throughput, Ultra-low Roughness, SiGe-free Strained Si Regrowth Process*, 8 Materials Sci. in Semiconductor Processing 187 (2004).

5.    M. F. Doerner & W. D. Nix, *A Method for Interpreting the Data from Depth-sensing Indentation Instruments*, 1 J. Material Research 601 (1986).

6.    N. E. B. Cowern & D. J. Godfrey, *A Model for Coupled Dopant Diffusion in Silicon*, 6 Int'l J. Computation and Mathematics in Electrical and Electronic Engineering 59 (1987).

7.    Akemi Hamada et al., *A New Aspect of Mechanical Stress Effects in Scaled MOS Devices*, 38 IEEE Transactions on Electron Devices 895 (1991).

8.    R. Westhoff et al., *A Novel, High Quality SiGe Graded Buffer Growth Process Using $GeCl_4$*, 2004-07 Electrochemical Soc'y Proceedings 589 (2004).

42

*Superlattices – A Study by Raman Spectroscopy and X-ray Diffractometry,*

Proceedings of the Second Int'l Symp. on Silicon Molecular Beam Epitaxy 36

(1988).

## INTERROGATORY NO 2:

Identify all facts (including all DOCUMENTS) that support or contradict, and

identify all persons with knowledge of, INTEL's contention that AMBERWAVE has unclean

hands and therefore should be barred from recovering any relief sought in its COUNTERCLAIM

or any relief whatsoever against INTEL.

## RESPONSE TO INTERROGATORY NO. 2:

In addition to the General Objections, which are incorporated fully by reference

herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome

and compound. Intel also objects to the terms "all," "identify," "persons with knowledge" and

"relief" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek

information that is not reasonably calculated to lead to the discovery of information relevant to

the claims or defenses of any party. Intel further objects to the terms "unclean hands" and

"barred" because the terms are vague, ambiguous, overbroad, unduly burdensome and call for a

legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine

and/or other judicially recognized protections or privileges. Intel additionally objects to the

terms "unclean hands" and "barred" to the extent they seek to elicit an admission from Intel, by

virtue of Intel's response to this request, as to the meanings of the terms. Intel further objects

that information to support a defense based on the legal and/or equitable principle of "unclean

hands" is in the possession of AmberWave. Intel also objects to this interrogatory to the extent it

seeks information protected by the attorney-client privilege, the work-product doctrine and/or

other judicially recognized protections or privileges. Intel further objects to this interrogatory as premature and improper because Intel cannot properly respond to this interrogatory until discovery has proceeded further. Intel will respond to the interrogatory as of the date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to and without waiving the foregoing objections, Intel states on information and belief that one or more of the named inventors in the '292 Patent were aware at the time they prosecuted the application that issued as the '292 Patent of prior art that anticipates or renders obvious the '292 Patent and failed to disclose this prior art to the Patent and Trademark Office during the pendency of the application process.

## INTERROGATORY NO. 3:

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, INTEL's contention that AMBERWAVE's COUNTERCLAIM is barred in whole or in part under principles of equity, including laches, prosecution laches, waiver, and/or estoppel.

## RESPONSE TO INTERROGATORY NO. 3:

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel also objects to the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the terms "laches," "prosecution laches," "waiver" and "estoppel" because the terms are vague, ambiguous, overbroad, unduly burdensome and call

include some deformation of the silicon substrate that might be characterized as "strained or stressed region[s]." These deformities are caused by a variety of different processes, including the implantation of dopants, the etching of the silicon to create structures in the silicon wafer, the application of various materials with different properties in conjunction with subjecting such materials to changes in pressure and temperature during the manufacturing process, the use of various materials in the source and drain, and by other factors that in some way may be characterized as stressing or straining the materials in the transistor. Many of these processes and mechanisms are explained in greater detail in Intel patents, including without limitation U.S. Patent Nos. 5,633,202; 6,281,532; 6,621,131; 6,861,318; and 6,876,053. In addition, various mechanisms and processes that can be characterized as inducing "stress" or "strain" in semiconductor materials and/or transistors have been known for decades. Until AmberWave explains what it means by the objectionably vague words, terms and expressions, cited in the preceding paragraph, Intel cannot fully respond to the interrogatory.

**INTERROGATORY NO. 6:**

Identify all facts (including all DOCUMENTS) that support or contradict, and identify all persons with knowledge of, INTEL's contention that it has not infringed and is not infringing the '292 PATENT, directly, by the doctrine of equivalents, by inducement, or by contribution.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel additionally objects to the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek

information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party.  Intel further objects to the terms "infringed," "infringing," "doctrine of equivalents," "inducement" and "contribution" because the terms are vague, ambiguous, overbroad, unduly burdensome and call for a legal conclusion that is privileged under the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges.  Intel additionally objects to the terms "infringed," "infringing," "doctrine of equivalents," "inducement" and "contribution" to the extent they seek to elicit an admission from Intel, by virtue of Intel's response to this request as to the meanings of the terms.  Intel also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine and/or other judicially recognized protections or privileges.  Intel further objects to the interrogatory because it requires Intel to speculate as to what the '292 Patent purports to have invented.  Intel additionally objects to this interrogatory to the extent it seeks documents relating to Intel products that AmberWave has not accused of infringing the '292 Patent and/or products that Intel does not currently commercially sell.  Intel further objects to this interrogatory to the extent that it seeks the disclosure of information that reflects or discloses trade secrets, other confidential, financial or proprietary information of Intel or personal information that is protected by constitutional, statutory, common law or privacy rights. Intel additionally objects to this interrogatory to the extent it seeks a third party's confidential, trade secret or proprietary information.  Intel will not provide such information without the third party's consent.  Intel further objects because the interrogatory improperly seeks to aggregate numerous separate and distinct interrogatories in violation of Federal Rule of Civil Procedure 33(a).  The '292 Patent is comprised of sixty-two (62) separate claims.  Each claim for which AmberWave seeks a determination of no direct infringement, no infringement

under the doctrine of equivalents, no inducement and no contribution each comprises a "subpart" under Federal Rule of Civil Procedure 33(a). Intel states that each of these discrete subparts counts as a separate interrogatory toward AmberWave's total limit of interrogatories. Therefore, this interrogatory, by itself, exceeds the limit of fifty (50) interrogatories set by the Court in paragraph 3(c) of the Scheduling Order dated September 15, 2005, and is improper. Intel reserves its right to seek a protective order if and when AmberWave propounds interrogatories in excess of the amount allowed by this Court. Intel further objects to the interrogatory because Intel does not know which of the sixty-two (62) claims AmberWave contends are infringed by Intel's products. Intel further objects to the interrogatory because it calls for Intel to establish that its products do not infringe the '292 Patent and therefore improperly seeks to shift from AmberWave the burden of proving its affirmative claim of patent infringement.

Intel will limit its response to this interrogatory to the four independent claims in the '292 Patent—claims 1, 16, 31 and 47—because failure to satisfy the independent claims of the '292 Patent is a full defense to infringement of all sixty-two (62) claims of the patent. To the extent AmberWave argues that any Intel product infringes any of the dependent claims of the '292 Patent, Intel will amend its response to this interrogatory. Intel will respond to the interrogatory as of the date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to the above objections, Intel states that the accused infringing products do not meet at least one or more of the following limitations, which are found in one or more of the independent claims of the '292 Patent: (1) "strained layer"; (2) "strained channel layer"; (3) "strained channel layer disposed on the substrate"; (4) "disposing at least one strained layer on the substrate"; (5) "disposing at least one strained channel layer on the substrate"; (6) "an

interface therebetween"; (7) "distal zone away from the interface"; (8) "strained layer having a distal zone away from the interface"; (9) "distal zone away from the substrate"; (10) "strained layer having a distal zone away from the substrate"; (11) "strained channel layer having a distal zone away from the substrate"; (12) "the substrate, the interface, and the at least one strained layer"; (13) "the substrate and the channel region"; (14) "impurity gradient . . . has a value substantially equal to zero in the distal zone"; (15) "impurity gradient having a value substantially equal to zero in the distal zone"; and/or (16) "subsequent processing step." The relevant documents to the above determination include the '292 Patent and other intrinsic and extrinsic evidence relating to the above terms. Other relevant documents also include various technical documents and testimony relating to the design and fabrication of the accused infringing products. Intel believes anyone of ordinary skill in the art with access to the above information would have knowledge that Intel does not infringe the claims of the '292 Patent.

**INTERROGATORY NO. 7:**

Identify all facts (including all DOCUMENTS and opinions of counsel), that Intel will rely on to establish that it has not and is not willfully infringing the '292 PATENT, directly, by the doctrine of equivalents, by inducement, or by contribution.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the General Objections, which are incorporated fully by reference herein, Intel objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and compound. Intel further objects to the use of the terms "all," "identify" and "persons with knowledge" because the terms are vague, ambiguous, overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of information relevant to the claims or defenses of any party. Intel further objects to the use of the terms "infringed,"

53

date of this response and expressly preserves its right to supplement and/or amend its response as additional facts become known.

Subject to the above objections, because Intel does not infringe any of the claims of the '292 Patent (see answer to Interrogatory No. 6 above), Intel does not willfully infringe any of the claims of the '292 Patent.

As to the Objections:

Dated: October 28, 2005                SIMPSON THACHER & BARTLETT LLP

By: _____
    GEORGE M. NEWCOMBE

YOUNG CONWAY STARGATT &
TAYLOR LLP

JOSY W. INGERSOLL (No. 1088)
JOHN W. SHAW (No. 3362)
KAREN E. KELLER (No. 4489)

Attorneys for Plaintiff/Counterdefendants
INTEL CORPORATION

EXHIBIT G

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7098
FACSIMILE (310) 203-7199
jsheasby@irell.com

February 5, 2006

**VIA E-MAIL**

Patrick E. King, Esq.
Simpson Thacher & Bartlett LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Re:    Intel Corporation v. AmberWave Systems Corporation, Civil Action No. 05-301-KAJ, AmberWave Systems Corporation v. Intel Corporation, Civil Action No. 05-837-KAJ

Dear Pat:

We write regarding Intel's responses to AmberWave's Second and Third Set of Interrogatories in CA 05-301 and AmberWave's First Set of Interrogatories in CA 05-837. Intel has failed to provide meaningful responses to AmberWave's interrogatories.

**Second Set of Interrogatories in CA 05-301**

Interrogatory No. 8

Intel has simply listed elements in the independent claim of the '371 patent that it allegedly does not practice. It does not identify the facts and documents that relate to its contention that it does not infringe this claim, or persons with knowledge of its contention. In addition, if Intel maintains that it does not infringe any of the elements in the dependent claims of the '371 patent, it needs to provide the facts and documents that relate to this position, and identify persons with knowledge of this position. At a minimum, Intel should provide this information as to those claims AmberWave contends Intel infringes.

Interrogatory No. 9

Intel does not identify any opinion of counsel that it intends to rely on to establish that its infringement of the '371 patent is not willful. As AmberWave conducts discovery in this matter, AmberWave intends to rely on the absence of any reference to an opinion of counsel

1446966

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Patrick E. King, Esq.
February 5, 2006
Page 2

in Intel's interrogatory response. If Intel intends to rely on an opinion of counsel as a defense to willfulness, it needs to immediately supplement its response.

Interrogatory No. 10:

Intel has failed to respond to this interrogatory.

Interrogatory No. 11:

Intel's response states that the '371 patent is invalid based on 35 U.S.C. §§ 102 and 103. It then cites 135 references, without identifying the facts establishing that these references purportedly invalidate the '371 patent.

In addition, the response does not identify the facts and documents that relate to the contention that the inventions claimed in '371 patent were "known or used by others in this country, or patented or described in a printed publication in this or a foreign country" before the priority date of the '371 patent, and the persons with knowledge of this contention.

Intel's response states that the '371 patent is invalid "because one skilled in the art could not make or use any invention purported to be described in the '371 patent without undue experimentation." We understand this to mean that Intel is maintaining that the '371 patent is not enabled. Intel, however, does not identify which claims of the '371 patent it believes are not enabled, the facts and documents that relate to this contention, and the persons with knowledge of this contention.

Intel's response states that "the '371 patent is invalid because one skilled in the art would not understand what is claimed when the patent is read in light of its specification." We understand this to mean that Intel is asserting that terms in the claims of the '371 patent are indefinite. The response fails to identify the terms and claims that are purportedly indefinite, the facts and documents that relate to this contention, and the persons with knowledge of this contention.

Intel's Fifth and Sixth Affirmative Defenses in its Answer in CA 02-05CV-00449 state that the '371 patent is invalid for double patenting and improper inventorship. Intel's interrogatory responses provide no facts purportedly supporting these affirmative defenses. Please provide the facts and documents that relate to these defenses, and identify the persons with knowledge of these defenses.

Interrogatory No. 12:

Intel's Third Affirmative Defense in its Reply to Amended Counterclaim in CA 05-301 maintains that "AmberWave committed inequitable conduct and comes to this Court with unclean hands." By its terms, this defense applies to AmberWave's claim for infringement

1446966.

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Patrick E. King, Esq.
February 5, 2006
Page 3

of the '371 patent. Intel's Seventh Affirmative Defense in its Answer in CA 02-05CV-449 maintains that AmberWave has unclean hands and should be barred from recovering under its claim for infringement of the '371 patent. Intel's interrogatory responses provide no facts purportedly supporting this affirmative defense. AmberWave is entitled to know the facts and documents that relate to these defenses, and the persons with knowledge of these defenses.

Interrogatory No. 13:

Intel's Eighth Affirmative Defense in its Answer in CA 02-05CV-449 states that AmberWave's claim for infringement of the '371 patent "is barred in whole or part under principles of equity, including laches, prosecution laches, waiver and/or estoppel." Intel's interrogatory responses provide no facts purportedly supporting this affirmative defense. Intel has failed to provide the facts and documents that relate to this defense, and identify persons with knowledge of this defense.

Interrogatory No. 14

Intel needs to provide the processor numbers (or other internal designations) of the products it identifies in this response. In addition, please explain why Intel has failed to identify its Itanium 2 and StrataFlash products in response to this interrogatory.

**Third Set of Interrogatories in CA 05-301**

Based on Intel's responses to these interrogatories, it appears that Intel is using a form of its infringing Strained Silicon Process in its 45nm technology node. As a result, please confirm that Intel will begin immediate production of the documents AmberWave has requested in both CA 05-301 and CA 05-837 that relate to its 45 nm technology node.

**First Set of Interrogatories in CA 05-837**

Interrogatory No. 1

Intel has simply listed a number of elements and phrases in the independent claims of the '632 patent that it allegedly does not practice. It does not identify the facts and documents that relate to its contention that it does not infringe these elements, or persons with knowledge of its contention. In addition, if Intel maintains that it does not infringe any of the elements in the dependent claims of the '632 patent, it needs to provide the facts and documents that relate to this position, and identify persons with knowledge of this position. At a minimum, Intel should provide this information as to those claims AmberWave contends Intel infringes.

1446966.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Patrick E. King, Esq.
February 5, 2006
Page 4

Interrogatory No. 2

Intel does not identify any opinion of counsel that it intends to rely on to establish that its
infringement of the '632 patent is not willful. As AmberWave conducts discovery in this
matter, AmberWave intends to rely on the absence of any reference to an opinion of counsel
in Intel's interrogatory response. If Intel intends to rely on an opinion of counsel as a
defense to willfulness, it needs to immediately supplement its response.

Interrogatory No. 3

Intel has failed to respond to this interrogatory.

Interrogatory No. 4:

Intel's response contends that the '632 patent is invalid based on 35 U.S.C. §§ 102 and 103.
It then cites 45 references, without identifying the facts establishing that these references
invalidate the '632 patent.

In addition, the response does not identify the facts and documents that relate to the
contention that the inventions claimed in '632 patent were "known or used by others in this
country, or patented or described in a printed publication in this or a foreign country" before
the priority date of the '632 patent, and the persons with knowledge of this contention.

Intel's response states that the '632 patent is invalid "because one skilled in the art could not
make or use any invention purported to be described in the '632 patent without undue
experimentation." We understand this to mean that Intel is maintaining that the '632 patent
is not enabled. Intel, however, does not identify which claims of the '632 patent it believes
are not enabled, the facts and documents that relate to this contention, and the persons with
knowledge of this contention.

Intel's response states that "the '632 patent is invalid because one skilled in the art would
not understand what is claimed when the patent is read in light of its specification." We
understand this to mean that Intel is asserting that terms in the claims of the '632 patent are
indefinite. The response fails to identify the terms and claims that are purportedly
indefinite, the facts and documents that relate to this contention, and the persons with
knowledge of this contention.

Intel's Fourth and Fifth Affirmative Defenses state that the '632 patent is invalid for double
patenting and improper inventorship. Intel's interrogatory responses provide no facts
purportedly supporting these affirmative defenses. Please provide the facts and documents
that relate to these defenses, and identify the persons with knowledge of these defenses.

1446966.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Patrick E. King, Esq.
February 5, 2006
Page 5

Interrogatory No. 5:

Intel claims that one or more named inventors of the '632 patent failed to disclose known invalidating prior art to the PTO during the prosecution of the '632 patent. Intel, however, fails to identify what prior art the inventors failed to disclose, what evidence establishes that it was known to one or more of the inventors, and how this prior art renders the '632 patent anticipated or obvious.

Interrogatory No. 6:

Intel's Seventh Affirmative Defense states that AmberWave's claim for infringement of the '632 patent "is barred in whole or part under principles of equity, including laches, prosecution laches, waiver and/or estoppel." Intel has failed to provide the facts and documents that relate to this defense, and identify persons with knowledge of this defense. Please provide this information.

Interrogatory No. 7

Intel needs to provide the processor numbers (or other internal designations) of the products it identifies in this response. In addition, please explain why Intel has failed to identify its Itanium 2 and StrataFlash products in response to this interrogatory.

Finally, Intel has stated that "depending on how AmberWave interprets the phrase 'channel region' the surface roughness of the 'channel region' in these devices may or may not be less than 1 nm." Please explain under what definition of "channel region" the identified devices have a channel region with a surface roughness less than 1 nm, and under what definition they do not. In addition, please confirm that the channel regions of these devices are strained.

**Verification**

Pursuant to Federal Rule of Civil Procedure 33(b)(2), promptly provide an executed verification to Intel's answers to the interrogatories.

1446966.

# IRELL & MANELLA LLP
### A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
### INCLUDING PROFESSIONAL CORPORATIONS

Patrick E. King, Esq.
February 5, 2006
Page 6


Please confirm by February 10 that Intel will supplement its interrogatory responses to correct the deficiencies identified above.  At that time, please provide a date by which that supplementation will occur, which should be no later that February 20.

Very truly yours,

/s/ Jason G. Sheasby

Jason G. Sheasby

JGS

1446966.