EXHIBIT H

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-837-KAJ |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### AMBERWAVE SYSTEMS CORPORATION'S RESPONSES TO INTEL'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules for the District of Delaware, Plaintiff AmberWave Systems Corporation ("AmberWave") hereby responds to Defendant Intel Corporation's ("Intel") First Set of Interrogatories as follows:

### INTRODUCTION

This response is made solely for the purpose of this action. The response is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such interrogatory were asked of, or statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are expressly reserved and may be interposed at the time of trial.

This response is being provided at the beginning of discovery in this case and necessarily reflects only limited information that is available to AmberWave at this time. This response is therefore given without prejudice to AmberWave's right to produce evidence of any subsequently discovered fact or facts that it may later recall or discover. AmberWave further reserves the right to change, amend or supplement any or all of the matters contained in this response as additional facts are ascertained, analyses are made, research is completed and contentions are made.

1444135

of YOUR products that YOU contend would have sold in greater quantities, at higher prices, or with lower expenses but for INTEL'S alleged infringement of the '632 PATENT.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the General Objections, which are incorporated fully by reference herein, AmberWave objects to this interrogatory as overbroad and unduly burdensome. AmberWave objects to this interrogatory as premature. AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Furthermore, AmberWave objects to this interrogatory insofar as the Court has not yet construed the claims of the '632 patent and discovery is ongoing. AmberWave reserves the right to modify or supplement its responses as AmberWave receives additional information from Intel or third parties, as AmberWave locates additional information, or based on subsequent rulings by the Court including claim construction.

Subject to the foregoing, and the General Objections, AmberWave responds as follows:

AmberWave at this time has not determined whether it will seek lost profits. When AmberWave determines what measure of damages it will seek, it will supplement this interrogatory. Intel's infringement of the '632 patent has impacted and continues to impact AmberWave's ability to sell or license its engineering services and technology, and has impacted and continues to impact AmberWave's ability to profit from the sale of semiconductors using its technology.

**INTERROGATORY NO. 6:**

IDENTIFY where AMBERWAVE contends each ELEMENT of each ASSERTED CLAIM in the '632 PATENT is found within each ACCUSED PRODUCT, including for each ELEMENT that AMBERWAVE contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention.

**RESPONSE TO INTERROGATORY NO. 6**:

AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any other applicable privilege or protection. AmberWave objects to this interrogatory to the extent it calls for a legal conclusion. AmberWave objects to this interrogatory as vague and ambiguous. For example, the request for the "identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention" is vague and ambiguous. AmberWave objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. This interrogatory is also unduly burdensome and oppressive because it is in large part duplicative of Interrogatory No. 3. Furthermore, AmberWave objects to this interrogatory insofar as the Court has not yet construed the claims of the '632 patent and discovery is ongoing. AmberWave reserves the right to modify or supplement its responses as AmberWave receives additional information from Intel or third parties, as AmberWave locates additional information, or based on a ruling by the Court.

Subject to the foregoing, and the General Objections, AmberWave responds as follows:

Intel's 90 nm technology node introduced commercially a method of creating PMOS transistors with Silicon Germanium ("SiGe") in the source and drain regions ("Strained Silicon Process"). See generally:

Mistry et al., "Delaying Forever: Uniaxial Strained Silicon Transistors in a 90nm CMOS Technology," 2004 Symposium on VLSI Technology Digest of Technical Papers.

Thomspon et al., "In Search of 'Forever,' Continued Transistor Scaling One New Material at a Time," IEEE Transactions On Semiconductor Manufacturing, Vol. 18, No. 1 February 2005.

Chau et al., "Advanced CMOS Transistors in the Nanotechnology Era for High-Performance, Low-Power Applications," 2004 IEEE.

Shifren et al., "Drive current enhancement in p-type metal-oxide-semiconductor field-effect transistors under shear uniaxial stress," Applied Physics Letters, Vol. 85, No. 25, 20 December 2004.

Thompson et al., "A Logic Nanotechnology Featuring Strained-Silicon," IEEE Electron Device Letters, Vol. 24, No. 4, April 2004.

Thompson, "A 90-nm Logic Technology Featuring Strained-Silicon," IEEE Transactions of Electron Devices, Vol. 51, No. 11, November 2004.

Ghani et al., "A 90nm High Volume Manufacturing Logic Technology Featuring Novel 45nm Gate Length Strained Silicon CMOS Transistors," 978 IEDM 03, 2003 IEEE.

Thomspon et al., A 90nm Logic Technology Featuring 50nm Strained Silicon Channel Transistors, 7 layers of Cu Interconnects, Low k ILD, and 1 um$^2$ SRAM Cell," IEDM.

Alexandre Dorofeev, Semiconductor Insights, "Detailed Structural Analysis I of the Intel Pentium 3.0E GHz Processor 'Prescott'" (Reverse Engineering Report), www.semiconductorinsights.com.

Chipworks, "Intel BX80546PG2800E Pentium 4 Prescott Microprocessor Structural Analysis" (Reverse Engineering Report), www.chipworks.com.

S.M. Cea, et al., *Front End Stress Modeling for Advanced Logic Technologies*, IEEE IEDM Tech. Digest, p. 963 (2004).

AmberWave contends that the method of fabricating certain circuits using the Strained Silicon Process and devices that incorporate these circuits infringe the claims of the '632 patent identified in the table below.

Intel's published literature indicates that Intel is using a version of the Strained Silicon Process to fabricate products on its 65 nm node.

Intel has not yet released all the details of the products fabricated on its 45 nm node. There is, however, substantial and compelling evidence that the 45 nm node will also employ the accused Strained Silicon Process. This evidence includes the following:

- Intel uses the Strained Silicon Process to create strain in its 90 nm node products.

- Intel publications announce plans to implement channel strain for products fabricated on the 45 nm node.

- Intel publications provide no indication that Intel will change the Strained Silicon Process for products fabricated on its 45 nm node in any way that is relevant to the '632 patent.

- There is no public evidence that Intel has any other method of straining the PMOS channel region available for use other than the Strained Silicon Process. In fact, Intel has represented to AmberWave that it has abandoned its other research program on straining the channel region.

1444135                              - 18 -

See generally:

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65nm Press Release, August 2004, www.intel.com.

Bai et al., "A 65 nm Logic Technology Featuring 35 nm Gate Length, Enhanced Channel Strain, 8 Cu Interconnect Layers, Low-k ILD and 0.57µm² SRAM Cell," Presentation, IEDM 2004, www.intel.com.

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65 nm Analyst Meeting, December 2004, www.intel.com

Intel Technologies, Presentation, March 22, 2004, www.intel.com

Bohr, 65 nm Technology for High Performance and Low Power, Presentation, Intel Developer Forum, www.intel.com

Intel's High-k/Metal Gate Announcement, Presentation, November 14, 2003, www.intel.com

Bohr, "Intel's 65nm Logic Technology Demonstrated on 0.57 µm² SRAM Cells," Presentation, www.intel.com.

Jin et al., "Mobility Enhancement in Compressively Strained SiGe Surface Channel PMOS Transistors with HfO$_2$/TiN Gate Stack," Electrochemical Society Proceedings Vol. 2004-07.

Datta, "Advanced Si and SiGe Strained Channel NMOS and PMOS Transistors with High-K/Metal-Gate Stack," IEEE BCTM 10.2, 2004 IEEE.

Datta, "High Mobility Si/SiGe Strained Channel MOS Transistors with HfO2/TiN Gate Stack," IEDM 03-653.

Press Release, Intel 45nm Technology Will Take Future Platforms to New Performance-per-Watt, www.intel.com.

Intel's website indicates that certain versions of products with the following brand names are manufactured using Intel's 90 nm technology node:

Xeon®

Pentium® Extreme Edition

Pentium® D

Pentium® 4

Pentium® M

Mobile Pentium® 4

Celeron® D

Celeron® M

1444135

- 19 -

In addition, Intel's Report on Form 10-K for 2004 indicates that Intel's IXP2325 and IXP2350 network processors are fabricated using the 90 nm technology node. It is AmberWave's current understanding that Intel migrates its technology nodes to different product lines over the course of time, and therefore the commercial products that infringe by virtue of utilizing Intel's 90 nm technology which incorporates the Strained Silicon Process may expand over time.

Intel's website indicates that certain versions of products with the following brand names are manufactured using Intel's 65 nm technology node:

Core® Duo™

Pentium® Processor Extreme Edition

Pentium® D

Pentium® 4

Core® Solo™

It is AmberWave's current understanding that Intel migrates its technology nodes to different product lines over the course of time, and therefore the commercial products that infringe by virtue of utilizing Intel's 65 nm technology which incorporates the Strained Silicon Process will expand over time.

Intel's published literature indicates that all microprocessors produced using the 90 nm or 65 nm technology node will use the Intel Strained Silicon Process. Intel's published literature does not suggest that there are any applications of its 90 nm and 65 nm node technology that do not employ the accused Strained Silicon Process. To the contrary, Intel's published literature suggests that the Strained Silicon Process is an essential part of the 90 nm and 65 nm node technology.

Intel has not yet released to consumers its 45 nm products that use the Strained Silicon Process, and therefore AmberWave cannot identify those products by name.

AmberWave accuses all Intel processes and devices that infringe the '632 patent, whether commercial or pre-commercial, and not just the devices enumerated above or below.

1444135                                    - 20 -

Based on the preceding information, the analysis below is applicable to methods of creating certain circuits that incorporate the Strained Silicon Process and the devices that incorporate these circuits (the "Accused Products"), whether produced at the 90 nm node, the 65 nm node, the 45 nm node, or any other technology node. AmberWave contends that the Accused Products literally practice each element of the claims specified below. To the extent a court were to conclude that any of the claims specified below are not literally infringed, AmberWave maintains that the claims are infringed under the doctrine of equivalents.

| Claim 5 | |
|---|---|
| 5. A method of fabricating an integrated circuit comprising: | According to one way in which Intel infringes, certain integrated circuits that incorporate the Strained Silicon Process in the Accused Products are fabricated using the following steps: |
| providing a heterostructure having a Si substrate and a strained layer thereover, the strained layer exhibiting a surface roughness less than 1 nm; and | The Accused Products include NMOS and PMOS transistors interconnected in CMOS circuits. The NMOS and PMOS transistors are fabricated on a silicon semiconductor wafer, with silicon germanium (SiGe). Silicon below the gate stack of the PMOS transistors is strained and has a surface roughness of less than 1 nm. |
| forming a p transistor and an n transistor in the heterostructure, wherein the strained layer comprises a channel of at least one of the transistors, the transistors being interconnected in a CMOS circuit. | See above. The channel of the PMOS transistor is strained. PMOS and NMOS transistors are connected in CMOS circuits in the Accused Products. |
| Claim 8 | |
| 8. The method of claim 5 wherein the strained layer comprises Si. | According to one way in which Intel infringes, the strained layer of the PMOS transistors specified in claim 5 includes silicon (Si). |
| Claim 10 | |
| 10. The method of claim 5 wherein the CMOS circuit comprises a logic gate. | According to one way in which Intel infringes, certain CMOS circuits specified in claim 5 in the Accused Products include inverters. |
| Claim 14 | |
| 14. The method of claim 5 wherein the p-channel transistor serves as a pull-up transistor in the CMOS circuit and the | According to one way in which Intel infringes, certain CMOS circuits specified in claim 5, the PMOS transistor serves as a pull-up transistor and the NMOS |

| | |
|---|---|
| n-channel transistor serves as a pull-down transistor in the CMOS circuit. | transistor serves as a pull-down transistor. |
| **Claim 15** | |
| 15. The method of claim 5 wherein the heterostructure further comprises a $Si_{1-x}Ge_x$ layer below the strained layer. | According to one way in which Intel infringes, silicon germanium (SiGe) in the source and drain regions of the PMOS transistors in the CMOS circuits specified in claim 5 exists below the strained layer specified in claim 5. |

**INTERROGATORY NO. 7**:

For each element of each ASSERTED CLAIM, specify whether AMBERWAVE contends the ELEMENT is literally present or is present under the doctrine of equivalents in each ACCUSED PRODUCT.

**RESPONSE TO INTERROGATORY NO. 7**:

In addition to the General Objections, which are incorporated fully by reference herein, AmberWave objects to this interrogatory as overbroad and unduly burdensome. AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any other applicable privilege or protection. AmberWave objects to this interrogatory to the extent it calls for a legal conclusion. AmberWave objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. AmberWave objects to this interrogatory as vague and ambiguous. Furthermore, AmberWave objects to this interrogatory insofar as the Court has not yet construed the claims of the '632 patent and discovery is ongoing. AmberWave reserves the right to modify or supplement its responses as AmberWave receives additional information from Intel or third parties, as AmberWave locates additional information, or based on a ruling by the Court.

Subject to the foregoing, and the General Objections, AmberWave responds as follows:

AmberWave incorporates by reference its response to Interrogatory No. 6.

Respectfully submitted,

as to the objections:


Morgan Chu
David I. Gindler
Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
Tel: (310) 277-1010

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
Tel:  (302) 658-9200

Attorneys for Plaintiff
AmberWave Systems Corporation


Dated: February 3, 2006

1444135

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

INTEL CORPORATION, )
)
     Plaintiff, )  Civil Action No. 05-301-KAJ
)
  vs. )
)
AMBERWAVE SYSTEMS CORPORATION, )
)
     Defendant. )
)
_____ )
)
AMBERWAVE SYSTEMS CORPORATION, )
)
     Counterclaim-plaintiff, )
)
  vs. )
)
INTEL CORPORATION, )
)
     Counterclaim-defendant. )
)

### AMBERWAVE SYSTEMS CORPORATION'S RESPONSES TO INTEL'S THIRD SET OF INTERROGATORIES

   Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules for the District of Delaware, Defendant/Counterclaim-plaintiff AmberWave Systems Corporation ("AmberWave") hereby responds to Plaintiff/Counterclaim-defendant Intel Corporation's ("Intel") Third Set of Interrogatories as follows:

### INTRODUCTION

   This response is made solely for the purpose of this action. The response is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such interrogatory were asked of, or statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are expressly reserved and may be interposed at the time of trial.

1443980

**RESPONSE TO INTERROGATORY NO. 16**:

In addition to the General Objections, which are incorporated fully by reference herein, AmberWave objects to this interrogatory as overbroad and unduly burdensome. AmberWave objects that this interrogatory is premature. AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. AmberWave objects to this interrogatory to the extent calls for a legal conclusion. Furthermore, AmberWave objects to this interrogatory insofar as the Court has not yet construed the claims of the '371 patent and discovery is ongoing. AmberWave reserves the right to modify or supplement its responses as AmberWave receives additional information from Intel or third parties, as AmberWave locates additional information, or based on subsequent rulings by the Court including claim construction.

Subject to the foregoing, and the General Objections, AmberWave responds as follows:

AmberWave at this time has not determined whether it will seek lost profits. When AmberWave determines what measure of damages it will seek, it will supplement this interrogatory. Intel's infringement of the '371 patent has impacted and continues to impact AmberWave's ability to sell or license its engineering services and technology, and has impacted and continues to impact AmberWave's ability to profit from the sale of semiconductors using its technology.

**INTERROGATORY NO. 17**:

IDENTIFY where AMBERWAVE contends each ELEMENT of each ASSERTED CLAIM of the '371 PATENT is found within each ACCUSED PRODUCT, including for each ELEMENT that AMBERWAVE contends is governed by 35 U.S.C. §112(6), the identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention.

**RESPONSE TO INTERROGATORY NO. 17**:

AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, settlement

privilege, or any other applicable privilege or protection. AmberWave objects to this interrogatory to the extent it calls for a legal conclusion. AmberWave objects to this interrogatory as vague and ambiguous. For example, the request for the "identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention" is vague and ambiguous. AmberWave objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. This interrogatory is also unduly burdensome and oppressive because it is in large part duplicative of Interrogatory No. 14 in Intel's Third Set of Interrogatories. Furthermore, AmberWave objects to this interrogatory insofar as the Court has not yet construed the claims of the '371 patent and discovery is ongoing. AmberWave reserves the right to modify or supplement its responses as AmberWave receives additional information from Intel or third parties, as AmberWave locates additional information, or based on a ruling by the Court.

Subject to the foregoing, and the General Objections, AmberWave responds as follows:

Intel's 90 nm technology node introduced commercially a method of creating PMOS transistors with Silicon Germanium ("SiGe") in the source and drain regions ("Silicon Germanium Process"). See generally:

Mistry et al., "Delaying Forever: Uniaxial Strained Silicon Transistors in a 90nm CMOS Technology," 2004 Symposium on VLSI Technology Digest of Technical Papers.

Thomspon et al., "In Search of 'Forever,' Continued Transistor Scaling One New Material at a Time," IEEE Transactions On Semiconductor Manufacturing, Vol. 18, No. 1 February 2005.

Chau et al., "Advanced CMOS Transistors in the Nanotechnology Era for High-Performance, Low-Power Applications," 2004 IEEE.

Shifren et al., "Drive current enhancement in p-type metal-oxide-semiconductor field-effect transistors under shear uniaxial stress," Applied Physics Letters, Vol. 85, No. 25, 20 December 2004.

Thompson et al., "A Logic Nanotechnology Featuring Strained-Silicon," IEEE Electron Device Letters, Vol. 24, No. 4, April 2004.

Thompson, "A 90-nm Logic Technology Featuring Strained-Silicon," IEEE Transactions of Electron Devices, Vol. 51, No. 11, November 2004.

Ghani et al., "A 90nm High Volume Manufacturing Logic Technology Featuring Novel 45nm Gate Length Strained Silicon CMOS Transistors," 978 IEDM 03, 2003 IEEE.

Thomspon et al., A 90nm Logic Technology Featuring 50nm Strained Silicon Channel Transistors, 7 layers of Cu Interconnects, Low k ILD, and 1 um$^2$ SRAM Cell," IEDM.

Alexandre Dorofeev, Semiconductor Insights, "Detailed Structural Analysis I of the Intel Pentium 3.0E GHz Processor 'Prescott'" (Reverse Engineering Report), www.semiconductorinsights.com.

Chipworks, "Intel BX80546PG2800E Pentium 4 Prescott Microprocessor Structural Analysis" (Reverse Engineering Report), www.chipworks.com.

S.M. Cea, et al., *Front End Stress Modeling for Advanced Logic Technologies*, IEEE IEDM Tech. Digest, p. 963 (2004).

AmberWave contends that Intel's Silicon Germanium Process, and/or PMOS transistors produced using the process, infringe the claims of the '371 patent identified in the table below.

Intel's published literature indicates that Intel is using a version of the Silicon Germanium Process to fabricate products on its 65 nm node. Intel has not yet released all the details of the products fabricated on its 45 nm node. There is, however, substantial and compelling evidence that the 45 nm node will also employ the accused Silicon Germanium Process. This evidence includes the following:

- Intel uses the Silicon Germanium Process to create strain in its 90 nm node products.

- Intel publications announce plans to implement channel strain for products fabricated on the 45 nm node.

- Intel publications provide no indication that Intel will change the Silicon Germanium Process for products fabricated on its 45 nm node in any way that is relevant to the '371 patent.

- There is no public evidence that Intel has any other method of straining the PMOS channel region available for use other than the Silicon Germanium Process. In fact, Intel has represented to AmberWave that it has abandoned its other research program on straining the channel region.

See generally:

1443980                                           - 20 -

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65nm Press Release, August 2004, www.intel.com.

Bai et al., "A 65 nm Logic Technology Featuring 35 nm Gate Length, Enhanced Channel Strain, 8 Cu Interconnect Layers, Low-k ILD and 0.57μm² SRAM Cell," Presentation, IEDM 2004, www.intel.com.

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65 nm Analyst Meeting, December 2004, www.intel.com

Intel Technologies, Presentation, March 22, 2004, www.intel.com

Bohr, 65 nm Technology for High Performance and Low Power, Presentation, Intel Developer Forum, www.intel.com

Intel's High-k/Metal Gate Announcement, Presentation, November 14, 2003, www.intel.com

Bohr, "Intel's 65nm Logic Technology Demonstrated on 0.57 μm² SRAM Cells," Presentation, www.intel.com.

Jin et al., "Mobility Enhancement in Compressively Strained SiGe Surface Channel PMOS Transistors with $HfO_2$/TiN Gate Stack," Electrochemical Society Proceedings Vol. 2004-07.

Datta, "Advanced Si and SiGe Strained Channel NMOS and PMOS Transistors with High-K/Metal-Gate Stack," IEEE BCTM 10.2, 2004 IEEE.

Datta, "High Mobility Si/SiGe Strained Channel MOS Transistors with HfO2/TiN Gate Stack," IEDM 03-653.

Press Release, Intel 45nm Technology Will Take Future Platforms to New Performance-per-Watt, www.intel.com.

Intel's website indicates that certain versions of products with the following brand names are manufactured using Intel's 90 nm technology node:

Xeon®

Pentium® Extreme Edition

Pentium® D

Pentium® 4

Pentium® M

Mobile Pentium® 4

Celeron® D

Celeron® M

In addition, Intel's Report on Form 10-K for 2004 indicates that Intel's IXP2325 and IXP2350 network processors are fabricated using the 90 nm technology node.    It is

AmberWave's current understanding that Intel migrates its technology nodes to different product lines over the course of time, and therefore the commercial products that infringe by virtue of utilizing Intel's 90 nm technology which incorporates the Silicon Germanium Process may expand over time.

Intel's website indicates that certain versions of products with the following brand names are manufactured using Intel's 65 nm technology node:

Core® Duo™

Pentium® Processor Extreme Edition

Pentium® D

Pentium® 4

Core® Solo™

It is AmberWave's current understanding that Intel migrates its technology nodes to different product lines over the course of time, and therefore the commercial products that infringe by virtue of utilizing Intel's 65 nm technology which incorporates the Silicon Germanium Process will expand over time.

Intel's published literature indicates that all microprocessors produced using the 90 nm and 65 nm technology node will use the Intel Silicon Germanium Process. Intel's published literature does not suggest that there are any applications of its 90 nm and 65 nm node technology that do not employ the accused Silicon Germanium Process. To the contrary, Intel's published literature suggests that the Silicon Germanium Process is an essential part of the 90 nm and 65 nm node technology.

Intel has not yet released to consumers its 45 nm products that use the Silicon Germanium Process, and therefore AmberWave cannot identify those products by name.

AmberWave accuses all processes and devices that infringe the '371 patent, whether commercial or pre-commercial, and not just the processes and devices enumerated above or below.

Based on the preceding information, the analysis below is applicable to the Silicon Germanium Process and to PMOS transistors that incorporate the process (the "Accused Products"), whether produced at the 90 nm node, the 65 nm node, the 45 nm node, or any other technology node. AmberWave contends that the Silicon Germanium Process and/or PMOS transistors that incorporate the Silicon Germanium Process literally practice each element of the claims specified below. To the extent a court were to conclude that any of the claims specified below are not literally infringed, AmberWave maintains that the claims are infringed under the doctrine of equivalents.

| '371 Patent | |
|---|---|
| Claim 1 | |
| 1.    A method of fabricating a semiconductor structure, the method comprising: | According to one way in which Intel infringes, Intel fabricates PMOS transistors in the Accused Products using the Silicon Germanium Process. |
| providing a chamber; | Intel deposits silicon germanium (SiGe) during the process of fabricating PMOS transistors using chemical vapor deposition, which is performed in a chamber. |
| providing a semiconductor substrate in the chamber, the semiconductor substrate having a surface including a first portion and a second portion proximal to the first portion; | The semiconductor substrate of the PMOS transistors during fabrication has a surface including a first area over which a gate stack is disposed  and a second area over which silicon germanium (SiGe) is deposited. |
| providing a gate stack disposed over the first portion of said substrate, the gate stack comprising a dielectric region; and | During fabrication of Intel's PMOS transistors, a gate stack is disposed over the first area of the substrate as noted above. The gate stack includes a nitride and an oxide. |
| selectively depositing an epitaxial layer of at least one semiconductor material on the second portion of the substrate adjacent to the gate stack while in situ doping the epitaxial layer at a first predetermined level to substantially suppress facet formation thereby forming a substantially facetless semiconductor region, wherein the pressure in the chamber during selective deposition of the epitaxial layer is greater than about | In connection with fabricating the PMOS transistors, Intel deposits an epitaxial layer of silicon germanium (SiGe) on the second substrate area described above, adjacent to the gate stack, while *in situ* doping the SiGe with boron (Bo) at a predetermined level. During this process of epitaxial SiGe deposition, the pressure in the chamber is greater than about 5 Torr. |

| '371 Patent | |
|---|---|
| 5 Torr. | |
| **Claim 2** | |
| 2.      The method of claim 1 wherein the epitaxial layer is deposited in a chemical vapor deposition system. | According to one way in which Intel infringes, the silicon germanium (SiGe) in the Silicon Germanium Process specified in claim 1 is deposited using chemical vapor deposition. |
| **Claim 13** | |
| 13.      The method of claim 1 wherein the epitaxial layer is doped by adding a dopant to the epitaxial layer during deposition of the epitaxial layer, the dopant selected from the group consisting of: phosphorus, arsenic, antimony, and boron. | According to one way in which Intel infringes, the silicon germanium (SiGe) in the Silicon Germanium Process specified in claim 1 is doped during deposition with boron (Bo). |
| **Claim 16** | |
| 16.      The method of claim 1 wherein the epitaxial layer comprises at least one of silicon and germanium. | According to one way in which Intel infringes, the epitaxial layer of Claim 1 comprises silicon and germanium. |
| **Claim 19** | |
| 19.      The method of claim 1 wherein the semiconductor substrate comprises silicon. | According to one way in which Intel infringes, the semiconductor substrate in the Silicon Germanium Process specified in claim 1 includes silicon. |

**INTERROGATORY NO. 18:**

For each element of each ASSERTED CLAIM, specify whether AMBERWAVE contends the ELEMENT is literally present or is present under the doctrine of equivalents in each ACCUSED PRODUCT.

**RESPONSE TO INTERROGATORY NO. 18:**

In addition to the General Objections, which are incorporated fully by reference herein, AmberWave objects to this interrogatory as overbroad and unduly burdensome. AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery

1443980                                    - 24 -

Respectfully submitted,

as to the objections:


Morgan Chu
David I. Gindler
Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
Tel: (310) 277-1010

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
Tel:  (302) 658-9200

Attorneys for Defendant and Counterclaim-plaintiff
AmberWave Systems Corporation

Dated: February 3, 2006

1443980

# EXHIBIT J

## SIMPSON THACHER & BARTLETT LLP

3330 HILLVIEW AVENUE
PALO ALTO, CA 94304
(650) 251-5000

———

FACSIMILE (650) 251-5002

DIRECT DIAL NUMBER                                                            E-MAIL ADDRESS

(650) 251-5115                                                                pking@stblaw.com

VIA E-MAIL                                          February 14, 2006

Re:    *Intel Corp. v. AmberWave Systems Corp.*
       Case No. 05-301-KAJ; *AmberWave Systems Corp. v. Intel
       Corp.*, Case No. 05-837-KAJ

Jason G. Sheasby, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Dear Jason:

        I write in response to your letter of February 5, 2006 regarding Intel's
responses and objections to AmberWave's Second and Third Set of Interrogatories in CA
05-301 and AmberWave's First Set of Interrogatories in CA 05-837.

### Interrogatories No. 8 (05-301) & No. 1 (05-837)

        AmberWave's responses to Interrogatory No. 17 in Intel's Third Set of
Interrogatories (05-301), and to Interrogatory No. 6 in Intel's First Set (05-837), provide
Intel no guidance on how AmberWave intends to read the '371 and '632 patents on any Intel
products. For example, your response to Interrogatory No. 17 is absolutely *silent* as to two
of the elements of claim 1 of the '371 patent that Intel maintains are not present in any of its
products. Until AmberWave identifies where in Intel's products it finds (i) an epitaxial layer
that is doped in situ "to substantially suppress facet formation" and/or (ii) a "substantially
facetless semiconductor region," Intel cannot identify facts that demonstrate the fallacy of
AmberWave's infringement theory. Similar deficiencies in AmberWave's response to
Interrogatory No. 6 in Intel's First Set (05-837) restrict Intel's ability to supplement its
response to Interrogatory No. 1 (05-837).

### Interrogatories No. 9 (05-301) & No. 2 (05-837)

        Intel has not yet decided if it intends to rely on an opinion of counsel as a
defense to willfulness and has no obligation to make such a decision now.

NEW YORK        LOS ANGELES        WASHINGTON, D.C.        HONG KONG        LONDON        TOKYO

SIMPSON THACHER & BARTLETT LLP

Jason Sheasby, Esq.                          -2-                          February 14, 2006

### Interrogatories No. 11 (05-301) & No. 4 (05-837)

Judge Jordan made it clear that he expects AmberWave to present an infringement theory before he expects Intel to provide its invalidity analysis. Intel is carefully considering AmberWave's deficient responses to Intel's Third Set of Interrogatories (05-301), and to Intel's First Set of Interrogatories (05-837), to determine if these responses provide enough information for Intel to understand what AmberWave is claiming it invented in the '371 and '632 patents and how those purported inventions relate to similar devices and methods described in the prior art. Until this analysis is complete, Intel cannot determine if or how it will supplement its responses to Interrogatories No. 11 and No. 4.

### Interrogatories No. 14 (05-301) & No. 7 (05-837)

Intel is reviewing its response to Interrogatories No. 14 and No. 7 in light of positions AmberWave has taken in its responses to Intel's Third Set of Document Requests (05-301) and to Intel's First Set of Interrogatories (05-837). Intel will supplement its responses if it determines that supplementation is warranted.

As to Interrogatory No. 7, rather than offering theories on what I think AmberWave might have meant by "channel region" in this interrogatory, I propose that you simply tell me what AmberWave actually meant. How does AmberWave identify the "surface" of a "region," particularly a region that may be surrounded an all sides? Where does this "surface" begin and end for purposes of calculating its "roughness"?

### Third Set of Interrogatories (05-301)

Intel does not infringe any AmberWave patent in the current 45-nm process node or in any other process node.

Intel will continue its document production in accordance with its responses and objections to AmberWave's various document requests as soon as we resolve the prosecution bar issue that I raised (again) in my letter to you earlier today.

If you would like to discuss any of the matters raised in this letter, please let me know.

Sincerely,

Patrick E. King

EXHIBIT K

SIMPSON THACHER & BARTLETT LLP

2550 HANOVER STREET
PALO ALTO, CA 94304
(650) 251-5000

FACSIMILE (650) 251-5002

DIRECT DIAL NUMBER                                                          E-MAIL ADDRESS

(650) 251-5115                                                              pking@stblaw.com

VIA E-MAIL                                                    March 14, 2006

Re:    *AmberWave Systems Corp. v. Intel Corp.*
       Case No. 05-301-KAJ (consolidated)

Jason G. Sheasby, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Dear Jason:

I write in response to your letter of March 6, 2006 regarding Intel's responses and objections to AmberWave's interrogatories.

**Interrogatories Nos. 5, 14 (05-301) and 7 (05-837)**

Intel expects to supplement its responses to Interrogatory Nos. 5 and 14 by March 20, 2006.

Interrogatory No. 7, however, asks Intel to identify devices that have a CMOS circuit where the "strained channel" in at least one of the transistors in the circuit has a "surface roughness of less than 1 nm." Can you please describe what "surface" AmberWave believes should be measured for the purpose of determining whether there is a "surface roughness of less than 1 nm"? Where does AmberWave contend the "surface" of the "strained channel" begins and ends for purposes of measuring its "roughness"? These questions seem straightforward. I have asked the same questions several times in several different ways. Why does Amberwave refuse to provide clarification?

**Interrogatories Nos. 8, 11 (05-301) and 1, 4 (05-837)**

Intel cannot supplement its responses to Interrogatories Nos. 8 and 11 (05-301) and Nos. 1 and 4 (05-837) until AmberWave articulates a basis for accusing Intel's products of infringing the '371 and the '632 patents. If AmberWave supplements its responses to Intel's Interrogatories No. 17 (05-301) and No. 6 (05-837) and fulfills its obligation to identify where AmberWave contends each element of each asserted claim can

NEW YORK        LOS ANGELES        WASHINGTON, D.C.        HONG KONG        LONDON        TOKYO

SIMPSON THACHER & BARTLETT LLP

Jason Sheasby, Esq.                        -2-                        March 14, 2006

be found in each accused products, Intel will have the information it needs to respond. AmberWave has asked that Intel supplement its responses to Interrogatories Nos. 8 and 11 (05-301) and Nos. 1 and 4 (05-837) within ten days of AmberWave's supplementation of Interrogatories No. 17 (05-301) and No. 6 (05-837).  Intel believes this schedule is reasonable, subject to AmberWave's providing reasonable responses to Intel's interrogatories.

Sincerely,

Patrick E. King

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-301-KAJ |
| | ) | (consolidated) |
| vs. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### AMBERWAVE SYSTEMS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES TO INTEL'S THIRD SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules for the District of Delaware, plaintiff AmberWave Systems Corporation ("AmberWave") hereby supplements its prior responses to defendant Intel Corporation's ("Intel") Third Set of Interrogatories as follows:

### INTRODUCTION

This response is made solely for the purpose of this action. The response is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such interrogatory were asked of, or statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are expressly reserved and may be interposed at the time of trial.

This response is being provided at the beginning of discovery in this case and necessarily reflects only limited information that is available to AmberWave at this time. This response is therefore given without prejudice to AmberWave's right to produce evidence of any subsequently discovered fact or facts that it may later recall or discover. AmberWave further reserves the right to change, amend or supplement any or all of the matters contained in this

1469420

responses as a result of any rulings by the Court bearing on claim construction, and/or discovery bearing on claim construction.

17.    AmberWave objects to the Third Set of Interrogatories and to each interrogatory therein to the extent they request information dependent upon documents or other information in the possession, custody and control of Intel or third parties.  AmberWave reserves its right to modify or supplement its responses in view of the discovery of information and review of documents received from Intel or third parties.

18.    AmberWave objects to the Third Set of Interrogatories and each interrogatory therein to the extent they call for trade secret, proprietary, or other confidential or competitively sensitive information of third parties.  AmberWave will not provide any of this information without consent of the third party.  AmberWave also reserves the right not to provide any of this information until an appropriate protective order is in place.

19.    AmberWave objects to the Third Set of Interrogatories and each interrogatory therein to the extent they call for information AmberWave does not have the legal authority to release.  AmberWave will not disclose any of this information without approval.

20.    AmberWave expressly incorporates each of the foregoing General Objections into each specific response to the interrogatories set forth below as if set forth in full therein.  An answer to an interrogatory shall not work as a waiver of any applicable specific or general objection to an interrogatory.

## RESPONSES TO SPECIFIC INTERROGATORIES

## INTERROGATORY NO. 17:

IDENTIFY where AMBERWAVE contends each ELEMENT of each ASSERTED CLAIM of the '371 PATENT is found within each ACCUSED PRODUCT, including for each ELEMENT that AMBERWAVE contends is governed by 35 U.S.C. §112(6), the identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention.

**RESPONSE TO INTERROGATORY NO. 17**:

AmberWave objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any other applicable privilege or protection. AmberWave objects to this interrogatory to the extent it calls for a legal conclusion. AmberWave objects to this interrogatory as vague and ambiguous. For example, the request for the "identity of the structure(s), act(s), or material(s) in each ACCUSED PRODUCT that AMBERWAVE contends performs the claimed invention" is vague and ambiguous. AmberWave objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. This interrogatory is also unduly burdensome and oppressive because it is in large part duplicative of Interrogatory No. 14 in Intel's Third Set of Interrogatories. Furthermore, AmberWave objects to this interrogatory insofar as the Court has not yet construed the claims of the '371 patent and discovery is ongoing. AmberWave reserves the right to modify or supplement its responses as AmberWave receives additional information from Intel or third parties, as AmberWave locates additional information, or based on a ruling by the Court.

Subject to the foregoing, and the General Objections, AmberWave responds as follows:

Intel's 90 nm technology node introduced commercially a method of creating PMOS transistors with Silicon Germanium ("SiGe") in the source and drain regions ("Silicon Germanium Process"). See generally:

Mistry et al., "Delaying Forever: Uniaxial Strained Silicon Transistors in a 90nm CMOS Technology," 2004 Symposium on VLSI Technology Digest of Technical Papers.

Thomspon et al., "In Search of 'Forever,' Continued Transistor Scaling One New Material at a Time," IEEE Transactions On Semiconductor Manufacturing, Vol. 18, No. 1 February 2005.

Chau et al., "Advanced CMOS Transistors in the Nanotechnology Era for High-Performance, Low-Power Applications," 2004 IEEE.

Shifren et al., "Drive current enhancement in p-type metal-oxide-semiconductor field-effect transistors under shear uniaxial stress," Applied Physics Letters, Vol. 85, No. 25, 20 December 2004.

Thompson et al., "A Logic Nanotechnology Featuring Strained-Silicon," IEEE Electron Device Letters, Vol. 24, No. 4, April 2004.

Thompson, "A 90-nm Logic Technology Featuring Strained-Silicon," IEEE Transactions of Electron Devices, Vol. 51, No. 11, November 2004.

Ghani et al., "A 90nm High Volume Manufacturing Logic Technology Featuring Novel 45nm Gate Length Strained Silicon CMOS Transistors," 978 IEDM 03, 2003 IEEE.

Thomspon et al., A 90nm Logic Technology Featuring 50nm Strained Silicon Channel Transistors, 7 layers of Cu Interconnects, Low k ILD, and 1 $um^2$ SRAM Cell," IEDM.

Alexandre Dorofeev, Semiconductor Insights, "Detailed Structural Analysis I of the Intel Pentium 3.0E GHz Processor 'Prescott'" (Reverse Engineering Report), www.semiconductorinsights.com.

Chipworks, "Intel BX80546PG2800E Pentium 4 Prescott Microprocessor Structural Analysis" (Reverse Engineering Report), www.chipworks.com.

S.M. Cea, et al., *Front End Stress Modeling for Advanced Logic Technologies*, IEEE IEDM Tech. Digest, p. 963 (2004).

AmberWave contends that Intel's Silicon Germanium Process, and/or PMOS transistors produced using the process, infringe the claims of the '371 patent identified in the table below.

Intel's published literature indicates that Intel is using a version of the Silicon Germanium Process to fabricate products on its 65 nm node. Intel has not yet released all the details of the products fabricated on its 45 nm node. There is, however, substantial and compelling evidence that the 45 nm node will also employ the accused Silicon Germanium Process. This evidence includes the following:

- Intel uses the Silicon Germanium Process to create strain in its 90 nm node products.

- Intel publications announce plans to implement channel strain for products fabricated on the 45 nm node.

- Intel publications provide no indication that Intel will change the Silicon Germanium Process for products fabricated on its 45 nm node in any way that is relevant to the '371 patent.

- There is no public evidence that Intel has any other method of straining the PMOS channel region available for use other than the Silicon Germanium Process. In

fact, Intel has represented to AmberWave that it has abandoned its other research

program on straining the channel region.

See generally:

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65nm Press Release, August 2004, www.intel.com.

Bai et al., "A 65 nm Logic Technology Featuring 35 nm Gate Length, Enhanced Channel Strain, 8 Cu Interconnect Layers, Low-k ILD and $0.57\mu m^2$ SRAM Cell," Presentation, IEDM 2004, www.intel.com.

Bohr, "Intel's 65 nm Logic Technology," Presentation, 65 nm Analyst Meeting, December 2004, www.intel.com

Intel Technologies, Presentation, March 22, 2004, www.intel.com

Bohr, 65 nm Technology for High Performance and Low Power, Presentation, Intel Developer Forum, www.intel.com

Intel's High-k/Metal Gate Announcement, Presentation, November 14, 2003, www.intel.com

Bohr, "Intel's 65nm Logic Technology Demonstrated on 0.57 $\mu m^2$ SRAM Cells," Presentation, www.intel.com.

Jin et al., "Mobility Enhancement in Compressively Strained SiGe Surface Channel PMOS Transistors with $HfO_2$/TiN Gate Stack," Electrochemical Society Proceedings Vol. 2004-07.

Datta, "Advanced Si and SiGe Strained Channel NMOS and PMOS Transistors with High-K/Metal-Gate Stack," IEEE BCTM 10.2, 2004 IEEE.

Datta, "High Mobility Si/SiGe Strained Channel MOS Transistors with HfO2/TiN Gate Stack," IEDM 03-653.

Press Release, Intel 45nm Technology Will Take Future Platforms to New Performance-per-Watt, www.intel.com.

Intel's website indicates that certain versions of products with the following brand names

are manufactured using Intel's 90 nm technology node:

Xeon®

Pentium® Extreme Edition

Pentium® D

Pentium® 4

Pentium® M

Mobile Pentium® 4

1469420                                                    - 8 -

Celeron® D

Celeron® M

In addition, Intel's Report on Form 10-K for 2004 indicates that Intel's IXP2325 and IXP2350 network processors are fabricated using the 90 nm technology node. It is AmberWave's current understanding that Intel migrates its technology nodes to different product lines over the course of time, and therefore the commercial products that infringe by virtue of utilizing Intel's 90 nm technology which incorporates the Silicon Germanium Process may expand over time.

Intel's website indicates that certain versions of products with the following brand names are manufactured using Intel's 65 nm technology node:

Core® Duo™

Pentium® Processor Extreme Edition

Pentium® D

Pentium® 4

Core® Solo™

It is AmberWave's current understanding that Intel migrates its technology nodes to different product lines over the course of time, and therefore the commercial products that infringe by virtue of utilizing Intel's 65 nm technology which incorporates the Silicon Germanium Process will expand over time.

Intel's published literature indicates that all microprocessors produced using the 90 nm and 65 nm technology node will use the Intel Silicon Germanium Process. Intel's published literature does not suggest that there are any applications of its 90 nm and 65 nm node technology that do not employ the accused Silicon Germanium Process. To the contrary, Intel's published literature suggests that the Silicon Germanium Process is an essential part of the 90 nm and 65 nm node technology.

Intel has not yet released to consumers its 45 nm products that use the Silicon Germanium Process, and therefore AmberWave cannot identify those products by name.

AmberWave accuses all processes and devices that infringe the '371 patent, whether commercial or pre-commercial, and not just the processes and devices enumerated above or below.

Based on the preceding information, the analysis below is applicable to the Silicon Germanium Process and to PMOS transistors that incorporate the process (the "Accused Products"), whether produced at the 90 nm node, the 65 nm node, the 45 nm node, or any other technology node. AmberWave contends that the Silicon Germanium Process and/or PMOS transistors that incorporate the Silicon Germanium Process literally practice each element of the claims specified below. To the extent a court were to conclude that any of the claims specified below are not literally infringed, AmberWave maintains that the claims are infringed under the doctrine of equivalents.

| '371 Patent | |
|---|---|
| Claim 1 | |
| 1.    A method of fabricating a semiconductor structure, the method comprising: | According to one way in which Intel infringes, Intel fabricates PMOS transistors in the Accused Products using the Silicon Germanium Process. |
| providing a chamber; | Intel deposits silicon germanium (SiGe) during the process of fabricating PMOS transistors using chemical vapor deposition, which is performed in a chamber. |
| providing a semiconductor substrate in the chamber, the semiconductor substrate having a surface including a first portion and a second portion proximal to the first portion; | The semiconductor substrate of the PMOS transistors during fabrication has a surface including a first area over which a gate stack is disposed  and a second area over which silicon germanium (SiGe) is deposited. |
| providing a gate stack disposed over the first portion of said substrate, the gate stack comprising a dielectric region; and | During fabrication of Intel's PMOS transistors, a gate stack is disposed over the first area of the substrate as noted above. The gate stack includes a nitride and an oxide. |
| selectively depositing an epitaxial layer of at least one semiconductor material on the second portion of the substrate adjacent to the gate stack while in situ doping the epitaxial layer at a first predetermined | In connection with fabricating the PMOS transistors, Intel deposits an epitaxial layer of silicon germanium (SiGe) on the second substrate area described above, adjacent to the gate stack, while in situ doping the SiGe with boron (Bo) at a predetermined level. During this process of epitaxial SiGe deposition, the |

| '371 Patent | |
|---|---|
| level to substantially suppress facet formation thereby forming a substantially facetless semiconductor region, wherein the pressure in the chamber during selective deposition of the epitaxial layer is greater than about 5 Torr. | pressure in the chamber is greater than about 5 Torr. There exists a substantially facetless semiconductor region that includes the epitaxial layer of SiGe deposited in the source and drain adjacent to the gate stack. |
| **Claim 2** | |
| 2.    The method of claim 1 wherein the epitaxial layer is deposited in a chemical vapor deposition system. | According to one way in which Intel infringes, the silicon germanium (SiGe) in the Silicon Germanium Process specified in claim 1 is deposited using chemical vapor deposition. |
| **Claim 13** | |
| 13.    The method of claim 1 wherein the epitaxial layer is doped by adding a dopant to the epitaxial layer during deposition of the epitaxial layer, the dopant selected from the group consisting of: phosphorus, arsenic, antimony, and boron. | According to one way in which Intel infringes, the silicon germanium (SiGe) in the Silicon Germanium Process specified in claim 1 is doped during deposition with boron (Bo). |
| **Claim 16** | |
| 16.    The method of claim 1 wherein the epitaxial layer comprises at least one of silicon and germanium. | According to one way in which Intel infringes, the epitaxial layer of Claim 1 comprises silicon and germanium. |
| **Claim 19** | |
| 19.    The method of claim 1 wherein the semiconductor substrate comprises silicon. | According to one way in which Intel infringes, the semiconductor substrate in the Silicon Germanium Process specified in claim 1 includes silicon. |

Respectfully submitted,

as to the objections:


Morgan Chu
David I. Gindler
Jason G. Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310) 277-1010

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
Tel: (302) 658-9200

Attorneys for Plaintiff
AmberWave Systems Corporation


Dated: March 27, 2006

1469420                          - 12 -

# EXHIBIT M

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7096
FACSIMILE (310) 203-7199
jsheasby@irell.com

April 14, 2006

<u>**VIA E-MAIL**</u>

Patrick King
Simpson Thacher & Bartlett LLP
2250 Hanover Street
Palo Alto, CA 94304

Re:   AmberWave Systems Corporation v. Intel Corporation, Civil Action No. 05-
301-KAJ (consolidated)

Dear Pat:

We write regarding Intel's responses to AmberWave's interrogatories.

**Interrogatory Nos. 5 and 14 (05-310), and 7 (05-837)**

Intel needs to provide the processor numbers (or other internal designations) for the products identified in these responses. In addition, its reference to "communications devices," "certain manufactured SRAM test devices," and "chipsets from the x 965 series" does not provide AmberWave with sufficient information. Intel needs to identify by name which "communications devices" and "chipsets from the x965 series" it is referring to. It also needs to identify the "SRAM test devices" and other devices that have been fabricated using its 45nm node technology. Finally, Intel has failed to explain why the Itanium 2 and StrataFlash products are not identified in response to these interrogatories.

In addition, Intel has failed to provide a sufficient description of how the strain or stress is created in the devices listed in its response to Interrogatory No. 5, specifically including its 45nm node devices. Instead of speaking in generalities, and referring to various patents, Intel needs to specifically identify the "strained or stressed region[s]" in the devices, and how this strain or stress is created.

We ask that Intel provide this information by April 26, 2006.

**AmberWave's January 30, 2006 Letter**

This letter identified a large number of deficiencies in Intel's responses to AmberWave's First Set of Interrogatories in 05-301. Other than its deficient

1479986

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Patrick King
April 14, 2006
Page 2

supplementation of Interrogatory No. 5, Intel has refused to supplement its responses to these interrogatories.

### AmberWave's February 5, 2006 Letter

This letter identified a large number of deficiencies in Intel's response to AmberWave's Second Set of Interrogatories in 05-301 and First Set of Interrogatories in 05-837. Other than Interrogatory Nos. 8, 11 (05-301) and 1, 4 (05-837), Intel has refused to supplement its responses to these interrogatories.

With regard to Interrogatory Nos. 8, 11 (05-301) and 1, 4 (05-837), Intel indicated that it required additional information from AmberWave in order to respond. Intel, however, only identified one specific piece of information that it believed AmberWave needed to provide. See February 14, 2006 King Letter. Intel's committed to supplementing these responses within 10 days of receiving the requested additional information from AmberWave. See March 14, 2006 King Letter. AmberWave provided the requested information on March 27, 2006. Despite this fact, Intel has failed to supplement its responses. We assume that Intel has now made a decision to refuse to supplement its responses.

Very truly yours,

/s/ Jason G. Sheasby

Jason G. Sheasby

JGS

1479986

EXHIBIT N

SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

FACSIMILE: (212) 455-2502

<div style="display:flex;justify-content:space-between;">

DIRECT DIAL NUMBER

212-455-2663

E-MAIL ADDRESS

kkonrad@stblaw.com

</div>

VIA E-MAIL                              April 28, 2006

            Re:    *AmberWave Systems Corp v. Intel Corp.*
                   Case No. 05-301-KAJ (consolidated)

Jason G. Sheasby, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276

Dear Jason:

            As we discussed in our telephone conversation earlier today, Intel will agree
to provide additional information concerning the identification of its products in response to
AmberWave's Interrogatory Nos. 5 and 14 in the 05-301 Action and Interrogatory No. 7 in
the 05-387 Action.  I will send you a letter on Monday memorializing what Intel is prepared
to do.  That letter will also include my proposal for narrowing the scope of these
interrogatories in a manner that should permit Intel to provide additional information
regarding the creation of stress in the alleged "stressed or strained region."

            We also discussed your desire to have immediate, further supplementation of
interrogatory answers concerning Intel's contentions on invalidity and non-infringement.  I
reiterated Intel's position that it is unable to provide any meaningful further response until
AmberWave provides greater detail concerning its infringement contentions, as Intel has
repeatedly requested.  I added that, in my view, this dispute about contention interrogatories
is pointless and premature at this stage of the litigation.

            I proposed an alternative way for handling these issues, namely that
AmberWave will agree to supplement its contention interrogatory answers at an agreed date
after it has had a chance to review Intel's documents and take deposition discovery based
upon them, and Intel will agree to supplement its corresponding interrogatory answers at a
fixed date thereafter.  The date for Intel's response would be set to allow AmberWave an
opportunity to conduct follow-up discovery before the discovery completion date.  I believe
this would provide a more rational, orderly and efficient framework for addressing these
subjects.

            We also discussed your desire to have supplementation of Intel's
interrogatory answers concerning claim construction.  I reiterated Intel's view that these
interrogatories are overbroad, in that they seek construction of claim terms whether or not

Sɪᴍᴘsᴏɴ Tʜᴀᴄʜᴇʀ & Bᴀʀᴛʟᴇᴛᴛ ʟʟᴘ

Jason G. Sheasby, Esq.                    -2-                    April 28, 2006

they are in dispute, and premature and inappropriate in light of the Court's schedule for
addressing claim construction issues.

        With regard to those interrogatories seeking information concerning
affirmative defenses contained in answers that were superseded by subsequent pleadings
filed by Intel, our position is that those interrogatories are moot.  There is no reason for Intel
to answer them and no justification for burdening the Court with a dispute about them.

        Very truly yours,

        Kerry L. Konrad