# YOUNG CONAWAY STARGATT & TAYLOR, LLP

MONTÉ T. SQUIRE
DIRECT DIAL: 302-571-6713
DIRECT FAX: 302-576-3515
msquire@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

May 1, 2006

The Honorable Kent A. Jordan
United States District Court for the District of Delaware
844 King Street, Lockbox 10
Wilmington, DE 19801

RE:   *AmberWave v. Intel*, C.A. No. 05-301 (KAJ) (consolidated)

Dear Judge Jordan:

Intel Corporation ("Intel") respectfully seeks the Court's assistance in resolving the current impasse concerning the form of the proposed protective order in the above-captioned dispute between Intel and AmberWave Systems Inc. ("AmberWave"). The parties have been unable to reach agreement on one issue.

**Issue 1:   AmberWave's Counsel of Records' communications with patent prosecution counsel should be transparent so that Intel can fully protect its confidential information.**

During the March 23 teleconference with this Court, the Court noted that litigation creates an artificial world where a party is obligated by law to hand over its most valuable confidential information to an adversary. Exhibit A, March 23 Transcript, at 16:16-21. To fairly deal with this artifice, the Court recognized the need to create a "bubble" of access to these confidential materials, noting further, "we put people in the bubble and they've got to stay in the bubble." *Id.* During the conference, AmberWave argued that it has a responsibility to "compl[y] with all of its obligations in the Patent Office to insure that any prior art that could conceivably [be] relevant and important to an examiner gets submitted [to the PTO]." *Id.* at 18:7-15. Intel understands this argument. AmberWave offered a proposal to address this concern, which permitted AmberWave to provide its prosecution counsel with information for potential inclusion in information disclosure statements (IDSs) to the PTO if (i) the material did not contain any Confidential Information, (as defined in the final order) and (ii) the information was limited to articles, filings in this litigation and deposition transcripts.

The [Proposed] Protective Order submitted by Intel, attached as Exhibit B, adopts this proposal. *See* Ex. B, at subparagraph 7(c). (For the convenience of the Court, pages showing the differences between Intel's proposal and the final proposal offered by AmberWave are attached as Exhibit D.) However, Intel has additionally requested that this limited disclosure beyond the bounds of the "bubble" be transparent. Intel requests that it be copied on all disclosures made by AmberWave's litigation counsel to its patent counsel for potential inclusion in IDSs. Intel believes this request is entirely reasonable. It is simply impossible to overstate the

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
May 1, 2006
Page 2

value to Intel of the highly confidential information in the materials sought by AmberWave in this case. AmberWave seeks detailed descriptions of Intel's product designs and manufacturing processes for its current devices and, critically, for devices that are still in development and years away from reaching the market. If this information were inadvertently disclosed to prosecution counsel, they could draft claims to read on Intel's current and future products and processes. Also, if this information found its way into an IDS, the information may eventually become public as part of the prosecution history of any issued patent or a pending application cited in an issued patent.

Intel understands that mistakes happen. In a recent case, the integrity of a litigant's confidential materials was compromised by just such a mistake. See Ex. C, March 7, 2006 letter from Richard T. Malloy to the Honorable Charles E. Bullock. The consequence to that litigant was irreparable injury. There is simply no way to un-ring the bell. In this context, Intel requests that communications between litigation counsel (who are within the bubble) to patent counsel (who are most certainly outside the bubble) be entirely transparent so that Intel can diligently police the protection of its confidential information.

The only objection AmberWave has articulated to Intel's caveat is that compliance will require AmberWave to waive privilege. This argument exacerbates Intel's concern. The material covered by the proposed subparagraph 7(c)—public articles, filings in this action, and deposition transcripts—by definition contain no privileged work-product and no attorney-client communications. The communications at issue should consist of no more than a cover letter identifying or listing the documents explicitly described by subparagraph 7(c) that are attached and the attachments themselves. If AmberWave envisions that its communications with prosecution counsel will go beyond the mere transmission of these agreed upon documents and contain work product and/or attorney-client communications, this greatly concerns Intel and vitiates entirely the protection to Intel of subparagraph 7(c).

Moreover, even if AmberWave is correct in arguing that the selection of documents described in subparagraph 7(c) that it chooses to disclose to its prosecution counsel under the proposed protective order qualify for work product protection, Intel should still be granted access to communications between litigation and prosecution counsel. "[T]he work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation." *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 663 (3d Cir. 2003); *see also* Fed. R. Civ. P. 26(b)(3) ("[A] party may obtain discovery of documents . . . prepared in anticipation of litigation . . . upon a showing that the party seeking discovery has substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."). As discussed above, due to the sensitive nature of the materials Intel will be producing, Intel has a substantial need for access to the content of communications between litigation and prosecution counsel and literally has no means of determining the content of those communications without receiving copies. Intel therefore both has a substantial need for copies of those communications and would face an undue hardship in obtaining substantially equivalent materials by other means.

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

The Honorable Kent A. Jordan
May 1, 2006
Page 3

      Finally, Intel has agreed in its proposed order to stipulate that neither AmberWave nor its counsel will be deemed to have waived any privilege by complying with the terms of subparagraph 7(c). *See* Ex. B at paragraph 7(c). Thus, there is simply no risk of waiver to AmberWave and no basis not to require AmberWave to copy Intel on communications between its with prosecution counsel.

      \*        \*        \*        \*        \*

      For the foregoing reasons, Intel respectfully requests that the Court adopt the [Proposed] Protective Order submitted by Intel and attached hereto as Exhibit B.

Respectfully submitted,

Monté T. Squire (No. 4764)

cc:    Peter T. Dalleo, Clerk (By Hand)
       Jack B. Blumenfeld (By Hand)