# EXHIBIT A

SHEET 1

1

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                  IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4    AMBERWAVE SYSTEMS CORPORATION,  :  CIVIL ACTION
                                      :
 5              Plaintiff,            :
                                      :
 6    v.                             :
                                      :
 7    INTEL CORPORATION,              :
                                      :
 8              Defendant.            :  NO. 05-301 (KAJ)

 9                            - - -

10                     Wilmington, Delaware
                  Thursday, March 23, 2006 at 2:00 p.m.
11                     TELEPHONE CONFERENCE

12                            - - -

13    BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.

14                            - - -
      APPEARANCES:
15

16            MORRIS NICHOLS ARSHT & TUNNELL
              BY:  JACK B. BLUMENFELD, ESQ.
17
                     and
18
              IRELL & MANELLA, LLP
19            BY:  DAVID I. GINDLER, ESQ., and
                   JASON G. SHEASBY, ESQ.
20            (Los Angeles, California)

21                   Counsel for AmberWave Systems
                     Corporation
22

23

24
                             Brian P. Gaffigan
25                           Registered Merit Reporter
```

2

1   APPEARANCES:  (Continued)

2
        YOUNG CONAWAY STARGATT & TAYLOR
3       BY:  JOHN W. SHAW, ESQ.

4            and

5   SIMPSON THACHER & BARTLETT, LLP
        BY:  GEORGE M. NEWCOMBE, ESQ., and
6            PATRICK E. KING, ESQ.
             (Palo Alto, California)
7
8            Counsel for Intel Corporation

9
10
11
12
13
14                      - oOo -

15           P R O C E E D I N G S

16      (REPORTER'S NOTE:  The following telephone

17   conference was held in chambers, beginning at 2:00 p.m.)

18          THE COURT:  Hi, this is Judge Jordan.  Who do I

19   have on the line?

20          MR. BLUMENFELD:  Your Honor, it's Jack

21   Blumenfeld for AmberWave, the plaintiff now, along with

22   David Gindler and Jason Sheasby from Irell.

23          THE COURT:  All right.

24          MR. SHAW:  Good afternoon, Your Honor.  It's

25   John Shaw for Intel; and with me on the phone are George

3

1   Newcombe and Patrick King from Simpson Thacher.

2          THE COURT:  All right.  We've got Protective

3   Order Redux today, a subject we were talking over last

4   November.  And I've read the letters that you sent in to me

5   for today's call.  Let me just give you what I think are

6   the issues in play here and we'll go through them one by

7   one.

8          MR. SHEASBY:  Your Honor, if I may interrupt?

9          THE COURT:  Sure.

10          MR. SHEASBY:  There has been a partial

11   resolution to the dispute between the parties.  This is

12   Jason Sheasby for AmberWave.

13          THE COURT:  I'm glad you interrupted.  Tell me

14   what it is.

15          MR. SHEASBY:  There are two issues on the table.

16   One is the scope of the prosecution bar and one is how an

17   attorney substitute for prosecution bar can participate

18   in the reexamination.  The reexamination issue has been

19   resolved.  Intel and AmberWave have stipulate the neither

20   party is going to file reexamination on the patents-in-suit

21   and based on that, we are prepared to agree to Intel's more

22   stringent standard for participation and reexamination.

23          MR. NEWCOMBE:  No, no, no.  Excuse me.  This is

24   George Newcombe.  It's my understanding, judge, I agree with

25   Ms. Sheasby up to the point where those portions of the

4

1   protective order dealing with reexam just go out of the

2   window.  They're not in the protective order at all.  Once

3   we take this off the table, it was my understanding that

4   this whole portion of the protective order goes out and we

5   are just left with the prosecution bar and how wide that

6   would be; but by stipping to neither party will put patents

7   in suit into reexam, that we would eliminate the entire

8   carve out.

9          THE COURT:  It sounds like you guys are not as

10   fully together as you thought on that.

11          MR. SHEASBY:  That appears to be the case.

12          THE COURT:  Well, I'll tell you what.  We won't

13   take that up today.  Hopefully, we won't have to take it up

14   on another occasion.

15          MR. GINDLER:  This is David Gindler for

16   AmberWave.  I think that issue is something we will be able

17   to resolve, and I think it need not be addressed further

18   today.

19          THE COURT:  All right.  Then let's talk about

20   the scope of the bar.  Who wants to take the lead?

21          MR. NEWCOMBE:  Your Honor, can I go first?  This

22   is George Newcombe for Intel.

23          THE COURT:  Fine.

24          MR. NEWCOMBE:  The problem and why we're

25   concerned about this issue is that we literally are talking

5

1   about the crown jewels of the Intel once we start turning

2   over all the internal designs and processes by which we make

3   our microprocessors to them.  The issue is as follows:  We

4   maintain that the bar should apply to all counsel of record,

5   period.  AmberWave believes it should only be counsel of

6   record who has reviewed the AEO material.  And the reason

7   we think that is inadequate is multiple fold, but the most

8   practical thing is that if you're on the team, if you are

9   on the litigation team, issues of infringement of claim

10   construction, of validity are all of necessity going to be

11   and should be driven by counsel's analysis of our most

12   sensitive materials.  I don't know how, whether or not

13   someone has actually looked at those documents but as part

14   of the team they're going to be exposed to that analysis.

15          If those people can then turn around and, as we

16   have found out that AmberWave has on the '890 application,

17   while we're negotiating this, put in additional amendments,

18   and that is one that may be in suit, and when we ask them in

19   a letter to say has anybody contacted, been in communication

20   with prosecution counsel over those amendments, the only

21   response back was no one who had reviewed AEO material has

22   been in contact.  And that doesn't make us very comfortable

23   because I don't think it's possible to separate out the

24   analysis of the case, working on the case by virtue of who

25   has looked at AEO material and who is working on the case

6

1 and therefore subjected to the kinds of deliberations and
2 analysis that will be driven -- of necessity, could and
3 should be driven in the litigation by those materials.
4        And so we're very, very concerned by trying to
5 make this distinction over who has actually reviewed and not
6 reviewed the materials, and we believe that the bar should
7 be as to counsel of record, period.  And if you look at
8 Brown Bag, where the balancing test is really over balancing
9 their ability to litigate this case which is completely
10 unaffected, they can litigate this case because we're saying
11 everybody on their team can have access to this and work as
12 they will to defend or prosecute the case.
13       And as to other patent prosecution work, that is
14 something which AmberWave has its own separate prosecution
15 counsel.  They can go ahead and do anything they want but
16 there is no impact on the ability of Amberwave's litigation
17 counsel to litigate the case while still preventing them
18 from participating broadly, any of them, in patent
19 prosecution.
20       THE COURT:  Why don't you speak to me for just a
21 moment, Mr. Newcombe, about the position they've taken and
22 which you haven't mentioned that there is some sort of
23 detrimental reliance that has been going on here.  That they
24 were quiet for ten months and now they have people involved
25 and that's a problem.

7

1        MR. NEWCOMBE:  I think that is actually a
2 misstatement of the record as follows, and I'll run through
3 the chronology with you.
4        Starting on November 23rd, which is right after
5 our previous conference, every draft of the protective
6 order that we sent them, back to November, had the language
7 applying the prosecution bar to all counsel of record.
8 AmberWave's draft they sent back to us on December 12th
9 actually contained our language on that.
10       The first time that the limitation on review
11 that was put in, now they say only the people who have
12 reviewed AEO material, was actually on February 5th.  And
13 in response to that, we, in fact, said now we're getting
14 concerned by this caveat of just "reviewed."  We expanded
15 the scope of the prosecution bar to be, to include "all
16 patent prosecutions, that field of semiconductor devices.
17       Then we learned that the '890 application was
18 in fact amended.  We sent a letter saying, Have you
19 communicated with prosecution counsel?  And the only
20 response we got back is only nobody who had reviewed our
21 AEO materials had communicated.  So I think the chronology
22 does not support the claim that we have tried to sandbag
23 them here and there has been detrimental reliance.  This
24 has been a position we staked out pretty clearly starting
25 November 23rd and going forward.

8

1        THE COURT:  All right.  Mr. Gindler, are you
2 going to be speaking own behalf of Mr. AmberWave?
3        MR. GINDLER:  No, Mr. Sheasby will.
4        THE COURT:  All right.  Mr. Sheasby, go ahead,
5 sir.  The ball is yours.
6        MR. SHEASBY:  Sure.  So I think it's important
7 exactly to clarify exactly what AmberWave's position is.  If
8 litigation counsel is not subject to the prosecution bar,
9 they can't do the following:  They can't review Intel
10 produced documents that are designated AEO, attorneys' eyes
11 only technical information.  They can't review internally
12 produced memoranda at our firm, for example, that has within
13 it Intel attorneys' eyes only technical information.  And
14 they can't discuss with people who are subject to the
15 prosecution bar Intel attorneys' eyes only technical
16 information.
17       THE COURT:  I think I've got a pretty good
18 handle on your position.  I need you to speak to the
19 specific position that your opponents have which is whether
20 it's being expressly discussed or not, if somebody who has
21 reviewed attorneys' eyes only information is sitting down
22 with somebody who is on the litigation team but whom you
23 have chosen to say, okay, no, you're not on the attorneys'
24 eyes only review list, and they are working together to
25 craft claim construction position and litigation positions,

9

1 when that person goes off to prosecute patents, they will
2 inevitably have acquired an understanding or a view that is
3 informed by the technical information that the other person
4 has reviewed.
5        That's, I take it to be, the heart of the
6 argument that is being pressed on me by your opponents and
7 that is the argument I need you to directly address.
8        MR. SHEASBY:  Sure.  There is no doubt people
9 who are not subject to the prosecution bar are going to be
10 able to play a limited role in this case.  They're not going
11 to be able to discuss infringement theories with us.  We
12 recognize that.
13       THE COURT:  How does the other side know that,
14 though?
15       MR. SHEASBY:  The other side knows it because
16 we are under protective order and we would be in Contempt of
17 this Court if I discussed attorneys' eyes only technical
18 information with a member of this team who was not under the
19 protective order.
20       THE COURT:  I'm sorry.  I might be talking past,
21 we may be talking past each other.  I guess what I'm asking
22 is when you say we can't discuss infringement positions,
23 which is what I thought I heard you say a second ago, I
24 thought you had a position -- and maybe I'm wrong.  I should
25 maybe be quiet and hear more about what your position is,

**10**

1 but I thought your position was people who had access to
2 attorneys' eyes only information and people who didn't could
3 in fact discuss infringement positions, could in fact
4 discuss claim construction issues, that that was going to
5 be a wide range and wide open discussion even if the person
6 who had attorneys' eyes only information wasn't permitted
7 to say, oh, I saw this document from Intel that revealed
8 such-and-such and such-and-such. But short of doing that
9 step, which they weren't permitted to do, they were allowed
10 to talk about what they thought the right positions were
11 going to be.
12    MR. SHEASBY: Well, I think it's somewhere in
13 the middle, which is to say attorneys with access to the
14 information would need to self-censor themselves and
15 obviously not be able to disclose AEO technical information.
16    I will point out that the protective order
17 that they agreed to allows attorneys who have access to
18 attorneys' eyes only technical information to advise their
19 clients on those issues as well. And so the point is that
20 certainly we would, there would be strategic discussions
21 potentially about this is the position we're taking on a
22 matter of validity let's say that we would have with people
23 who are not subject to the prosecution bar. But that
24 discussion really has, doesn't implicate technical
25 information at all. And so there would be no reason not

**11**

1 to be able to have that discussion.
2    THE COURT: They're not contesting that piece;
3 right? I mean when you say everybody agrees that there can
4 be some high level strategic discussion even with clients,
5 people who are not subject to the attorneys' eyes only
6 provision, that if I have understood right, that is some
7 high level strategic discussion. Everybody agrees with
8 that; correct?
9    MR. NEWCOMBE: Your Honor, I don't know what
10 that means. It's not in the protective order. I don't
11 know what language that he is referring to so our position
12 is pretty clear that there shouldn't be -- that litigation
13 counsel should be separate and apart from prosecution
14 counsel here, period.
15    MR. SHEASBY: Your Honor, if I may interrupt. I
16 think if you look at the case law on this subject, you will
17 see there is a common touchstone, even the cases that Intel
18 cites in its own papers, and what those cases say is that
19 attorneys on a litigation team have a choice. They can
20 choose to view confidential information and be subject to
21 the prosecution bar, but they can choose not to view that
22 information and recognize that it's the role they're going
23 to be able to play in that litigation is limited.
24    I'm not aware of any case I don't think Intel
25 has cited any case that has said, per se, if you are on the

**12**

1 litigation team, you are subject to a prosecution bar. And
2 I think that there is a basic reason for that, and it's one
3 of fairness, which is that AmberWave has put together a
4 litigation team and that litigation team includes members
5 who potentially are going to be subject to the prosecution
6 bar and have agreed to be or able to be and includes members
7 and members of our firm who are not able to agree to that.
8 And now 10 months into this litigation and four and-a-half
9 months after our previous hearing before this Court, they're
10 telling us everyone in your litigation team is subject to a
11 prosecution bar.
12    THE COURT: Well, Mr. Sheasby, you heard Mr.
13 Newcombe tell me they've been telling you since last fall.
14    MR. SHEASBY: Your Honor, I do not agree with
15 that. In the protective order that the parties agreed to in
16 almost every -- on November 9th, the parties agreed to a
17 protective order and there are two outstanding issues:
18 participation of reexamination and challenge to experts.
19 Everything else was agreed to. That form of protective
20 order, on November 8th, did not contain a per se bar such as
21 applied to all litigation counsel, regardless of whether
22 they received information.
23    For Mr. Newcombe, who did not even negotiate
24 the protective order, to suggest this issue was brought up
25 before November 8th or November 22nd is simply not accurate.

**13**

1 I had a phone conversation with Intel counsel this Sunday,
2 and it was this Sunday for the first time that Intel counsel
3 said to me, yes, we want it to apply to all litigation
4 counsel.
5    THE COURT: I find this fascinating when I can
6 have people telling me as to historical facts diametrically
7 opposed things. That nothing was said about this until last
8 weekend on the one side and the other side saying we've been
9 saying it for the last five months. It's amazing.
10    MR. KING: Your Honor, if I may interject here.
11 This is Patrick King for Intel on behalf of Intel who did
12 negotiate with Mr. Sheasby the protective order. And Mr.
13 Newcombe is well aware what the protective orders we've
14 been exchanging say because he has copies of. He has looked
15 through all of them and what he says is accurate.
16    The first time the idea of this being confined
17 to only two attorneys who reviewed the materials was
18 raised by Mr. Sheasby recently when he brought that to my
19 attention. It alarmed me and I discussed it internally
20 with my team, including Mr. Newcombe and it brought into
21 focus the danger of the position they were taking.
22    THE COURT: All right.
23    MR. SHEASBY: Your Honor, I hate to interrupt
24 here. I'd like to address one other issue which bothers me.
25    THE COURT: Is this Mr. Sheasby?

14

1   MR. SHEASBY: This is Mr. Sheasby.
2   THE COURT: Okay. Go ahead, sir.
3   MR. SHEASBY: That's Mr. Newcombe's
4   characterization of the recent activity in the '890
5   application. I just want to clarify something to make it
6   very clear, which is that no Irell attorney who had access
7   to Intel's attorneys' eyes only confidential information
8   participated in the amendment of claims in that application.
9   It's not just those who reviewed Intel's documents, it's
10  those who had any access to the information, full stop.
11  MR. NEWCOMBE: Your Honor, it's George Newcombe.
12  What bothers me here is this self-censored
13  concept that somehow lawyers are going to segregate in their
14  head.
15  THE COURT: All right. You know, I don't need
16  the further argument.
17  MR. NEWCOMBE: Thank you.
18  THE COURT: The parties' positions have been
19  effectively laid out in your submissions and statements here
20  on the teleconference have been of assistance. Let me tell
21  you what I'm going to do first and then I'll tell you why
22  I'm doing it.
23  I'm sorry you couldn't come to a resolution of
24  this, but I'm coming down on the side of Intel in this. And
25  the reason is I don't agree that there is a fair or an

15

1   appropriate way to draw the line AmberWave wants to draw,
2   even people acting in the best of faith in self-censorship.
3   Now, it may well be that this is the first time
4   this has ever been done, but I've got to say I think it may
5   be the first time that anybody has tried to put the position
6   in quite fashion it's been put in this case. In the
7   past when I have seen this, and I have seen it on a regular
8   basis, the context has been in-house lawyers who want to
9   be working with outside counsel and have an access to
10  everything and that is where the bar has frequently and
11  regularly come up.
12  I've not had occasion to see a case where
13  somebody with the outside counsel wanted to parse it as
14  finely as AmberWave does and says, well, we want some people
15  in outside counsels' firm to have access and some people on
16  outside counsels' firm not to have access and those on the
17  outside that are doing it to have them still be able to
18  prosecute.
19  In the CEA case, it's true that I had a
20  situation something like that where they had specifically a
21  specific set of people. And you folks have cited this case
22  back to me. I've gone back and looked at it again. That
23  was a circumstance where there was a set of people and they
24  wanted them to have access to attorneys' eyes only
25  information and still be able to prosecute patents. And

16

1   to me, that was pretty straightforward. I said no.
2   Now, here is a circumstance where in advance
3   people don't really know what going to happen perhaps but
4   inevitably, you know, I just think Intel has the better side
5   of this argument. If you are fully informed by the
6   technical information of your opponent and you are sitting
7   down talking about how to frame up an infringement position,
8   a claim construction position, something like that, how are
9   you in your mind going to say, well, I can't say that
10  sentence to my partner or I can't utter this idea to them
11  because it's informed by technical information that I have
12  had access to. I just don't think you can slice it that
13  carefully or that fine. It won't work. And in some way, it
14  gives a benefit to prosecuting counsel that ought not be
15  there. It just shouldn't.
16  It's an artificial world we have to step into
17  when we're dealing in a case like this where one side gets
18  into the other side's information in a way that no sensible
19  businessperson would ever permit but for the fact we have a
20  dispute and so we have to allow that. So we put people in
21  the bubble and they've got to stay in the bubble. And I'm
22  not comfortable saying, okay, I trust you. Not because I
23  don't trust you in the sense that I think anybody would be
24  dishonest but I don't think anybody should be trusted to try
25  to separate out in their own brain what they can and can't

17

1   say to their own partners and associates in the context of
2   litigation. They ought to be able to have free and open
3   discussion. As they're doing that, some of this information
4   may inevitably leak out.
5   So I'm going to go ahead and say if you guys
6   can't work it out, I'm working it out for you this way.
7   Intel gets it the way it wants it. If somebody is going
8   to work on this litigation, this litigation which is
9   informed by the attorneys' eyes only material, they're not
10  prosecuting patents. If they're not going to be working on
11  this case, then they can do whatever they want with respect
12  to this field. But if they've got access to this Intel
13  stuff, they can't be working in this field.
14  Now, I regret that people seem to have a
15  different view on who knew what when about these positions
16  and I can't sort that out right now. I don't know who
17  has got the better of that. But that's how we're going to
18  handle it.
19  Now, you folks have already resolved the other
20  piece of it that you put before me. I've resolved this
21  piece of it. You ought to be able to get a protective order
22  in place and actually get it to me for signature now, I
23  hope.
24  MR. GINDLER: Your Honor, this is David Gindler
25  for AmberWave. I wanted to raise just one issue. And the

18

1    issue is the following:  During the course of this case,
2    Intel has identified many, many pieces of prior art to us as
3    being potentially relevant to the patents-in-suit and maybe
4    others.  So we have possession of this information.  We get
5    informed from time to time that a new patent is going to
6    issue by the Patent Office.
7         I think that AmberWave has an obligation, if it
8    has possession of prior art that could be relevant, to make
9    sure that prior art is submitted to the Patent Office.
10   Well, that is prior art that is being given to us by Intel
11   in the course of the litigation.  And we want to make sure
12   that our client, the assignee of the patent rights, complies
13   with all of its obligations in the Patent Office to insure
14   that any prior art that could conceivably relevant and
15   important to an examiner gets submitted.
16        So my concern right now is just one very narrow
17   one, which is that we're getting lots of prior art cited to
18   us.  I'm going to guess we're going to get a lot more prior
19   art cited to us.  And we may look at that, we may be told by
20   our client, hey, the patent X is going to issue.  We have a
21   notice of allowance it's going to issue in five months.
22        We take a look at the claims.  We take a look at
23   the prior art that we have in our possession and we say,
24   holy smokes.  We have some things here that we think that,
25   on balance, it would be a better thing if we gave that to

19

1    the Patent Office.  And I think we want to be in a position
2    to be able to tell the prosecution counsel we have been
3    informed by Intel of the following pieces of prior art.  We
4    got them in the context of other patents but you've sent us
5    the allowed claims of this patent and we think 25 pieces of
6    this prior art conceivably might be considered relevant by
7    the examiner.  And we want to be able to put that into the
8    hands of our prosecution counsel to make sure that AmberWave
9    complies to the letter with its obligations to the Patent
10   Office.
11        THE COURT:  Mr. Newcombe.
12        MR. NEWCOMBE:  Your Honor, this is the first
13   time this concern has been raised, so we're reacting to it
14   on the fly.
15        I don't like the concept of there being contact
16   between the two camps.  And maybe we need to flesh this out
17   between us a bit to find out exactly what they mean and what
18   is involved.  Literally, this is the first time, at least to
19   my knowledge, this concept, this particular concept has been
20   raised.
21        MR. SHEASBY:  Your Honor, this is Jason Sheasby.
22   I can just speak for -- I think there is two sets of
23   partners and two sets of associates on the call and I think
24   the associates need to maybe connect better with their
25   partners.  But Pat King and I, in the form of protective

20

1    order you have, have a carve out in place so that
2    AmberWave counsel would be able to submit information
3    for the information disclosure statement.
4         THE COURT:  All right.
5         MR. NEWCOMBE:  So in other words, Jason, you're
6    saying this problem has been resolved?
7         MR. SHEASBY:  This problem has been resolved.
8         MR. NEWCOMBE:  Then I will stop talking.
9         THE COURT:  Well, you know what?  Now, it might
10   have just gotten unresolved by surfacing it here.  I hope
11   not.  You ought to go back and have your discussions.  I
12   don't want anything that I have said on this call in
13   relation to prosecuting patents to prevent you from having
14   sensible compromises in relation to an issue like the one
15   that has just been related to me.
16        MR. NEWCOMBE:  Your Honor, this is George
17   Newcombe.  I think this gets back to my understanding
18   which was the stipulation that we presented to Your Honor
19   addressed the entire issue of the communication with respect
20   to prior art because that carve out was supposed to
21   completely go.  And we'll continue this discussion but I
22   think that is the basis of maybe some of the confusion here.
23        THE COURT:  Well, you guys see if you can work
24   it out.  Let me say that if you can't work it out, I thought
25   you were on sort of the right track before, both of you,

21

1    with the compromise you've been working toward, even
2    though you weren't able to come to "yes" about how many
3    communications you could have.  But if you can't work that
4    out because there is an issue like his that one side thinks
5    still has to have at least a bit of a door open on, you
6    ought to go back and take a look at the progress you had
7    already made and not throw all that out the window.
8         All right.  Well, I'm sorry to hear that we're
9    not quite on the same page where we thought we were and yet
10   I'm not able to help you resolve it because there is not a
11   point on it at this stage.  So you guys take the piece that
12   we have got resolved and the piece that you haven't and see
13   if you can't come up with a compromise that addresses
14   everybody's concern adequately and get me something in
15   writing.  If you can't, let's get on the phone promptly and
16   get this done so we've got a protective order and moving
17   forward.  All right?
18        MR. NEWCOMBE:  Yes, Your Honor.
19        THE COURT:  All right.  Thanks for your time.
20        (Unidentified speaker):  Your Honor?
21        (Telephone conference ends at 2:30 p.m.)
22
23
24
25

'

**'890** [3] - 5:16, 7:17, 14:4

**0**

**05-301** [1] - 1:8

**1**

**10** [1] - 12:8
**12th** [1] - 7:8

**2**

**2005** [1] - 1:10
**22nd** [1] - 12:25
**23** [1] - 1:10
**23rd** [2] - 7:4, 7:25
**25** [1] - 19:5
**2:00** [2] - 1:10, 2:17
**2:30** [1] - 21:21

**5**

**5th** [1] - 7:12

**8**

**8th** [2] - 12:20, 12:25

**9**

**9th** [1] - 12:16

**A**

**ability** [2] - 6:9, 6:16
**able** [17] - 4:16, 9:10, 9:11, 10:15, 11:1, 11:23, 12:6, 12:7, 15:17, 15:25, 17:2, 17:21, 19:2, 19:7, 20:2, 21:2, 21:10
**access** [12] - 6:11, 10:1, 10:13, 10:17, 14:6, 14:10, 15:9, 15:15, 15:16, 15:24, 16:12, 17:12
**accurate** [2] - 12:25, 13:15
**acquired** [1] - 9:2
**acting** [1] - 15:2
**Action** [1] - 1:4
**activity** [1] - 14:4
**additional** [1] - 5:17
**address** [2] - 9:7, 13:24

**addressed** [2] - 4:17, 20:19
**addresses** [1] - 21:13
**adequately** [1] - 21:14
**advance** [1] - 16:2
**advise** [1] - 10:18
**Aeo** [7] - 5:6, 5:21, 5:25, 7:12, 7:21, 8:10, 10:15
**afternoon** [1] - 2:24
**ago** [1] - 9:23
**agree** [5] - 3:21, 3:24, 12:7, 12:14, 14:25
**agreed** [5] - 10:17, 12:6, 12:15, 12:16, 12:19
**agrees** [2] - 11:3, 11:7
**ahead** [4] - 6:15, 8:4, 14:2, 17:5
**alarmed** [1] - 13:19
**allow** [1] - 16:20
**allowance** [1] - 18:21
**allowed** [2] - 10:9, 19:5
**allows** [1] - 10:17
**almost** [1] - 12:16
**Alto** [1] - 2:6
**amazing** [1] - 13:9
**Amberwave** [17] - 1:4, 1:21, 2:21, 3:12, 3:19, 4:16, 5:5, 5:16, 6:14, 8:2, 12:3, 15:1, 15:14, 17:25, 18:7, 19:8, 20:2
**Amberwave's** [3] - 6:16, 7:8, 8:7
**amended** [1] - 7:18
**amendment** [1] - 14:8
**amendments** [2] - 5:17, 5:20
**analysis** [4] - 5:11, 5:14, 5:24, 6:2
**and-a-half** [1] - 12:8
**Angeles** [1] - 1:20
**apart** [1] - 11:13
**Appearances** [2] - 1:14, 2:1
**application** [4] - 5:16, 7:17, 14:5, 14:8
**applied** [1] - 12:21
**apply** [2] - 5:14, 13:3
**applying** [1] - 7:7
**appropriate** [1] - 15:1
**argument** [4] - 9:6, 9:7, 14:16, 16:5
**Arsht** [1] - 1:16
**art** [11] - 18:2, 18:8, 18:9, 18:10, 18:14, 18:17, 18:19, 18:23, 19:3, 19:6, 20:20

**artificial** [1] - 16:16
**assignee** [1] - 18:12
**assistance** [1] - 14:20
**associates** [3] - 17:1, 19:23, 19:24
**attention** [1] - 13:19
**attorney** [2] - 3:17, 14:6
**attorneys** [4] - 10:13, 10:17, 11:19, 13:17
**attorneys'** [13] - 8:10, 8:13, 8:15, 8:21, 8:23, 9:17, 10:2, 10:6, 10:18, 11:5, 14:7, 15:24, 17:9
**aware** [1] - 11:24, 13:13

**B**

**Bag** [1] - 6:8
**balance** [1] - 18:25
**balancing** [2] - 6:8
**ball** [1] - 8:5
**bar** [18] - 3:16, 3:17, 4:5, 4:20, 5:4, 6:6, 7:7, 7:15, 8:8, 8:15, 9:9, 10:23, 11:21, 12:1, 12:6, 12:11, 12:20, 15:10
**Bartlett** [1] - 2:5
**based** [1] - 3:21
**basic** [1] - 12:2
**basis** [2] - 15:8, 20:22
**beginning** [1] - 2:17
**behalf** [2] - 8:2, 13:11
**believes** [1] - 5:5
**benefit** [1] - 16:14
**best** [1] - 15:2
**better** [4] - 16:4, 17:17, 18:25, 19:24
**between** [3] - 3:11, 19:16, 19:17
**bit** [2] - 19:17, 21:5
**Blumenfeld** [3] - 1:16, 2:20, 2:21
**bothers** [2] - 13:24, 14:12
**brain** [1] - 16:25
**Brian** [1] - 1:24
**broadly** [1] - 6:18
**brought** [3] - 12:24, 13:18, 13:20
**Brown** [1] - 6:8
**bubble** [2] - 16:21
**businessperson** [1] - 16:19

**C**

**California** [2] - 1:20, 2:6
**camps** [1] - 19:16
**carefully** [1] - 16:13
**carve** [3] - 4:8, 20:1, 20:20
**case** [19] - 4:11, 5:24, 5:25, 6:9, 6:10, 6:12, 6:17, 9:10, 11:16, 11:24, 11:25, 15:6, 15:12, 15:19, 15:21, 16:17, 17:11, 18:1
**cases** [2] - 11:17, 11:18
**caveat** [1] - 7:14
**Cea** [1] - 15:19
**censor** [1] - 10:14
**censored** [1] - 14:12
**censorship** [1] - 15:2
**certainly** [1] - 10:20
**challenge** [1] - 12:18
**chambers** [1] - 2:17
**characterization** [1] - 14:4
**choice** [1] - 11:19
**choose** [2] - 11:20, 11:21
**chosen** [1] - 8:23
**chronology** [2] - 7:3, 7:21
**circumstance** [2] - 15:23, 16:2
**cited** [4] - 11:25, 15:21, 18:17, 18:19
**cites** [1] - 11:18
**Civil** [1] - 1:4
**claim** [5] - 5:9, 7:22, 8:25, 10:4, 16:8
**claims** [3] - 14:8, 18:22, 19:5
**clarify** [2] - 8:7, 14:5
**clear** [2] - 11:12, 14:6
**clearly** [1] - 7:24
**client** [2] - 18:12, 18:20
**clients** [2] - 10:19, 11:4
**comfortable** [2] - 5:22, 16:22
**coming** [1] - 14:24
**common** [1] - 11:17
**communicated** [2] - 7:19, 7:21
**communication** [2] - 5:19, 20:19
**communications** [1] - 21:3
**completely** [2] - 6:9,

20:21
**complies** [2] - 18:12, 19:9
**compromise** [2] - 21:1, 21:13
**compromises** [1] - 20:14
**Conaway** [1] - 2:2
**conceivably** [2] - 18:14, 19:6
**concept** [4] - 14:13, 19:15, 19:19
**concern** [3] - 18:16, 19:13, 21:14
**concerned** [3] - 4:25, 6:4, 7:14
**Conference** [1] - 1:11
**conference** [3] - 2:17, 7:5, 21:21
**confidential** [2] - 11:20, 14:7
**confined** [1] - 13:16
**confusion** [1] - 20:22
**connect** [1] - 19:24
**considered** [1] - 19:6
**construction** [4] - 5:10, 8:25, 10:4, 16:8
**contact** [2] - 5:22, 19:15
**contacted** [1] - 5:19
**contain** [1] - 12:20
**contained** [1] - 7:9
**Contempt** [1] - 9:16
**contesting** [1] - 11:2
**context** [3] - 15:8, 17:1, 19:4
**continue** [1] - 20:21
**Continued** [1] - 2:1
**conversation** [1] - 13:1
**copies** [1] - 13:14
**Corporation** [4] - 1:4, 1:7, 1:21, 2:7
**correct** [1] - 11:8
**counsel** [21] - 5:4, 5:5, 5:20, 6:7, 6:15, 6:17, 7:7, 7:19, 8:8, 11:13, 11:14, 12:21, 13:1, 13:2, 13:4, 15:9, 15:13, 16:14, 19:2, 19:8, 20:2
**Counsel** [2] - 1:21, 2:7
**counsel's** [1] - 5:11
**counsels'** [2] - 15:15, 15:16
**course** [2] - 18:1, 18:11
**Court** [31] - 1:1, 2:18, 2:23, 3:2, 3:9, 3:13,

4:9, 4:12, 4:19, 4:23, 6:20, 8:1, 8:4, 8:17, 9:13, 9:17, 9:20, 11:2, 12:9, 12:12, 13:5, 13:22, 13:25, 14:2, 14:15, 14:18, 19:11, 20:4, 20:9, 20:23, 21:19
craft [1] - 8:25
crown [1] - 5:1

**D**

danger [1] - 13:21
David [4] - 1:19, 2:22, 4:15, 17:24
dealing [2] - 4:1, 16:17
December [1] - 7:8
defend [1] - 6:12
Defendant [1] - 1:8
Delaware [2] - 1:2, 1:10
deliberations [1] - 6:1
designated [1] - 8:10
designs [1] - 5:2
detrimental [2] - 6:23, 7:23
devices [1] - 7:16
diametrically [1] - 13:6
different [1] - 17:15
directly [1] - 9:7
disclose [1] - 10:15
disclosure [1] - 20:3
discuss [5] - 8:14, 9:11, 9:22, 10:3, 10:4
discussed [3] - 8:20, 9:17, 13:19
discussion [7] - 10:5, 10:24, 11:1, 11:4, 11:7, 17:3, 20:21
discussions [2] - 10:20, 20:11
dishonest [1] - 16:24
dispute [2] - 3:11, 16:20
distinction [1] - 6:5
District [2] - 1:1, 1:2
document [1] - 10:7
documents [3] - 5:13, 8:10, 14:9
done [2] - 15:4, 21:16
door [1] - 21:5
doubt [1] - 9:8
down [3] - 8:21, 14:24, 16:7
draft [2] - 7:5, 7:8
draw [2] - 15:1

driven [3] - 5:11, 6:2, 6:3
During [1] - 18:1

**E**

effectively [1] - 14:19
eliminate [1] - 4:7
ends [1] - 21:21
entire [2] - 4:7, 20:19
Esq [6] - 1:16, 1:19, 1:19, 2:3, 2:5, 2:6
exactly [3] - 8:7, 19:17
examiner [2] - 18:15, 19:7
example [1] - 8:12
exchanging [1] - 13:14
Excuse [1] - 3:23
expanded [1] - 7:14
experts [1] - 12:18
exposed [1] - 5:14
expressly [1] - 8:20
eyes [13] - 8:10, 8:13, 8:15, 8:21, 8:24, 9:17, 10:2, 10:6, 10:18, 11:5, 14:7, 15:24, 17:9

**F**

fact [5] - 7:13, 7:18, 10:3, 16:19
facts [1] - 13:6
fair [1] - 14:25
fairness [1] - 12:3
faith [1] - 15:2
fall [1] - 12:13
fascinating [1] - 13:5
fashion [1] - 15:6
February [1] - 7:12
field [3] - 7:16, 17:12, 17:13
file [1] - 3:20
fine [1] - 16:13
Fine [1] - 4:23
finely [1] - 15:14
firm [4] - 8:12, 12:7, 15:15, 15:16
first [9] - 4:21, 7:10, 13:2, 13:16, 14:21, 15:3, 15:5, 19:12, 19:18
five [2] - 13:9, 18:21
flesh [1] - 19:16
fly [1] - 19:14
focus [1] - 13:21
fold [1] - 5:7
folks [2] - 15:21, 17:19

following [4] - 2:16, 8:9, 18:1, 19:3
follows [2] - 5:3, 7:2
form [1] - 12:19, 19:25
forward [2] - 7:25, 21:17
four [1] - 12:8
frame [1] - 16:7
free [1] - 17:2
frequently [1] - 15:10
full [1] - 7:15
fully [2] - 4:10, 16:5

**G**

Gaffigan [1] - 1:24
George [6] - 2:5, 2:25, 3:24, 4:22, 14:11, 20:16
Gindler [8] - 1:19, 2:22, 4:15, 8:1, 8:3, 17:24
given [1] - 18:10
glad [1] - 3:13
guess [2] - 9:21, 18:18
guys [4] - 4:9, 17:5, 20:23, 21:11

**H**

half [1] - 12:8
handle [2] - 8:18, 17:18
hands [1] - 19:8
hate [1] - 13:23
head [1] - 14:14
hear [2] - 9:25, 21:8
heard [2] - 9:23, 12:12
hearing [1] - 12:9
heart [1] - 9:5
held [1] - 2:17
help [1] - 21:10
Hi [1] - 2:18
high [2] - 11:4, 11:7
historical [1] - 13:6
holy [1] - 18:24
Honor [17] - 2:20, 2:24, 3:8, 4:21, 11:9, 11:15, 12:14, 13:10, 13:23, 14:11, 17:24, 19:12, 19:21, 20:16, 20:18, 21:18, 21:20
Honorable [1] - 1:13
hope [2] - 17:23, 20:10
Hopefully [1] - 4:13
house [1] - 15:8

**I**

idea [2] - 13:16, 16:10
identified [1] - 18:2
impact [1] - 6:16
implicate [1] - 10:24
important [2] - 8:6, 18:15
in-house [1] - 15:8
inadequate [1] - 5:7
include [1] - 7:15
includes [2] - 12:4, 12:6
including [1] - 13:20
inevitably [3] - 9:2, 16:4, 17:4
information [25] - 8:11, 8:13, 8:16, 8:21, 9:3, 9:18, 10:2, 10:6, 10:14, 10:15, 10:18, 10:25, 11:20, 11:22, 12:22, 14:7, 14:10, 15:25, 16:6, 16:11, 16:18, 17:3, 18:4, 20:2, 20:3
informed [6] - 9:3, 16:5, 16:11, 17:9, 18:5, 19:3
infringement [5] - 5:9, 9:11, 9:22, 10:3, 12:17
insure [1] - 18:13
Intel [23] - 1:7, 2:7, 2:25, 3:19, 4:22, 5:1, 8:9, 8:13, 8:15, 10:7, 11:17, 11:24, 13:1, 13:2, 13:11, 14:24, 16:4, 17:7, 17:12, 18:2, 18:10, 19:3
Intel's [3] - 3:21, 14:7, 14:9
interject [1] - 13:10
internal [1] - 5:2
internally [2] - 8:11, 13:19
interrupt [3] - 3:8, 11:15, 13:23
interrupted [1] - 3:13
involved [2] - 6:24, 19:18
Irell [3] - 1:18, 2:22, 14:6
issue [14] - 3:18, 4:16, 4:25, 5:3, 12:24, 13:24, 17:25, 18:1, 18:6, 18:20, 18:21, 20:14, 20:19, 21:4
issues [6] - 3:6, 3:15, 5:9, 10:4, 10:19, 12:17

**J**

Jack [2] - 1:16, 2:20
Jason [5] - 1:19, 2:22, 3:12, 19:21, 20:5
jewels [1] - 5:1
John [2] - 2:3, 2:25
Jordan [2] - 1:13, 2:18
judge [1] - 3:24
Judge [1] - 2:18

**K**

Kaj [1] - 1:8
Kent [1] - 1:13
kinds [1] - 6:1
King [5] - 2:6, 3:1, 13:10, 13:11, 19:25
knowledge [1] - 19:19
knows [1] - 9:15

**L**

laid [1] - 14:19
language [3] - 7:6, 7:9, 11:11
last [4] - 3:3, 12:13, 13:7, 13:9
law [1] - 11:16
lawyers [2] - 14:13, 15:8
lead [1] - 4:20
leak [1] - 17:4
learned [1] - 7:17
least [2] - 19:18, 21:5
left [1] - 4:5
letter [3] - 5:19, 7:18, 19:9
letters [1] - 3:4
level [2] - 11:4, 11:7
limitation [1] - 7:10
limited [2] - 9:10, 11:23
line [2] - 2:19, 15:1
list [1] - 8:24
literally [1] - 4:25
Literally [1] - 19:18
litigate [3] - 6:9, 6:10, 6:17
litigation [20] - 5:9, 6:3, 6:16, 8:8, 8:22, 8:25, 11:12, 11:19, 11:23, 12:1, 12:4, 12:8, 12:10, 12:21, 13:3, 17:2, 17:8, 18:11
Llp [2] - 1:18, 2:5
look [6] - 6:7, 11:16, 18:19, 18:22, 21:6

looked [4] - 5:13, 5:25, 13:14, 15:22
Los [1] - 1:20

# M

maintain [1] - 5:4
Manella [1] - 1:18
March [1] - 1:10
material [5] - 5:6, 5:21, 5:25, 7:12, 17:9
materials [5] - 5:12, 6:3, 6:6, 7:21, 13:17
matter [1] - 10:22
mean [2] - 11:3, 19:17
means [1] - 11:10
member [1] - 9:18
members [3] - 12:4, 12:6, 12:7
memoranda [1] - 8:12
mentioned [1] - 6:22
Merit [1] - 1:25
microprocessors [1] - 5:3
middle [1] - 10:13
might [3] - 9:20, 19:6, 20:9
mind [1] - 16:9
misstatement [1] - 7:2
moment [1] - 6:21
months [5] - 6:24, 12:8, 12:9, 13:9, 18:21
Morris [1] - 1:16
most [2] - 5:7, 5:11
moving [1] - 21:16
multiple [1] - 5:7

# N

narrow [1] - 18:16
necessity [2] - 5:10, 6:2
need [7] - 4:17, 8:18, 9:7, 10:14, 14:15, 19:16, 19:24
negotiate [2] - 12:23, 13:12
negotiating [1] - 5:17
new [1] - 18:5
Newcombe [24] - 2:5, 3:1, 3:23, 3:24, 4:21, 4:22, 4:24, 6:21, 7:1, 11:9, 12:13, 12:23, 13:13, 13:20, 14:11, 14:17, 19:11, 19:12, 20:5, 20:8, 20:16, 20:17, 21:18

Newcombe's [1] - 14:3
Nichols [1] - 1:16
nobody [1] - 7:20
Note [1] - 2:16
nothing [1] - 13:7
notice [1] - 18:21
November [8] - 3:4, 7:4, 7:6, 7:25, 12:16, 12:20, 12:25

# O

obligation [1] - 18:7
obligations [2] - 18:13, 19:9
obviously [1] - 10:15
occasion [2] - 4:14, 15:12
Office [5] - 18:6, 18:9, 18:13, 19:1, 19:10
Once [1] - 4:2
once [1] - 5:1
one [14] - 3:6, 3:7, 3:16, 5:18, 5:21, 12:2, 13:8, 13:24, 16:17, 17:25, 18:16, 18:17, 20:14, 21:4
One [1] - 3:16
ooo [1] - 2:14
open [3] - 10:5, 17:2, 21:5
opponent [1] - 16:6
opponents [2] - 8:19, 9:6
opposed [1] - 13:7
order [16] - 4:1, 4:2, 4:4, 7:6, 9:16, 9:19, 10:16, 11:10, 12:15, 12:17, 12:20, 12:24, 13:12, 17:21, 20:1, 21:16
Order [1] - 3:3
orders [1] - 13:13
ought [5] - 16:14, 17:2, 17:21, 20:11, 21:6
outside [5] - 15:9, 15:13, 15:15, 15:16, 15:17
outstanding [1] - 12:17
own [5] - 6:14, 8:2, 11:18, 16:25, 17:1

# P

page [1] - 21:9
Palo [1] - 2:6
papers [1] - 11:18

parse [1] - 15:13
part [1] - 5:13
partial [1] - 3:10
participate [1] - 3:17
participated [1] - 14:8
participating [1] - 6:18
participation [2] - 3:22, 12:18
particular [1] - 19:19
parties [3] - 3:11, 12:15, 12:16
parties' [1] - 14:18
partner [1] - 16:10
partners [3] - 17:1, 19:23, 19:25
party [2] - 3:20, 4:6
past [3] - 9:20, 9:21, 15:7
Pat [1] - 19:25
patent [7] - 6:13, 6:18, 7:16, 18:5, 18:12, 18:20, 19:5
Patent [5] - 18:6, 18:9, 18:13, 19:1, 19:9
patents [8] - 3:20, 4:6, 9:1, 15:25, 17:10, 18:3, 19:4, 20:13
patents-in-suit [2] - 3:20, 18:3
Patrick [3] - 2:6, 3:1, 13:11
people [18] - 5:15, 6:24, 7:11, 8:14, 9:8, 10:1, 10:2, 10:22, 11:5, 13:6, 15:2, 15:14, 15:15, 15:21, 15:23, 16:3, 16:20, 17:14
per [2] - 11:25, 12:20
perhaps [1] - 16:3
period [3] - 5:5, 6:7, 11:14
permit [1] - 16:19
permitted [2] - 10:6, 10:9
person [3] - 9:1, 9:3, 10:5
phone [3] - 2:25, 13:1, 21:15
piece [5] - 11:2, 17:20, 17:21, 21:11, 21:12
pieces [3] - 18:2, 19:3, 19:5
place [2] - 17:22, 20:1
Plaintiff [1] - 1:5
plaintiff [1] - 2:21
play [3] - 3:6, 9:10, 11:23
Pm [3] - 1:10, 2:17,

21:21
point [4] - 3:25, 10:16, 10:19, 21:11
portion [1] - 4:4
portions [1] - 3:25
position [16] - 6:21, 7:24, 8:7, 8:18, 8:19, 8:25, 9:24, 9:25, 10:1, 10:21, 11:11, 13:21, 15:5, 16:7, 16:8, 19:1
positions [6] - 8:25, 9:22, 10:3, 10:10, 14:18, 17:15
possession [3] - 18:4, 18:8, 18:23
possible [1] - 5:23
potentially [3] - 10:21, 12:5, 18:3
practical [1] - 5:8
prepared [1] - 3:21
presented [1] - 20:18
pressed [1] - 9:6
pretty [4] - 7:24, 8:17, 11:12, 16:1
prevent [1] - 20:13
preventing [1] - 6:17
previous [2] - 7:5, 12:9
problem [4] - 4:24, 6:25, 20:6, 20:7
processes [1] - 5:2
produced [2] - 8:10, 8:12
progress [1] - 21:6
promptly [1] - 21:11
prosecute [4] - 6:12, 9:1, 15:18, 15:25
prosecuting [3] - 16:14, 17:10, 20:13
prosecution [21] - 3:16, 3:17, 4:5, 5:20, 6:13, 6:14, 6:19, 7:7, 7:15, 7:19, 8:8, 8:15, 9:9, 10:23, 11:13, 11:21, 12:1, 12:5, 12:11, 19:2, 19:8
prosecutions [1] - 7:16
Protective [1] - 3:2
protective [17] - 4:1, 4:2, 4:4, 7:5, 9:16, 9:19, 10:16, 11:10, 12:15, 12:17, 12:19, 12:24, 13:12, 13:13, 17:21, 19:25, 20:14
provision [1] - 11:6
put [9] - 4:6, 5:17, 7:11, 12:3, 15:5, 15:6, 16:20, 17:20,

19:7

# Q

quiet [2] - 6:24, 9:25
quite [2] - 15:6, 21:9

# R

raise [1] - 17:25
raised [3] - 13:18, 19:13, 19:20
range [1] - 10:5
reacting [1] - 19:13
read [1] - 3:4
really [4] - 6:8, 10:24, 16:3
reason [4] - 5:6, 10:25, 12:2, 14:25
received [1] - 12:22
recent [1] - 14:4
recently [1] - 13:18
recognize [2] - 9:12, 11:22
record [5] - 5:4, 5:6, 6:7, 7:2, 7:7
Redux [1] - 3:3
reexam [2] - 4:1, 4:7
reexamination [5] - 3:18, 3:20, 3:22, 12:18
referring [1] - 11:11
regardless [1] - 12:21
Registered [1] - 1:25
regret [1] - 17:14
regular [1] - 15:7
regularly [1] - 15:11
related [1] - 20:15
relation [2] - 20:13, 20:14
relevant [4] - 18:3, 18:8, 18:14, 19:6
reliance [2] - 6:23, 7:23
Reporter [1] - 1:25
Reporters [1] - 2:16
resolution [2] - 3:11, 14:23
resolve [2] - 4:17, 21:10
resolved [6] - 3:19, 17:19, 17:20, 20:6, 20:7, 21:12
respect [2] - 17:11, 20:19
response [5] - 5:21, 7:13, 7:20
revealed [1] - 10:7
review [4] - 7:10, 8:9,

8:11, 8:24
reviewed [11] - 5:6,
5:21, 6:5, 6:6, 7:12,
7:14, 7:20, 8:21, 9:4,
13:17, 14:9
rights [1] - 18:12
role [2] - 9:10, 11:22
run [1] - 7:2

## S

sandbag [1] - 7:22
saw [1] - 10:7
scope [3] - 3:16, 4:20,
7:15
se [2] - 11:25, 12:20
second [1] - 9:23
see [4] - 11:17, 15:12,
20:23, 21:12
seem [1] - 17:14
segregate [1] - 14:13
self [3] - 10:14, 14:12,
15:2
self-censor [1] - 10:14
self-censored [1] -
14:12
self-censorship [1] -
15:2
semiconductor [1] -
7:16
sense [1] - 16:23
sensible [2] - 16:18,
20:14
sensitive [1] - 5:12
sent [5] - 3:4, 7:6, 7:8,
7:18, 19:4
sentence [1] - 16:10
separate [4] - 5:23,
6:14, 11:13, 16:25
set [2] - 15:21, 15:23
sets [2] - 19:22, 19:23
Shaw[3] - 2:3, 2:24,
2:25
Sheasby[27] - 1:19,
2:22, 3:8, 3:10, 3:12,
3:15, 3:25, 4:11, 8:3,
8:4, 8:6, 9:8, 9:15,
10:12, 11:15, 12:12,
12:14, 13:12, 13:18,
13:23, 13:25, 14:1,
14:3, 19:21, 20:7
short [1] - 10:8
side [8] - 9:13, 9:15,
13:8, 14:24, 16:4,
16:17, 21:4
side's [1] - 16:18
signature [1] - 17:22
simply [1] - 12:25
Simpson[2] - 2:5, 3:1
sitting [2] - 8:21, 16:6

situation [1] - 15:20
slice [1] - 16:12
smokes [1] - 18:24
someone [1] - 5:13
somewhere [1] -
10:12
sorry [3] - 9:20, 14:23,
21:8
sort [3] - 6:22, 17:16,
20:25
sounds [1] - 4:9
speaker [1] - 21:20
speaking [1] - 8:2
specific [2] - 8:19,
15:21
specifically [1] - 15:20
stage [1] - 21:11
staked [1] - 7:24
standard [1] - 3:22
Stargatt[1] - 2:2
start [1] - 5:1
Starting[1] - 7:4
starting [1] - 7:24
statement [1] - 20:3
statements [1] - 14:19
States[1] - 1:1
stay [1] - 16:21
step [2] - 10:9, 16:16
still [4] - 6:17, 15:17,
15:25, 21:5
stipping [1] - 4:6
stipulate [1] - 3:19
stipulation [1] - 20:18
stop [2] - 14:10, 20:8
straightforward [1] -
16:1
strategic [3] - 10:20,
11:4, 11:7
stringent [1] - 3:22
stuff [1] - 17:13
subject [11] - 3:3, 3:8,
8:14, 9:9, 10:23,
11:5, 11:16, 11:20,
12:1, 12:5, 12:10
subjected [1] - 6:1
submissions [1] -
14:19
submit [1] - 20:2
submitted [2] - 18:9,
18:15
substitute [1] - 3:17
such-and-such [2] -
10:8
suggest [1] - 12:24
suit [4] - 3:20, 4:7,
5:18, 18:3
Sunday [2] - 13:1, 13:2
support [1] - 7:22
supposed [1] - 20:20

surfacing [1] - 20:10
Systems[2] - 1:4, 1:21

## T

table [2] - 3:15, 4:3
Taylor[1] - 2:2
team [12] - 5:8, 5:9,
5:14, 6:11, 8:22,
9:18, 11:19, 12:1,
12:4, 12:10, 13:20
technical [10] - 8:11,
8:13, 8:15, 9:3, 9:17,
10:15, 10:18, 10:24,
16:6, 16:11
teleconference [1] -
14:20
telephone [1] - 2:16
Telephone[2] - 1:11,
21:21
ten [1] - 6:24
test [1] - 6:8
Thacher[2] - 2:5, 3:1
themselves [1] - 10:14
theories [1] - 9:11
therefore [1] - 6:1
they've [4] - 6:21,
12:13, 16:21, 17:12
thinks [1] - 21:4
throw [1] - 21:7
Thursday[1] - 1:10
today [3] - 3:3, 4:13,
4:18
today's [1] - 3:5
together [3] - 4:10,
8:24, 12:3
touchstone [1] - 11:17
toward [1] - 21:1
track [1] - 20:25
tried [2] - 7:22, 15:5
true [1] - 15:19
trust [2] - 16:22, 16:23
trusted [1] - 16:24
try [1] - 16:24
trying [1] - 6:4
Tunnel[1] - 1:16
turn [1] - 5:15
turning [1] - 5:1
two [6] - 3:15, 12:17,
13:17, 19:16, 19:22,
19:23

## U

unaffected [1] - 6:10
under [2] - 9:16, 9:18
understood [1] - 11:6
Unidentified[1] -
21:20

United[1] - 1:1
unresolved [1] - 20:10
up [7] - 3:25, 4:13,
12:24, 15:11, 16:7,
21:13
Usdcj[1] - 1:13
utter [1] - 16:10

## V

validity [2] - 5:10,
10:22
view [4] - 9:2, 11:20,
11:21, 17:15
virtue [1] - 5:24

## W

wants [3] - 4:20, 15:1,
17:7
weekend [1] - 13:8
whole [1] - 4:4
wide [3] - 4:5, 10:5
Wilmington[1] - 1:10
window [2] - 4:2, 21:7
words [1] - 20:5
world [1] - 16:16
writing [1] - 21:15

## Y

Young[1] - 2:2