# YOUNG CONAWAY STARGATT & TAYLOR, LLP

MONTÉ T. SQUIRE
DIRECT DIAL: 302-571-6713
DIRECT FAX:  302-576-3515
msquire@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

May 2, 2006

The Honorable Kent A. Jordan
United States District Court for the District of Delaware
844 King Street, Lockbox 10
Wilmington, DE 19801

RE:   <u>AmberWave v. Intel, C.A. No. 05-301 (KAJ) (consolidated)</u>

Dear Judge Jordan:

Intel Corporation ("Intel") respectfully responds to the letter from AmberWave Systems Inc. ("AmberWave") dated May 1, 2006, concerning alleged deficiencies in Intel's responses to certain of AmberWave's contention interrogatories. For the reasons set forth below, Intel respectfully submits that its responses are fully adequate at this stage of the litigation before substantial document discovery has commenced, and in light of the lack of specificity in AmberWave's own responses to corresponding contention interrogatories served by Intel.

Moreover, we fundamentally disagree with AmberWave's approach to this subject. Rather than engage in protracted disputes while the parties' respective contentions in this complex matter are still taking shape, we propose that the parties agree to a schedule for the sequential supplementation of contention interrogatories *after* the production of confidential documents pursuant to the entry of an appropriate protective order, taking into account the needs of each party to conduct follow-up discovery prior to the cut-off date. By refusing even to consider this proposal, AmberWave burdens the Court with an unnecessary dispute and ignores more practical solutions for enabling this case to proceed to trial in a rational and efficient manner.

<u>Infringement Contentions</u>. AmberWave incorrectly describes both its own and Intel's responses in complaining about the alleged inadequacy of Intel's responses to Interrogatory Nos. 6 and 8 (C.A. No. 05-301) and Interrogatory No. 1 (C.A. No. 05-837), concerning non-infringement of the patents in suit.

1.   *'292 patent*. As AmberWave observes, the issue of infringement contentions (running in both directions) concerning this patent was previously before the Court on December 15, 2005. At that time, AmberWave undertook to supplement its prior infringement response, which it did on December 19, 2005 (*see* Ex. E to 5/01/06 Ltr.); Intel then supplemented its non-infringement response on January 9, 2006 (*see* Ex. D to 5/01/06 Ltr.). Contrary to AmberWave's assertions, Intel's supplemental response specifically identifies each limitation of the patent claims that Intel contends its products do not meet, together with an explanation of the manner in which the limitation is not met. This information is supplied in at least as much if not greater specificity than AmberWave has provided with respect to its infringement contentions. In its supplemental response, AmberWave merely defines a

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
Page 2

hypothetical process – the "Strained Silicon Process" – that it contends Intel is using, based upon a *"see generally"* cite to ten published articles. AmberWave fails, however, to describe that process in detail or to explain how it allegedly infringes. Its "claims chart" is little more than a repetition of the various limitations of the patent claims, followed by conclusory assertions that each limitation is met. AmberWave proffers no facts, data or technical analysis to support these conclusions, and makes no attempt to connect the specific structures of each of the accused products to particular limitations of the patent claims. Intel should not, we respectfully submit, be required to rebut AmberWave's infringement claims in greater detail when those claims remain inchoate at best.

Indeed, in its supplemental response, AmberWave asserts an objection to Intel's interrogatory on the grounds that the patent claims have not yet been construed and discovery is ongoing, while reserving the right to supplement its response further at a later time. *See* Ex. E to 5/01/06 Ltr. at 4. Accepting that AmberWave is presently unable in good faith to state its contentions in greater detail, Intel respectfully submits that the more sensible approach is for the parties to supplement their respective responses sequentially at agreed times, after AmberWave has an opportunity to review Intel's highly confidential information. In all events, AmberWave has failed to show that further supplementation of contention interrogatories concerning infringement at this early stage will serve a useful or valid purpose. *See B. Braun Medical Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994) (burden on movant to show why early contention interrogatories will advance case); *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 338-39 (N.D. Cal. 1985) (same).

2.  *'632 and '371 patents*. Again, AmberWave's letter incorrectly describes the parties' respective positions. AmberWave's responses to Intel's interrogatories concerning infringement of these two patents are virtually identical to its '292 response. Apparently recognizing the deficiency of its responses, AmberWave agreed to supplement them before expecting Intel to supplement its responses. However, AmberWave has provided *no* supplemental response concerning the '632 patent. Its supplementation for the '371 patent consisted of the addition of a single, conclusory sentence. (AmberWave's purported explanation that this supplied the "only …specific piece of information" that Intel identified as "missing" from AmberWave's prior response is not a fair reading of the letter to which AmberWave cites (*see* Ex. J to 5/01/06 Ltr. at 1); the letter refers to that "piece of information" merely by way of example to demonstrate the general deficiency of AmberWave's responses.) Because AmberWave did not adequately supplement its responses, as it recognized it should and promised to do, Intel had no obligation to supplement its responses. In any event, the sensible solution is for AmberWave to supplement its responses after it begins to receive Intel's highly confidential documents, with Intel to supplement its responses a reasonable time thereafter.

3.  *Dependent claims*. Intel has not, as AmberWave claims, refused to respond to interrogatories concerning dependent claims. It is axiomatic that a dependent claim of a patent cannot be infringed unless the independent claim to which it relates is infringed. By referring to its contentions concerning the independent claims, Intel has fairly responded to the pertinent interrogatories based upon the information presently available to it.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Kent A. Jordan
Page 3

        4.    *Documents*.  In light of the fact that only a fraction of the documents to which the response refers have been produced to date, this is a non-issue.  Intel will comply with its obligations under Rule 33(d) to identify particular documents when it is able to do so.

        <u>Invalidity and Unenforceability Contentions</u>.  AmberWave is incorrect in contending that Intel has failed to particularize the "facts" supporting its legal defenses of invalidity in its responses to Interrogatory Nos. 1 and 11 (C.A. No. 05-301) and No. 4 (C.A. No. 05-837).

        1.    *'632 and '371 patents*.  Intel has provided AmberWave with a complete description of the relevant prior art currently known to it.  As the Court is well aware, determinations of anticipation and obviousness are conclusions that require expert testimony and, ultimately, turn on claim construction.  The detailed application of individual items of prior art to support these conclusions is therefore premature.  Indeed, even as it demands that Intel provide this type of evaluative answer, AmberWave continues to object to Intel's interrogatories on the ground that they are premature before claim construction.  *See* Ex. E to 5/01/06 Ltr. at 4.  Again, we respectfully propose that AmberWave should first describe its contentions and proposed claim construction in more specific detail, after which Intel will seasonably supplement its responses.  It is equally inappropriate for AmberWave to insist that Intel marshal the facts supporting its non-enablement and written description defenses without the benefit of fact discovery from AmberWave.

        2.    *'292 patent*.  Conceding the sufficiency of Intel's supplemental response in other respects, AmberWave now complains only that Intel should particularize those facts that might support a defense of prior invention.  However, AmberWave does not accurately describe Intel's position.  As Intel's response makes clear (*see* Ex. D. to 5/01/06 Ltr. at 57), the potential assertion of such a defense depends upon AmberWave's infringement and construction contentions, as well as evidence that is solely in AmberWave's possession.  Once AmberWave provides discovery and clarifies its positions in a meaningful manner, Intel will be able to analyze the applicability of the defense and will provide the supporting facts then known to it.

        3.    *Unenforceability*.  This is another non-issue.  While Intel has asserted an inequitable conduct defense to the '292 patent, as pleaded in Intel's Answer dated March 20, 2006, and as described in a supplemental response served on January 9, 2006, that defense is not presently directed to the '632 patent.  Although Intel reserves the right to assert such a defense if facts emerge to sustain it, the response AmberWave seeks to have supplemented is now moot.

        For the foregoing reasons, Intel respectfully requests that the Court deny AmberWave's application and instead direct the parties to supplement their responses to contention interrogatories sequentially, according to a schedule to be agreed by the parties.

Respectfully submitted,

Monté T. Squire (No. 4764)

cc:    Peter T. Dalleo, Clerk (By Hand)
        Jack B. Blumenfeld (By Hand)