# YOUNG CONAWAY STARGATT & TAYLOR, LLP

KAREN E. KELLER
DIRECT DIAL: (302) 571-6554
DIRECT FAX: (302) 576-3467
kkeller@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

September 22, 2006

**BY CM/ECF & HAND DELIVERY**
The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

Re:   *Intel Corporation v. AmberWave Systems Corporation,*
      Civil Action No. 05-301-KAJ Consol.

Dear Judge Jordan:

Intel Corporation ("Intel") respectfully seeks the Court's assistance in resolving two disputes between the parties.

**I.   Communications between AmberWave's Litigation and Prosecution Counsel**

The Protective Order governing the treatment of discovery materials produced in this action was entered on May 11, 2006. Whether AmberWave's litigation counsel could convey information disclosed by Intel in the course of discovery to AmberWave's patent prosecution counsel, and if so to what extent, was a critical issue throughout the seven months of protracted negotiation leading to that order. *See* Ex. A: September 21 letter from Chris Ridder to Alex Giza (summarizing the history of the protective order negotiations). In this action, AmberWave is demanding the production of Intel's most valuable and sensitive technical and business information. At the same time, it is prosecuting numerous patent applications in the U.S. Patent and Trademark Office. Intel was then, and is now, deeply concerned that AmberWave's litigation counsel will communicate information obtained in discovery concerning Intel's confidential processes and products under development for an improper purpose – namely, to enable AmberWave's prosecution counsel to try to draft new or amended patent claims that would specifically cover Intel's processes and products.

AmberWave responded to this concern by representing that AmberWave intended to provide its prosecution counsel with only a narrow subset of discovery materials that might be produced in this action. For example, during the March 23 teleconference with the Court, AmberWave represented that it intended to provide its prosecution counsel with prior art references for possible inclusion in information disclosure statements, in order to comply with its duty of candor to the PTO. *See* Ex. B: March 23, 2006 Tr. at 18:1 - 20:3. Based on these representations and pursuant to the Court's guidance, the parties agreed upon the form of a protective order that requires AmberWave's litigation counsel first to identify any material it proposes to send to its prosecution counsel, and then provides Intel with an opportunity to review and, if necessary, restrict the flow of such materials by designating them as confidential for that express purpose. *See* Ex. C: Protective Order, at ¶ 7(c).

Recently, however, Intel was shocked to learn that AmberWave's litigation counsel disclosed discovery materials produced in this case to its prosecution counsel before the Protective Order was entered. This came to light in a side comment contained deep in a letter from AmberWave's counsel

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
September 22, 2006
Page 2

concerning confidentiality designations.[1]  *See* Ex. D: September 6, 2006 letter from Andrew Weiss to Chris Ridder, at 2.  Intel immediately demanded that AmberWave provide more information about these disclosures.  Only a few days ago, AmberWave responded by revealing that its litigation counsel disclosed at least 35 discovery documents to its prosecution counsel between December 2005 and March 22, 2006 – the day before the hearing on this matter.  *See* Ex. E: September 20, 2006 letter from Alex Giza to Chris Ridder.  AmberWave failed to disclose these communications to the Court or Intel.  These documents include, *inter alia*, AmberWave's responses to contention interrogatories, in which AmberWave's litigation counsel describes its infringement theories.  As these theories were based, at least in part, on litigation counsel's review of confidential discovery material, these responses reflect and were inevitably informed by counsel's intimate familiarity with Intel's confidential information.

When asked to explain why its prosecution counsel needed access to such non-public information, AmberWave proffered no explanation.  Instead, AmberWave takes the position that, because the Protective Order was not yet entered when the materials were disclosed, its conduct could not violate that order.  *See* Ex. E: September 20, 2006 letter from Alex Giza to Chris Ridder.  This argument is tantamount to an admission of bad faith and of a violation of Local Rule 26.2.[2]  AmberWave knew that Intel strenuously objected to this type of communication.  While the parties were meeting and conferring over this dispute and before the Court had a chance to rule on it, AmberWave simply engaged in self-help and provided its prosecution counsel with the very information, including its infringement analyses of Intel's products and processes, that Intel contended should not be disclosed.  AmberWave cannot provide any good faith explanation for its failure to disclose these communications to the Court or Intel.

Under these circumstances, Intel submits that the only way to eliminate any future risk that AmberWave's patent prosecution counsel will misuse the contentions and analyses of its litigation counsel that are informed by their access to Intel's most sensitive confidential information is for a modification of the Protective Order to prohibit all communications between AmberWave's litigation and prosecution counsel, excepting only communications for the sole purpose of disclosing published prior art references identified in the litigation without comment and with full disclosure of such communications to Intel.

---

[1] This is not the only instance where AmberWave appears to have made improper disclosures to its prosecution counsel.  Nine months after this case commenced, after Intel had already produced a significant amount of confidential "attorneys eyes only" information, AmberWave suddenly withdrew a patent application that was ready to issue and amended the claims of the patent.  Although AmberWave represented that "no Irell & Manella employee *who has been exposed to information marked [AEO]* communicated with Goodwin Procter concerning the February 17 amendment to Application No. 10/774,890" and that "no Irell attorney who had access to Intel's attorneys' eyes only confidential information participated *in the amendment of claims* in that application" (emphasis added), AmberWave has steadfastly refused to state whether its litigation counsel communicated with its prosecution counsel about Application No. 10/774,890 prior to the amendment of the claims.  *See, e.g.,* Ex. F: March 27, 2006 letter from King to Sheasby; Ex. G: April 20, 2006 letter from King to Sheasby.

[2] Local Rule 26.2 limits the disclosure of any confidential documents produced by a party "to members and employees of the firm of trial counsel who have entered an appearance, and, where appropriate, have been admitted *pro hac vice*.  Such persons are under an obligation to keep such documents confidential and to use them *only for purposes of litigating the case*." L.R. 26.2 (emphasis added).  When confidential information under Local Rule 26.2 forms the basis for discovery responses and pleadings served in a case, it is antithetical to the spirit if not the letter of the rule to communicate such material beyond the limits imposed by the Local Rule 26.2.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
September 22, 2006
Page 3

## II. AmberWave Must Answer Intel's Specific Contention Interrogatories

Although this action has been pending for more than sixteen months, Intel is still struggling to ascertain why, precisely, AmberWave believes that Intel's products infringe the three AmberWave patents-in-suit. Intel has served numerous contention interrogatories in this action, each one more specific than the last, to which AmberWave has provided only vague, conclusory responses or no responses at all. As far back as September 19, 2005, Intel served an interrogatory requesting that AmberWave identify all facts supporting its contention that Intel infringes the '292 Patent. AmberWave's responses provided little more than a recitation of the asserted claim elements with general references to Intel processes. To try to cut through the verbiage, on January 27, 2006, Intel served more focused interrogatories requesting that AmberWave identify particular factual information relating to its contentions. *See* Ex. H: Relevant Portion of Intel's Fourth Set of Interrogatories. Intel went so far as to provide AmberWave with an image of an apparently accused device and asked AmberWave to show, by marking, where the allegedly infringing elements were located. *Id.* AmberWave responded that it could not answer these interrogatories without a laundry list of additional information. *See* Ex. I: Relevant Portion of AmberWave's Responses to the Fourth Set of Interrogatories (Int. No. 19). Even after Intel furnished copious technical information in response to AmberWave's document requests, AmberWave refused to supplement these responses.

Finally, on August 4, 2006, Intel served AmberWave with two more interrogatories, specifically seeking to learn facts concerning particular measurements of the concentrations of impurities at specific places in Intel's devices and of surface smoothness, which AmberWave must have performed to support its allegations that Intel products infringe the '292 and the '632 patents. *See* Ex. J: Relevant Portions of Intel's Sixth Set of Interrogatories. AmberWave refused to respond substantively to these as well, stating merely that the requested information will supposedly be provided in its expert reports. *See* Ex. K: Relevant Portions of AmberWave's Responses to Intel's Sixth Set of Interrogatories. AmberWave's refusal to provide the factual bases supporting its claims is unreasonable on its face. The performance of any such tests and measurements, as well as their results, are *facts* – not expert opinions – which Intel is entitled to know now in forming its own positions. AmberWave's refusal is particularly egregious in light of the extensive factual discovery it has obtained from Intel and the detailed responses it has received to its own contention interrogatories.[3] Intel is entitled to clear, unequivocal answers to its straightforward requests for the factual information particularized in these interrogatories. Accordingly, Intel respectfully requests that the Court enter an order compelling AmberWave to provide forthwith full and complete answers to Intel's Sixth Set of Interrogatories and to Interrogatory Nos. 19 and 20 in Intel's Fourth Set of Interrogatories.

Respectfully yours,

Karen E. Keller (No. 4489)

KEK/prt
Attachments
cc:    All Counsel of Record

---

[3] *See Struthers Scientific Int'l Corp. v. General Foods Corp.*, 51 F.R.D. 149, 153-54 (D. Del. 1970) (compelling a more complete interrogatory answer where plaintiff had already obtained substantial fact discovery).

DB01:2198655.1                                                                                                           062992.1002