# EXHIBIT A

SIMPSON THACHER & BARTLETT LLP

2550 HANOVER STREET
PALO ALTO, CA 94304
(650) 251-5000

FACSIMILE: (650) 251-5002

DIRECT DIAL NUMBER
(650) 251-5292

E-MAIL ADDRESS
cridder@stblaw.com

<u>VIA E-MAIL AND U.S. MAIL</u>                    September 21, 2006

Re:    AmberWave Systems Corp. v. Intel Corp.
       <u>Case No. 05-301-KAJ (consolidated)</u>

Alexander C.D. Giza
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276

Dear Alex:

I write in response to your letter of September 20, 2006.  Your letter mischaracterizes the circumstances under which subparagraph 7(c) of the Protective Order was negotiated.  As an initial matter, to suggest, as you do, that subparagraph 7(c) was belatedly added at Intel's request is flatly wrong.  Subparagraph 7(c) is a limited carve-out to a prosecution bar that had been the subject of many months of negotiation.  This carve-out provision was, in fact, insisted upon by AmberWave at the March 23, 2006 teleconference with Judge Jordan.  David Gindler represented to Judge Jordan that such a limited carve-out was necessary so that AmberWave could fulfill its legal obligation to disclose relevant prior art to the Patent and Trademark Office.  At that same teleconference, Intel expressed reservations about allowing such communications to occur.  Intel's preferred position would have been to disallow *all* communications between AmberWave's litigation and prosecution counsel.  Judge Jordan requested that the parties reach an agreeable compromise that would permit Intel to review and re-designate, if necessary, any materials that AmberWave sought to disclose to its prosecution counsel.  The limited carve-out to the prosecution bar provided for in subparagraph 7(c) was added at the insistence of AmberWave, not Intel, and represented an accommodation to address the specific concerns expressed by Mr. Gindler.

Furthermore, the substantive issue addressed by subparagraph 7(c)—the extent of permissible communications between AmberWave's litigation and patent prosecution counsel—had been the subject of negotiation for months.  Intel had repeatedly made clear its position that such communications must be either absolutely barred or strictly and narrowly circumscribed.  AmberWave can hardly suggest that it was unaware of Intel's concerns regarding communications between AmberWave's litigation and prosecution counsel prior to April 29, 2006, as your letter seems to infer.  Examination of the record of negotiations regarding the Protective Order entirely belies such an inference.  The following communications are examples of the voluminous evidence that AmberWave was fully aware of Intel's concerns since at least November of 2005:

NEW YORK        LOS ANGELES        WASHINGTON, D.C.        HONG KONG        LONDON        TOKYO

SIMPSON THACHER & BARTLETT LLP

Alexander C.D. Giza                    -2-                    September 21, 2006

- On November 23, 2005 Intel sent AmberWave a proposed Protective Order. Paragraph 6 of that proposal imposed a prosecution bar that would have placed highly restrictive limitations on Counsel of Record's ability to communicate with patent prosecution counsel.

- On December 5, 2005, AmberWave's counterproposal to Intel's November 23 draft sought to exclude certain communications between litigation and prosecution counsel from the prosecution bar embodied in Intel's proposal.

- On January 5, 2006 and again on January 21, 2006, Intel submitted a proposed draft of the Protective Order to AmberWave that contained a substantially similar prosecution bar to that in its November 23 draft.

- On February 5, 2006, AmberWave proposed a Protective Order containing language that would have permitted AmberWave's litigation counsel to engage in communications with AmberWave's patent prosecution counsel regarding AmberWave's pending patent applications.

- On February 9, 2006, Intel rejected this proposed language and reiterated its concern regarding communications between AmberWave's Counsel of Record and its patent prosecution counsel. Intel's objection to these communications was clearly spelled out in Patrick King's February 9 email to Jason Sheasby.

- On February 21, 2006, AmberWave again proposed a Protective Order containing language designed to permit communications between AmberWave's litigation and patent prosecution counsel.

- On March 10, 2006 and again on March 20, 2006, Intel submitted counterproposals which rejected AmberWave's proposed revisions.

The scope of the Protective Order's prosecution bar, and the corresponding ability of AmberWave's litigation counsel to communicate with its patent prosecution counsel, was the very issue before Judge Jordan at the March 23, 2006 teleconference. Significantly, on March 22, 2006, the day before the teleconference, AmberWave's litigation counsel provided its prosecution counsel with multiple documents created during this litigation. AmberWave failed to disclose to Intel or to Judge Jordan during the March 23 teleconference that, at that time, it had already submitted 30 documents generated in this litigation to its prosecution counsel, including AmberWave's infringement contentions. Those contentions discussed numerous features of Intel's products and were of necessity informed by AmberWave's access to Intel's Attorneys' Eyes Only material.

During the many months of negotiations leading up to the March 23, 2006 teleconference, AmberWave allowed Intel to believe that AmberWave was negotiating the scope of the Protective Order's prosecution bar in good faith and with full candor. Had Intel

SIMPSON THACHER & BARTLETT LLP

Alexander C.D. Giza                    -3-                    September 21, 2006

been aware that during the protracted negotiation process AmberWave was engaging in conduct that Intel was seeking to restrict, Intel would have moved the Court for relief much sooner.

       While we are willing to continue to meet and confer regarding this issue, we believe that your letter of September 20, 2006 evidences a fundamental disagreement regarding this issue. I am available for a meet and confer teleconference tomorrow, September 22, at 1:30 p.m.

                              Sincerely,

                              Chris K. Ridder

# EXHIBIT B

SHEET 1

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4   AMBERWAVE SYSTEMS CORPORATION,  :  CIVIL ACTION
                                     :
 5           Plaintiff,             :
                                     :
 6   v.                             :
                                     :
 7   INTEL CORPORATION,             :
                                     :
 8           Defendant.             :  NO. 05-301 (KAJ)

 9                        - - -

10                Wilmington, Delaware
             Thursday, March 23, 2006 at 2:00 p.m.
11                TELEPHONE CONFERENCE

12                        - - -

13   BEFORE:     HONORABLE KENT A. JORDAN, U.S.D.C.J.

14                        - - -
     APPEARANCES:
15

16           MORRIS NICHOLS ARSHT & TUNNELL
             BY:  JACK B. BLUMENFELD, ESQ.
17
                     and
18
             IRELL & MANELLA, LLP
19           BY:  DAVID I. GINDLER, ESQ., and
                  JASON G. SHEASBY, ESQ.
20               (Los Angeles, California)

21                  Counsel for AmberWave Systems
                    Corporation
22

23

24
                             Brian P. Gaffigan
25                           Registered Merit Reporter
```

SHEET 2

**2**

1  APPEARANCES:  (Continued)

2
   YOUNG CONAWAY STARGATT & TAYLOR
3     BY:  JOHN W. SHAW, ESQ.

4       and

5  SIMPSON THACHER & BARTLETT, LLP
   BY:  GEORGE M. NEWCOMBE, ESQ., and
6      PATRICK E. KING , ESQ.
    (Palo Alto, California)
7
    Counsel for Intel Corporation
8

9

10

11

12

13

14       - oOo -

15      P R O C E E D I N G S

16     (REPORTER'S NOTE:  The following telephone

17  conference was held in chambers, beginning at 2:00 p.m.)

18      THE COURT:  Hi, this is Judge Jordan.  Who do I

19  have on the line?

20      MR. BLUMENFELD:  Your Honor, it's Jack

21  Blumenfeld for AmberWave, the plaintiff now, along with

22  David Gindler and Jason Sheasby from Irell.

23      THE COURT:  All right.

24      MR. SHAW:  Good afternoon, Your Honor.  It's

25  John Shaw for Intel; and with me on the phone are George

**3**

1  Newcombe and Patrick King from Simpson Thacher.

2      THE COURT:  All right.  We've got Protective

3  Order Redux today, a subject we were talking over last

4  November.  And I've read the letters that you sent in to me

5  for today's call.  Let me just give you what I think are

6  the issues in play here and we'll go through them one by

7  one.

8      MR. SHEASBY:  Your Honor, if I may interrupt?

9      THE COURT:  Sure.

10      MR. SHEASBY:  There has been a partial

11  resolution to the dispute between the parties.  This is

12  Jason Sheasby for AmberWave.

13      THE COURT:  I'm glad you interrupted.  Tell me

14  what it is.

15      MR. SHEASBY:  There are two issues on the table.

16  One is the scope of the prosecution bar and one is how an

17  attorney substitute for prosecution bar can participate

18  in the reexamination.  The reexamination issue has been

19  resolved.  Intel and AmberWave have stipulate the neither

20  party is going to file reexamination on the patents-in-suit

21  and based on that, we are prepared to agree to Intel's more

22  stringent standard for participation and reexamination.

23      MR. NEWCOMBE:  No, no, no.  Excuse me.  This is

24  George Newcombe.  It's my understanding, judge, I agree with

25  Ms. Sheasby up to the point where those portions of the

**4**

1  protective order dealing with reexam just go out the

2  window.  They're not in the protective order at all.  Once

3  we take this off the table, it was my understanding that

4  this whole portion of the protective order goes out and we

5  are just left with the prosecution bar and how wide that

6  would be; but by stipping to neither party will put patents

7  in suit into reexam, that we would eliminate the entire

8  carve out.

9      THE COURT:  It sounds like you guys are not as

10  fully together as you thought on that.

11      MR. SHEASBY:  That appears to be the case.

12      THE COURT:  Well, I'll tell you what.  We won't

13  take that up today.  Hopefully, we won't have to take it up

14  on another occasion.

15      MR. GINDLER:  This is David Gindler for

16  AmberWave.  I think that issue is something we will be able

17  to resolve, and I think it need not be addressed further

18  today.

19      THE COURT:  All right.  Then let's talk about

20  the scope of the bar.  Who wants to take the lead?

21      MR. NEWCOMBE:  Your Honor, can I go first?  This

22  is George Newcombe for Intel.

23      THE COURT:  Fine.

24      MR. NEWCOMBE:  The problem and why we're

25  concerned about this issue is that we literally are talking

**5**

1  about the crown jewels of the Intel once we start turning

2  over all the internal designs and processes by which we make

3  our microprocessors to them.  The issue is as follows:  We

4  maintain that the bar should apply to all counsel of record,

5  period.  AmberWave believes it should only be counsel of

6  record who has reviewed the AEO material.  And the reason

7  we think that is inadequate is multiple fold, but the most

8  practical thing is that if you're on the team, if you are

9  on the litigation team, issues of infringement of claim

10  construction, of validity are all of necessity going to be

11  and should be driven by counsel's analysis of our most

12  sensitive materials.  I don't know how, whether or not

13  someone has actually looked at those documents but as part

14  of the team they're going to be exposed to that analysis.

15      If those people can then turn around and, as we

16  have found out that AmberWave has on the '890 application,

17  while we're negotiating this, put in additional amendments,

18  and that is one that may be in suit, and when we ask them in

19  a letter to say has anybody contacted, been in communication

20  with prosecution counsel over those amendments, the only

21  response back was no one who had reviewed AEO material has

22  been in contact.  And that doesn't make us very comfortable

23  because I don't think it's possible to separate the

24  analysis of the case, working on the case by virtue of who

25  has looked at AEO material and who is working on the case

SHEET 3

**6**

1  and therefore subjected to the kinds of deliberations and
2  analysis that will be driven — of necessity, could and
3  should be driven in the litigation by those materials.
4          And so we're very, very concerned by trying to
5  make this distinction over who has actually reviewed and not
6  reviewed the materials, and we believe that the bar should
7  be as to counsel of record, period. And if you look at
8  Brown Bag, where the balancing test is really over balancing
9  their ability to litigate the case which is completely
10  unaffected, they can litigate this case because we're saying
11  everybody on their team can have access to this and work as
12  they will to defend or prosecute the case.
13          And as to other patent prosecution work, that is
14  something which AmberWave has its own separate prosecution
15  counsel. They can go ahead and do anything they want but
16  there is no impact on the ability of Amberwave's litigation
17  counsel to litigate the case while still preventing them
18  from participating broadly, any of them, in patent
19  prosecution.
20          THE COURT: Why don't you speak to me for just a
21  moment, Mr. Newcombe, about the position they've taken and
22  which you haven't mentioned that there is some sort of
23  detrimental reliance that has been going on here. That they
24  were quiet for ten months and now they have people involved
25  and that's a problem.

**7**

1          MR. NEWCOMBE: I think that is actually a
2  misstatement of the record as follows, and I'll run through
3  the chronology with you.
4          Starting on November 23rd, which is right after
5  our previous conference, every draft of the protective
6  order that we sent them, back to November, had the language
7  applying the prosecution bar to all counsel of record.
8  AmberWave's draft they sent back to us on December 12th
9  actually contained our language on that.
10          The first time that the limitation on review
11  that was put in, now they say only the people who have
12  reviewed AEO material, was actually on February 5th. And
13  in response to that, we, in fact, said now we're getting
14  concerned by this caveat of just "reviewed." We expanded
15  the scope of the prosecution bar to be, to include "all
16  patent prosecutions, that field of semiconductor devices.
17          Then we learned that the '890 application was
18  in fact amended. We sent a letter saying, Have you
19  communicated with prosecution counsel? And the only
20  response we got back is only nobody who had reviewed our
21  AEO materials had communicated. So I think the chronology
22  does not support the claim that we have tried to sandbag
23  them here and there has been detrimental reliance. This
24  has been a position we staked out pretty clearly starting
25  November 23rd and going forward.

**8**

1          THE COURT: All right. Mr. Gindler, are you
2  going to be speaking own behalf of Mr. AmberWave?
3          MR. GINDLER: No, Mr. Sheasby will.
4          THE COURT: All right. Mr. Sheasby, go ahead,
5  sir. The ball is yours.
6          MR. SHEASBY: Sure. So I think it's important
7  exactly to clarify exactly what AmberWave's position is. If
8  litigation counsel is not subject to the prosecution bar,
9  they can't do the following: They can't review Intel
10  produced documents that are designated AEO, attorneys' eyes
11  only technical information. They can't review internally
12  produced memoranda at our firm, for example, that has within
13  it Intel attorneys' eyes only technical information. And
14  they can't discuss with people who are subject to the
15  prosecution bar Intel attorneys' eyes only technical
16  information.
17          THE COURT: I think I've got a pretty good
18  handle on your position. I need you to speak to the
19  specific position that your opponents have which is whether
20  it's being expressly discussed or not, if somebody who has
21  reviewed attorneys' eyes only information is sitting down
22  with somebody who is on the litigation team but whom you
23  have chosen to say, okay, no, you're not on the attorneys'
24  eyes only review list, and they are working together to
25  craft claim construction position and litigation positions,

**9**

1  when that person goes off to prosecute patents, they will
2  inevitably have acquired an understanding or a view that is
3  informed by the technical information that the other person
4  has reviewed.
5          That's, I take it to be, the heart of the
6  argument that is being pressed on me by your opponents and
7  that is the argument I need you to directly address.
8          MR. SHEASBY: Sure. There is no doubt people
9  who are not subject to the prosecution bar are going to be
10  able to play a limited role in this case. They're not going
11  to be able to discuss infringement theories with us. We
12  recognize that.
13          THE COURT: How does the other side know that,
14  though?
15          MR. SHEASBY: The other side knows it because
16  we are under protective order and we would be in Contempt of
17  this Court if I discussed attorneys' eyes only technical
18  information with a member of this team who was not under the
19  protective order.
20          THE COURT: I'm sorry. I might be talking past,
21  we may be talking past each other. I guess what I'm asking
22  is when you say we can't discuss infringement positions,
23  which is what I thought I heard you say a second ago, I
24  thought you had a position — and maybe I'm wrong. I should
25  maybe be quiet and hear more about what your position is,

SHEET 4

**10**

1  but I thought your position was people who had access to
2  attorneys' eyes only information and people who didn't could
3  in fact discuss infringement positions, could in fact
4  discuss claim construction issues, that that was going to
5  be a wide range and wide open discussion even if the person
6  who had attorneys' eyes only information wasn't permitted
7  to say, oh, I saw this document from Intel that revealed
8  such-and-such and such-and-such. But short of doing that
9  step, which they weren't permitted to do, they were allowed
10  to talk about what they thought the right positions were
11  going to be.
12      MR. SHEASBY:  Well, I think it's somewhere in
13  the middle, which is to say attorneys with access to the
14  information would need to self-censor even if the person
15  obviously not be able to disclose AEO technical information.
16      I will point out that the protective order
17  that they agreed to allows attorneys who have access to
18  attorneys' eyes only technical information to advise their
19  clients on those issues as well.  And so the point is that
20  certainly we would, there would be strategic discussions
21  potentially about this is the position we're taking on a
22  matter of validity let's say that we would have with people
23  who are not subject to the prosecution bar.  But that
24  discussion really has, doesn't implicate technical
25  information at all.  And so there would be no reason not

**11**

1  to be able to have that discussion.
2      THE COURT:  They're not contesting that piece;
3  right?  I mean when you say everybody agrees that there can
4  be some high level strategic discussion even with clients,
5  people who are not subject to the attorneys' eyes only
6  provision, that if I have understood right, that is some
7  high level strategic discussion.  Everybody agrees with
8  that; correct?
9      MR. NEWCOMBE:  Your Honor, I don't know what
10  that means.  It's not in the protective order.  I don't
11  know what language that he is referring to so our position
12  is pretty clear that there shouldn't be -- that litigation
13  counsel should be separate and apart from prosecution
14  counsel here, period.
15      MR. SHEASBY:  Your Honor, if I may interrupt.  I
16  think if you look at the case law on this subject, you will
17  see there is a common touchstone, even the cases that Intel
18  cites in its own papers, and what those cases say is that
19  attorneys on a litigation team have a choice.  They can
20  choose to view confidential information and be subject to
21  the prosecution bar, but they can choose not to view that
22  information and recognize that it's the role they're going
23  to be able to play in that litigation is limited.
24      I'm not aware of any case I don't think Intel
25  has cited any case that has said, per se, if you are on the

**12**

1  litigation team, you are subject to a prosecution bar.  And
2  I think that there is a basic reason for that, and it's one
3  of fairness, which is that AmberWave has put together a
4  litigation team and that litigation team includes members
5  who potentially are going to be subject to the prosecution
6  bar and have agreed to be or able to be and includes members
7  and members of our firm who are not able to agree to that.
8  And now 10 months into this litigation and four and-a-half
9  months after our previous hearing before this Court, they're
10  telling us everyone in your litigation team is subject to a
11  prosecution bar.
12      THE COURT:  Well, Mr. Sheasby, you heard Mr.
13  Newcombe tell me they've been telling you since last fall.
14      MR. SHEASBY:  Your Honor, I do not agree with
15  that.  In the protective order that the parties agreed to in
16  almost every -- on November 9th, the parties agreed to a
17  protective order and there are two outstanding issues:
18  participation of reexamination and challenge to experts.
19  Everything else was agreed to.  That form of protective
20  order, on November 8th, did not contain a per se bar such as
21  applied to all litigation counsel, regardless of whether
22  they received information.
23      For Mr. Newcombe, who did not even negotiate
24  the protective order, to suggest this issue was brought up
25  before November 8th or November 22nd is simply not accurate.

**13**

1  I had a phone conversation with Intel counsel this Sunday,
2  and it was this Sunday for the first time that Intel counsel
3  said to me, yes, we want it to apply to all litigation
4  counsel.
5      THE COURT:  I find this fascinating when I can
6  have people telling me as to historical facts diametrically
7  opposed things.  That nothing was said about this until last
8  weekend on the one side and the other side saying we've been
9  saying it for the last five months.  It's amazing.
10      MR. KING:  Your Honor, if I may interject here.
11  This is Patrick King for Intel on behalf of Intel who did
12  negotiate with Mr. Sheasby the protective order.  And Mr.
13  Newcombe is well aware what the protective orders we've
14  been exchanging say because he has copies of.  He has looked
15  through all of them and what he says is accurate.
16      The first time the idea of this being confined
17  to only two attorneys who reviewed the materials was
18  raised by Mr. Sheasby recently when he brought that to my
19  attention.  It alarmed me and I discussed it internally
20  with my team, including Mr. Newcombe and it brought into
21  focus the danger of the position they were taking.
22      THE COURT:  All right.
23      MR. SHEASBY:  Your Honor, I hate to interrupt
24  here.  I'd like to address one other issue which bothers me.
25      THE COURT:  Is this Mr. Sheasby?

SHEET 5

**14**

1　MR. SHEASBY: This is Mr. Sheasby.
2　THE COURT: Okay. Go ahead, sir.
3　MR. SHEASBY: That's Mr. Newcombe's
4　characterization of the recent activity in the '890
5　application. I just want to clarify something to make it
6　very clear, which is that no Irell attorney who had access
7　to Intel's attorneys' eyes only confidential information
8　participated in the amendment of claims in that application.
9　It's not just those who reviewed Intel's documents, it's
10　those who had any access to the information, full stop.
11　MR. NEWCOMBE: Your Honor, it's George Newcombe.
12　What bothers me here is this self-censored
13　concept that somehow lawyers are going to segregate in their
14　head.
15　THE COURT: All right. You know, I don't need
16　the further argument.
17　MR. NEWCOMBE: Thank you.
18　THE COURT: The parties' positions have been
19　effectively laid out in your submissions and statements here
20　on the teleconference have been of assistance. Let me tell
21　you what I'm going to do first and then I'll tell you why
22　I'm doing it.
23　I'm sorry you couldn't come to a resolution of
24　this, but I'm coming down on the side of Intel in this. And
25　the reason is I don't agree that there is a fair or an

**15**

1　appropriate way to draw the line AmberWave wants to draw,
2　even people acting in the best of faith in self-censorship.
3　Now, it may well be that this is the first time
4　this has ever been done, but I've got to say I think it may
5　be the first time that anybody has tried to put the position
6　in quite the fashion it's been put in this case. In the
7　past when I have seen this, and I have seen it on a regular
8　basis, the context has been in-house lawyers who want to
9　be working with outside counsel and have an access to
10　everything and that is where the bar has frequently and
11　regularly come up.
12　I've not had occasion to see a case where
13　somebody with the outside counsel wanted to parse it as
14　finely as AmberWave does and says, well, we want some people
15　in outside counsels' firm to have access and some people on
16　outside counsels' firm not to have access and those on the
17　outside that are doing it to have them still be able to
18　prosecute.
19　In the CEA case, it's true that I had a
20　situation something like that where they had specifically a
21　specific set of people. And you folks have cited this case
22　back to me. I've gone back and looked at it again. That
23　was a circumstance where there was a set of people and they
24　wanted them to have access to attorneys' eyes only
25　information and still be able to prosecute patents. And

**16**

1　to me, that was pretty straightforward. I said no.
2　Now, here is a circumstance where in advance
3　people don't really know what going to happen perhaps but
4　inevitably, you know, I just think Intel has the better side
5　of this argument. If you are fully informed by the
6　technical information of your opponent and you are sitting
7　down talking about how to frame up an infringement position,
8　a claim construction position, something like that, how are
9　you in your mind going to say, well, I can't say that
10　sentence to my partner or I can't utter this idea to them
11　because it's informed by technical information that I have
12　had access to. I just don't think you can slice it that
13　carefully or that fine. It won't work. And in some way, it
14　gives a benefit to prosecuting counsel that ought not be
15　there. It just shouldn't.
16　It's an artificial world we have to step into
17　when we're dealing in a case like this where one side gets
18　into the other side's information in a way that no sensible
19　businessperson would ever permit but for the fact we have a
20　dispute and so we have to allow that. So we put people in
21　the bubble and they've got to stay in the bubble. And I'm
22　not comfortable saying, okay, I trust you. Not because I
23　don't trust you in the sense that I think anybody would be
24　dishonest but I don't think anybody should be trusted to try
25　to separate out in their own brain what they can and can't

**17**

1　say to their own partners and associates in the context of
2　litigation. They ought to be able to have free and open
3　discussion. As they're doing that, some of this information
4　may inevitably leak out.
5　So I'm going to go ahead and say if you guys
6　can't work it out, I'm working it out for you this way.
7　Intel gets it the way it wants it. If somebody is going
8　to work on this litigation, this litigation which is
9　informed by the attorneys' eyes only material, they're not
10　prosecuting patents. If they're not going to be working on
11　this case, then they can do whatever they want with respect
12　to this field. But if they've got access to this Intel
13　stuff, they can't be working in this field.
14　Now, I regret that people seem to have a
15　different view on who knew what when about these positions
16　and I can't sort that out right now. I don't know who
17　has got the better of that. But that's how we're going to
18　handle it.
19　Now, you folks have already resolved the other
20　piece of it that you put before me. I've resolved this
21　piece of it. You ought to be able to get a protective order
22　in place and actually get it to me for signature now, I
23　hope.
24　MR. GINDLER: Your Honor, this is David Gindler
25　for AmberWave. I wanted to raise just one issue. And the

SHEET 6

18

1  issue is the following:  During the course of this case,
2  Intel has identified many, many pieces of prior art to us as
3  being potentially relevant to the patents-in-suit and maybe
4  others.  So we have possession of this information.  We get
5  informed from time to time that a new patent is going to
6  issue by the Patent Office.
7        I think that AmberWave has an obligation, if it
8  has possession of prior art that could be relevant, to make
9  sure that prior art is submitted to the Patent Office.
10  Well, that is prior art that is being given to us by Intel
11  in the course of the litigation.  And we want to make sure
12  that our client, the assignee of the patent rights, complies
13  with all of its obligations in the Patent Office to insure
14  that any prior art that could conceivably relevant and
15  important to an examiner gets submitted.
16        So my concern right now is just one very narrow
17  one, which is that we're getting lots of prior art cited to
18  us.  I'm going to guess we're going to get a lot more prior
19  art cited to us.  And we may look at that, we may be told by
20  our client, hey, the patent X is going to issue.  We have a
21  notice of allowance it's going to issue in five months.
22        We take a look at the claims.  We take a look at
23  the prior art that we have in our possession and we say,
24  holy smokes.  We have some things here that we think that,
25  on balance, it would be a better thing if we gave that to

19

1  the Patent Office.  And I think we want to be in a position
2  to be able to tell the prosecution counsel we have been
3  communicating by Intel of the following pieces of prior art.  We
4  got them in the context of other patents but you've sent us
5  the allowed claims of this patent and we think 25 pieces of
6  this prior art conceivably might be considered relevant by
7  the examiner.  And we want to be able to put that into the
8  hands of our prosecution counsel to make sure that AmberWave
9  complies to the letter with its obligations to the Patent
10  Office.
11        THE COURT:  Mr. Newcombe.
12        MR. NEWCOMBE:  Your Honor, this is the first
13  time this concern has been raised, so we're reacting to it
14  on the fly.
15        I don't like the concept of there being contact
16  between the two camps.  And maybe we need to flesh this out
17  between us a bit to find out exactly what they mean and what
18  is involved.  Literally, this is the first time, at least to
19  my knowledge, this concept, this particular concept has been
20  raised.
21        MR. SHEASBY:  Your Honor, this is Jason Sheasby.
22  I can just speak for -- I think there is two sets of
23  partners and two sets of associates on the call and I think
24  the associates need to maybe connect better with their
25  partners.  But Pat King and I, in the form of protective

20

1  order you have, have a carve out in place so that
2  AmberWave counsel would be able to submit information
3  for the information disclosure statement.
4        THE COURT:  All right.
5        MR. NEWCOMBE:  So in other words, Jason, you're
6  saying this problem has been resolved?
7        MR. SHEASBY:  This problem has been resolved.
8        MR. NEWCOMBE:  Then I will stop talking.
9        THE COURT:  Well, you know what?  Now, it might
10  have just gotten unresolved by surfacing it here.  I hope
11  not.  You ought to go back and have your discussions.  I
12  don't want anything that I have said on this call in
13  relation to prosecuting patents to prevent you from having
14  sensible compromises in relation to an issue like the one
15  that has just been related to me.
16        MR. NEWCOMBE:  Your Honor, this is George
17  Newcombe.  I think this gets back to my understanding
18  which was the stipulation that we presented to Your Honor
19  addressed the entire issue of the communication with respect
20  to prior art because that carve out was supposed to
21  completely go.  And we'll continue this discussion but I
22  think that is the basis of maybe some of the confusion here.
23        THE COURT:  Well, you guys see if you can work
24  it out.  Let me say that if you can't work it out, I thought
25  you were on sort of the right track before, both of you,

21

1  with the compromise you've been working toward, even
2  though you weren't able to come to "yes" about how many
3  communications you could have.  But if you can't work that
4  out because there is an issue like his that one side thinks
5  still has to have at least a bit of a door open on, you
6  ought to go back and take a look at the progress you had
7  already made and not throw all that out the window.
8        All right.  Well, I'm sorry to hear that we're
9  not quite on the same page where we thought we were and yet
10  I'm not able to help you resolve it because there is not a
11  point on it at this stage.  So you guys take the piece that
12  you have got resolved and the piece that you haven't and see
13  if you can't come up with a compromise that addresses
14  everybody's concern adequately and get me something in
15  writing.  If you can't, let's get on the phone promptly and
16  get this done so we've got a protective order and moving
17  forward.  All right?
18        MR. NEWCOMBE:  Yes, Your Honor.
19        THE COURT:  All right.  Thanks for your time.
20        (Unidentified speaker):  Your Honor?
21        (Telephone conference ends at 2:30 p.m.)
22
23
24
25

'
**'890** [3] - 5:16, 7:17, 14:4

**0**

**05-301** [1] - 1:8

**1**

**10** [1] - 12:8
**12th** [1] - 7:8

**2**

**2005** [1] - 1:10
**22nd** [1] - 12:25
**23** [1] - 1:10
**23rd** [2] - 7:4, 7:25
**25** [1] - 19:5
**2:00** [2] - 1:10, 2:17
**2:30** [1] - 21:21

**5**

**5th** [1] - 7:12

**8**

**8th** [2] - 12:20, 12:25

**9**

**9th** [1] - 12:16

**A**

**ability** [2] - 6:9, 6:16
**able** [17] - 4:16, 9:10, 9:11, 10:15, 11:1, 11:23, 12:6, 12:7, 15:17, 15:25, 17:2, 17:21, 19:2, 19:7, 20:2, 21:2, 21:10
**access** [12] - 6:11, 10:1, 10:13, 10:17, 14:6, 14:10, 15:9, 15:15, 15:16, 15:24, 16:12, 17:12
**accurate** [2] - 12:25, 13:15
**acquired** [1] - 9:2
**acting** [1] - 15:2
**Action** [1] - 1:4
**activity** [1] - 14:4
**additional** [1] - 5:17
**address** [2] - 9:7, 13:24

**addressed** [2] - 4:17, 20:19
**addresses** [1] - 21:13
**adequately** [1] - 21:14
**advance** [1] - 16:2
**advise** [1] - 10:18
**Aeo** [7] - 5:6, 5:21, 5:25, 7:12, 7:21, 8:10, 10:15
**afternoon** [1] - 2:24
**ago** [1] - 9:23
**agree** [5] - 3:21, 3:24, 12:7, 12:14, 14:25
**agreed** [5] - 10:17, 12:6, 12:15, 12:16, 12:19
**agrees** [2] - 11:3, 11:7
**ahead** [4] - 6:15, 8:4, 14:2, 17:5
**alarmed** [1] - 13:19
**allow** [1] - 16:20
**allowance** [1] - 18:21
**allowed** [2] - 10:9, 19:5
**allows** [1] - 10:17
**almost** [1] - 12:16
**Alto** [1] - 2:6
**amazing** [1] - 13:9
**Amberwave** [17] - 1:4, 1:21, 2:21, 3:12, 3:19, 4:16, 5:5, 5:16, 6:14, 8:2, 12:3, 15:1, 15:14, 17:25, 18:7, 19:8, 20:2
**Amberwave's** [3] - 6:16, 7:8, 8:7
**amended** [1] - 7:18
**amendment** [1] - 14:8
**amendments** [2] - 5:17, 5:20
**analysis** [4] - 5:11, 5:14, 5:24, 6:2
**and-a-half** [1] - 12:8
**Angeles** [1] - 1:20
**apart** [1] - 11:13
**Appearances** [2] - 1:14, 2:1
**application** [4] - 5:16, 7:17, 14:5, 14:8
**applied** [1] - 12:21
**apply** [2] - 5:4, 13:3
**applying** [1] - 7:7
**appropriate** [1] - 15:1
**argument** [4] - 9:6, 9:7, 14:16, 16:5
**Arsht** [1] - 1:16
**art** [11] - 18:2, 18:8, 18:9, 18:10, 18:14, 18:17, 18:19, 18:23, 19:3, 19:6, 20:20

**artificial** [1] - 16:16
**assignee** [1] - 18:12
**assistance** [1] - 14:20
**associates** [3] - 17:1, 19:23, 19:24
**attention** [1] - 13:19
**attorney** [2] - 3:17, 14:6
**attorneys** [4] - 10:13, 10:17, 11:19, 13:17
**attorneys'** [13] - 8:10, 8:13, 8:15, 8:21, 8:23, 9:17, 10:2, 10:6, 10:18, 11:5, 14:7, 15:24, 17:9
**aware** [2] - 11:24, 13:13

**B**

**Bag** [1] - 6:8
**balance** [1] - 18:25
**balancing** [2] - 6:8
**ball** [1] - 8:5
**bar** [18] - 3:16, 3:17, 4:5, 4:20, 5:4, 6:6, 7:7, 7:15, 8:8, 8:15, 9:9, 10:23, 11:21, 12:1, 12:6, 12:11, 12:20, 15:10
**Bartlett** [1] - 2:5
**based** [1] - 3:21
**basic** [1] - 12:2
**basis** [2] - 15:8, 20:22
**beginning** [1] - 2:17
**behalf** [2] - 8:2, 13:11
**believes** [1] - 5:5
**benefit** [1] - 16:14
**best** [1] - 15:2
**better** [6] - 16:4, 17:17, 18:25, 19:24
**between** [3] - 3:11, 19:16, 19:17
**bit** [2] - 19:17, 21:5
**Blumenfeld** [3] - 1:16, 2:20, 2:21
**bothers** [2] - 13:24, 14:12
**brain** [1] - 16:25
**Brian** [1] - 1:24
**broadly** [1] - 6:18
**brought** [3] - 12:24, 13:18, 13:20
**Brown** [1] - 6:8
**bubble** [2] - 16:21
**businessperson** [1] - 16:19

**C**

**California** [2] - 1:20, 2:6
**camps** [1] - 19:16
**carefully** [1] - 16:13
**carve** [3] - 4:8, 20:1, 20:20
**case** [19] - 4:11, 5:24, 5:25, 6:9, 6:10, 6:12, 6:17, 9:10, 11:16, 11:24, 11:25, 15:6, 15:12, 15:19, 16:21, 16:17, 17:11, 18:1
**cases** [2] - 11:17, 11:18
**caveat** [1] - 7:14
**Cea** [1] - 15:19
**censor** [1] - 10:14
**censored** [1] - 14:12
**censorship** [1] - 15:2
**certainly** [1] - 10:20
**challenge** [1] - 12:18
**chambers** [1] - 2:17
**characterization** [1] - 14:4
**choice** [1] - 11:19
**choose** [2] - 11:20, 11:21
**chosen** [1] - 8:23
**chronology** [2] - 7:3, 7:21
**circumstance** [2] - 15:23, 16:2
**cited** [4] - 11:25, 15:21, 18:17, 18:19
**cites** [1] - 11:18
**Civil** [1] - 1:4
**claim** [5] - 5:9, 7:22, 8:25, 10:4, 16:8
**claims** [3] - 14:8, 18:22, 19:5
**clarify** [2] - 8:7, 14:5
**clear** [2] - 11:12, 14:6
**clearly** [1] - 7:24
**client** [2] - 18:12, 18:20
**clients** [2] - 10:19, 11:4
**comfortable** [2] - 5:22, 16:22
**coming** [1] - 14:24
**common** [1] - 11:17
**communicated** [2] - 7:19, 7:21
**communication** [2] - 5:19, 20:19
**communications** [1] - 21:3
**completely** [2] - 6:9,

20:21
**complies** [2] - 18:12, 19:9
**compromise** [2] - 21:1, 21:13
**compromises** [1] - 20:14
**Conaway** [1] - 2:2
**conceivably** [2] - 18:14, 19:6
**concept** [4] - 14:13, 19:15, 19:19
**concern** [3] - 18:16, 19:13, 21:14
**concerned** [3] - 4:25, 6:4, 7:14
**Conference** [1] - 1:11
**conference** [3] - 2:17, 7:5, 21:21
**confidential** [2] - 11:20, 14:7
**confined** [1] - 13:16
**confusion** [1] - 20:22
**connect** [1] - 19:24
**considered** [1] - 19:6
**construction** [4] - 5:10, 8:25, 10:4, 16:8
**contact** [2] - 5:22, 19:15
**contacted** [1] - 5:19
**contain** [1] - 12:20
**contained** [1] - 7:9
**Contempt** [1] - 9:16
**contesting** [1] - 11:2
**context** [3] - 15:8, 17:1, 19:4
**continue** [1] - 20:21
**Continued** [1] - 2:1
**conversation** [1] - 13:1
**copies** [1] - 13:14
**Corporation** [4] - 1:4, 1:7, 1:21, 2:7
**correct** [1] - 11:8
**counsel** [21] - 5:4, 5:5, 5:20, 6:7, 6:15, 6:17, 7:7, 7:19, 8:8, 11:13, 11:14, 12:21, 13:1, 13:2, 13:4, 15:9, 15:13, 16:14, 19:2, 19:8, 20:2
**Counsel** [2] - 1:21, 2:7
**counsel's** [1] - 5:11
**counsels'** [2] - 15:15, 15:16
**course** [2] - 18:1, 18:11
**Court** [3] - 1:1, 2:18, 2:23, 3:2, 3:9, 3:13,

4:9, 4:12, 4:19, 4:23, 6:20, 8:1, 8:4, 8:17, 9:13, 9:17, 9:20, 11:2, 12:9, 12:12, 13:5, 13:22, 13:25, 14:2, 14:15, 14:18, 19:11, 20:4, 20:9, 20:23, 21:19
craft [1] - 8:25
crown [1] - 5:1

**D**

danger [1] - 13:21
David [4] - 1:19, 2:22, 4:15, 17:24
dealing [2] - 4:1, 16:17
December [1] - 7:8
defend [1] - 6:12
Defendant [1] - 1:8
Delaware [2] - 1:2, 1:10
deliberations [1] - 6:1
designated [1] - 8:10
designs [1] - 5:2
detrimental [2] - 6:23, 7:23
devices [1] - 7:16
diametrically [1] - 13:6
different [1] - 17:15
directly [1] - 9:7
disclose [1] - 10:15
disclosure [1] - 20:3
discuss [5] - 8:14, 9:11, 9:22, 10:3, 10:4
discussed [3] - 8:20, 9:17, 13:19
discussion [7] - 10:5, 10:24, 11:1, 11:4, 11:7, 17:3, 20:21
discussions [2] - 10:20, 20:11
dishonest [1] - 16:24
dispute [2] - 3:11, 16:20
distinction [1] - 6:5
District [2] - 1:1, 1:2
document [1] - 10:7
documents [3] - 5:13, 8:10, 14:9
done [2] - 15:4, 21:16
door [1] - 21:5
doubt [1] - 9:8
down [3] - 8:21, 14:24, 16:7
draft [2] - 7:5, 7:8
draw [2] - 15:1

driven [3] - 5:11, 6:2, 6:3
During [1] - 18:1

**E**

effectively [1] - 14:19
eliminate [1] - 4:7
ends [1] - 21:21
entire [2] - 4:7, 20:19
Esq [5] - 1:16, 1:19, 1:19, 2:3, 2:5, 2:6
exactly [3] - 8:7, 19:17
examiner [2] - 18:15, 19:7
example [1] - 8:12
exchanging [1] - 13:14
Excuse [1] - 3:23
expanded [1] - 7:14
experts [1] - 12:18
exposed [1] - 5:14
expressly [1] - 8:20
eyes [13] - 8:10, 8:13, 8:15, 8:21, 8:24, 9:17, 10:2, 10:6, 10:18, 11:5, 14:7, 15:24, 17:9

**F**

fact [5] - 7:13, 7:18, 10:3, 16:19
facts [1] - 13:6
fair [1] - 14:25
fairness [1] - 12:3
faith [1] - 15:2
fall [1] - 12:13
fascinating [1] - 13:5
fashion [1] - 15:6
February [1] - 7:12
field [2] - 7:16, 17:12, 17:13
file [1] - 3:20
fine [1] - 16:13
Fine [1] - 4:23
finely [1] - 15:14
firm [4] - 8:12, 12:7, 15:15, 15:16
first [5] - 4:21, 7:10, 13:2, 13:16, 14:21, 15:3, 15:5, 19:12, 19:18
five [2] - 13:9, 18:21
flesh [1] - 19:16
fly [1] - 19:14
focus [1] - 13:21
fold [1] - 5:7
folks [2] - 15:21, 17:19

following [4] - 2:16, 8:9, 18:1, 19:3
follows [2] - 5:3, 7:2
form [2] - 12:19, 19:25
forward [2] - 7:25, 21:17
four [1] - 16:5
frame [1] - 16:7
free [1] - 17:2
frequently [1] - 15:10
full [1] - 14:10
fully [2] - 4:10, 16:5

**G**

Gaffigan [1] - 1:24
George [5] - 2:5, 2:25, 3:24, 4:22, 14:11, 20:16
Gindlin [8] - 1:19, 2:22, 4:15, 8:1, 8:3, 17:24
given [1] - 18:10
glad [1] - 3:13
guess [2] - 9:21, 18:18
guys [4] - 4:9, 17:5, 20:23, 21:11

**H**

half [1] - 12:8
handle [2] - 8:18, 17:18
hands [1] - 19:8
hate [1] - 13:23
head [1] - 14:14
hear [2] - 9:25, 21:8
heard [2] - 9:23, 12:12
hearing [1] - 12:9
heart [1] - 9:5
held [1] - 2:17
help [1] - 21:10
Hi [1] - 2:18
high [2] - 11:4, 11:7
historical [1] - 13:6
holy [1] - 18:24
Honor [17] - 2:20, 2:24, 3:8, 4:21, 11:9, 11:15, 12:14, 13:10, 13:23, 14:11, 17:24, 19:12, 19:21, 20:16, 20:18, 21:18, 21:20
Honorable [1] - 1:13
hope [2] - 17:23, 20:10
Hopefully [1] - 4:13
house [1] - 15:8

**I**

idea [2] - 13:16, 16:10
identified [1] - 18:2
impact [1] - 6:16
implicate [1] - 10:24
important [2] - 8:6, 18:15
in-house [1] - 15:8
inadequate [1] - 5:7
include [1] - 7:15
includes [2] - 12:4, 12:6
including [1] - 13:20
inevitably [3] - 9:2, 16:4, 17:4
information [25] - 8:11, 8:13, 8:16, 8:21, 9:3, 9:18, 10:2, 10:6, 10:14, 10:15, 10:16, 10:25, 11:20, 11:22, 12:22, 14:7, 14:10, 15:25, 16:6, 16:11, 16:16, 17:3, 18:4, 20:2, 20:3
informed [3] - 9:3, 16:5, 16:11, 17:9, 18:5, 19:3
infringement [5] - 5:9, 9:11, 9:22, 10:3, 16:7
insure [1] - 18:13
Intel [23] - 1:17, 2:7, 2:25, 3:19, 4:22, 5:1, 8:9, 8:13, 8:15, 10:7, 11:17, 11:24, 13:1, 13:2, 13:11, 14:24, 16:4, 17:7, 17:12, 18:2, 18:10, 19:3
Intel's [3] - 3:21, 14:7, 14:9
interject [1] - 13:10
internal [1] - 5:2
internally [2] - 8:11, 13:19
interrupt [3] - 3:8, 11:15, 13:23
interrupted [1] - 3:13
involved [2] - 6:24, 19:18
Irell [5] - 1:18, 2:22, 14:6
issue [14] - 3:18, 4:16, 4:25, 5:3, 12:24, 13:24, 17:25, 18:1, 18:6, 18:20, 18:21, 20:14, 20:19, 21:4
issues [5] - 3:6, 3:15, 5:9, 10:4, 10:19, 12:17

**J**

Jack [2] - 1:16, 2:20
Jason [5] - 1:19, 2:22, 3:12, 19:21, 20:5
jewels [1] - 5:1
John [2] - 2:3, 2:25
Jordan [2] - 1:13, 2:18
judge [1] - 3:24
Judge [1] - 2:18

**K**

Kaj [1] - 1:8
Kent [1] - 1:13
kinds [1] - 6:1
King [5] - 2:6, 3:1, 13:10, 13:11, 19:25
knowledge [1] - 19:19
knows [1] - 9:15

**L**

laid [1] - 14:19
language [3] - 7:6, 7:9, 11:11
last [4] - 3:3, 12:13, 13:7, 13:9
law [1] - 11:16
lawyers [2] - 14:13, 15:8
lead [1] - 4:20
leak [1] - 17:4
learned [1] - 7:17
least [2] - 19:18, 21:5
left [1] - 4:5
letter [3] - 5:19, 7:18, 19:9
letters [1] - 3:4
level [2] - 11:4, 11:7
limitation [1] - 7:10
limited [2] - 9:10, 11:23
line [2] - 2:19, 15:1
list [1] - 8:24
literally [1] - 4:25
Literally [1] - 19:18
litigate [5] - 6:9, 6:10, 6:17
litigation [20] - 5:9, 6:3, 6:16, 8:8, 8:22, 8:25, 11:12, 11:19, 11:23, 12:1, 12:4, 12:8, 12:10, 12:21, 13:3, 17:2, 17:8, 18:11
Litz [2] - 1:18, 2:5
look [5] - 6:7, 11:16, 18:19, 18:22, 21:6

looked [4] - 5:13, 5:25, 13:14, 15:22
Los [1] - 1:20

**M**

maintain [1] - 5:4
Manella [1] - 1:18
March [1] - 1:10
material [5] - 5:6, 5:21, 5:25, 7:12, 17:9
materials [5] - 5:12, 6:3, 6:6, 7:21, 13:17
matter [1] - 10:22
mean [2] - 11:3, 19:17
means [1] - 11:10
member [1] - 9:18
members [3] - 12:4, 12:6, 12:7
memoranda [1] - 8:12
mentioned [1] - 6:22
Merit [1] - 1:25
microprocessors [1] - 5:3
middle [1] - 10:13
might [3] - 9:20, 19:6, 20:9
mind [1] - 16:9
misstatement [1] - 7:2
moment [1] - 6:21
months [5] - 6:24, 12:8, 12:9, 13:9, 18:21
Morris [1] - 1:16
most [2] - 5:7, 5:11
moving [1] - 21:16
multiple [1] - 5:7

**N**

narrow [1] - 18:16
necessity [2] - 5:10, 6:2
need [7] - 4:17, 8:16, 9:7, 10:14, 14:15, 19:16, 19:24
negotiate [2] - 12:23, 13:12
negotiating [1] - 5:17
new [1] - 18:5
Newcombe [24] - 2:5, 3:1, 3:23, 3:24, 4:21, 4:22, 4:24, 6:21, 7:1, 11:9, 12:13, 12:23, 13:13, 13:20, 14:11, 14:17, 19:11, 19:12, 20:5, 20:8, 20:16, 20:17, 21:18

Newcombe's [1] - 14:3
Nichols [1] - 1:16
nobody [1] - 7:20
Note [1] - 2:16
nothing [1] - 13:7
notice [1] - 18:21
November [3] - 3:4, 7:4, 7:6, 7:25, 12:16, 12:20, 12:25

**O**

obligation [1] - 18:7
obligations [2] - 18:13, 19:9
obviously [1] - 10:15
occasion [2] - 4:14, 15:12
Office [5] - 18:6, 18:9, 18:13, 19:1, 19:10
Once [1] - 4:2
once [1] - 5:1
one [14] - 3:6, 3:7, 3:16, 5:18, 5:21, 12:2, 13:8, 13:24, 16:17, 17:25, 18:16, 18:17, 20:14, 21:4
One [1] - 3:16
ooo [1] - 2:14
open [3] - 10:5, 17:2, 21:5
opponent [1] - 16:6
opponents [2] - 8:19, 9:6
opposed [1] - 13:7
order [16] - 4:1, 4:2, 4:4, 7:6, 9:16, 9:19, 10:16, 11:10, 12:15, 12:17, 12:20, 12:24, 13:12, 17:21, 20:1, 21:16
Order [1] - 3:3
orders [1] - 13:13
ought [5] - 16:14, 17:2, 17:21, 20:11, 21:6
outside [5] - 15:9, 15:13, 15:15, 15:16, 15:17
outstanding [1] - 12:17
own [5] - 6:14, 8:2, 11:18, 16:25, 17:1

**P**

page [1] - 21:9
Palo [1] - 2:8
papers [1] - 11:18

parse [1] - 15:13
part [1] - 5:13
partial [1] - 3:10
participate [1] - 3:17
participated [1] - 14:8
participating [1] - 6:18
participation [2] - 3:22, 12:18
particular [1] - 19:19
parties [3] - 3:11, 12:15, 12:16
parties' [1] - 14:18
partner [1] - 16:10
partners [3] - 17:1, 19:23, 19:25
party [2] - 3:20, 4:6
past [3] - 9:20, 9:21, 15:7
Pat [1] - 19:25
patent [7] - 6:13, 6:18, 7:16, 18:5, 18:12, 18:20, 19:5
Patent [5] - 18:6, 18:9, 18:13, 19:1, 19:9
patents [8] - 3:20, 4:6, 9:1, 15:25, 17:10, 18:3, 19:4, 20:13
patents-in-suit [3] - 3:20, 18:3
Patrick [3] - 2:6, 3:1, 3:11
people [18] - 5:15, 6:24, 7:11, 8:14, 9:8, 10:1, 10:2, 10:22, 11:5, 13:6, 15:2, 15:14, 15:15, 15:21, 15:23, 16:3, 16:20, 17:14
per [2] - 11:25, 12:20
perhaps [1] - 18:3
period [3] - 5:5, 6:7, 11:14
permit [1] - 16:19
permitted [2] - 10:6, 10:9
person [3] - 9:1, 9:3, 10:5
phone [3] - 2:25, 13:1, 21:15
piece [3] - 11:2, 17:20, 17:21, 21:11, 21:12
pieces [3] - 18:2, 19:3, 19:5
place [2] - 17:22, 20:1
Plaintiff [1] - 1:5
plaintiff [1] - 2:21
play [3] - 3:6, 9:10, 11:23
Pm [3] - 1:10, 2:17,

21:21
point [4] - 3:25, 10:16, 10:19, 21:11
portion [1] - 4:4
portions [1] - 3:25
position [15] - 6:21, 7:24, 8:7, 8:18, 8:19, 8:25, 9:24, 9:25, 10:1, 10:21, 11:11, 13:21, 15:5, 16:7, 16:8, 19:1
positions [5] - 8:25, 9:22, 10:3, 10:10, 14:18, 17:15
possession [3] - 18:4, 18:8, 18:23
possible [1] - 5:23
potentially [3] - 10:21, 12:5, 16:3
practical [1] - 5:8
prepared [1] - 3:21
presented [1] - 20:18
pressed [1] - 9:6
pretty [4] - 7:24, 8:17, 11:12, 16:1
prevent [1] - 20:13
preventing [1] - 6:17
previous [2] - 7:5, 12:9
problem [4] - 4:24, 6:25, 20:6, 20:7
processes [1] - 5:2
produced [2] - 8:10, 8:12
progress [1] - 21:6
promptly [1] - 21:15
prosecute [4] - 6:12, 9:1, 15:18, 15:25
prosecuting [3] - 16:14, 17:10, 20:13
prosecution [21] - 3:16, 3:17, 4:5, 5:20, 6:13, 6:14, 6:19, 7:7, 7:15, 7:19, 8:8, 8:15, 9:9, 10:23, 11:13, 11:21, 12:1, 12:5, 12:11, 19:2, 19:8
prosecutions [1] - 7:16
Protective [1] - 3:2
protective [17] - 4:1, 4:2, 4:4, 7:5, 9:16, 9:19, 10:16, 11:10, 12:15, 12:17, 12:19, 12:24, 13:12, 13:13, 17:21, 19:25, 21:16
provision [1] - 11:6
put [5] - 4:6, 5:17, 7:11, 12:3, 15:5, 15:6, 16:20, 17:20,

19:7

**Q**

quiet [2] - 6:24, 9:25
quite [2] - 15:6, 21:9

**R**

raise [1] - 17:25
raised [3] - 13:18, 19:13, 19:20
range [1] - 10:5
reacting [1] - 19:13
read [1] - 3:4
really [3] - 6:8, 10:24, 16:3
reason [4] - 5:6, 10:25, 12:2, 14:25
received [1] - 12:22
recent [1] - 14:4
recently [1] - 13:18
recognize [2] - 9:12, 11:22
record [5] - 5:4, 5:6, 6:7, 7:2, 7:7
Redux [1] - 3:3
reexam [2] - 4:1, 4:7
reexamination [5] - 3:18, 3:20, 3:22, 12:18
referring [1] - 11:11
regardless [1] - 12:21
Registered [1] - 1:25
regret [1] - 17:14
regular [1] - 15:7
regularly [1] - 15:11
related [1] - 20:15
relation [2] - 20:13, 20:14
relevant [4] - 18:3, 18:8, 18:14, 19:6
reliance [2] - 6:23, 7:23
Reporter [1] - 1:25
Reporters [1] - 2:16
resolution [2] - 3:11, 14:23
resolve [2] - 4:17, 21:10
resolved [5] - 3:19, 17:19, 17:20, 20:6, 20:7, 21:12
respect [2] - 17:11, 20:19
response [3] - 5:21, 7:13, 7:20
revealed [1] - 10:7
review [4] - 7:10, 8:9,

8:11, 8:24
reviewed [11] - 5:6, 5:21, 6:5, 6:8, 7:12, 7:14, 7:20, 8:21, 9:4, 13:17, 14:9
rights [1] - 18:12
role [2] - 9:10, 11:22
run [1] - 7:2

**S**

sandbag [1] - 7:22
saw [1] - 10:7
scope [3] - 3:16, 4:20, 7:15
se [2] - 11:25, 12:20
second [1] - 9:23
see [4] - 11:17, 15:12, 20:23, 21:12
seem [1] - 17:14
segregate [1] - 14:13
self [3] - 10:14, 14:12, 15:2
self-censor [1] - 10:14
self-censored [1] - 14:12
self-censorship [1] - 15:2
semiconductor [1] - 7:16
sense [1] - 16:23
sensible [2] - 16:18, 20:14
sensitive [1] - 5:12
sent [5] - 3:4, 7:6, 7:8, 7:18, 19:4
sentence [1] - 16:10
separate [4] - 5:23, 6:14, 11:13, 16:25
set [2] - 15:21, 15:23
sets [2] - 19:22, 19:23
Shaw [3] - 2:3, 2:24, 2:25
Sheasby [27] - 1:19, 2:22, 3:8, 3:10, 3:12, 3:15, 3:25, 4:11, 8:3, 8:4, 8:6, 9:8, 9:15, 10:12, 11:15, 12:12, 12:14, 13:12, 13:18, 13:23, 13:25, 14:1, 14:3, 19:21, 20:7
short [1] - 10:8
side [8] - 9:13, 9:15, 13:8, 14:24, 16:4, 16:17, 21:4
side's [1] - 16:18
signature [1] - 17:22
simply [1] - 12:25
Simpson [2] - 2:5, 3:1
sitting [2] - 8:21, 16:6

situation [1] - 15:20
slice [1] - 16:12
smokes [1] - 18:24
someone [1] - 5:13
somewhere [1] - 10:12
sorry [3] - 9:20, 14:23, 21:8
sort [3] - 6:22, 17:16, 20:25
sounds [1] - 4:9
speaker [1] - 21:20
speaking [1] - 8:2
specific [2] - 8:19, 15:21
specifically [1] - 15:20
stage [1] - 21:11
staked [1] - 7:24
standard [1] - 3:22
Stargatt [1] - 2:2
start [1] - 5:1
Starting [1] - 7:4
starting [1] - 7:24
statement [1] - 20:3
statements [1] - 14:19
States [1] - 1:1
stay [1] - 16:21
step [2] - 10:9, 16:16
still [4] - 6:17, 15:17, 15:25, 21:5
stipping [1] - 4:6
stipulate [1] - 3:19
stipulation [1] - 20:18
stop [2] - 14:10, 20:8
straightforward [1] - 16:1
strategic [3] - 10:20, 11:4, 11:7
stringent [1] - 3:22
stuff [1] - 17:13
subject [11] - 3:3, 8:8, 8:14, 9:9, 10:23, 11:5, 11:16, 11:20, 12:1, 12:5, 12:10
subjected [1] - 6:1
submissions [1] - 14:19
submit [1] - 20:2
submitted [2] - 18:9, 18:15
substitute [1] - 3:17
such-and-such [2] - 10:8
suggest [1] - 12:24
suit [4] - 3:20, 4:7, 5:18, 18:3
Sunday [2] - 13:1, 13:2
support [1] - 7:22
supposed [1] - 20:20

surfacing [1] - 20:10
Systems [2] - 1:4, 1:21

**T**

table [2] - 3:15, 4:3
Taylor [1] - 2:2
team [12] - 5:8, 5:9, 5:14, 6:11, 8:22, 9:18, 11:19, 12:1, 12:4, 12:10, 13:20
technical [10] - 8:11, 8:13, 8:15, 9:3, 9:17, 10:15, 10:18, 10:24, 16:6, 16:11
teleconference [1] - 14:20
telephone [1] - 2:16
Telephone [2] - 1:11, 21:21
ten [1] - 6:24
test [1] - 6:8
Thacher [2] - 2:5, 3:1
themselves [1] - 10:14
theories [1] - 9:11
therefore [1] - 6:1
they've [4] - 6:21, 12:13, 16:21, 17:12
thinks [1] - 21:4
throw [1] - 21:7
Thursday [1] - 1:10
today [3] - 3:3, 4:13, 4:18
today's [1] - 3:5
together [3] - 4:10, 8:24, 12:3
touchstone [1] - 11:17
toward [1] - 21:1
track [1] - 20:25
tried [2] - 7:22, 15:5
true [1] - 15:19
trust [2] - 16:22, 16:23
trusted [1] - 16:24
try [1] - 16:24
trying [1] - 6:4
Tunnell [1] - 1:16
turn [1] - 5:15
turning [1] - 5:1
two [6] - 3:15, 12:17, 13:17, 19:16, 19:22, 19:23

**U**

unaffected [1] - 6:10
under [2] - 9:16, 9:18
understood [1] - 11:6
Unidentified [1] - 21:20

United [1] - 1:1
unresolved [1] - 20:10
up [7] - 3:25, 4:13, 12:24, 15:11, 16:7, 21:13
Usdc [1] - 1:13
utter [1] - 16:10

**V**

validity [2] - 5:10, 10:22
view [4] - 9:2, 11:20, 11:21, 17:15
virtue [1] - 5:24

**W**

wants [3] - 4:20, 15:1, 17:7
weekend [1] - 13:8
whole [1] - 4:4
wide [3] - 4:5, 10:5
Wilmington [1] - 1:10
window [2] - 4:2, 21:7
words [1] - 20:5
world [1] - 16:16
writing [1] - 21:15

**Y**

Young [1] - 2:2

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-301-KAJ |
| v. | ) | (Consolidated) |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CONFIDENTIALITY STIPULATION AND
## [PROPOSED] PROTECTIVE ORDER

**MORRIS NICHOLS ARSHT**
**& TUNNELL**
Jack B. Blumenfeld, Esquire
Leslie A. Polizoti, Esquire
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com

*Of Counsel:*

Morgan Chu, Esquire
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

*Attorneys for Plaintiff*

DATED: May 5, 2006

**YOUNG CONAWAY STARGATT**
**& TAYLOR, LLP**
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Montè T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
msquire@ycst.com

*Of Counsel:*

George M. Newcombe
**SIMPSON THACHER &**
**BARTLETT LLP**
3330 Hillview Avenue
Palo Alto, California
(650) 251-5000

*Attorneys for Defendant*



RECEIVED
MAY 09 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IT IS HEREBY STIPULATED AND AGREED, by and between the parties to the above-identified action, through their respective counsel, that protection of designated information produced during discovery in this action is warranted because Plaintiff AmberWave Systems Corporation ("AmberWave") and Defendant Intel Corporation ("Intel") each possesses, controls, or has in its custody certain non-public information that it considers to be highly confidential, the public disclosure of which would present the prospect of competitive harm, and the volume of this non-public information is such that an advance review and designation by the Court would be impractical, and therefore the terms and conditions of this Stipulation and Protective Order ("Protective Order") shall govern the disclosure of information by the parties in this action.

Pursuant to Federal Rule of Civil Procedure 26(c) and upon stipulation of the parties, IT IS HEREBY ORDERED AS FOLLOWS:

1.    This Order shall apply to all information produced or disclosed by any party or non-party in whatever form, including, but not limited to, documents, things, discovery responses, depositions, testimony or other papers produced, filed, or served by a party in this action ("Information").

2.    Any Information disclosed in the above-captioned matter by a party or non-party (the "Producing Party") that the Producing Party reasonably and in good faith believes to constitute a trade secret or other confidential research, development, or commercial information may be designated as "Confidential Information" or "Confidential Information -- Attorneys' Eyes Only Business Material" or "Confidential Information -- Attorneys' Eyes Only Technical Material" by the Producing

1

Party in the manner set forth herein. "Confidential Information" is defined as information that has not been made public and that the Producing Party reasonably and in good faith believes would cause competitive harm to the Producing Party if publicly known. "Confidential Information -- Attorneys' Eyes Only Business Material" is defined as confidential business and commercial information that has not been made public and the Producing Party reasonably and in good faith believes would cause the Producing Party to suffer substantial competitive harm if publicly known or known by agents or employees of the parties who would have access under this Order to Confidential Information. "Confidential Information -- Attorneys' Eyes Only Technical Material" is defined as confidential technical information that has not been made public and the Producing Party reasonably and in good faith believes would cause the Producing Party to suffer substantial competitive harm if publicly known or known by agents or employees of the parties who would have access under this Order to Confidential Information.

      3.      Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material disclosed to a party (the "Receiving Party") in the course of this matter: (a) may be used by the Receiving Party solely in connection with any litigations involving AmberWave and Intel, and for no other purpose; and (b) shall in any event not be disclosed by the Receiving Party to anyone, including officers, employees or agents of the Receiving Party, except in compliance with the terms hereof.

      4.      Subject to the other terms of this Protective Order, information designated "Confidential Information -- Attorneys' Eyes Only Business Material" or

2

"Confidential Information -- Attorneys' Eyes Only Technical Material" may be made
available by a Receiving Party only to the following persons:

> a.  outside attorneys of record herein for the Receiving Party and
> other legal, clerical and administrative personnel, such as attorneys,
> paralegals and secretaries employed by and working under the supervision
> of the outside attorneys of record in connection with this matter or other
> litigation involving Intel and AmberWave (collectively, the "Counsel of
> Record") ;

> b.  two Receiving-Party employees who will not, during the
> litigation and, until one year after the entry of a final non-appealable or
> non-appealed judgment or the complete settlement of all claims against all
> parties in this matter, direct, contribute to, or give advice about, research,
> development, sales or marketing strategies relating to or concerning
> semiconductor device fabrication and/or design based in whole or in part
> on information learned from the Producing Party's materials;

> c.  subject to the requirements of subparagraph 6(c) below,
> persons who have been retained by the Receiving Party or its Counsel of
> Record specifically to provide expert testimony or confidential consulting
> services in this matter or other litigation involving Intel and AmberWave
> (collectively referred to as "Independent Advisors"), and persons
> employed by any Independent Advisor, when working under the

supervision of such an Independent Advisor in connection with this matter or other litigation involving Intel and AmberWave;

d.   deposition or trial witnesses, during deposition or during trial testimony, who:

(i) have prior knowledge of the designated Information, or who the examining attorney has a good faith basis to believe have prior knowledge of the designated Information; or

(ii) authored or received the document containing the designated Information, or who the examining attorney has a good faith basis to believe authored or received the document containing the designated Information; or

(iii) is a present director, officer, employee, and/or agent of the Producing Party; or

(iv) is an Independent Advisor of the Producing Party;

and the attorneys representing these witnesses to the extent they are not Counsel of Record for Intel or AmberWave;

e.   the Court and its employees, and any other court presiding over a litigation involving Intel and AmberWave, and its employees;

f.   court reporters, stenographers, or videographers, or other persons preparing transcripts of testimony under the supervision of a court reporter, stenographer, or videographer;

g.   persons who have been retained by the Receiving Party or its Counsel of Record specifically to consult with regard to jury- or trial-related matters, including the composition of the jury in this matter or other litigation involving Intel and AmberWave (collectively referred to as "Trial Consultants"), and persons employed by them, when working under the supervision of such a Trial Consultant in connection with this matter or other litigation involving Intel and AmberWave; provided that this provision explicitly excludes any person engaged by a Receiving Party or any Counsel of Record or Trial Consultant for a Receiving Party to participate in any mock-trial exercises who is a current or former employee of, or individual who has provided consulting services to, any company that designs or manufacturers microprocessors or wafers for microprocessors;

h.   persons who have been retained by the Receiving Party or its Counsel of Record specifically to prepare demonstrative or other exhibits for deposition, trial or other court proceedings in this matter or other litigation involving Intel and AmberWave (collectively referred to as "Graphic Designers"), and persons employed by them, when working under the supervision of such a Graphic Designer in connection with this matter or other litigation involving Intel and AmberWave; and

5

i.   persons who have been retained by the Receiving Party or its

Counsel of Record to provide litigation support services, such as

document imaging, coding, copying, and management, in this matter or

other litigation involving Intel and AmberWave (collectively referred to as

"Litigation Support Vendors"), and persons employed by them, when

working under the supervision of such a Litigation Support Vendor in

connection with this matter or other litigation involving Intel and

AmberWave; and

j.   any other person upon such terms and conditions as the parties

may agree or as the Court hereafter by order direct;

provided that any Receiving Party employee authorized by this paragraph to receive

Confidential Information -- Attorneys' Eyes Only Business Material or Confidential

Information -- Attorneys' Eyes Only Technical Material and to whom Confidential

Information -- Attorneys' Eyes Only Business Material or Confidential Information --

Attorneys' Eyes Only Technical Material is disclosed shall, prior to any such disclosure,

execute a Certificate in the form annexed hereto as Exhibit A.  Such Certificates shall be

retained by Counsel of Record for the Receiving Party, and shall be made available to

Counsel of Record for the Producing Party upon a showing that the Producing Party has a

good faith and objectively reasonable belief that the terms of this Protective Order have

not been observed.

5.    Subject to the other terms of this Order, information designated

"Confidential Information" (as opposed to information designated "Confidential

Information -- Attorneys' Eyes Only Business Material" or "Confidential Information --

6

Attorneys' Eyes Only Technical Material") may be made available by a Receiving Party only to those persons described in Paragraph 4 above and to: (a) Receiving Party officers, directors, and employees whose assistance is needed by Counsel of Record for engaging in this litigation, or any other litigation involving Intel and AmberWave, including but not limited to any mediation or settlement conferences, or settlement discussions; and (b) the Receiving Party's outside counsel other than Counsel of Record whose assistance is needed by the Receiving Party for engaging in this litigation or any other litigation involving Intel and AmberWave, including but not limited to any mediation or settlement conferences, or settlement discussions; provided that any person in subparagraph (a) or (b) of this paragraph to whom Confidential Information is disclosed shall, prior to any such disclosure, execute a Certificate in the form annexed hereto as Exhibit A. Such Certificates shall be retained by Counsel of Record for the Receiving Party, and shall be made available to Counsel of Record for the Producing Party upon a showing that the Producing Party has a good faith and objectively reasonable belief that the terms of the Protective Order have not been observed.

6.      Further Limitation on Disclosure of Confidential Information --
Attorneys' Eyes Only Technical Material: Notwithstanding Paragraph 4 or any other provision of this Protective Order, the disclosure of Confidential Information -- Attorneys' Eyes Only Technical Material to the persons listed in Paragraph 4 shall be subject to the following limitations:

a.    Category 4(a)-(b) and (g)-(i):  An individual in these categories shall be permitted to review Confidential Information -- Attorneys' Eyes Only Technical Material only if such an individual is not substantively involved in the prosecution of

patents or patent applications related to semiconductor device fabrication and/or design until one year after (1) the entry of a final non-appealable or non-appealed judgment or (2) the complete settlement of all claims against all parties in this matter.

       c.  Category 4(c):

       (i) Designation of an Independent Advisor:  Prior to providing access to Confidential Information -- Attorneys' Eyes Only Technical Material to any individual in Category 4(c), the Receiving Party seeking to disclose such Confidential Information – Attorneys' Eyes Only Technical Material shall disclose in writing the following information to the Producing Party:

       (A)    the name of the Independent Advisor;

       (B)    the present employer and title of the Independent Advisor;

       (C)    a list of every public or private organization with whom the Independent Advisor has had a professional relationship over the last five years that relates to the field of semiconductor device fabrication and/or design (allowing for the Independent Advisor to designate the information disclosed pursuant to this subparagraph with an appropriate level of confidentiality under this Protective Order);

       (D)    a description of the Independent Advisor's current research (allowing for the Independent Advisor to designate the information disclosed pursuant to this subparagraph with an appropriate level of confidentiality under this Protective Order);

       (E)    a description of the specific areas of research that the Independent Advisor has engaged in over the last three

8

years (allowing for the Independent Advisor to designate
the information disclosed pursuant to this subparagraph
with an appropriate level of confidentiality under this
Protective Order);

(F)    a résumé (or similar document) describing prior
work/employment and a list of each publication of the
Independent Advisor that the Independent Advisor is aware
of following a reasonable inquiry; and

(G)    a certificate in the form annexed hereto as Exhibit A,
(excluding paragraph 6 of the form), signed by the
Independent Advisor.  If the parties agree (per the
procedure set out below) or if the Court orders that the
Independent Advisor shall be subjected to some form of
prosecution bar, the Independent Advisor shall file a
supplemental certification in a form agreed to be the parties
or specified by the Court.

(ii) Dispute Resolution with Respect to Independent Advisors:

(A)    Abiding by Protective Order:  Within ten business days of
receipt by the Producing Party of all of the information
required to be disclosed pursuant to subparagraph 6(c)(i),
the Producing Party may object in writing to the
Independent Advisor's receiving access to Confidential
Information – Attorneys' Eyes Only Technical Material if it
has a good faith and reasonable basis to believe that the
Independent Advisor should not have access to

9

Confidential Information – Attorneys' Eyes Only Technical Material. The Producing Party shall provide an explanation of the good faith and reasonable basis for believing that the Independent Advisor should not have access to Confidential Information – Attorneys' Eyes Only Technical Material. Failure to object to an Independent Advisor or failure to provide an explanation of the good faith and reasonable basis for believing that the Independent Advisor should not have access to Confidential Information – Attorneys' Eyes Only Technical Material within ten business days of receipt by the Producing Party of all of the information required to be disclosed pursuant to subparagraph 6(c)(i) shall be deemed approval of the Independent Advisor. The Producing Party shall have no right to object to a disclosure of any Confidential Information -- Attorneys' Eyes Only Technical Material to an Independent Advisor if the objection and explanation is not made within ten business days of the disclosure in subparagraph 6(c)(i).

If the Producing Party objects to the disclosure of Confidential Information -- Attorneys' Eyes Only Technical Material to an Independent Advisor, the Producing Party and Receiving Party shall, within five

business days from the date of the transmittal of the written

notice of objection, confer and attempt to resolve the

dispute.  If the parties cannot resolve the dispute, then,

within five business days following the meet and confer,

the Producing Party may submit the matter to the Court,

requesting that it be heard on an expedited basis, for an

order that the Independent Advisor not be allowed access to

Confidential Information -- Attorneys' Eyes Only

Technical Material.  No Confidential Information --

Attorneys' Eyes Only Technical Material shall be disclosed

to the proposed Independent Advisor until the Court

resolves such a motion.  Failure to submit the matter to the

Court within five business days following the meet and

confer shall be deemed approval of the Independent

Advisor.  These time periods are not to restrict any party

from moving for a court order earlier if the circumstances

so require.

(B)     Prosecution Bar:  Within ten business days of receipt by the

Producing Party of all of the information required to be

disclosed pursuant to subparagraph 6(c)(i), the Producing

Party may object in writing to the Independent Advisor

receiving access to Confidential Information -- Attorneys'

Eyes Only Technical Material unless such Independent

Advisor is subject to a prosecution bar. The Producing Party must provide an explanation of the good faith and reasonable basis for believing that a prosecution bar is appropriate, and must specify what type of prosecution bar it seeks. The Producing Party shall have no right to object to a disclosure of any Confidential Information – Attorneys' Eyes Only Technical Material to an Independent Advisor without a prosecution bar if the foregoing explanation is not provided within ten business days of receipt by the Producing Party of all of the information required to be disclosed pursuant to subparagraph 6(c)(i).

If the Producing Party believes a prosecution bar is appropriate, the parties shall meet and confer within five business days of transmittal of the written statement specified in the previous paragraph with respect to whether a prosecution bar should apply to an Independent Advisor disclosed pursuant to this Protective Order and, if so, the appropriate scope of any such prosecution bar. If the parties are unable to agree as to whether a prosecution bar should apply to any such Independent Advisor, or as to the scope of a prosecution bar, the party who has retained the Independent Advisor shall promptly submit the matter to the Court for resolution, unless the Producing Party is

generally challenging the right of the expert to receive any Confidential Information –Attorneys' Eyes Only Technical Material under subparagraph 6(c)(ii)(A), in which case the Producing Party shall submit the matter to the Court at the same time as its challenge under subparagraph 6(c)(ii)(A). No disclosure of any information designated as Confidential Information -- Attorneys' Eyes Only Technical Material shall be made to such Independent Advisor until the matter is resolved by written agreement between the parties hereto or by the Court.

d.    Categories 4(d)-(f), or as otherwise approved by this Court or by the Producing Party. No additional restrictions.

7.    For the purposes of this Protective Order:

a.    "substantively involved in the prosecution of patents or patent applications" means participation in the drafting of any language that appears in any specification or any claim in a patent application, or preparation of replies to Office Actions, submitted to the United States Patent and Trademark Office or any foreign agency responsible for issuing patents;

b.    "patents or patent applications related to semiconductor device fabrication and design" does not include patent applications or patents relating to apparatuses and tools used solely in the process of semiconductor device fabrication or design; and

13

c.  For the avoidance of doubt, Counsel of Record for the
Receiving Party shall be permitted to submit materials to the
Receiving Party's patent prosecution counsel for potential
inclusion in a patent information disclosure statement, so long
as the material: (1) does not contain any information
designated by the Producing Party as "Confidential
Information" or "Confidential Information -- Attorneys' Eyes
Only Business Material" or "Confidential Information --
Attorneys' Eyes Only Technical Material"; and (2) is a
publication, a document that has been served or filed in this
action, or a deposition transcript generated in this action.
Counsel of Record for the Receiving Party shall not provide
copies of any of the documents filed or served in this action,
and deposition transcripts, until at least 21 days following: (A)
in the case of documents filed or served in this action, the filing
or service of such documents, or (B) in the case of deposition
transcripts, following the delivery of the entire deposition
transcript to the witness for corrections. Counsel of Record for
the Receiving Party shall provide Counsel of Record for the
Producing Party with a complete description of each document
filed or served in the case, and each deposition transcript, but
excluding published documents, that Counsel of Record
intends to submit to prosecution counsel for the Receiving

14

Party pursuant to this subparagraph 7(c) at least five business days before each such submission. The Producing Party may seek to redesignate any material identified in a noticed submission to the Receiving Party's prosecution counsel at any time prior to the submission of such material to prosecution counsel. The Receiving Party's prosecution counsel shall not be permitted to receive any material identified in this subparagraph if the material is subject of a dispute about its proper designation until such time as the Court has resolved any dispute regarding the proper designation of such materials.

8. Upon entry of this Order, any law firm of Counsel of Record shall prohibit members or employees of the firm who review Confidential Information -- Attorneys' Eyes Only Technical Material designated under this Protective Order from discussing such information with any person who is substantively involved in the prosecution of patents or patent applications related to semiconductor device fabrication and/or design until one year after: (i) the entry of a final non-appealable or non-appealed judgment or (ii) the complete settlement of all claims against all parties in this matter.

9. Nothing in this Protective Order shall bar or otherwise restrict any attorney herein from rendering legal advice to his or her client with respect to this action or any other litigation between AmberWave and Intel, and, in the course thereof, referring to or relying upon his examination of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material; provided, however, that in rendering such

15

advice and in otherwise communicating with his or her client, the attorney shall not make any disclosure of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material, except as permitted by this Protective Order.

      10.    Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and Confidential Information -- Attorneys' Eyes Only Technical Material shall be designated as follows:

      a.    In the case of documents, designation shall be made by placing the legend "CONFIDENTIAL INFORMATION" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY BUSINESS MATERIAL" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY TECHNICAL MATERIAL" on each page of any such document containing this Information at the time of production.

      b.    In the case of information produced on electronic media, such as disks, CDs, tapes, etc., designation shall be made by placing the legend "CONFIDENTIAL INFORMATION" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY BUSINESS MATERIAL" or "CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY TECHNICAL MATERIAL" on the exterior of the disk, CD, tape, or other media, and such designation shall apply to all contents of the disk, CD, tape or other media; provided that the Producing Party shall make a good faith and reasonable effort to place on each page of each file

16

included in such electronic media the legend "CONFIDENTIAL
INFORMATION" or "CONFIDENTIAL INFORMATION --
ATTORNEYS' EYES ONLY BUSINESS MATERIAL" or
"CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY
TECHNICAL MATERIAL".

c.      In the case of interrogatory answers or responses to
requests to admit, designation shall be made in the case of confidential
answers by placing the legend "CONFIDENTIAL INFORMATION" or
"CONFIDENTIAL INFORMATION -- ATTORNEYS' EYES ONLY
BUSINESS MATERIAL" or "CONFIDENTIAL INFORMATION --
ATTORNEYS' EYES ONLY TECHNICAL MATERIAL" on each page
of any answer containing this Information.  Within five business days of a
request to produce a redacted version of an interrogatory answer or
response to requests to admit, the responding party shall transmit to the
propounding party a redacted version of the entire set of interrogatory
answers or responses to requests to admit that does not contain
Information designated under the Protective Order.

d.      No document or other material shall be filed under seal
except pursuant to this Order.  All applications, motions or other papers
submitted to the Court which contain Confidential Information,
Confidential Information -- Attorneys' Eyes Only Business Material, or
Confidential Information -- Attorneys' Eyes Only Technical Material shall
be filed in hard copy in sealed envelopes or other appropriate sealed

17

containers on which shall be endorsed the caption of this action, the title of the document contained in the sealed envelope or other container, the signature blocks of the filing party, and the legend "CONFIDENTIAL – FILED UNDER SEAL" or its equivalent. The enclosed material shall be segregated by the Court and not publicly available. Within three business days from the date of a filing made under seal, Counsel of Record for the non-filing party shall deliver to Counsel of Record for the filing party written notice of the specific portions of the filed material that contain the non-filing party's "Confidential Information" or "Confidential Information -- Attorneys' Eyes Only Business Material" or "Confidential Information - - Attorneys' Eyes Only Technical Material" so that Counsel of Record for the filing party may provide appropriately redacted copies of the filed document to the Court in accord with paragraph (G)(1) of the United States District Court for the District of Delaware's Administrative Procedures Governing Filing and Service by Electronic Means dated February 8, 2005. To the extent the parties submit Information designated under this Protective Order in a litigation between them in another court, they shall meet and confer to adopt procedures for filing sealed documents that are consistent with that court's procedures.

      e.     In the case of deposition testimony, Counsel of Record may invoke the provisions of this Protective Order by stating on the record during a deposition that testimony given at a specified portion of the deposition is designated "Confidential Information" or "Confidential

Information -- Attorneys' Eyes Only Business Material" or "Confidential

Information -- Attorneys' Eyes Only Technical Material." Only

individuals authorized under the terms of this Protective Order to receive

"Confidential Information" or "Confidential Information -- Attorneys'

Eyes Only Business Material" or "Confidential Information -- Attorneys'

Eyes Only Technical Material" information shall be present during

portions of the deposition so designated. Within ten business days of

receipt of the final deposition transcript, any Disclosing Party may make

or modify a designation on a portion or portions of the deposition by

giving written notice to all persons present at the deposition and Counsel

of Record for all other parties. At the time of redesignation, those

individuals subject to this Protective Order who are no longer entitled to

access the redesignated portions of the transcript under the terms of the

Protective Order shall destroy any copies of the redesignated portions

within their possession, custody, or control. Any party may make a

written request to produce a redacted version of a deposition transcript, in

which case, within ten business days of the later of (i) the receipt of such

request and (ii) receipt of a final version of such transcript (excluding the

time period for any corrections by the witness), Counsel of Record for the

designating party shall deliver to Counsel of Record for the other parties

(and, where applicable, the deponent) written notice of the specific page

and line numbers and/or exhibit numbers that contain information

designated "Confidential Information" or "Confidential Information --

Attorneys' Eyes Only Business Material" or "Confidential Information --

Attorneys' Eyes Only Technical Material" so that the non-designating

party may provide appropriately redacted copies of the transcript and

exhibits to individuals not approved for access to such Information.  If any

portion of a deposition is designated as "Confidential Information" or

"Confidential Information -- Attorneys' Eyes Only Business Material" or

"Confidential Information -- Attorneys' Eyes Only Technical Material,"

that portion of the deposition record, including any referenced exhibits if

they are also "Confidential Information" or "Confidential Information –

Attorneys' Eyes Only Business Material" or "Confidential Information --

Attorneys' Eyes Only Technical Material," shall be separated from the rest

of the transcript, stamped with the designated degree of confidentiality,

and treated pursuant to the terms of this Protective Order.

11.    All documents and things which are produced for initial inspection

prior to copying and delivery shall be deemed to be designated as Confidential

Information, Confidential Information -- Attorneys' Eyes Only Business Material or

Confidential Information -- Attorneys' Eyes Only Technical Material and shall be

produced for inspection only by persons representing the Receiving Party who are

entitled to review Information so designated.  Within ten business days after the

Receiving Party selects the documents it wishes to receive copies of, the Producing Party

will designate the documents under the Protective Order and produce them.

12.    All documents and pleadings of any nature containing Confidential

Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or

Confidential Information -- Attorneys' Eyes Only Technical Material, and all copies thereof, shall be maintained, by any person qualified to receive and to retain them under the terms of this Protective Order, in secure facilities and in a manner intended to minimize any risk of the inadvertent disclosure thereof. In addition, the parties agree that materials marked "Confidential Information -- Attorneys' Eyes Only Technical Material" shall not be accessible over an internet connection, except that each Counsel of Record may maintain a document database available via a secure private network but only if the database is hosted on a secure computer located on the premises of the Counsel of Record and maintained under the exclusive control of the Counsel of Record. Such a document database shall be made accessible only to Counsel of Record and to its employees administering the database.

13.    Within sixty days of the earlier of the entry of a final non-appealable or non-appealed judgment in this action, or the complete settlement of all claims against all parties in this action, all written materials, other than attorney work product and attorney-client communications, containing Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material received by the Receiving Party subject to this Protective Order that are in the possession, custody or control of the Receiving Party or its agents shall be destroyed or turned over to Counsel of Record for the Producing Party at the election of the Producing Party. In addition to attorney-client communications, and attorney work product, Counsel of Record for the Receiving Party shall be entitled to retain a single archival copy of court papers, responses to interrogatories or requests for admission, correspondence, expert reports, deposition and

21

trial transcripts, and exhibits that contain Information designated as "Confidential Information" or "Confidential Information -- Attorneys' Eyes Only Business Material" or "Confidential Information -- Attorneys' Eyes Only Technical Material," provided that Counsel of Record shall not disclose any such information except pursuant to the terms of this Protective Order, a separate written agreement with the Producing Party, or a court order. The provisions of this Protective Order restricting the communication and use of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material continue to be binding after the entry of a final non-appealable or non-appealed judgment in this action, or the complete settlement of all claims against all parties in this action.

14.    If Counsel of Record for the Receiving Party at any time objects to the designation or continued treatment of certain Information as Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material by the Producing Party, it shall so notify Counsel of Record for the Producing Party in writing, and the parties shall then meet-and-confer within five business days from Counsel of Record for the Producing Party's receipt of the Information, in a good faith attempt to resolve the dispute. If Counsel of Record are unable to agree, it shall be the responsibility of the Receiving Party to move for an order requiring redesignation of the information in dispute. The burden of proving whether a redesignation should or should not occur shall be assigned according to applicable law. Until an order on such motion is obtained, the original designation by the Producing Party shall stand.

15.     Nothing herein shall be deemed to restrict in any way a Producing Party's use of its own Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material.  The restrictions in this Protective Order shall not apply to any Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material that: (a) is lawfully received free of restriction from a third party who furnished the information other than through a breach of this Protective Order or other confidentiality obligation; or (b) is or becomes publicly available other than through a breach of this Protective Order or other confidentiality obligation.  Further, nothing in this Protective Order shall affect the right of the Receiving Party to transmit to anyone information disclosed in this litigation that has not been designated Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material.

16.     Entering into this Protective Order, and agreeing to produce, producing, or receiving Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, and/or Confidential Information -- Attorneys' Eyes Only Technical Material or otherwise complying with the terms of this Protective Order shall not:

a.      Operate as or constitute an admission by any party that any particular Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material contains or reflects trade secrets,

23

proprietary or commercially sensitive information or any other type of confidential matter;

       b.     Require disclosure of information that is protected by the attorney-client privilege, work product privilege, or any other applicable privilege or immunity;

       c.     Prevent the parties to this Protective Order from agreeing to alter or waive the provisions or protections provided for herein with respect to particular discovery material; or

       d.     Oblige any party to produce documents, testimony, or other material it considers privileged or not subject to discovery.

       17.     Inadvertent disclosure of Confidential Information, Confidential Information -- Attorneys' Eyes Only Business Material, or Confidential Information -- Attorneys' Eyes Only Technical Material without appropriate designation shall be without prejudice to any claim that such Information is confidential, if as soon as reasonably possible after the Producing Party becomes aware of any inappropriate designation, the Producing Party properly designates such material pursuant to the terms of this Protective Order.

       18.     Inadvertent disclosure of Information shall not constitute a waiver of the attorney-client privilege or work product immunity or any other applicable privilege if, as soon as reasonably possible after the Producing Party becomes aware of any inadvertent or unintentional disclosure, the Producing Party designates any such Information as within the attorney-client privilege or work product immunity or any other

applicable privilege and requests return of such Information to the Producing Party. Upon request by the Producing Party, the Receiving Party immediately shall return all copies of such inadvertently produced document(s) and shall make no use whatsoever of the inadvertently disclosed information irrespective of whether the Receiving Party agrees with the assertion of privilege. Nothing herein shall prevent the Receiving Party from challenging the propriety of the attorney-client privilege or work product immunity or other applicable privilege designation by submitting a written challenge to the Court.

19.    This Protective Order and the procedures set forth herein shall not preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure, Federal Rules of Evidence or any other statute, rule or authority. Nothing herein shall preclude any party from applying to the Court for any modification of the terms provided herein, as it may deem appropriate under the circumstances; provided, however, that prior to such application, the parties involved shall make a good faith effort to resolve the matter by agreement.

20.    Nothing herein shall be construed to affect in any way the evidentiary admissibility of any document, testimony, or other matter at any court proceeding related to this matter. The designation of certain information pursuant to this Protective Order shall not, for that reason, bar its introduction or use at any court proceeding related to this matter pursuant to such terms and conditions as the Court may deem appropriate, consistent with the need for a complete and accurate record of the proceedings; provided, however, that every effort shall be made, through the use of procedures agreed upon by the parties or otherwise, to preserve the confidentiality of Information designated pursuant to this Protective Order as Confidential Information or

25

Confidential Information -- Attorneys' Eyes Only Business Material or Confidential Information or Confidential Information -- Attorneys' Eyes Only Technical Material. ·

21.    By entering into this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a subpoena or motion to disclose another party's Information designated Confidential Information or Confidential Information -- Attorneys' Eyes Only Business Material or Confidential Information or Confidential Information -- Attorneys' Eyes Only Technical Material under this Protective Order shall promptly notify that party of the subpoena or motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

22.    It is expressly contemplated and agreed that the terms of this Protective Order are applicable to Information submitted by a non-party and/or produced by a non-party in connection with this litigation, and that the parties will treat all Information of a non-party in accordance with the terms of this Protective Order. In the case of third-party discovery, the Requesting Party shall inform the third party of and provide the third party with this Protective Order.

23.    Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery or testimony outside of the restrictions and procedures of the

Federal Rules of Civil Procedure, District of Delaware Local Rules, and orders of this Court.

24.    This Court shall retain jurisdiction to enforce the terms of this Protective Order after final termination of this action.

25.    The parties agree that the terms of this Protective Order are intended to govern the production of all materials in each legal proceeding ("Related Proceeding") involving AmberWave and Intel that: (1) involve any of the products accused of infringement in any proceeding pending between Intel and AmberWave as of the date of this Protective Order; and (2) are filed before the entry of a final non-appealable or non-appealed judgment or the complete settlement of all claims between Intel and AmberWave pending as of the effective date of this Protective Order. To the extent a protective order is submitted in a Related Proceeding, the parties agree that the form of such protective order submitted will be substantially identical to this Protective Order and shall be modified only to the extent necessary to comply with any local rule, any regulation of the presiding court in such Related Proceeding, or by the presiding court in such Related Proceeding. The parties shall meet and confer in good faith in order to resolve any disagreement on the form of the protective order to be submitted in the Related Proceeding.

IN WITNESS WHEREOF, the parties hereto caused this agreement to be duly executed as of the day and year written below.

Dated: May 5, 2006

OF COUNSEL
George M. Newcombe

SIMPSON THACHER & BARTLETT LLP
3330 Hillview Avenue
Palo Alto, California 94304

/s/ Monté T. Squire
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Monté T. Squire (No. 4764)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
302-571-6600
msquire@ycst.com
*Attorneys for Defendant Intel Corporation*

OF COUNSEL
Morgan Chu
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT, &
TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
302-351-9291
jblumenfeld@mnat.com
*Attorneys for Plaintiff AmberWave Systems
Corporation*

IT IS SO ORDERED.

_____, 2006
~ May 11

HONORABLE KENT A. JORDAN

**EXHIBIT A**

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMBERWAVE SYSTEMS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-301-KAJ |
| | ) | (consolidated) |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CONFIDENTIALITY AGREEMENT

I, _____, declare and say that:

    1.    I live at_____. I am employed as _____[position] by _____ [name and address of employer].

    2.    I have been given a copy of the Confidentiality Stipulation and Protective Order ("Protective Order") entered in *AmberWave Systems Corporation v. Intel Corporation,* CA No. 05-301-KAJ (D. Del.) (consolidated) and I have read said Protective Order.

    3.    I hereby promise and agree to be bound by its terms, and promise and agree to maintain, pursuant thereto, the confidentiality of all information furnished to me which has been designated as such under the Protective Order. I understand that these promises are conditions precedent to my receipt of any such information.

    4.    I agree that I will not disclose or discuss such confidential material with anyone other than as consistent with terms of the Protective Order.

5.    I understand that any disclosure or use of confidential material in any manner contrary to the provisions of the Protective Order may subject me to sanctions for contempt.

6.    If I receive Confidential Information -- Attorneys' Eyes Only Technical Material, I agree that I will not become substantively involved in the prosecution of patent applications or patents related to semiconductor fabrication and/or design, until one year after issuance of a final, non-appealable or non-appealed judgment in this case, or a settlement of all claims against all parties in this case, unless otherwise approved by this Court or by the Producing Party.

7.    I hereby submit to the jurisdiction of the United States District Court for the District of Delaware, for the purpose of enforcing the terms of this Agreement and Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____

_____
Signature

_____
Name Typed or Printed

_____
Street Address

_____
City. State, Zip Code