# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

September 25, 2006

The Honorable Kent A. Jordan                                  **BY ELECTRONIC FILING**
United States District Court
844 N. King Street
Wilmington, DE 19801

        Re:        <u>AmberWave Systems Corp. v. Intel Corp.</u>, C.A. No. 05-301 (KAJ)

Dear Judge Jordan:

        We write on behalf of AmberWave Systems Corporation ("AmberWave") regarding the discovery teleconference scheduled for 3:00 p.m. tomorrow.

        **I.**        **Non-confidential documents provided to prosecution counsel[1]**

        Intel Corporation ("Intel") accuses AmberWave of breaching the Protective Order. Those accusations are baseless. The relevant facts are:

- Intel provided certain <u>non-confidential</u> documents to AmberWave prior to the entry of the Protective Order in this case. These included prior art references identified by Intel as well as Intel's interrogatory responses regarding its invalidity and unenforceability contentions.

- AmberWave prepared <u>non-confidential</u> responses to Intel's interrogatories using <u>publicly available</u> information, such as reports prepared by companies whose business is reverse engineering Intel's products and selling reports documenting such information. *See, e.g.*, excerpt from Semiconductor Insights report (Ex. A).[2]

- Neither the Intel prior art, the Intel interrogatory responses, the AmberWave interrogatory responses, nor any of the other documents at issue were designated by Intel as confidential. Both Local Rule 26.2 and the Protective Order have provisions that, if used, provide protection for confidential information. In fact, Intel expressly invoked the protection of Local Rule 26.2 for a confidential document production on the same day that it served one set of the <u>non-confidential</u> interrogatory responses at issue. *See, e.g.*, Ridder Oct. 28, 2005 letter (Ex. B). Intel has never designated as confidential any of the

---

[1]    Intel sought a discovery teleconference on this issue without first meeting and conferring with AmberWave. Indeed, Intel's counsel insisted on calling the Court without first discussing the matter.

[2]    This report is filed under seal because it was purchased from Semiconductor Insights, Inc. by AmberWave under terms limiting its use solely to AmberWave.

- documents at issue. Indeed, many of the interrogatory responses at issue have been filed publicly with the Court (as attachments to discovery letters) and are available on-line. *See* D.I. 65, 94 & 109.

- The March 21, 2006 version of the Protective Order submitted to the Court by Intel expressly permitted AmberWave to submit documents to prosecution counsel for inclusion on an Information Disclosure Statement ("IDS") to the United States Patent and Trademark Office (the "PTO") without informing Intel. (Ex. C at ¶ 7(a)). The last set of documents at issue was sent to prosecution counsel on March 22, 2006. During the March 23, 2006 conference, Intel determined that it wanted additional control over what documents were sent to prosecution counsel. The Court subsequently entered a Protective Order that expressly permits AmberWave to provide printed publications and non-confidential interrogatory responses to prosecution counsel. (Ex. D at ¶ 7(c).) To address Intel's concerns, the Protective Order specifies certain waiting periods before a party can disclose documents to prosecution counsel. AmberWave has complied with and will continue to comply with this additional level of protection first proposed after the March 23, 2006 conference.

- No document designated by Intel as confidential (nor the substance of any such document) was ever provided to prosecution counsel at any time.

- Only non-confidential documents were provided to prosecution counsel. AmberWave's prosecution counsel evaluated which documents provided by AmberWave were material (a determination only prosecution counsel could make) and disclosed what it considered to be material non-confidential documents to the PTO. *See, e.g.*, Jan. 3, 2006 IDS and Mar. 22, 2006 IDS (Exs. E and F).

AmberWave's litigation counsel provided the non-confidential documents at issue to AmberWave's prosecution counsel because AmberWave may have an obligation to disclose such information to the PTO. A number of courts have found that, under section 2001.06(c) of the Manual for Patent Examining Procedure, applicants have a duty to disclose materials from patent litigation (particularly prior art and interrogatory responses) in related patent prosecution.[3] *See ICU Med., Inc. v. B. Braun Med. Inc.*, No. 01-3202, 2005 U.S. Dist. LEXIS 40710, at *41-42, n.8 & *44 (N.D. Cal. Mar. 14, 2005) ("applicants should continue to submit information for consideration by the [PTO] in applications rather than making and relying on their own determinations of materiality" (internal quotations omitted)). AmberWave's litigation counsel provided such information to AmberWave's prosecution counsel so that AmberWave's prosecution counsel could evaluate such information, and if appropriate, disclose it to the PTO.

---

[3] "Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office. Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure.' Another example of such material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner. Such information might arise during litigation in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony." MPEP 2001.06 (c) (citation omitted) (emphasis added).

Indeed, Intel itself is well aware of an applicant's potential obligation to disclose such information to the PTO. Intel's own prosecution counsel discloses litigation materials, including interrogatory responses and accused infringers' non-infringement and invalidity contentions, to the PTO in connection with Intel's patent applications. *See, e.g.*, Intel's U.S. Patent Nos. 6,792,523 and 6,751,725 (citing accused infringers' redacted non-infringement and invalidity arguments, accused infringers' redacted interrogatory responses, and previously sealed papers relating to accused infringers' motion for invalidity) (Exs. G and H).

Intel is raising this dispute not because there has been a violation of the terms or even the spirit of the Protective Order. Instead, Intel wants to prevent the PTO from considering Intel's invalidity positions, and AmberWave's claim construction positions, in the continuation applications of the patents in suit now pending before the PTO. By preventing PTO consideration of its arguments, Intel hopes to obtain a strategic advantage if and when the patents are asserted in litigation.

## II. Interrogatory responses

<u>Interrogatory Numbers 19 and 20.</u> Intel's interrogatory numbers 19 and 20 provided AmberWave with a cropped image of a portion of a transistor and asked AmberWave to point out which features of the cropped image correspond to various claim terms. AmberWave told Intel that AmberWave could not answer the interrogatory based on the incomplete image provided by Intel. AmberWave requested a complete image of the entire transistor and, for context, the devices or structures immediately adjacent to the transistor. AmberWave also requested specific information that would allow AmberWave to accurately locate on the image the structures and regions known to exist in Intel transistors (the equivalent of asking for landmarks or street names on a map). Intel did not contend that the complete image and the additional information were unavailable. But Intel never provided these materials to AmberWave. In response to a subsequent request for supplementation, AmberWave again stated that it would supplement its responses if it were provided the necessary materials. AmberWave even offered to provide more detail on the materials it sought or to discuss alternatives if Intel did not possess such materials. *See* Sheasby Mar. 7, 2006 letter (Ex. I). AmberWave's offer remains open.

<u>Intel's Sixth Set of Interrogatories.</u>[4] These interrogatories seek information relating to AmberWave's measurements and analyses of Intel's accused products. Had Intel met and conferred with AmberWave on these interrogatory responses prior to raising this issue with the Court, it would have learned that any such measurements and analyses were performed at the request of counsel, either in anticipation of or during litigation, or as part of the settlement discussions that the parties have agreed to immunize from discovery. As such, they are protected from disclosure as work product. *See Novartis Pharm. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001) (testing done at the request of counsel in anticipation of identifiable litigation constitutes work product).

Respectfully,

*/s/ Jack B. Blumenfeld (#1014)*

Jack B. Blumenfeld

---

[4] Intel did not meet and confer with AmberWave on this issue. Intel demanded, by e-mail, that AmberWave inform it within 24 hours whether AmberWave would supplement its interrogatory responses. Without awaiting a response, Intel raised this issue in its letter to the Court less than 48 hours after its e-mail.

The Honorable Kent A. Jordan
September 25, 2006
Page 4

JBB/bls

cc:    Dr. Peter T. Dalleo, Clerk (By Hand)
       John W. Shaw, Esquire (By Hand)
       George M. Newcombe, Esquire (By Email)
       David I. Gindler, Esquire (By Email)