# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK

NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6554
DIRECT FAX: (302) 576-3467
kkeller@ycst.com

LISA A. ARMSTRONG
GREGORY J. BABCOCK
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
KAREN LANTZ

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN
KAREN L. PASCALE
PATRICIA A. WIDDOSS

TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
KRISTEN R. SALVATORE (PA ONLY)
MICHELE SHERRETTA
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER (SC ONLY)
JOHN E. TRACEY
MARGARET B. WHITEMAN
SHARON M. ZIEG

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

November 21, 2006

The Honorable Kent A. Jordan
United States District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

   Re: AmberWave Systems Corp. v. Intel Corp – C.A. No. 05-301;
      Intel Corp. v. AmberWave Systems Corp.– C.A. No. 06-429

Dear Judge Jordan:

  Intel writes in response to AmberWave's letter to the Court dated November 20, 2006. The protective orders in the above-captioned actions[1] are the product of extensive negotiations between the parties and reflect considerable guidance from the Court. There is no reason to amend them. The Court has already ruled that, because the risk of inadvertent disclosure is significant, AmberWave's litigation counsel may not communicate with its prosecution counsel except in a transparent and narrowly-circumscribed manner. The Court has also previously rejected the notion – which is central to AmberWave's proposal here – that its litigation counsel can avoid inadvertent disclosure merely by practicing self-censorship. Finally, there is no basis for AmberWave's assertion that the parties' stipulation requires revision of the protective orders. That narrow stipulation reaches only the patents in suit in 05-301 (the "Consolidated Action"), none of which is at issue here.

## I. AmberWave's Request Ignores the Court's Prior Orders

  Currently, the protective orders bars Counsel of Record (as defined in the order) from communicating with prosecution counsel except through a regulated process in which Intel is provided advance notice and an opportunity to object. (05-301 D.I. 119, pp. 7, 14). Despite many

---

[1] AmberWave first raised the possibility of an amendment to the protective order in the Consolidated Action (C.A. No. 05-301) on November 17, only four days ago and over a month after seeking this conference.

DB01:2237688.1                                      062992.1002

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
Page 2

months of negotiation, the parties were able to agree on the scope of this prosecution bar only after the Court took the matter up during its March 23, 2006 teleconference. AmberWave argued there that the prosecution bar should apply only to those members of its litigation team who actually review Intel AEO-Technical materials. Under AmberWave's proposal, the remaining members of its litigation team would be "outside the bubble" and able to participate in patent prosecution because their colleagues would engage in self-censorship. The Court rejected AmberWave's position, concluding, "If somebody is going to work on this litigation, this litigation that is informed by the attorneys' eyes only material, they're not prosecuting patents." *See* Exhibit A at 17:7-10. As the Court recognized, AmberWave's position simply did not reflect the realities of litigation:

> "I don't think anybody should be trusted to try to separate out in their own brain what they can and can't say to their own partners and associates in the context of litigation. They ought to be able to have free and open discussion. As they're doing that, some of this information may inevitably leak out." *Id.* 16:24-17:4.

AmberWave now takes that position (which this Court already rejected) one step further in arguing that *all* of its litigation counsel – including those who have reviewed Intel's AEO-Technical materials – should be allowed to participate in reexamination proceedings. *A fortiori*, this argument should be rejected as well. AmberWave is entitled by statute to respond to a rejection of claims by the PTO *by drafting new claims*.[2] Under AmberWave's proposal, the very attorneys who currently are combing through Intel's highly confidential technical information – developing theories for why Intel products infringe the '655 patent – would have unmonitored and virtually unlimited communication with the prosecution counsel who are charged with redrafting the very rejected claims that AmberWave intends to assert against Intel. AmberWave offers no explanation of how its litigation counsel would "separate out in their own brain what they can and can't say" during these reexamination proceedings. Nor could it. It simply is not possible for them to engage in the Sisyphean task of segregating Intel's confidential information into mentally inviolate compartments when discussing with AmberWave's prosecution counsel how best to evade prior art references.[3] Amending the protective orders would invariably result in AmberWave redrafting claims based on confidential information learned in this litigation – a perverse reward for obtaining a patent so weak that the PTO found it involves a "substantial new question of patentability" only months after its issuance.

AmberWave again attempts to re-plow old ground in claiming that it should not be forced to "have two independent sets of attorneys analyze and formulate positions regarding ... identical prior art." The Court rejected this same argument during the November 8, 2005 teleconference, finding

---

[2]   In fact, AmberWave recently did just that in one of the other re-exams instituted at Intel's request. *See* http://portal.uspto.gov/external/portal/!ut/p/_s.7_0_A/7_0_CH/.cmd/ad/.ar/sa.getBib/.ps/N/.c/6_0_69/.ce/7_0_3AB/.p/5_0_341/.d/5?selectedTab=ifwtab&isSubmitted=isSubmitted&dosnum=95000150 (10/30/06 link to "Claim Amendment Not Entered")

[3]   *See, e.g., Motorola, Inc. v. Interdigital Tech. Corp.*, C.A. No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714, at *15 (D. Del. Dec. 19, 2004) ("The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical…the attorneys may be."); *CEA v. Dell Computer Corp.*, C.A. No. 03-484-KAJ, Jordan, J., 2004 U.S. Dist. LEXIS 12782, at *6 (D. Del. May 25, 2004) (holding that prosecution counsel should not be granted access to highly confidential discovery materials because that would create a "substantial risk of inadvertent disclosure").

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Kent A. Jordan
Page 3

that having two sets of attorneys is a necessary cost of maintaining confidentiality. *See* Exhibit B at 15:17-19. ("if that means you are going to end up with some duplication costs and expense to avoid revealing someone's highly technical information, maybe that is just one of the fallouts of modern day litigation, unfortunate but real"). Intel's litigation counsel of record was not involved in the re-examinations of the '655 and '449 patents. There is therefore nothing unfair about preventing AmberWave's litigation counsel of record from participating in those same re-examinations other than through the procedures set forth in the protective orders. In any event, AmberWave, which has now sued Intel six times and attempted on three occasions to splinter the parties' litigation between multiple courts, cannot credibly argue that it is unfairly being forced to incur litigation costs by respecting the terms of the protective order.

**II. The Stipulation Is Inapplicable**

Finally, the stipulation that the parties entered into in the Consolidated Action provides no basis for granting AmberWave's request. That stipulation is limited to the three patents at suit in the Consolidated Action, one specific patent application, and other patents that "may later be added" to that action. (05-301 D.I. 95). The third category applies only to patents that actually are added to the Consolidated Action. Under any other reading, the stipulation would apply to a potentially limitless number of patents – any one of which AmberWave is free to assert "might" hypothetically be added some day. Indeed, Intel rejected a prior draft of the stipulation that would have applied to patents "that claim[] priority to any application to which any one of the [patents in suit] claims priority" – and thereby would have encompassed the '449 patent – precisely because it was too broad. *See* Exhibit C (rejected text marked in exhibit).

AmberWave has repeatedly attempted to read this narrow stipulation as shielding its entire portfolio from invalidating prior art. AmberWave's position has no merit. The stipulation simply does not apply to the '655 patent, which is at issue in a separate lawsuit and did not even exist as a patent when the stipulation was entered.[4] The '449 patent, which is not now and never has been a part of the Consolidated Action, is also clearly beyond its scope.[5]

Respectfully submitted,

/s/ *Karen E. Keller*

Karen E. Keller (No. 4489)

KEK/prt
Attachments

---

[4] Intel breached neither the spirit nor the letter of the parties' stipulation in filing a separate suit on the '655 patent. Intel filed a separate action to ensure that the case remained in Delaware and because at the time it believed the Consolidated Action was too far advanced to inject an entirely new patent into it. Intel's caution was well-justified; shortly after Intel filed suit on the '655 patent, AmberWave abruptly withdrew its pending motion to amend the Consolidated Action to add claims on yet another newly added patent, before Intel even had a chance to put in its responsive papers on the motion, and re-filed those claims in Texas.

[5] AmberWave has moved to amend its complaint in the Consolidated Action to add a claim for infringement of the '449 patent. As set forth in the parties joint letter dated November 6, 2006 Court, Intel believes the '449 patent claims should be combined with the '655 and '907 patents in the 06-429 action, which represents the second wave of patent litigation between the parties.

DB01:2237688.1                                                                                              062992.1002