# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

November 21, 2006

**REDACTED VERSION: November 29, 2006**

**BY ELECTRONIC FILING**

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

      Re: *AmberWave Systems Corporation v. Intel Corporation*
           C.A. No. 05-301-KAJ

Dear Judge Jordan:

    We write on behalf of AmberWave in response to Intel's November 20, 2006 letter regarding (1) subpoenas issued out of the United States District Court for District of Massachusetts and served upon two third-party inventors, Professors Fitzgerald and Antoniadis; (2) the MIT license; and (3) the supplementation of the parties' interrogatory responses.

    Inventor subpoenas[1]

    As an initial matter, there is no substance to Intel's allegations that Professors Fitzgerald and Antoniadis misappropriated funding from MARCO and SRC to research and develop the inventions claimed in the patents in suit. AmberWave funded this research and development on its own.

    Setting aside the lack of merit of Intel's allegations, the subpoena discovery sought by Intel is overbroad, seeks materials not relevant to this case, and is unduly burdensome. Collectively, Intel's subpoena Requests Nos. 25-36 seek all documents regarding all research funding that Professors Fitzgerald and Antoniadis have received over an approximately five-year time period. An appropriate scope of production would be limited to sources of funding that Intel has alleged would provide it with a license to the patents in suit, i.e., MARCO and SRC.

---

[1] As a preliminary matter, Intel's request to enforce the District of Massachusetts subpoenas to Professors Fitzgerald and Antoniadis in this Court raises a jurisdictional issue. The Federal Rules of Civil Procedure require that a third-party subpoena be enforced in the district where the discovery is sought. Rule 37 states: "**Appropriate court.** ... An application for an order to a person who is not a party shall be made to the court in the district where the discovery is being, or is to be, taken." Fed. R. Civ. P. 37(a)(1) (emphasis in original).

The Honorable Kent A. Jordan
November 21, 2006
Page 2

- For Requests Nos. 25-30, an appropriate scope of production would be limited to non-privileged documents relating to MARCO and SRC research grants that Professors Fitzgerald and Antoniadis received during the time period specified in Request No. 25 (December 4, 1999 to April 19, 2005 for Fitzgerald, and October 22, 2001 to July 11, 2006 for Antoniadis).

- For Request Nos. 31-36, an appropriate scope of production would be limited to non-privileged documents relating to MARCO and SRC research grants that Professors Fitzgerald and Antoniadis received during the time period from January 1, 1999 to the end date specified in Request No. 25 (April 19, 2005 for Fitzgerald, and July 11, 2006 for Antoniadis).

Any non-MARCO and non-SRC research is irrelevant. Intel has asserted no claim that it would be entitled to a license based upon any other source of research funding. Even if there were an issue of misappropriation with any other source of research funding (and there is not), Intel's allegations lack the immediate and necessary relation to the case that would bar recovery by AmberWave. *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) ("Only when 'some unconscionable act of one coming for relief has immediate and necessary relation to the equity that' the party seeks, will the doctrine bar recovery. *Keystone*, 290 U.S. at 245, 54 S.Ct. 146."). The Federal Circuit affirmed a district court's rejection of an unclean hands defense, finding that "the purported misconduct did not occur in the context of the present lawsuit" where the patentee, among other things, "allegedly . . . 'misappropriated' the '980 and '832 inventions from scientists at the University of California." *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1565 (Fed. Cir. 1996). Intel's similar misappropriation allegations and unclean hands defense should also be rejected.

In addition, compelling Professors Fitzgerald and Antoniadis to produce all of their research materials would be unduly burdensome. Professors Fitzgerald and Antoniadis have voluminous documents that are potentially responsive to Intel's requests. Electronic files are on the order of gigabytes, and paper files include multiple file cabinets. Searching for, collecting, and producing these additional materials would be unduly burdensome to a third party.

Intel proposed a "two-step process," whereby Professors Antoniadis and Fitzgerald would "begin" by producing documents sufficient to show the sources of all grants and funding, the amounts of such grants and funding, and a description of the research that was performed. After this first step, Intel could go back to Professors Antoniadis and Fitzgerald and then demand follow-up productions without limitation. And Intel would do just that. Intel told AmberWave to "make no mistake" - Intel intends to get all the materials for all sources of the professors' research. (D.I. 198, Ex. C, at 2). Intel's two-step proposal is therefore just as overbroad and unduly burdensome as the original requests.

Finally, AmberWave notes that the documents sought by Intel may implicate the confidentiality rights of third parties, such as MIT, MARCO, SRC, and other granting agencies. Any production of documents would need to be contingent upon providing the entities with sufficient notice to allow them to seek relief from this Court.

MIT license

Intel has raised this issue prematurely. Intel made a single request late last week for this license. In response, AmberWave asked for the basis for Intel's request so that AmberWave could explain the need and seek approval for production by MIT. Rather than respond, Intel raised the issue with the Court.

The Honorable Kent A. Jordan
November 21, 2006
Page 3

Although the requested license does not involve the patents in suit and still appears to be irrelevant, AmberWave will produce.

### Intel's Fifth Set of Interrogatories

Intel also raises this issue prematurely and unnecessarily. During the meet and confer this month, Intel asked AmberWave for a date certain by which AmberWave would supplement its responses to these interrogatories. (D.I. 198, Ex. D). Contrary to Intel's argument, AmberWave has never taken the position that it will respond "whenever it chooses to do so." AmberWave is aware of its obligation under the Federal Rules of Civil Procedure to seasonably supplement interrogatory responses. Fed. R. Civ. P. 26(e)(2). In fact, AmberWave has expressly stated that it will do so. (D.I. 198, Ex. C, at 3).

AmberWave's responses regarding the conception dates of the patents in suit will be based substantially on the conception evidence in the inventors' lab notebooks. AmberWave's review of these numerous notebooks is on-going. A large portion of the inventor lab notebooks contain third party confidential information. AmberWave started to produce the notebooks with the third party confidential materials redacted, which led to objections from Intel about the large number of redactions. AmberWave has been working with the third parties to obtain permission to produce their confidential information. As a result, AmberWave is reviewing its previous redactions and removing redactions as permitted. In addition, AmberWave is continuing its review and rolling production of inventor notebooks. AmberWave plans to produce additional lab notebooks this week, and to supplement this production on a rolling basis until the review and production is complete.

AmberWave has stated its review plan and its agreement to supplement its response. Intel, however, wants the Court to impose a deadline on AmberWave to supplement its responses to these interrogatories. Such a unilateral deadline is unnecessary and unfair.

Intel has also responded to interrogatories saying that its investigation is ongoing, without supplementing or providing a date certain by which it will respond. For example, Intel's responses regarding its affirmative defenses are particularly important to AmberWave. Without them, AmberWave cannot meaningfully prepare its case. Intel's response to AmberWave's Interrogatory No. 11 (in C.A. 05-301) stated Intel's contention that the '371 patent is invalid under 35 U.S.C. § 112, but the response failed to explain the basis for Intel's contention beyond a single conclusory sentence. (Ex. 1). Intel also gave insufficient responses to AmberWave's Interrogatory No. 5 (C.A. 05-837) and Interrogatory No. 2 (C.A. 05-301) regarding Intel's unenforceability challenge to the '292 and '632 patents. (Ex. 2 & 3). To the extent that an interrogatory supplementation deadline is appropriate, in fairness, both parties should be held to the same deadline. AmberWave proposes a mutual deadline of January 15, 2007, for both parties to supplement the disputed interrogatory responses.

Respectfully,

/s/ *Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

cc:   Peter T. Dalleo, Clerk (By Hand)
      Josy W. Ingersoll, Esquire (By e-mail)
      David I. Gindler, Esquire (By e-mail)
      George M. Newcombe (By e-mail)